**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MERLY JEWIK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON,<br><br>Defendants. | Case No.: 1:25-cv-10385-LTS<br><br>CLASS ACTION |
| PATRICK COLLINS, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON,<br><br>Defendants. | Case No.: 1:25-cv-10778-LTS<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF ANDREW MAC DONALD'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

PROCEDURAL HISTORY.......................................................................................................... 2

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT .................................................................................................................................. 6

    A.     Consolidation of the Actions is Appropriate ................................................................. 6

    B.     Appointing Movant as Lead Plaintiff Is Appropriate....................................................... 8

        1.     The Procedure Required By the PSLRA .................................................................... 8

        2.     Movant Satisfies the Lead Plaintiff Requirements of the PSLRA ........................... 9

            a.     Movant Has the Largest Financial Interest in the Relief Sought by the Class ................................................................................................................... 9

            b.     Movant Otherwise Satisfies Rule 23.............................................................. 10

                i.     Movant Satisfies the Typicality Requirement........................................... 11

                ii.     Movant Fulfills the Adequacy Requirement............................................ 12

    C.     Approving Movant's Choice of Counsel Is Appropriate ........................................... 13

CONCLUSION.............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*In re Bank of Boston Corp. Sec. Litig.*,
762 F. Supp. 1525 (D. Mass. 1991) ...................................................................................... 11

*City of Bristol Pension Fund v. Vertex Pharms.*,
2012 U.S. Dist. LEXIS 180974 (D. Mass. Dec. 21, 2012)...................................................... 11

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................ 10

*In re E-Trade Financial Corp.* Securuties Litigation,
No. 07-cv-8538 (S.D.N.Y.)..................................................................................................... 14

*Fields v. Wolfson*,
41 F.R.D. 329 (S.D.N.Y. 1967) ............................................................................................... 7

*Garber v. Randell*,
477 F.2d 711 (2d Cir. 1973)...................................................................................................... 7

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982).................................................................................................................. 12

*Gilliam v. Fidelity Mgmt. & Research Co.*,
Case No. 04-11600NG, 2005 U.S. Dist. LEXIS 10478 (D. Mass. May 3, 2005) .................... 6

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996)......................................................................................... 8, 10

*Gurevitch v. KeyCorp, et al.*,
No. 1:23-cv-01520 (N.D. Ohio Dec. 26, 2023) ..................................................................... 14

*Howard Gunty Profit Sharing Plan v. CareMatrix Corp.,*
354 F. Supp. 2d 18 (D. Mass. 2000) ........................................................................................ 7

*Jaramillo v. Dish Network Corporation, et al.*,
No. 1:23-cv-00734 (D. Colo. Aug. 16, 2023).......................................................................... 14

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ........................................................................... 10, 11, 12

*Lowinger v. Global Cash Access Holdings, Inc.*,
Case No. 08 cv 3516 (SWK), 2008 U.S. Dist. LEXIS 49169 (S.D.N.Y. June 26, 2008) ........ 7

*Martin v. BioXcel Therapeutics, Inc. et al.,*
No. 3:23-cv-00915 (D. Conn. Oct. 4, 2023) ........................................................................... 14

*In re Milestone Scientific Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998) ...................................................................... 13

*Petersen v. Stem, Inc. et. al.,*
    No. 3-23-cv-02329 (N.D. Cal. Aug 22, 2023) .......................................... 14

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988) ................................................................ 12

*Rensin, Trustee of the Rensin Joint Trust v. United States Cellular Corporation, et al.*,
    No. 1:23-cv-02764 (N.D. Ill. July 11, 2023) ............................................ 14

*Seguro v. Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*,
    878 F.2d 5 (1st Cir. 1989) ............................................................................ 6

*Solomon v. Peloton Interactive, Inc. et al.,*
    No. 1:23-cv-04279 (E.D.N.Y. Sept 7, 2023) ............................................ 14

*Tehrani v. Biogen, Inc.*,
    2015 U.S. Dist. LEXIS 156001 (D. Mass. Nov. 18, 2015) ....................... 12

*In re Tesla Inc. Securities Litigation,*
    No. 3:18-cv-4865 (N.D. Cal.) .................................................................... 14

*Thant v. Rain Oncology Inc. et al.*,
    5:23-cv-03518 (N.D. Cal. Nov. 1, 2023) .................................................. 14

*Thant v. Veru, Inc. et al.,*
    No. 1:22-cv-23960 (S.D. Fla. July 27, 2023) ........................................... 15

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................... 11

*In re U.S. Steel Securities Litigation,*
    No. 2:17-579-CB (W.D. Pa.) ..................................................................... 14

*Villanueva v. Proterra Inc. et al.,*
    No. 5:23-cv-03519 (N.D. Cal. Oct. 23, 2023) .......................................... 14

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... *passim*

Fed. R. Civ. P. 42(a) ......................................................................................... 6

Movant Andrew Mac Donald ("Movant") respectfully submits this Memorandum of Law in support of his motion for: (1) consolidation of the above-captioned actions (the "Actions"); (2) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (3) approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel.

## INTRODUCTION

Presently pending before the Court are two securities class action lawsuits[1] brought on behalf of persons or entities who purchased or otherwise acquired publicly traded TransMedics Group, Inc. ("TransMedics" or the "Company") securities between February 28, 2023 and January 10, 2025, inclusive (the "Class Period"). Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, against Defendants TransMedics, Waleed Hassanein ("Hassanein"), and Stephen Gordon ("Gordon") (collectively, "Defendants").

The PSLRA directs the Court to appoint as Lead Plaintiff the movant or group of movants who have demonstrated the "largest financial interest in the litigation" and also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Movant satisfies both requirements.

*First*, Movant has sustained losses totaling approximately $45,369.70. Accordingly, Movant has a substantial economic interest in directing the litigation and recovering the losses he and the Class have suffered. Movant's losses are, to the best of his knowledge, the largest among purported Class members seeking appointment as Lead Plaintiff. Movant is unaware of any other

---

[1] The Actions are entitled *Jewik v. TransMedics Group, Inc., et al.,* Case No. 1:25-cv-10385-LTS (D. Mass) (the "*Jewik* Action"), and *Collins v. TransMedics Group, Inc, et al.,* No. 1:25-cv-10778-LTS (D. Mass) (the "*Collins* Action").

class members who have filed an application for appointment as Lead Plaintiff who have sustained greater losses.[2]

*Second*, Movant meets the typicality and adequacy requirements of Rule 23 because his claims are typical of those of absent Class members and because Movant will fairly and adequately represent the interests of the Class. In addition to demonstrating the largest financial interest in the outcome of the litigation, Movant understands the commitments required of a lead plaintiff and has confirmed that he is ready, willing, and able to oversee the vigorous prosecution of these Actions.

Pursuant to the PSLRA, the Lead Plaintiff selects his choice of counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant has selected the law firm of Levi & Korsinsky as Lead Counsel. Levi & Korsinsky has extensive experience successfully litigating securities class actions such as this and possess the resources necessary to vigorously pursue this litigation on behalf of the putative Class.

For the reasons summarized herein and discussed more fully below, Movant's motion should be granted in its entirety.

## PROCEDURAL HISTORY

The *Jewik* Action was filed on February 14, 2025 and the *Collins* Action was filed on April 2, 2025, both in the United States District Court for the District of Massachusetts. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), notice that a class action had been initiated against Defendants was published by counsel in the *Jewik* Action on February 14, 2025 on *Business Wire*, a widely circulated national business-oriented wire service (the "Notice"). The Notice advised members of the proposed Class of their right to move the Court for appointment as Lead Plaintiff. *See* Hopkins

---

[2] The losses suffered by Movant are not the same as their legally compensable damages. Measuring the latter is often a complex exercise and is premature at this stage of the litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B) and based upon reference to information concerning the current market for the Company's securities. Movant's transactions in TransMedics securities are set forth in the Certification attached as Exhibit A to the Declaration of Shannon L. Hopkins in Support of this Motion ("Hopkins Decl.").

2

Decl. Ex. C. Movant is a member of the proposed Class (*see* Hopkins Decl. Ex. A) and is filing his motion within the sixty-day period following publication of the notice pursuant to Section 21D of the PSLRA.

**STATEMENT OF FACTS**[3]

Defendant TransMedics describes itself as follows:

> The Company is a commercial-stage medical technology company transforming organ transplant therapy for end-stage organ failure patients across multiple disease states. ¶ 7. The Company developed the Organ Care System ("OCS") to replace a decades-old standard of care. *Id*. The OCS represents a paradigm shift that transforms organ preservation for transplantation from a static state to a dynamic environment that enables new capabilities, including organ optimization and assessment. *Id*. The Company's OCS technology replicates many aspects of the organ's natural living and functioning environment outside of the human body. *Id*. The Company also developed its National OCS Program ("NOP"), an innovative turnkey solution to provide outsourced organ retrieval, OCS organ management and logistics services, to provide transplant programs in the United States with a more efficient process to procure donor organs with the OCS. *Id*. The Company's logistics services include aviation transportation, ground transportation and other coordination activity. *Id*.

On February 27, 2023, the Company filed with the SEC its annual report on Form 20-F for the period ending December 31, 2022 (the "2022 Annual Report"). ¶ 17. Attached to the 2022 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Hassanein and Gordon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud. *Id*.

The statements contained in ¶¶ 18, 20, 22, 24, 26, 29, 31, 33, 35, 37, and 39 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. ¶ 41. Specifically, Defendants made false and/or

---

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Jewik* Complaint") filed in the *Jewik* Action. Citations to "*Collins* ¶ __" are to paragraphs of the Class Action Complaint (the "*Collins* Complaint") filed in the *Collins* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Jewik* and *Collins* Complaints. The facts set forth in the *Jewik* and *Collins* Complaints are incorporated herein by reference.

3

misleading statements and/or failed to disclose that: (1) TransMedics used kickbacks, fraudulent overbilling, and coercive tactics to generate business and revenue; (2) TransMedics engaged in unsafe practices and hid safety issues and generally lacked safety oversight; (3) the foregoing subjected TransMedics to heightened risk of scrutiny and regulatory risk; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id*.

U.S. Representative Paul Gosar issued a letter on February 21, 2024 accusing TransMedics of misconduct including misappropriating corporate resources. ¶ 42. Rep. Gosar is on the House Committee on Oversight and Accountability. *Id*. This letter was reported on by The Daily Caller during market hours on February 22, 2024. *Id*. The article noted the following about Rep. Gosar's characterizations of TransMedics' pricing of use of the TransMedics Organ Care System (the "OCS"). *Id*.

As the market digested this news, the price of TransMedics stock dropped $2.18 per share, or 2.5%, to close at $84.81 on February 22, 2024. ¶ 46. The next day, it fell a further $1.67 per share, or 1.96%, to close on February 23, 2024 at $83.14 per share. *Id*.

After market hours on October 28, 2024, TransMedics issued a press release on Form 8-K filed with the SEC, announcing its financial results for third quarter 2024. *Collins* ¶ 63. During the associated earnings call the same day, the Company announced it had suffered a sequential decline in revenues and gross margin, representing the Company's first sequential revenue decline since third quarter 2021. *Id*.

TransMedics' disappointing results, including a sequential decline in revenues and gross margin, partially disclosed to the market that the Company's unsustainable business practices were no longer able to generate the financial results that TransMedics had achieved in prior reporting

4

periods and/or represented a partial materialization of the undisclosed risks occasioned by TransMedics' unsustainable business practices, as detailed herein. *Collins* ¶ 66.

Moreover, in its response to Rep. Gosar's letter, TransMedics claimed that its OCS device and NOP services "unequivocally led to a 12% increase in liver and heart transplantation in the US in 2023." *Collins* ¶ 69. If that is correct, the fact that transplants decreased in the third quarter 2024 demonstrated that TransMedics' unsustainable business practices were no longer effective in achieving increased successful organ transplants and that the Company's ability to grow the organ transplant market through its unsustainable business practices had ceased. *Id*.

On this news, the price of TransMedics stock fell nearly 30%, or $37.74 per share, from $126.24 on October 28, 2024, to close on October 29, 2024 at $88.50. *Collins* ¶ 70.

After market hours on December 2, 2024, TransMedics issued a press release on Form 8-K filed with the SEC, stating, among other things, that it was reducing its full year 2024 revenue guidance from between $425 million and $445 million to between $428 million and $432 million. *Collins* ¶ 72. The press release also announced that TransMedics' CFO, Defendant Gordon, would be replaced effective immediately. *Id*.

The Company's reduction of its 2024 revenue guidance and the termination of its CFO partially disclosed to the market that TransMedics' unsustainable business practices were no longer able to generate the financial results that TransMedics had achieved in prior reporting periods and/or represented a partial materialization of the undisclosed risks occasioned by TransMedics' unsustainable business practices, as detailed herein. *Collins* ¶ 73.

As the market reacted this news, the price of TransMedics stock declined $13.70 per share, or nearly 16%, from $85.14 on December 2, 2024, to close at on December 3, 2024 $71.44. *Collins* ¶ 74.

On January 10, 2025, Scorpion Capital issued a 300+ slide report about TransMedics (the "Report"). ¶ 48. The Report was based on a "6-month investigation with over 30 interviews, including ex-employees, surgeons, leading transplant centers, organ procurement organizations, competitors, and its largest customers." *Id*.

The Report accused TransMedics of, among other things, overbilling hospitals that use its services, effectively forcing customers to use certain services, and providing to patients organs that had been rejected by reputable physicians, by way of physicians who were paid by TransMedics. ¶ 49. The Report also verified the substance of Rep. Gosar's claims. *Id*.

In response to these disclosures, the price of TransMedics stock fell 5.15%, or $3.74 per share, to close on January 10, 2025 at $68.81. ¶ 73. On January 13, 2025, the Company stock dropped a further $4.76 per share, or 6.9%, to close at $64.05. *Id*.

## ARGUMENT

### A.    Consolidation of the Actions is Appropriate

Rule 42(a) of the Federal Rules of Civil Procedure provides, in relevant part, that:

If actions before the court involve a common question of law or fact, the court may:

  1) join for hearing or trial any or all matters at issue in the actions;
  2) consolidate the actions; or
  3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42 (a). Consolidation pursuant to Fed. R. Civ. P. 42(a) is proper where, as here, the Actions involve common questions of law and fact and consolidation would avoid unnecessary delay. *See Gilliam v. Fidelity Mgmt. & Research Co.*, 2005 U.S. Dist. LEXIS 10478, at *4 (D. Mass. May 3, 2005) (citing *Seguro v. Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*, 878 F.2d 5, 8 (1st Cir. 1989)).

While consolidation falls within this Court's discretion, consolidation here will not only conserve judicial resources, it will also benefit all parties in the various Actions. Courts have

6

recognized that class action shareholder suits like the related Actions here are particularly suited to consolidation pursuant to Fed. R. Civ. P. 42 because their consolidation expedites pretrial proceedings, reduces case duplication, avoids the harassment of parties and witnesses from inquiries in multiple proceedings and minimizes the expenditure of time and money by all persons concerned. *See Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973); *see also Howard Gunty Profit Sharing Plan v. CareMatrix Corp.,* 354 F. Supp. 2d 18, 22 (D. Mass. 2000) (consolidation appropriate where "[t]he Complaints [] involve common questions of law or fact.); *Lowinger v. Global Cash Access Holdings, Inc.*, 2008 U.S. Dist. LEXIS 49169, at *2-6 (S.D.N.Y. June 26, 2008) ("consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports."). Consolidating shareholder class actions like the related Actions not only simplifies pretrial discovery motions, class action issues and clerical and administrative duties, but also reduces the confusion that may result from prosecuting related class actions separately. *Id*.

Moreover, consolidating the related Actions also "would serve the purpose of avoiding needless duplication of time, effort and expense on the time, effort and expense on the part of the parties and the court in the conduct of pretrial discovery proceedings and of the trial itself." *Fields v. Wolfson*, 41 F.R.D. 329, 330 (S.D.N.Y. 1967). It would also enable the proceedings to be expedited and make for economy and convenience generally in the administration of the litigation. In fact, "serious prejudice could result to the parties from a failure to consolidate." *Id*.

Here, there is no doubt that common questions of fact and law exist between the related Actions. The Actions are class actions brought pursuant to the Exchange Act on behalf of the public shareholders of TransMedics that seek to recover losses sustained as a result of Defendants' alleged materially false and misleading statements. Therefore, common issues of fact and law predominate and the requirements for consolidation pursuant to Fed. R. Civ. P. 42(a) are satisfied.

7

### B.    Appointing Movant as Lead Plaintiff Is Appropriate

### 1.  <u>The Procedure Required By the PSLRA</u>

The PSLRA has established a procedure governing the appointment of a lead plaintiff "in each private action arising under . . . [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1), (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within twenty days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4 (a)(3)(A)(i). Here, the Notice was published on *Business Wire* on February 14, 2025.[4] Hopkins Decl. at Ex. C. Within sixty days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4 (a)(3)(A)-(B).

*Second*, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[4] The statute requires that notice be published "in a widely circulated business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

15 U.S.C. § 78u-4 (a)(3)(B)(iii). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As discussed below, Movant has complied with the procedural prerequisites of the PSLRA, and has what is, to the best of his knowledge, the largest financial interest in the litigation of any other class member(s) seeking appointment as Lead Plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Actions.

### 2. Movant Satisfies the Lead Plaintiff Requirements of the PSLRA

Movant timely moved this Court to be appointed Lead Plaintiff on behalf of all members of the Class. Movant submitted a signed certification stating that he reviewed the Complaint and is willing to serve as a representative on behalf of the putative Class, pursuant to 15 U.S.C. § 78u-4(a)(2). *See* Hopkins Decl. at Ex. A. In addition, Movant has selected and retained experienced and competent counsel to represent them and the putative Class. *See* Hopkins Decl. Ex. E (Firm Résumé of Levi & Korsinsky).

Accordingly, Movant satisfies the requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have his application for appointment as Lead Plaintiff and selection of Counsel, as set forth herein, considered and approved by the Court.

### a. Movant Has the Largest Financial Interest in the Relief Sought by the Class

The Court is to presume that the most adequate plaintiff is the movant with "the largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). *See also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp.

9

2d 39, 43 (D. Mass. 2001) (courts should presume that "the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff") (quoting H.R. Conf. Rep. No. 104-369, at 33-34 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731)).

Under the PSLRA, damages are calculated based on: (i) the difference between the purchase price paid for the units and the average trading price of the units during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the units and the average trading price of the units between the date when the misstatement was corrected and the date on which the plaintiff sold its units, if it sold its units before the end of the 90-day period. 15 U.S.C. § 78u-4(c).

As evidenced by the accompanying Loss Chart, (Hopkins Decl. at B), Movant suffered an approximate loss of $45,369.70 when excluding losses not incurred pursuant to the drops alleged in the Complaint. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). Movant has a significant financial interest in this case and is unaware of any other applicant for lead plaintiff that has sustained greater financial losses in connection with transactions in TransMedics securities during the Class Period. Therefore, Movant has the "largest financial interest in the relief sought by the class," satisfying the first PSLRA prerequisite for appointment as lead plaintiff and, as further demonstrated *infra*, should be appointed as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). *Lernout*, 138 F. Supp. 2d at 43; *Greebel*, 939 F. Supp. at 59 ("the statute erects a rebuttable presumption that the most capable plaintiff is the person with the largest financial interest in the relief sought by the class, [who] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure") (internal quotation omitted).

### b.  Movant Otherwise Satisfies Rule 23

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisf[y] the requirements

10

of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See City of Bristol Pension Fund v. Vertex Pharms.*, 2012 U.S. Dist. LEXIS 180974, at *10 (D. Mass. Dec. 21, 2012) ("In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. These findings need only be preliminary.") (citing *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009)).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

### i.   Movant Satisfies the Typicality Requirement

Typicality under Rule 23(a)(3) requires that the lead plaintiff's claim be aligned with the claims of absent class members and is demonstrated by a showing that the movant's claims are based on the same legal theories as the claims of the putative class. *Lernout*, 138 F. Supp. 2d at 46 ("The plaintiffs' burden in proving typicality requires that the named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class.") (citing *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)). To meet this burden, Movant need not show that his claims are identical to absent class members' claims. *Id.* ("Typicality does not require that there be no factual differences between the class representatives

and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.") (citing *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988)). It is enough if their situation shares common issues of law or fact. *See Lernout*, 138 F. Supp. 2d at 45.[5]

Movant satisfies the typicality requirement of Rule 23 because, just like all other class members, Movant: (1) transacted in TransMedics securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. Thus, Movant's claims are typical, if not identical, to those of other members of the proposed class since all the claims arise out of the same course of events and are based on the same legal and remedial theories. Additionally, Movant is not subject to any unique defenses, and there is no evidence of any conflicts between Movant and the other members of the Class.

Movant therefore satisfies the required *prima facie* showing of the typicality requirements of Rule 23 for purposes of this Motion.

### ii.    Movant Fulfills the Adequacy Requirement

Movant is also an adequate representative for the Class. A representative party is adequate under Rule 23(a)(4) if: (1) the party's counsel is qualified, experienced and generally able to conduct the proposed litigation and (2) the party does not have interests antagonistic to those of the class. *Tehrani v. Biogen, Inc.*, 2015 U.S. Dist. LEXIS 156001, at *9 (D. Mass. Nov. 18, 2015) ("Plaintiff also, as a preliminary matter, appears capable of adequately protecting the interests of the class, in that plaintiff possesses common interests and an absence of conflict with the class members and plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation.") (internal quotations omitted).

---

[5] Although not relevant to the instant motion, a finding of typicality frequently supports a finding of commonality. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158, n. 13 (1982) (noting that the typicality and commonality requirements tend to merge).

Movant will more than adequately represent the interests of the putative Class. Not only is there no evidence of conflict between the interests of Movant and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he suffered as a result of the wrongful conduct alleged in the Actions. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action."). Indeed, Movant has already taken significant steps demonstrating that he recognizes, and will protect, the interests of the Class including: (1) executing a certification detailing his Class Period transactions and expressing willingness to serve as Class representative; (2) moving this Court to be appointed Lead Plaintiff and (3) retaining competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner. Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead these Actions.

Moreover, Movant considers himself to be sophisticated investor with 30 years of investing experience. Movant resides in Brisbane, Australia. He is currently retired but previously was employed as a welder/boiler maker. *See* Hopkins Decl., Ex. D, Movant's Declaration in support of his motion. Accordingly, Movant meets the adequacy requirement of Rule 23.

**C.      Approving Movant's Choice of Counsel Is Appropriate**

13

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected Levi & Korsinsky as Lead Counsel.

As set forth in the accompanying firm résumé (Hopkins Decl. Ex. E), Levi & Korsinsky is a highly accomplished firm that is currently acting as lead counsel in a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors. As lead counsel in *In re U.S. Steel Securities Litigation,* No. 2:17-579-CB (W.D. Pa.), Levi & Korsinsky secured a $40 million recovery on behalf of investors in the securities of U.S. Steel. The firm also secured a $79 million recovery on behalf of E-Trade investors in *In re E-Trade Financial Corp*. Securities Litigation, No. 07-cv-8538 (S.D.N.Y.). Levi & Korsinsky also has trial experience relating to *In re Tesla Inc. Securities Litigation,* No. 3:18-cv-4865 (N.D. Cal.), representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018. *Id*. In the last year alone, Levi & Korsinsky has been appointed lead or co-lead counsel in a number of actions in this Circuit and across the Country including *Thant v. Rain Oncology Inc. et al.*, 5:23-cv-03518 (N.D. Cal. Nov. 1, 2023); *Jaramillo v. Dish Network Corporation, et al.*, No. 1:23-cv-00734 (D. Colo. Aug. 16, 2023); *Villanueva v. Proterra Inc. et al.,* No. 5:23-cv-03519 (N.D. Cal. Oct. 23, 2023); *Martin v. BioXcel Therapeutics, Inc. et al.,* No. 3:23-cv-00915 (D. Conn. Oct. 4, 2023); *Rensin, Trustee of the Rensin Joint Trust v. United States Cellular Corporation, et al.*, No. 1:23-cv-02764 (N.D. Ill. July 11, 2023); *Petersen v. Stem, Inc. et al.,* No. 3-23-cv-02329 (N.D. Cal. Aug 22, 2023); *Solomon v. Peloton Interactive, Inc. et al.,* No. 1:23-cv-04279 (E.D.N.Y. Sept 7, 2023); *Gurevitch v. KeyCorp, et al.*, No. 1:23-cv-01520 (N.D. Ohio Dec. 26, 2023); *Thant v. Veru, Inc. et al.,* No. 1:22-cv-23960 (S.D. Fla. July 27, 2023). Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

14

**CONCLUSION**

For all the foregoing reasons, Movant respectfully requests that the Court consolidate the Actions, appoint Movant as Lead Plaintiff, and approve Movant's selection of Levi & Korsinsky as Lead Counsel.

Dated: April 15, 2025                    Respectfully submitted,

                                         */s/ Shannon L. Hopkins*
                                         Shannon L. Hopkins (BBO# 657485)
                                         **LEVI & KORSINSKY, LLP**
                                         1111 Summer Street, Suite 403
                                         Stamford, Connecticut 06905
                                         Tel. (203) 992-4523
                                         Fax: (212) 363-7500
                                         E-mail: shopkins@zlk.com

                                         **LEVI & KORSINSKY, LLP**
                                         Adam M. Apton
                                         33 Whitehall Street, 17th Floor
                                         New York, NY 10004
                                         Tel: (212) 363-7500
                                         Fax: (212) 363-7171
                                         Email: aapton@zlk.com

                                         *Counsel for Andrew Mac Donald and Proposed*
                                         *Lead Counsel for the Class*

15

## <u>CERTIFICATE OF SERVICE</u>

I, Shannon L. Hopkins, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 15, 2025.

Dated: April 15, 2025                        */s/ Shannon L. Hopkins*
                                             Shannon L. Hopkins