**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MERLY JEWIK, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br>　　　v. <br><br> TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON, <br><br> Defendants. | Case No. 1:25-cv-10385-LTS <br><br> Hon. Leo T. Sorokin <br><br> <u>CLASS ACTION</u> <br><br> **ORAL ARGUMENT REQUESTED** |
| PATRICK COLLINS, on Behalf Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br>　　　v. <br><br> TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON, <br><br> Defendants. | Case No. 1:25-cv-10778-LTS <br><br> Hon. Leo T. Sorokin <br><br> <u>CLASS ACTION</u> <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE TRANSMEDICS INVESTORS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, <u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................................................... 1

II.     FACTUAL BACKGROUND..................................................................................... 3

III.    ARGUMENT............................................................................................................. 6

        A.      The Related Actions Should Be Consolidated............................................6

        B.      The TransMedics Investors Should Be Appointed Lead Plaintiff...........6

                1.      The PSLRA Standard for Appointing Lead Plaintiff..................6

                2.      The TransMedics Investors Are the "Most Adequate Plaintiff"..................7

                        a.      The TransMedics Investors Have Satisfied the PSLRA's
                                Procedural Requirements...................................................8

                        b.      The TransMedics Investors Have the Largest Financial
                                Interest in the Relief Sought by the Class.........................8

                        c.      The TransMedics Investors Satisfy Rule 23's Typicality
                                and Adequacy Requirements .............................................9

                                i.      The TransMedics Investors' Claims Are Typical of
                                        Those of the Class..................................................9

                                ii.     The TransMedics Investors Will Fairly and
                                        Adequately Protect the Interests of the Class ....................10

                        d.      The TransMedics Investors Are Ideal Plaintiffs to
                                Represent the Class.........................................................11

        C.      The Court Should Approve the TransMedics Investors' Selection of Lead
                Counsel ........................................................................................................13

IV.     CONCLUSION........................................................................................................ 16

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Ark. Tchr. Ret. Sys. v. Insulet Corp.*,
  177 F. Supp. 3d 618 (D. Mass. Mar. 31, 2016) .................................................................. 10, 11

*Bloom v. Anderson (FirstEnergy Corp. Deriv. Litig.)*,
  No. 20-cv-4534, 2020 WL 6710429 (S.D. Ohio Nov. 16, 2020) ............................................ 16

*City of Ft. Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems, Inc.*,
  No. 22-cv-11220, 2022 WL 20413498 (D. Mass. Aug. 9, 2022) .............................................. 7

*Hackel v. AVEO Pharm., Inc.*,
  No. 19-cv-10783, 2019 WL 1992556 (D. Mass. May 6, 2019)............................................ 9, 10

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................................. 13, 14

*In re Gildan Activewear Inc. Sec. Litig.*,
  No. 08-cv-5048, 2010 WL 11746218 (S.D.N.Y. Sept. 20, 2010) ........................................... 16

*Metzler Asset Mgmt. GmbH v. Kingsley*,
  No. 16-cv-12101, 2017 WL 438731 (D. Mass. Feb. 1, 2017) ......................................... 8, 9, 10

*Tate v. Aterian, Inc.*,
  No. 21-cv-4323, 2021 WL 3538144 (S.D.N.Y. Aug. 10, 2021)................................................. 6

**Statutes**

15 U.S.C. § 78j(b) ...................................................................................................................... 3
15 U.S.C. § 78t(a) ....................................................................................................................... 3
15 U.S.C. § 78u-4(a) ........................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

**Regulations**

17 C.F.R. § 240.10b-5.................................................................................................................. 3

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
  *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)........................................................................... 11

Proposed Lead Plaintiff the Peace Officers' Annuity and Benefit Fund of Georgia ("Georgia Peace Officers") and Oguzhan Altun ("Mr. Altun," and together with Georgia Peace Officers, the "TransMedics Investors") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of their motion for an order: (1) consolidating the above-captioned Related Actions[1] pursuant to Rule 42 of the Federal Rules of Civil Procedure ("Rule 42"); (2) appointing the TransMedics Investors as Lead Plaintiff for a class (the "Class") of all persons and entities who purchased or otherwise acquired the publicly traded securities of TransMedics Group, Inc. ("TransMedics" or the "Company") between February 28, 2023 and January 10, 2025, inclusive (the "Class Period");[2] (3) approving their selection of Saxena White P.A. ("Saxena White") and Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the Class; and (4) granting any such other and further relief as the Court may deem just and proper.

## I.    PRELIMINARY STATEMENT

The TransMedics Investors respectfully submit that they should be appointed Lead Plaintiff on behalf of the Class. The TransMedics Investors satisfy all of the prerequisites for lead plaintiff appointment. As set forth in detail below, the TransMedics Investors incurred a loss of $578,637, as calculated under the prevailing last-in-first-out ("LIFO") loss calculation method, on their

---

[1] The Related Actions are *Jewik v. TransMedics Group, Inc.*, No. 25-cv-10385 (D. Mass. filed Feb. 14, 2025) (the "*Jewik* Action") and *Collins v. TransMedics Group, Inc.*, No. 25-cv-10778 (D. Mass. filed Apr. 2, 2025) (the "*Collins* Action"). All emphases are added, and all citations are omitted herein unless otherwise indicated.

[2] Both the *Jewik* and *Collins* Actions allege the same Class Period.

purchases of TransMedics securities.[3]  Accordingly, the TransMedics Investors have a powerful economic interest in directing the litigation and recovering the losses they have suffered—an interest believed to be greater than that of any competing movant.

The TransMedics Investors also meet the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of those of absent class members and they will fairly and adequately represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The TransMedics Investors are familiar with the obligations and responsibilities of the Lead Plaintiff, are not subject to any unique defenses, and have the incentive and ability to effectively supervise the prosecution of the Action in the best interests of the Class.  Moreover, appointing the TransMedics Investors—which includes Georgia Peace Officers, a public pension fund—as Lead Plaintiff would satisfy the PSLRA's aim of having the plaintiff class represented by an institutional investor with a significant stake in the outcome of this litigation.  In short, the TransMedics Investors are the "most adequate plaintiff" and should be appointed Lead Plaintiff.

The TransMedics Investors also respectfully request that the Court approve their selection of Lead Counsel.  The TransMedics Investors' choice for Lead Counsel, Saxena White and Scott+Scott, are leading national law firms specializing in representing sophisticated institutional and individual investors in securities and shareholder litigation, with substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this Circuit and throughout the nation.

---

[3] The TransMedics Investors' transactions in TransMedics securities during the Class Period are set forth in the certifications attached as Exhibit A to the Declaration of Joseph E. White, III in Support of the TransMedics Investors' Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("White Decl."), filed concurrently herewith. A chart setting forth the TransMedics Investors' losses is attached as Exhibit B to the White Decl.

Accordingly, the TransMedics Investors respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## II.    FACTUAL BACKGROUND

The Related Actions pending before this Court are securities class actions brought against (1) TransMedics,[4] (2) Waleed Hassanein, M.D. ("Hassanein"), the Company's Chief Executive Officer ("CEO"), Founder, and President, and (3) Stephen Gordon ("Gordon"), the Company's Chief Financial Officer ("CFO") (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

TransMedics is a medical technology company that provides organ transplant-related services. The Company's primary medical device is the Organ Care System ("OCS"). OCS is purportedly a portable system that extends the duration and viability of donor organs, making the transportation of such organs and organ transplants more feasible. Additionally, TransMedics operates its National OCS Program ("NOP"), an outsourced end-to-end service comprised of its own private jets, organ procurement surgeons, and device technicians, allowing the transportation of organs via ground and air.

Throughout the Class Period, Defendants repeatedly touted TransMedics' growing revenue based on the Company's OCS and NOP services. Unbeknownst to investors, TransMedics' revenue growth was a result of unsustainable, illegal, and coercive business practices. Specifically, the Related Actions allege Defendants failed to disclose that: (1) TransMedics used illegal,

---

[4] TransMedics is headquartered in Andover, Massachusetts. The Company's common stock trades on The Nasdaq Global Market under the ticker symbol "TMDX."

3

anticompetitive, and coercive business practices, such as kickbacks, billing fraud, and overcharging patients, which caused customers to stop using TransMedics' services and made it difficult for TransMedics to gain new customers; (2) TransMedics' NOP program relied on unsafe, unsustainable, and dangerous practices, which caused customers to stop using TransMedics' services and made it difficult for TransMedics to gain new customers; (3) the foregoing subjected TransMedics to heightened risk of scrutiny and regulatory risk; and (4) as a result, Defendants' statements about its business operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

The truth began to emerge during market hours on February 22, 2024, when *The Daily Caller* reported that U.S. Representative Paul Gosar issued a letter accusing TransMedics of implementing coercive business practices that increased the price of the Company's services. Specifically, the letter explained that after OCS received regulatory approval, the cost of TransMedics' one-time disposable cassette used to encapsulate the organ during transportation and perfusion increased from $7,000 to $60,000 per disposable cassette. Among other things, the letter also explained that to use TransMedics' OCS, the Company requires transplant centers to request TransMedics personnel, which costs approximately $20,000 per request. On this news, TransMedics stock fell $2.18 per share, or 2.5%, to close at $84.81 per share on February 22, 2024. The next day, TransMedics stock fell a further $1.67 per share, or 1.96%, to close at $83.14 per share on February 23, 2024.

On October 28, 2024, after markets closed, TransMedics announced its financial results for the third quarter of 2024, disclosing that total revenue was down 5% compared to the last quarter and gross margins declined 5% from the third quarter of 2023. TransMedics attributed these poor results to, among other things, "U.S. transplant volume headwinds," expenses related

4

to "aviation maintenance," and a "higher reliance on third-party logistics partners."  On this news, TransMedics stock fell $37.74 per share, or nearly 30%, to close at $88.50 per share on October 29, 2024.

Then, after markets closed on December 2, 2024, TransMedics issued a press release announcing that the Company was reducing its revenue guidance for full-year 2024 from between $425 million and $445 million to between $428 million and $432 million.  The press release also disclosed the immediate replacement of its CFO, Defendant Stephen Gordon.  On this news, TransMedics stock fell $13.70 per share, or nearly 16%, to close at $71.44 per share on December 3, 2024.

The truth was fully revealed on January 10, 2025, when Scorpion Capital issued a report on TransMedics.  The report asserted that TransMedics' business practices are "the most extreme and grotesque healthcare fraud we have encountered."  Among other things, Scorpion Capital detailed how TransMedics' growth is dependent on a "handful of dubious physicians and centers" that receive kickbacks.  Moreover, Scorpion Capital accused TransMedics of providing patients with "diseased, damaged organ[s] rejected by reputable surgeons and centers."  On this news, TransMedics stock fell $3.74 per share, or 5.15%, to close at $68.81 per share on January 10, 2025. On January 13, 2025, TransMedics stock fell a further $4.76 per share, or 6.9%, to close at $64.05 per share.

TransMedics' material misrepresentations and omissions, and the revelations thereof, thus caused the TransMedics Investors and the Class to incur substantial damages.

5

III.    **ARGUMENT**

A.    **The Related Actions Should Be Consolidated**

Two Related Actions are pending before the Court.   The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Rule 42(a) specifies that consolidation is appropriate when actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a); *see also Tate v. Aterian, Inc.*, No. 21-cv-4323, 2021 WL 3538144, at *4 (S.D.N.Y. Aug. 10, 2021).

Here, the Related Actions are well-suited for consolidation.  Both allege a substantially similar, unlawful, and/or fraudulent scheme relating to similar parties, transactions, and events during overlapping time frames, and allege that Defendants made materially false and misleading statements and omissions concerning TransMedics' business and prospects.  In addition, because the Related Actions are based on similar facts and involve the same subject matter, the same discovery will be relevant to both actions.  *See id*. (consolidating two related securities class actions as the actions "involve the same or substantially similar underlying conduct, claims, and parties").

Accordingly, consolidation is appropriate under Rule 42(a) and the PSLRA.   The TransMedics Investors respectfully submit that the Related Actions should be consolidated.

B.    **The TransMedics Investors Should Be Appointed Lead Plaintiff**

1.    **The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(I); *see also* 15 U.S.C.

6

§ 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purposed plaintiff class—
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    That, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or filed a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also City of Ft. Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems, Inc.*, No. 22-cv-11220, 2022 WL 20413498, at *2 (D. Mass. Aug. 9, 2022) (discussing the requirements of the "most adequate plaintiff").  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Pegasystems, Inc.*, 2022 WL 20413498, at *2.

### 2.    The TransMedics Investors Are the "Most Adequate Plaintiff"

The TransMedics Investors respectfully submit that they are presumptively the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements,

7

possess the largest financial interest of any qualified movant, and satisfy Rule 23's typicality and adequacy requirements.

### a. The TransMedics Investors Have Satisfied the PSLRA's Procedural Requirements

The TransMedics Investors filed this Motion to serve as Lead Plaintiff in a timely manner. On February 14, 2025, notice regarding the pending nature of this case was published on *BusinessWire*, a widely circulated, national, business-oriented news reporting wire service. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); Notice, White Decl., Ex. D. Thus, pursuant to the PSLRA, any member of the proposed Class may apply to be appointed Lead Plaintiff within sixty days after publication of the notice, *i.e.*, on or before April 15, 2025. Accordingly, the TransMedics Investors filed this motion within the required time frame.

### b. The TransMedics Investors Have the Largest Financial Interest in the Relief Sought by the Class

The TransMedics Investors should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" so long as that movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Metzler Asset Mgmt. GmbH v. Kingsley*, No. 16-cv-12101, 2017 WL 438731, at \*3 (D. Mass. Feb. 1, 2017) (finding movant group with the largest financial loss had the largest financial interest in the litigation).

The TransMedics Investors sustained a loss of approximately $578,637 on a LIFO basis on their transactions in TransMedics securities. *See* White Decl., Exs. A, B. The TransMedics Investors are unaware of any other movant seeking appointment as Lead Plaintiff that has a larger financial interest in the outcome of the action and satisfies the typicality and adequacy

8

requirements of Rule 23. Accordingly, the TransMedics Investors have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and, because they satisfy the applicable requirements of Rule 23, as discussed below, they are the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

> **c.    The TransMedics Investors Satisfy Rule 23's Typicality and Adequacy Requirements**

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). As to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at this stage of the litigation, a presumptive lead plaintiff "need only make a *prima facie* showing of typicality and adequacy." *Hackel v. AVEO Pharm., Inc.*, No. 19-cv-10783, 2019 WL 1992556, at *2 (D. Mass. May 6, 2019) (internal quotation marks and citations omitted).

> **i.    The TransMedics Investors' Claims Are Typical of Those of the Class**

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied where the lead plaintiff's claims "arise from the same course of events[] and involve the same legal theory as to the claims of the rest of the class." *Kingsley*, 2017 WL 438731, at *4 (alteration in original and internal citation omitted).

The typicality requirement is satisfied here because the TransMedics Investors, which are not subject to any unique or special defenses, seek the same relief and advance the same legal

theories as other Class members.  Like all members of the Class, the TransMedics Investors: (1) purchased TransMedics securities during the Class Period; (2) at prices that were allegedly inflated due to Defendants' materially false or misleading statements or omissions; and (3) were damaged thereby when the truth was revealed.  *See AVEO Pharm.*, 2019 WL 1992556, at *2 (discussing the typicality requirement).  As such, the TransMedics Investors' claims are typical of the Class's claims and satisfy Rule 23(a)(3)'s typicality requirement.

### ii.    The TransMedics Investors Will Fairly and Adequately Protect the Interests of the Class

Pursuant to Rule 23(a)(4), a representative party must demonstrate that it "will fairly and adequately protect the interests of the Class."  Fed. R. Civ. P. 23(a)(4).  For the Class's interests to be fairly and adequately protected, the presumptive lead plaintiff must "possess[] common interests and an absence of conflict with the class members and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation."  *Kingsley*, 2017 WL 438731, at *4 (alteration in the original and internal citation and quotations omitted).

The TransMedics Investors will fairly and adequately represent the interests of the class, given their substantial financial stake in the litigation and their interest in vigorously pursuing claims against Defendants, which aligns with the interests of other Class members that were similarly harmed as a result of Defendants' false and/or misleading statements.  There is no potential conflict between the interests of the TransMedics Investors and other members of the Class, and the TransMedics Investors are fully committed to vigorously pursuing the claims on behalf of the Class.  *See Ark. Tchr. Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 622 (D. Mass. Mar. 31, 2016) (finding the adequacy requirement satisfied where the presumptive lead plaintiff had "the ability and incentive to represent the claims of the class vigorously" and "retained experienced counsel," and its "claims do not conflict with those asserted on behalf of the class").

As set forth below, the TransMedics Investors have provided information about their backgrounds and affirmed their commitment to fulfilling the fiduciary role of Lead Plaintiff should they be appointed. *See infra* Section 2.d.

The TransMedics Investors have further demonstrated their adequacy through their selection of Saxena White and Scott+Scott as proposed Lead Counsel for the Class. As discussed below, Saxena White and Scott+Scott are highly qualified and experienced in securities class action litigation and have repeatedly demonstrated their ability to effectively prosecute complex securities class actions and other shareholder litigation. *See infra* Section C. Indeed, Scott+Scott researched and filed the *Collins* Action, alleging additional significant disclosures of TransMedics' fraud not alleged in the *Jewik* Action. Accordingly, the TransMedics Investors satisfy the adequacy requirement.

### d.    The TransMedics Investors Are Ideal Plaintiffs to Represent the Class

The TransMedics Investors—which include Georgia Peace Officers, a public pension fund—also satisfy the PSLRA's goal of encouraging institutional investors to "take the reins" in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 755 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representations in securities class actions"); *see also Insulet Corp.*, 177 F. Supp. 3d at 622 (noting that a group who moved for lead plaintiff had members that are "the type of institutional investors the PSLRA encourages be appointed lead plaintiff").

Georgia Peace Officers, which has more than $920 million in assets under management, has significant resources and a substantial financial interest in this litigation. Thus, Georgia Peace Officers has the ability, resources, and incentive to vigorously represent the claims of the Class

and supervise Class counsel.  Georgia Peace Officers has successfully served as co-lead plaintiff in prior securities class actions, with Saxena White serving as lead counsel. *See Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-304 (D. Colo.) (achieving a $135 million recovery).

The TransMedics Investors also understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action, and have pledged to "provid[e] testimony at deposition and trial, if necessary." White Decl., Ex. A.  In their Joint Declaration, the TransMedics Investors detail their backgrounds and their relevant experience in selecting and overseeing counsel in securities class actions.  White Decl., Ex. C ¶¶ 2-4.  The Joint Declaration also explains how and why the TransMedics Investors decided to collaborate in this litigation. Specifically, before seeking Lead Plaintiff appointment, the TransMedics Investors considered the merits of the claims against Defendants, their losses caused by Defendants' wrongdoing, and their proposed litigation strategy. *See id*. ¶ 8.  In addition to these considerations, the TransMedics Investors each independently expressed an interest in seeking to cooperate with like-minded, sophisticated investors in seeking appointment as Lead Plaintiff.  *See id*. ¶ 6-7.

Recognizing the TransMedics Investors—which include an institutional investor and a sophisticated individual investor—are well-suited for this litigation because a cohesive group informed by diverse perspectives has a positive effect on the quality of the representation, the TransMedics Investors determined to join together to seek appointment as Lead Plaintiff. *See id*. ¶¶ 6-9.  Based on the TransMedics Investors' understanding that working together would allow for the sharing of resources and experiences, they believe that partnering would add substantial value to the prosecution of this Action and would benefit the Class.  *See id*. ¶¶ 6-7, 13.

As set forth in their Joint Declaration, the TransMedics Investors have demonstrated their commitment to working cohesively in the prosecution of this Action. *See id*. ¶¶ 9-12. The Joint Declaration also details the steps that the TransMedics Investors have already taken (and will continue to take) to ensure the vigorous prosecution of this Action and to oversee counsel. *See id*. ¶¶ 8-11. Specifically, before seeking appointment as Lead Plaintiff, representatives of Georgia Peace Officers and Mr. Altun convened and participated in a conference call and discussed together, among other things, the strengths of the claims against Defendants and their ability and incentive to vigorously represent the claims of the Class. *See id*. ¶¶ 10-11. The TransMedics Investors understand the duties of a Lead Plaintiff pursuant to the PSLRA, including, among other things, the lead plaintiff process and the TransMedics Investors' common goals and strategy for the joint prosecution of this litigation. *See id*. ¶¶ 4-9. The collaboration of the TransMedics Investors in this litigation follows their shared goals and interests in protecting and maximizing the assets of the TransMedics Investors and the Class and ensuring the transparency of statements by public companies in connection with corporate events. *See id*. ¶¶ 5-8.

In sum, the TransMedics Investors have demonstrated their willingness, resources, and commitment to working closely with one another to supervise proposed counsel for the Class and obtain the best possible recovery for the Class. Thus, the Class would benefit from the TransMedics Investors' leadership of this litigation.

**C.    The Court Should Approve the TransMedics Investors' Selection of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262, 274 (3d Cir. 2001). The TransMedics Investors respectfully submit that their

selection of Saxena White and Scott+Scott as Lead Counsel should be approved. *See* Firm Resumes, White Decl., Exs. E and F.

Saxena White has achieved substantial recoveries on behalf of investor classes when serving as lead counsel in securities class actions in this District and throughout the country. Saxena White's track record in securities litigation includes: the $30 million recovery in *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321 (D. Mass.); the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-990 (D. Del.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.); the $65 million recovery in *In re Apache Corp. Securities Litigation*, No. 21-cv-575 (S.D. Tex.); the $63 million recovery in *Plymouth County Retirement System v. Patterson Cos. Inc.*, No. 18-cv-871 (D. Minn.); the $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 21-cv-0953 (N.D. Cal.) (pending final approval); the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 17-cv-2587 (N.D. Ga.); the $35 million recovery in *City of Hollywood Police Officers' Retirement System v. Henry Schein, Inc.*, No. 19-cv-5530 (E.D.N.Y.); the $31.9 million recovery in *In re Perrigo Company plc Securities Litigation*, No. 19-cv-70 (S.D.N.Y.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 21-cv-444 (E.D. Va.); the $28.5 million recovery in *In re FibroGen, Inc. Securities Litigation*, No. 21-cv-2623 (N.D. Cal.); the $28 million recovery in *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-cv-2400 (S.D.N.Y.); the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 20-cv-856 (N.D. Ala.); the $15.5 million recovery in *City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Credit Suisse Group AG*, No.

14

17-cv-10014 (S.D.N.Y.); and the $11 million recovery in *Keippel v. Health Ins. Innovations, Inc.*, 19-cv-421 (M.D. Fla.).

Moreover, Saxena White achieved a $240 million settlement and significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement ever. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-5541 (N.D. Cal.).

Scott+Scott has served as lead or co-lead counsel in many high-profile class actions and recovered hundreds of millions of dollars for victims of corporate fraud, including: *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.*, HUD-L-003492-1 (Hudson Cnty. N.J. Super. Ct. NJ) ($102.5 million); *Weston v. RCS Cap. Corp.*, No. 14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 12-cv-2865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys., Inc.*, No. 02-cv-109 (S.D.N.Y.) ($75 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-1549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *In re SanDisk LLC Sec. Litig.*, No. 15-cv-1455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 00-cv-1844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 01-cv-219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 03-cv-4049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 02-cv-2133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 09-cv-37 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 14-cv-548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 20-cv-6936 (N.D. Cal.) ($13 million).

15

By approving the TransMedics Investors' choice of Lead Counsel, this Court will also advance the important goal of increasing diversity among class counsel. *See In re Gildan Activewear Inc. Sec. Litig.*, No. 08-cv-5048, 2010 WL 11746218, at *1 (S.D.N.Y. Sept. 20, 2010) (noting that because the "proposed class includes thousands of participants, both male and female, arguably from diverse backgrounds, . . . it is therefore important to all concerned that there is evidence of diversity, in terms of race and gender, in the class counsel I appoint"). As a federally certified woman- and minority-owned firm specializing in representing institutional investors as plaintiffs in securities litigation, Saxena White is committed to diversity. For example, Saxena White was selected by the Chief Judge of the Southern District of Ohio as Co-Lead Counsel in an important shareholder derivative action involving a corruption and bribery scheme, not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Deriv. Litig.)*, No. 20-cv-4534, 2020 WL 6710429, at *8-9 (S.D. Ohio Nov. 16, 2020).

Thus, the Court may be assured by granting this Motion that the Class will receive the highest caliber of representation.

## IV.    CONCLUSION

For the foregoing reasons, the TransMedics Investors respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint the TransMedics Investors to serve as Lead Plaintiff for the Class; (3) approve the TransMedics Investors' selection of Saxena White and Scott+Scott to serve as Lead Counsel for the Class; and (4) grant any such other and further relief as the Court may deem just and proper.

Dated: April 15, 2025                                          Respectfully submitted,

16

**SAXENA WHITE P.A.**

By: */s/ Joseph E. White, III*
Joseph E. White, III (BBO# 648498)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
jwhite@saxenawhite.com

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice*
forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
mduenas@saxenawhite.com

**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
Amanda Lawrence (BBO# 568737)
156 S. Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 531-2645
Fax: (860) 537-4432
alawrence@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
Thomas L. Laughlin, IV (*pro hac vice*
forthcoming)
Jonathan M. Zimmerman (*pro hac vice*
forthcoming)
Nicholas S. Bruno (*pro hac vice*
forthcoming)
230 Park Ave, 24th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com
nbruno@scott-scott.com

*Counsel for the TransMedics Investors, and
Proposed Lead Counsel for the Class*

17

**THE SCHALL LAW FIRM**
Brian J. Schall (*pro hac vice* forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel.: (310) 301-3335
Fax: (310) 388-0192
brian@schallfirm.com

*Additional Counsel for Oguzhan Altun*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 15, 2025.

*/s/ Joseph E. White, III*
Joseph E. White, III

19