EXHIBIT C

Filing # 168985079 E-Filed 03/17/2023 02:32:05 PM



407.423.990(
Fax 407.841.2775
Toll Free 855-MYDEPOS

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY



IN THE CIRCUIT COURT OFTHE NINTH JUDICIAL CIRCUIT, IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2016-CA-006354-O CONSOLIDATED WITH

CASE NO.: 2016-CA-006826-O AND

CASE NO.: 2017-CA-003897-O

MARC BARHONOVICH; REGGIE BERTHIAUME; HENRY SCHILLING INDIVIDUALLY AND AS TRUSTEE OF THE CROWN TRUST ONE DATED 11/07/2013; DIANA BERTHIAUME AS TRUSTEE OF THE SMART REVOCABLE TRUST, UAD 5/12/2011; AND BSP HOLDINGS, LLC, A FLORIDA LIMITED LIABILITY COMPANY,

PLAINTIFFS,

VS.

SCOTT LEVINE,

DEFENDANT.

_____/

DEPOSITION OF SCOTT LEVINE

DATE:              SEPTEMBER 8, 2021

REPORTER:          ZULMA ARGUETA

PLACE:             BYRD CAMPBELL, P.A.
                   180 PARK AVENUE NORTH, SUITE 2A
                   WINTER PARK, FLORIDA 32789

**ORIGINAL**

400 North Ashley Drive, Suite 2600
TAMPA, FL 33602

100 East Pine Street, Suite 308
ORLANDO, FL 32801
CORPORATE

4651 Salisbury Road, 4th Floor
JACKSONVILLE, FL 32256

189687 Levine Scott 09-08-2021   Page 2

APPEARANCES

ON BEHALF OF THE PLAINTIFFS, MARC BARHONOVICH; REGGIE BERTHIAUME; HENRY SCHILLING INDIVIDUALLY AND AS TRUSTEE OF THE CROWN TRUST ONE DATED 11/07/2013; DIANA BERTHIAUME AS TRUSTEE OF THE SMART REVOCABLE TRUST, UAD 5/12/2011; AND BSP HOLDINGS, LLC, A FLORIDA LIMITED LIABILITY COMPANY:
Lawrence H. Hornsby, Jr., Esquire
Hornsby Law
525 Sybelia Parkway
Maitland, Florida 32751
Telephone No.: (407) 599-3800
Facsimile No.: (407) 599-3801
E-mail:  hank@hornsbylawgroup.com

ON BEHALF OF THE PLAINTIFFS, MARC BARHONOVICH; REGGIE BERTHIAUME; HENRY SCHILLING INDIVIDUALLY AND AS TRUSTEE OF THE CROWN TRUST ONE DATED 11/07/2013; DIANA BERTHIAUME AS TRUSTEE OF THE SMART REVOCABLE TRUST, UAD 5/12/2011; AND BSP HOLDINGS, LLC, A FLORIDA LIMITED LIABILITY COMPANY:
Clay A. Deatherage, Esquire
Law Offices of John L. Di Masi, P.A.
801 North Orange Avenue
Suite 500
Orlando, Florida 32801
Telephone No.: (407) 839-3383
E-mail: claydeatherage@gmail.com

ON BEHALF OF THE DEFENDANT, SCOTT LEVINE:
Tucker H. Byrd, Esquire,
Thomas C. Alison. Esquire
Byrd Campbell, P.A.
180 North Park Avenue
Suite 2A
Winter Park, Florida 32789
Telephone No.: (407) 392-2285
Facsimile No.: (407) 392-2286
E-mail: tbyrd@byrdcampbell.com

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

                         INDEX

                                            Page
PROCEEDINGS                                   5
DIRECT EXAMINATION BY MR. HORNSBY             5


                        EXHIBITS
Exhibit                                     Page
    1  - Account QuickReport                  24
    2  - Other name QuickReport               27
    3  - E-mail                               34
    4  - E-mail                               55
    5  - Document                             60
    6  - Employment/consulting agreement      64
    7  - E-mail                               74
    8  - Asset purchase and sale agreement    85
    9  - Document                             93
   10  - Operations Agreement document       100
   11  - E-mail                              117
   12  - E-mail                              126
   13  - E-mail                              129
   14  - Profit & loss document              131
   15  - Balance Sheet                       133
   16  - E-mail                              137
   17  - E-mail                              143
   18  - E-mail                              146
   19  - E-mail                              150
   20  - E-mail's packet                     158
   21  - Balance Sheet                       159
   22  - Profit & loss document              162
   23  - Employment/consulting agreement     170
   24  - Operating agreement                 181
   25  - E-mail                              185
   26  - E-mail                              187
   27  - E-mail                              189
   28  - E-mail                              195
   29  - Certified mail                      196
   30  - E-mail                              201
   31  - E-mail                              206
   32  - E-mail                              215
   33  - Certified mail                      217
   34  - E-mail                              219
   35  - Agenda                              221
   36  - E-mail                              230



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

STIPULATION

The deposition of Scott Levine taken at Byrd Campbell, P.A., 180 Park Avenue North, Suite 2A, Winter Park, Florida 32789 on Wednesday the 8th day of September 2021 at approximately 9:08 a.m.; said deposition was taken pursuant to the Rule 1.310(b)(6) Rules of Civil Procedure.

It is agreed that Zulma Argueta, being a Notary Public and Court Reporter for the State of Florida, may swear the witness and that the reading and signing of the completed transcript by the witness is not waived.



MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

PROCEEDINGS

COURT REPORTER:  We are now on record.  Will you please raise your hand, Mr. Levine?  Do you swear or affirm the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes.

COURT REPORTER:  You may all begin.

DIRECT EXAMINATION

BY MR. HORNSBY:

Q    State your name, please.

A    Scott Levine.

Q    And are you a doctor?

A    Yes.

Q    Okay.  If I refer to you as Dr. Levine, would that be okay for the deposition?

A    Sure.

Q    All right.  Dr. Levine, how long have you been practicing medicine?

A    Since -- are you counting medical school?

Q    Licensed to practice.

A    Well, that's probably medical school. Probably close to 30 years.

Q    Okay.  And do you have your own medical practice?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    I have a medical practice.  Yes.

Q    Okay.  How long have you had your own medical practice?

A    For close to 30 years.

Q    Do you -- have you had any partners in your medical practice, or is -- are you a solo practitioner?

A    I'm a solo practitioner, but I have someone right now who is working my practice, and I'm doing mostly administrative.

Q    Okay.  How long have -- has that arrangement --

A    About a year.

Q    Okay.  Other than your medical practice, you know, in the last 20 years, have you been involved in any other businesses where you are an active owner and participant in the business?

A    I own a -- I own a company that is a nutritional company -- actually, two nutritional companies.

Q    And what are the names of those companies?

A    One of them is called Physician Direct, and one of them is called Physician Select.

Q    And what do they -- what do they do?

A    Physician Direct sells a weight loss product, and Physician Select sells an antioxidant vitamin.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

189687 Levine Scott 09-08-2021

Q   Other than those two, are -- in those two companies, do you have any other partners or members that share ownership with you in those entities?

A   No.

Q   Other than those entities and your medical practice, have you been involved in any other businesses where you're a member or a partner who has a participating interest in the business?

A   I have some real estate investments.

Q   Are those joint with any other individuals or entities, or are those individual investments?

A   Some with an individual, some with, like, a number of investors in it.

Q   Is -- what's the entity -- is there an entity name for the investment?

A   One of them is called Los Alamitos II, and the other one is a number of different investments through the Widemans.

Q   And who are the Widemans?

A   They're people that live in town that do real estate investing.  He's also served as my advisor in the past.

Q   Okay.  And who -- what is the -- what is the -- Mr. Wideman's name?

A   Ed.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Q    Ed Wideman?

A    Uh-huh.

Q    And you said he was your advisor.  In what capacity was he your advisor in the past?

A    Business.

Q    Does he still act as a business adviser to you?

A    Yes -- yes.  Friend and business advisor. Yes.

Q    And I know we kind of jumped into it before. I usually go through some deposition ground rules, but I understand -- I know you've taken a deposition before; is that correct?

A    Yes.

Q    Okay.  So you're familiar with the process and why we're here today?

A    Yes.

Q    I'm going to go through and ask you some questions in regards to the case that we're here on involving BSP and your investment in that.  If there's any question I ask that you don't understand, just let me know.  If you answer the question, I'll assume you understood the question, okay?

A    Yes.

Q    Okay.  Other than the lawsuit that we're involved in here today, have you ever been a plaintiff

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

or a defendant in any other lawsuits?

A    Yes.

Q    Do you know how many lawsuits you've been either a plaintiff or a defendant in?

A    I think maybe like four.  I mean, are you also saying -- at times, I try to collect from patients, and file the small claims. Are you saying -- is that --

Q    Well, let's exclude the small claims collections for patient billings.

A    Uh-huh.

Q    So you in your individual capacity, cases not including things related to collections in your medical practice.

A    Yes.  Three or four, I think.

Q    Can you identify the other three to four cases that you remember, and whether you were a plaintiff or a defendant in them?

A    Okay.  A plaintiff in a -- a case with the hospital regarding whether patients -- it -- it had to do with insurance and whether patients can choose their own provider.

Q    And were you the plaintiff or defendant in that case?

A    Plaintiff.

Q    Were you representing yourself or were you

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

representing a group of in -- of patients?

A   I was representing myself.

Q   When was that case?  When -- around what time period?  When did that occur?

A   1991-ish.

Q   Was that in Orange County?

A   Yes.

Q   Okay.  Other than that, what other cases?

A   I was involved in a case that involved undue influence and basically trust issues with a family matter.

Q   Where did that case -- where was that filed?

A   Here in Orange County.

Q   Were you the plaintiff or defendant in that?

A   I was the plaintiff.

Q   Other than those two cases, were there any others?

A   I was divorced.

Q   Other than the divorce, were -- where did the divorce take place?  Was that Orange County as well?

A   No.  It's in -- name some counties and I'll -- I'm forgetting the name.

Q   Locally?

A   Yeah.

Q   Seminole, Osceola, Polk, Lake.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

188687 Levine scott 09-08-2021

A   I think it was Lake County.

Q   Remember roughly what time period that occurred?

A   Yeah.  That would have been in 2002, and again in 2011.

Q   And I'll ask this, it's probably a stupid question, but were these divorces to two different women?

A   No.

Q   The same woman?

A   Yes.

Q   Okay.  That wasn't a stupid question.  Sorry. What is the name of your ex-spouse?

A   Lorri, L-O-R-R-I.

Q   Okay.  Other than those three, any others that you recall not involving collections for your medical practice?

A   I'm not thinking of any right now.

Q   Okay.  Dr. Levine -- it's Levine?  Levine.

A   It doesn't matter.

Q   Sorry.  Dr. Levine.

A   It doesn't matter.

Q   My understanding is, you initially became involved with Brownie's Septic & Plumbing or its predecessor entities through an investment with Freedom

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

fina -- Freedom Environmental; is that correct?

A    Yes.

Q    Okay.  Can you tell me how you became involved with Freedom Environmental initially?

A    Mike Borish, who ran Freedom, was my patient, and he was the one who told me about Freedom.  And he requested a loan -- you know, he tried to get money, and I loaned him money with an interest rate.

Q    When you say you loaned him money, did you loan him money personally, or did you loan his business, the Freedom Environmental?

A    Well, it was -- no, it wasn't for his personal use, it was for the business.  That -- that's the best I can explain it to you.

Q    Okay.  What time period was this when you first made your initial loan?

A    2010 or '11.

Q    Had you ever loaned money to a patient before that?

A    I probably have, but I can't think right now.

Q    Before you loaned or made the loan -- well, let me ask this: Was the loan made payable to Freedom Environmental, or did you make the payment to Mike Borish when you paid the initial principal?

A    To be honest with you, I don't remember.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Q    Okay.  How did you, in your mind, classify that loan?  Was it a loan to the company, or was it a loan to Mr. Borish individually?

A    No.  It was definitely for the company.

Q    And what did Mr. Borish explain?

A    I'm pretty sure that I remember because there was three loans.  I remember that I -- the business name was on -- I -- I remember writing Freedom on at least one of them.  So they may have all been written to Freedom Environmental.

Q    Okay.  Now, the first one you said was in the 2010, '11 time frame.  Do you remember how much the first loan was that you made?

A    25,000.

Q    And did Mr. Borish explain why he was looking to obtain a loan at that point in time?

A    He did, but I don't remember why now.

Q    Do you remember what interest rate you were receiving on that loan?

A    No.

Q    Why did you decide to go ahead and loan the $25,000 at that point?

A    Because I thought that it was an investment and I'd make money on the interest.

Q    Did the loan you make have any kind of -- was

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

it a straight interest payment loan or was there any type of conversion opportunity to convert to equity in?

A    I don't remember the -- the specifics of the loan.

Q    Okay.  So you said you had made some -- I -- if I understand you right, you had made some additional loans following that.  How many more loans did you make with Freedom Environmental or Mr. Borish?

A    Two that I remember.

Q    Two more in addition to that?

A    Uh-huh.

Q    Is that --

A    Yes.

Q    -- a "yes"?  Okay.  When were those loans?

A    Probably, one was maybe three months after the -- or four months after the first one, and it was $75,000.

Q    Do you remember what your interest rate was on that loan?

A    No.

Q    Did these loans start accruing or -- did you start receiving payments on your loans immediately, you know, within a month, you know, the following month after you made the payment, or was it -- was there any kind of delay in receiving interest on payments?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A   I don't remember.  The first loan was paid as it should have been.  The second one, I -- I -- I remember that he didn't meet -- he didn't do everything in a timely fashion, and I think I got partially paid off by Mammoth Company.

Q   Okay.  Let's go back up to the first loan for the $25,000.  Were you paid the $25,000 loan?  I mean, were you completely paid off on that loan?

A   To my knowledge, yes.

Q   And your understanding is, you were not completely paid off on the $75,000 loan, the second one you made to Freedom; is that correct?

A   That's -- yeah.  I'm not sure I got paid.  Actually, let me try -- I -- I don't -- I think I -- I take that back.  I'm -- I'm confused by it now.  I think that it's possible that the 25,000 was paid off by Mammoth, and the 75,000 was never paid off.  That's what happened.

Q   Okay.  And you said there were three loans.  What was the third loan?

A   The third loan was for 125,000.

Q   And how long after the second loan was that?

A   I don't remember how long after, but it was pretty close I think in time to -- maybe four months before it went into receivership, so --

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

180687 Levine Scott 09-08-2021    Page 96

Q    Before you made the three loans to Freedom Financial or Freedom Environmental, did you do any research on the company at all?

A    Define research.

Q    Did you look up -- did you know what type of business it was?

A    Yes.

Q    Okay.  What did you inquire about the business with any of the owners?

A    The only person that I spoke with was Mike. And I don't remember having conversations about the business with Ciarlone, who was the second partner.

Q    And who is -- what's Ciarlone's first name?

A    I think it's Michael.

Q    So if I understand you correctly, the only one you actually spoke to about the business itself was Mr. Borish?

A    Correct.

Q    And what did Mr. Borish tell you about the business?

A    That it was growing, and it was a good business, and he just said a lot of positive things about it.

Q    Do you remember if Freedom Environmental was a publicly traded company at the time you were making the

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

loans?

A     Yes.

Q     It was?

A     Yes.

Q     Did you research or pull any SEC filings or financial records related to the entity before you made your loans?

A     I don't know if it was before or after I made the loan that I looked at the SEC filing.

Q     Do you remember if you looked at the SEC filing before you made the first loan?

A     I don't think so.

Q     Do you remember whether you looked at the SEC filings before you made your second loan of 75,000?

A     I don't think so.

Q     Okay.  Did you look at the SEC filings before your third loan, the $125,000 loan?

A     I don't remember.

Q     And you said that you remember it being about four months before the receivership occurred that you made the $125,000 loan; is that correct?

A     Yes.  I'm -- I'm, you know, ballparking it.

Q     Was there anything at any point in time before you -- you know, up to the point you made your $125,000 loan that made you concerned about whether Freedom

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

Environmental would be a viable business moving forward?

A    No.  What I was worried about was whether I was going to get paid on my loan.

Q    When you made your final $125,000 loan, had you, up to that point, been paid your interest payments timely on the first two loans?

A    I don't recall exactly right now.  I don't recall.  I know that I had one guaranteed by $350,000 worth of machinery owned by Grease Recovery, and there was also stock in one of those loans that was, like, ten million shares of stock.

Q    So was the stock -- were you issued the stock at the time you made the loans?

A    No.

Q    Was it some kind of convertible loan that would convert to stock?

A    I think because it wasn't paid on a certain date, I got a stock.

Q    Do you remember if that was a term that was provided for in the note that -- or, let me ask you this: Did you sign a note for each of these loan payments?

A    Yes.

Q    Okay.  In the note for the loan that you said included a, I guess an equity stock ownership position,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

did that loan actually have a term that you recall that entitled you to stock?

A   If it wasn't paid by a certain date.

Q   And did that occur?  Did you not get paid on that loan?

A   I -- that -- that -- that stock was not the remedy for not pay -- paying the loan.  It was like a -- it was just one of the things in -- in the promi -- in the note.  Meaning that he still owed me the money, but that he would have to give me stock if he didn't pay up by a certain date.  But it wasn't in lieu of repaying me the money.

Q   So even though -- if I understand you, even though they had to pay you the stock, if they didn't pay you your interest payment on a certain date, that did not, I guess, reduce the loan amount that was still owed to you; is that correct?

A   And the interest.

Q   And the interest.  Okay.  Do you know if that was for loan number one, two or three that we've discussed?

A   I think it was for two.

Q   The $75,000 loan?

A   I think so.

Q   Is that all?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A     It could be for number three.  I'm not sure.

Q     Do you still have the notes that you signed with Freedom Environmental?

A     Not that I'm aware of.  All my stuff was given to Reggie, who was using this to create everyone's capital contribution.  I also had warrants.

Q     Okay.  How did you receive the warrants?

A     I believe I paid for them.

Q     Was this during that same time period between, I guess -- what was this?  2012 and -- or 2010 through 2012; is that correct?

A     It could've been 2011 through 2012.  Yeah. Some -- somewhere in that time frame.

Q     What do you -- what did the warrants entitle you to?

A     To buy -- I believe to buy stock at a certain price.

Q     Did you ever exercise the warrants?

A     No.

Q     Were those given to you in consideration for your loan payments?

A     No.

Q     Did you --

A     No.  Absolutely not.

Q     Did you pay anything additional to Freedom

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Environmental?  Other than the three loan payments we've discussed, did you make any other payments to Freedom Environmental?

A    I bought, I think, it was shares of Ciarlone's father, some stock.  I think it was about $15,000.  But I don't know if that was a direct with, like, writing a check to the guy or whether it was through the company.

Q    And do you remember when that occurred?

A    Not a whole -- not very long before it went into receivership.

Q    Did you -- at the time you were making these loans and buying stock from some of the owners' relatives, did you have any feeling of whether your investment in this company was a risky investment or not?

A    I didn't think it was risky or there was a problem with that.  No.

Q    Do you remember what the stock price was for Freedom Environmental around this time?

A    No.  I know it fluctuated.

Q    Would Freedom Environmental have been considered a penny stock, if you know?

A    Yes.

Q    All told, do you have a total for how much you had invested in Freedom Environmental between the loans

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

and the stock purchases and anything you might have paid for warrants or anything else?

A    I bought stock myself in the market.

Q    Okay.  So if I understand you, in addition to what we've already spoken about, you bought stock in what, a brokerage account that you had?

A    Uh-huh.  Yes.

Q    How much stock did you buy of Freedom?

A    I don't remember exactly, but I bought some in my IRA.  My -- I think some in my children's account and -- and in my personal account.

Q    All told between your IRA, children's account, and personal account, do you have an estimate about how much dollar, you know, dollar amount that you purchased of Freedom Environmental stock?

A    I can't remember what it was right now, but it was substantial.

Q    Was it more than 50,000?

A    I believe, yes.

Q    Was it more than 100,000?

A    I don't know.

Q    Do you think it was greater than 50 but less than 100?

A    At this moment, without -- I mean, we're talking how many years ago?  More than ten years ago.  I

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

-- that's my best answer today.

Q    Do you remember how many shares you owned in total?

A    From those?

Q    From those accounts, the IRA, children's and personal accounts?

A    No.  I don't.

Q    Other than the interest payments you received from Freedom Environmental on your notes, during this time period, 2010 through up until the receivership occurred, did you receive any payments from Freedom Environmental for anything?

A    I'm sorry, can you repeat the question?

Q    Did you receive any payments from Freedom Environmental for any services that you provided to that company?

A    No.

Q    Did you ever receive any payments from Freedom Environmental other than the payments that would've been paid to you for the interest on your loans?

A    Not that I'm aware of.  I -- I will say this. Mike Ciarlone and Borish were both patients of mine and I think I found out much later that one of the checks that Ciarlone used was a Freedom check.

Q    Okay.  So if I understand you, you're saying

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

that one of Mr. Ciarlone's checks that he used to pay you for medical services was a Freedom Environmental check; is that correct?

A    Yes.

MR. HORNSBY:  Go ahead and mark this as Exhibit 1.  And this is Brownie's Septic & Plumbing, LLC QuickBooks transaction summary.

(EXHIBIT 1 MARKED FOR IDENTIFICATION)

BY MR. HORNSBY:

Q    If you see here under type, do you see where it says "N/P Scott Levine"?

A    Yes.

Q    Okay.  Have you seen -- have you seen this before, this document?

A    Absolutely not.

Q    Okay.  Have you at any point -- as of 2013, at any point in time in 2013, had you received a copy of the QuickBooks files from BSP and/or Brownie's Septic & Plumbing?

A    At what time?

Q    In 2013?

A    Yes.

Q    Okay.  If you look here, this is a summary of the notes payable from Scott Levine that appear to be on the records in QuickBooks at that time.  And I just want

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

to go through these and make sure that if there any other ones that aren't on here, if these are the ones that we are discussing.

A   We know that there one -- is one that isn't on there.

Q   Okay.

A   The $75,000 one.

Q   So we have the $125,000 one.  Do you see that?  Appears July 6, 2012, correct?

A   July 6, 2012. 125,000.  Okay.

Q   Would that be around the time that you recall making the $125,000, your third loan that you mentioned earlier?

A   Yes.

Q   It also looks like there is a $25,000 deposit or loan made.  Again, a date of July 6, 2012.  Do you see that?

A   Absolutely can't be correct.  It can't -- the 25 -- the 125 and the 25,000 cannot be correct.

Q   They were not done at the same time; is that correct?

A   No way.

Q   Was the 25,000 made before the 125?

A   Yes.

Q   And the 25,000 was your first loan made to

III   MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   Toll Free **855-MYDEPOS**

188687 Levine Scott 09-08-2021 Page 26

Freedom Environmental, correct?

A    Correct.  Someone went back, in my opinion, and tried to create this account and do this, and it's missing the 75,000.  There's no way that those two checks were written on the same day.  Impossible.

Q    Okay.  It also has a 100,000 entry here.  Do you see that?

A    Yes.

Q    Did you ever -- do you ever recall making $100,000 loan?

A    I thought it was 75,000.  That's why I -- I do not think this is accurate.

Q    Okay.  During the time you were making your investments in Freedom Environmental, did you ever look to see how much other debt other than the loans that you had provided to the company that Freedom had on their balance sheet?

A    I did not see them.  No.

Q    Did you know whether Freedom Environmental was profitable at the time that you were making your investment in Freedom?

A    I thought it was profitable.  Did I know it was profitable?  I didn't see anything to verify that.

Q    Okay.  Did you invest in your individual retirement accounts and kids' accounts into Freedom

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

Environmental after you made your loans, all three, to Freedom?

A    I don't remember the time period but I was buying stock -- not in one day.  I was buying stock intermittently.  And I was not selling the stock, which I found out later, Marc and Reggie were selling stock.

Q    Let's see another exhibit here.  I know a minute ago we were talking about whether you had received any payments from Freedom Environmental.  I'm showing you, again, a QuickBooks printout from back at the -- that purports at least to be from back in the time period of 2011 and 2012.  There are a few checks here, these were, according to the QuickBooks records, made out to Dr. Scott Levine or Levine.  Do you recall receiving these payments from Freedom?

(EXHIBIT 2 MARKED FOR IDENTIFICATION)

A    No.  Here's what I'm going to say to you.  I don't view checks of my patients.  Okay.  I don't -- I don't look at them and say, gee, did they pay for this personally or through a business?  The only way I know that Ciarlone had made payment was Reggie had complained about it before.  But I was not -- I didn't -- my staff took in the check as payment for services due for medical.  I wasn't being paid for anything outside of the medical services I provided.  And I wasn't aware of

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

the -- how they paid, personal or through the company, for it.

Q    Did you have any arrangement with Mr. Borish or Mr. Ciarlone to provide health services to them as a kind of al a carte plan on an annual basis?

A    Absolutely not.

Q    Did you provide anything that would have been similar to a health insurance product for them that would provide them unlimited access to you for the year?

A    Not -- not that I remember at all.  In fact, it was always they would come in, get what they needed, and then there'd be a bill generated, and that we were ask -- asked them to pay.

Q    Did you ever propose to Mr. Borish or Carli -- Ciarlone that you could provide all of the employees at Freedom Environmental with health services for them --

A    Never.

Q    -- for a set fee for the year?

A    Never.

Q    Just real quick, back on the loans.  I know we discussed the $25,000 loan you said was paid by Mammoth. Who is Mammoth?

A    Mammoth is a company, that I believe is out of Chicago, that provides funding and, like, buys notes, and puts up money if they think it's a good deal.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    So did that company buy you out of your note, is that --

A    Yes.

Q    -- what occurred?

A    Yes.

Q    And that was before the receivership?

A    Yes.

Q    At the time of the receivership, other than the $75,000 loan and the $125,000 loan, were there any other loans that you had to Freedom Environmental that were unpaid?

A    Well, you're showing me something that says a 100,000.  Maybe I had one that I'm not remembering, because I don't remember that one.

MR. HORNSBY:  Do you know if we marked this as Exhibit 2?

COURT REPORTER:  Uh-huh.

BY MR. HORNSBY:

Q    So at what point in time -- I guess, at any point in time, did you gain any sort of owner -- I shouldn't say that -- executive or management position with Freedom Environmental?

A    Yes.  I was made a "board member" and this was in 2012, probably two months to three months before the receivership took place.  And the circumstances behind

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

it are that there was a group of people that were trying to control Freedom. They were in a fight with Borish. And Borish made me a board member. Did he give me any information? No. He just said, you'll be a board member. I didn't get paid for it and I got no information other than for him to have me sign things on an urgent basis that I was probably lied to.

Q   Did you have to have any qualifications to qualify as a board member?

A   How would I know that?

Q   Did they tell you that there were some -- any threshold -- did you have -- let's -- for starters, did you have to be an investor in the company?

A   No one told me why I was being -- they were offering it because I guess I was an investor in the company. That was my assumption.

Q   Did anyone ever tell you that you needed a certain number of shares -- to own a certain number of shares in the company in order to qualify as a -- someone who could be on the board?

A   No.

Q   Who were the other board members at the time you were appointed?

A   Apparently, Reggie was chairman of the board and I think Borish was a mem -- a board member.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

188687 Levine Scott   09-08-2021   Page 31

Q    Who was the CEO of the company?

A    Ciarlone or Borish.  I don't know which one was CEO, and which was COO, or what their titles were.

Q    What did you do as, you know, as a member of the board?

A    I was given no information other than I was asked to sign probably two documents.

Q    What documents, do you remember?

A    One was a thing hiring Marc as a consultant, which absolutely did not have the employment agreement attached.  It was just a little, several line resolution that he told me was necessary to sign to prevent these people from taking the company over.

Q    Who told you that?

A    Borish.

Q    And what people were planning on taking the company over?

A    I would have to review for you.  There was a -- a group of people that were invested, I believe, in Freedom, and Mike and them had a dis -- Borish and they had a dispute, it is my understanding, and they were both vying for control of Freedom.  But I had no contact with them.  I never talked to them.

Q    So you said you signed a resolution hiring Marc as a consultant, correct?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A      I think that's what it was.

Q      Okay.  Other than that, do you recall si -- what was the other document you recall signing?

A      It was some -- to be honest with you, I don't remember what it is, but there was some sort of emergency thing.  Twice, he said we need to do this or the people could take over the company.

Q      What's your understanding of why the company went into receivership?

A      Because Ciarlone and Mike were stealing from the company.

Q      And how did you find that out?

A      When I was told by Marc and Reggie.

Q      Did you have a good relationship with Marc and Reggie during that time period that we're discussing now, around the time of the Freedom Environmental receivership?

A      I don't think I had even met Marc before the whole receivership action started.  And I don't think I met Reggie before the receivership started.

Q      Okay.  So when you were appointed to the board, which I think you mentioned was two or three months before the receivership, you said that Reggie was on the board.  Had you met him during that time period as a board member?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A      No.   The only reason I remember is on that document it said it was signed by Reggie or something as chairman of the board.  I didn't know who he was, I never had a meeting at Freedom Environmental.  There was no -- never any financials discussed with me.  Nothing.

Q      When you signed the resolution, you mentioned about hiring Marc as a consultant, where did you sign that?

A      At my house.

Q      Was that something that was e-mailed to you or --

A      Yes.  Under great urgency.

Q      So once the receiver was appointed, what was your understanding of what would happen to the loans you had with Freedom Environmental at that point?

A      I'm not sure I understand the question.  Are you asking what I thought the receivership was doing or --

Q      Well, let's start with that.  What did you -- what did you -- what was your understanding of what the receivership process involved?

A      The SEC felt that Borish had made false statements on the forms filed with the SEC, and that they couldn't continue running the company, so it had to be put in someone else's hands to be run.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    Okay.  Did you ever have contact with the receiver to discuss who you thought should be appointed to run the company?

A    No.  I did not.  My recollection is, is that they weren't really interested in talking to me.

Q    Did you have an opinion at that time about who you thought should run the company?

A    I didn't know Marc, and I didn't know anyone else.  So I didn't -- I didn't, no.  I thought the receivership -- I thought the receiver was actually going to have, like, an independent person running the company.

MR. HORNSBY:  Another document here we'll mark as Exhibit 3.

(EXHIBIT 3 MARKED FOR IDENTIFICATION)

BY MR. HORNSBY:

Q    Just take a moment to look at that.

A    Okay.  The last page is blank?

Q    Yes.

A    Okay.

Q    Yes.  Dr. Levine, at the bottom of the first page, it appears to be an e-mail from you to Scott Shuker on October 11, 2012.  Do you see that?

A    Yes.

Q    And your e-mail address is

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

help@physiciansdirect.com.  Was that your e-mail?

A    Yes.

Q    Do you remember sending this e-mail?

A    I do now.

Q    And who is Scott Shuker?

A    He was the lawyer for Mr. Morrison.

Q    Mr. -- who is Mr. Morrison?

A    The receiver.

Q    If you look at the second page --

A    Yes.

Q    -- for me, and there's a bold section here?

A    Yes.

Q    And if I understand this e-mail, was your goal here to try to encourage the receiver and his attorney to appoint or keep Reggie Berthiaume as the individual in charge of running Freedom Environmental through the receivership?

A    That's what this says, yes.

Q    And in this bold section, too, you also mentioned that 45 employees were at risk of losing everything.  How did you come up with that number, and what did you mean by that?

A    I'm glad you asked.  This whole message here was based on what Reggie told me was going on.  I never verified anything.  And I was under fear that these

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Blander (phonetic) and Goldstein were going to take over the company. And I was listening to Reggie because I trusted him. But if you ask me now, do I think this is accurate? I don't think anything I've been told is accurate.

Q   At this time, what was it that made you trust Reggie?

A   I had just met him and I didn't know that -- how he really is.

Q   Well, let's look at this in here right below the bold section. You mentioned that, in the second sentence there, Reggie is the one who discovered this theft and immediately hired SEC attorney, Peter King, to be counsel and be present when suspended -- when we suspended and fired Marc -- or Michael Ciarlone. Is -- at the time, was it Reggie who had discovered the theft?

A   I was told Reggie discovered it, but now I am also told that Marc was the one that discovered it and Marc took credit for it. So I was being lied to by both Reggie and Marc. And my -- I was probably didn't even know Marc at this time, at this -- literally within days, maybe I just had met him. But Reggie was, I thought, someone who was giving me good information. I just sort of trusted him. But I don't believe this is accurate at all. I don't think Reggie was running the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

company.  And I know for a fact that the receiver would not allow Reggie to come on the premises.

Q   Do you know who the receiver -- did the receiver end up appointing someone to run the company during the receivership?

A   Marc Barhonovich.

Q   If you look at the paragraph -- the last paragraph on this page, the beginning of it, you say, "By putting a restraining order on Reggie, the messenger has been shot, and the company has been harmed, and all creditors' money has been put at risk."  You're telling me now that you don't feel that way?

A   I am telling you, I was told this scenario that we're going to lose everything from Reggie.  I'm not able to verify anything.  And that's why I'm using time is of the essence and capital and he did nothing wrong.  I didn't know that, I'm listening to Reggie.  I thought that he was an honest person.  No.  I don't think that this is -- I don't think that this is accurate today.  Was it accurate to me at the time when I was told?  I thought it was.

Q   If you look down, do you see where it says time as of the essence in that paragraph?

A   Yes.

Q   "And it is my belief that time is being

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

ignored."  It goes on to say, "Reggie and I have done nothing," in all caps, "wrong.  We were trying to run the company in a proper fashion with full integrity."  Are you telling me today, that at that time, you and Reggie were not running the company?

A    I was not running the company.  And I don't believe that Reggie was.  I thought Marc -- well, to -- to be honest with you, Borish and Ciarlone were running the company and then it was put in receivership.  I think there was a period no one was sort of running the company.  Maybe Reggie was for a couple of weeks or two weeks before they put Marc in.  I'm not really sure.

Q    Go to the next page, please.

A    Uh-huh.

Q    There's a paragraph that -- there's one line at the top and then the paragraph that starts right below it.  If you look at the third sentence in, it starts with, "Reggie and I are interested in only doing the right thing and acting out of complete integrity."  At that time, was that the truth?  You and Reggie were interested in acting out of complete integrity in running the company?

A    I'm trying to think how to answer this in an accurate way for you, okay?  I trusted Reggie and I believed what he told me.  And I believed that he told

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

180687 Levine Scott  09-08-2021  Page 39

me that he was trying to do the right thing for the company. So at the time that I wrote this, based on what Reggie told me, I bel -- I believed it to be accurate at the time.

Q   Okay.  What was it that Reggie told you that gave you the confidence to send this e-mail encouraging the receiver to appoint Reggie as the person to run the company?

A   I'm sorry, what was the start of the question?

Q   Was it that Reggie told you at the time that gave you the confidence to write to the receiver and his attorney and ask that he be appointed to run the company?

A   I don't remember the exact words, but I remember that it was all about Goldstein and Blander are going to take over the company in receivership.  You're going to lose all your money.  You know, I'm going to lose all my investment.  Reggie talking to me, okay? And just painting a very bleak and -- picture of what was going to happen to our investment.  And that speaking bad about Goldstein and Blander, that they're the ones who are doing fraud, and you know, the receiver's trying to put them in charge of it.  So it was all about putting fear in me about my investment and the misinformation about Goldstein, Blander, and -- and

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

that.

Q    Did you ever talk to Goldstein or Blander?

A    Not that I remember, no.

Q    Did you ever make any effort to contact them?

A    No.

Q    Did you ever try to talk to other people who were involved in the company other than Reggie or Marc to find out what the other side was saying about the receivership and what might emerge from a receivership?

A    No.  I did not.

Q    If you go down to the next paragraph -- if you -- sorry, go back to that second to last page, please. Paragraph below where we were looking.  Right in the middle of the paragraph it says the company was never in danger of bankruptcy.  And then it goes on to say the largest creditors are Reggie, an investor Reggie brought in, and myself.  Was that your understanding at the time?

A    Based on what Reggie told me.

Q    Now, you were --

A    I didn't verify it.  I never verified anything about -- I never saw any financial documents.  This is what Reggie told me.

Q    Okay.  Now, this was a publicly traded company, correct?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    That's correct.

Q    SEC filings were accessible to you if you wanted them, correct?

A    Yes.

Q    You were on the board of directors at this time, correct?

A    I don't know if -- October 2012, I probably was, yes.

Q    Okay.  Let's go down to the next paragraph.  A little over halfway down.

A    I did -- my recollection, now that I think of it, is I probably did not see any SEC filings 'til after the receivership happened, and I heard about what was going on.

Q    Okay.  Did you investigate those on your own or did somebody bring them to your attention?

A    No.  I think I went and looked online.

Q    Do you think that would have been before or after you sent this letter or this e-mail to Mr. Shuker?

A    Probably.  I -- I don't know.  But I'm thinking it was probably after.

Q    If you look at the paragraph that begins with, "It's my understanding."  Do you see that one?  On the -- near the bottom of that page?

A    Yes.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   Okay.  And down toward the latter half of it, it says, "Reggie Berthiaume is the single most important person to make sure the creditors and stockholders are not harmed and the single most important person to run and grow this company."  That seems like a pretty glowing endorsement of Reggie.  Did you -- other than what he said, did you verify any of what he told you before you sent this e-mail?

A   No.

Q   Why not?

A   Because I really didn't know how to verify it.  And I think -- I think based on my time is of the essence remark here, I was sold a bill of goods that look, we need you to contact and see if you can get me in to run the company because we're going to lose everything.  You're going to lose it very soon.  I think it was all a scare tactic now to look back at this whole thing.  But, you know, it started out, it is my understanding and that's was my understanding based on what Reggie was telling me.

Q   Okay.  I mean, do you usually send a recommendation letter to someone that you haven't had experience with stating, for example, in the last sentence on that paragraph, "Along with Marc Barhonovich, were the two people who have total

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

integrity in this matter."  Do you usually endorse someone with that level of endorsement if you don't know them?

A    The answer is no, but I think I was scared into doing what I was -- I was given false information by both Marc and Reggie and at the time I wrote this letter, I was based -- I was working off false knowledge.

Q    Okay.  What was the false knowledge that you were working off of that now you say you understand today, but at the time was -- you didn't realize was false?

A    I think a lot of stuff is false in here.  I think Peter King was hired by -- not by Reggie, but by Marc Barhonovich.  Okay.  I think Marc probably found the fraud, at least he claimed he did.  I don't know what's the truth and what's not the truth.  I will just say that if we're talking about integrity, I don't put Marc and Reggie on the list of people with integrity.

Q    And why?  Why do you not put them on the list of people with integrity?

A    Because they have lied and done things that show that they have no inte -- their actions have showed they have no integrity.

Q    What actions are you referring to that show

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

188687 Levine Scott  09-08-2021

they have no integrity?

A    How they've run this company.  How they -- how they followed -- "followed" the operating agreement, which they didn't.  How they prevented me from seeing records.  We could go on all day if you wanted to do that.  I can sit down with a paper and start telling you about there's no integrity with Marc and Reggie, zero.  I, unfortunately, was making a hasty saying based on false information that was meant to scare me into writing this.

Q    Okay.  Would you agree, at least at the time of this e-mail, that there was no Brown -- BSP operating agreement and you weren't in a relationship with Marc or Reggie related to ownership of an LLC, correct?

A    Correct.

Q    Okay.  Was there anything at this time other than what you mentioned to me about who hired the attorney or who found the fraud and reported to the SEC that you now feel was inaccurate and that you were lied to about?

A    Well, I -- I don't trust this whole document.  If part of the information I received from Reggie was false about he's telling me how he's trying to do good for the company and do everything.  I don't believe -- I would say this is -- document is not accurate today as

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

we know it.

Q   Before you sent this e-mail, did you take any steps to verify what -- whether what Reggie had told you was accurate at the time?

A   I didn't even know how to.  How would I verify it?

Q   At some point, did you, Reggie and Marc band together to form a team to -- the creditor group to emerge from the receivership?

A   Yes.

Q   And how did that come about?

A   I started looking at options to see how we could get out of receivership.

Q   And what did you do to explore options?

A   I talked to some lawyers.

Q   Okay.  What lawyers did you talk to?

A   I talked to two lawyers in New York.  I don't remember their names, but it's clearly documented in previous e-mails, and spoke with Reggie about that.  I'm not sure if I spoke with Marc.  My thinking was Reggie.  And I took Reggie to a lawyer in town, last name Terry.

Q   Terry?  Okay.

A   And I -- then we eventually went to Michael Marder.

Q   Now, had you had previous experience with

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

Michael Marder before this?

A   Yes.

Q   Okay.  Had he represented you personally --

A   Yes.

Q   -- in the past?  And what --

A   Going -- go -- going back to the question about did Marc, Reggie, and I band together.  If we're talking about this, I know I was like just speaking to Reggie about pulling it out.  I'm not sure there was any sort of team formed or anything with Marc.

Q   How did you decide on -- or let me ask you this: Did you decide on using Michael Marder to represent your interests in this?

A   Yes.

Q   How did you come to that decision?

A   I went there with Reggie, and we both agreed after talking to him that we would use Michael Marder.

Q   What was your understanding of what he was going to do for you at the time?

A   Help get it out -- help get what was then Brownie's Wastewater Solutions out of receivership.

Q   Okay.  Did you sign the retainer agreement with Michael Marder?

A   Yes.

Q   Did Reggie sign the retainer agreement with

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Michael Marder?

A     No.

Q     Did Marc Barhonovich sign the retainer agreement with Michael Marder?

A     No.

Q     At any point in time did you tell Marc or Reggie that if you were made part of the creditor group, that you would personally pay the attorney's fees to help get the creditor group the assets out of receivership?

A     Absolutely not.

Q     Have you ever had any operational experience running a business similar to Brownie's Septic & Plumbing?

A     No.

Q     As part of joining with Reggie and Marc and Michael Marder to try to emerge as a creditor group, did you ever agree to put any money into the company in order to be a part of that group, any additional money?

A     I wasn't asked to.

Q     Did you ever offer it?

A     No.

Q     Did you ever agree that you would raise money from other investors once the assets were out of receivership to help the company grow?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A     Say that question again.

Q     At any point in time during this receivership process before BSP emerged from the receivership, did you ever -- did you ever offer to raise additional funds to finance the BSP entity so that it could continue on the business after receivership?

A     Well, I don't know what you -- if this counts, like, we had to pay for, like, closing cost, and that was money that was put in, that was not part of our debt equity.

Q     Did you pay money toward that?

A     Of course.

Q     Do you remember how much?

A     Almost 17 grand.

Q     Other than that, did you ever promise either Marc or Reggie that you were going to assist in raising additional capital investments from other investors once the receivership was complete?

A     Not -- not that I recollect, no.

Q     What was your understanding of what the financial situation of Freedom Environmental was coming out of the receivership?

A     What I knew was based on no investigation or really looking at any documents.  I was told by Reggie -- by Marc that, you know, the company is -- well,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

actually, I was told by Marc that the company wasn't able to grow very much in receivership because of restrictions put on it, but that, you know, that they were -- they were a viable company.

Q   Did you know that Brownie's was losing money during its time in receivership?

A   Never saw any documents, no.

Q   Did you ask for documents during that time period?

A   I -- Morrison -- I think I did ask Morrison and I -- I was not permitted to -- to get any.

Q   Did you know whether or not Brownie's was generating a positive cash flow during that time in receivership?

A   No.

Q   Did you know that -- did you know what the status of the fleet of trucks and equipment was, you know, how old they were, what type of condition they were in --

A   No.

Q   -- coming out of receivership?

A   Other than what Reggie maybe or -- or Marc wrote in an e-mail to me, but I had no verification.  I never saw a list of that.

Q   Did they ever explain to you that the company

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

was losing money, that it was not generating positive cash flow, and that it had a fleet of vehicles that were old, out-of-date, and in need of repair?

A   Are you asking me if I know this from what they told me or if I saw any sort of information that would verify that?

Q   Do you know this from what they told you during that time period?

A   They told me that.

Q   Are you aware of whether other creditors to Freedom Environmental were excluded from the creditor group that ultimately emerged?

A   Are you talking about Blander and Goldstein?

Q   Well, were they -- they were other creditors of Freedom; is that right?

A   I don't -- I don't know that for a fact because -- all I know is that there was a board fight or something.  I don't know the facts of it.

Q   Okay.

A   And I don't know whether they invested or not.

Q   Why do you think certain creditors were excluded and other creditors were included in the ultimate creditor group that emerged from the receivership?

A   Well, I do know this.  The Goldstein and

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Blander group was trying to get -- trying to get the assets that were in receivership. And Reggie and I, who had debt in the company, I don't know that Reggie had debt, but that's what he told me, were trying to get it out. So I do know that we were like the stalking horse thing, and the receiver had to go through a process in order to show that this was the best way to get it out of receivership. It's doing the best to pay off the debts and that sort of thing.

Q   Would you agree that a single creditor alone at that point in time likely could not have emerged from this receivership with the company? Let me ask you this: Did you feel it necessary that you had to join forces with one of these groups in order to preserve your investment?

A   Without putting more money in, I probably needed to do that, yes. I didn't know enough about the company. I needed their information, yes.

Q   Did you ever meet with Reggie during that time period and tell him that you needed to get rid of Barhonovich because he was not a creditor?

A   I don't know that was the exact comment that you're saying is correct. But I did tell Reggie that I was very concerned about Marc. And I don't know that I said because he wasn't a creditor.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    What were your concerns about Marc?

A    That he wasn't being honest in how he was doing things, and he was -- I just didn't feel trustful of -- I didn't feel trustful of him.

Q    What was it that he wasn't do -- that he was doing or not doing that made you at that point in time during the receivership feel like you couldn't trust him?

A    I don't remember, but it must have been some of his actions were not matching up to what he told me.

Q    Do you remember specific actions or things he told you that weren't accurate?

A    And what time is this?

Q    This is during the receivership before BSP emerged as the creditor group?

A    I don't remember what actions or things, but I was just not -- I've told the story before.  We also went out to lunch with Mr. Wideman, both Reggie and Marc.  And from that luncheon, Mr. Wideman was very clear that Marc was not a good person --

Q    Did you --

A    -- to get into business with.

Q    Sorry.  That was -- he was not a good person to get into business with?

A    Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Q   And that was Mr. Wideman's opinion?

A   Yes.

Q   Okay.  Now, did you put together the lunch between Mr. Wideman, Marc, Reggie, and yourself?

A   Yes.

Q   Okay.  Why did you do that?

A   To help see if he had any advice on how to get his out of either bankruptcy or receivership.  At one point, there was bankruptcy stuff going on.

Q   So at that point in time, you had him -- did you actually formally engage him as a business advisor for this purpose?

A   No.

Q   Were you --

A   Formally, you mean, pay him?

Q   Yeah.

A   No.

Q   Did you -- were you looking for his advice, though, as a business advisor?

A   Yes.

Q   And it was his advice not to get into business with Marc Barhonovich, correct?

A   He said he's not a good person to get into business with, yes.

Q   Did he say anything else to you about the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

company and any difficulty or issues that might emerge coming out of a receivership?

A    Not that I recollect right now.

Q    Do you recollect anything else that Mr. Wideman had told you were his thoughts or opinions about putting together this creditor group to come out of the receivership at that time?

A    I was already in this creditor group when I asked his opinion.

Q    Okay.  Excuse me -- had the assets been transferred from the receiver to BSP already at that point in time?

A    No.

Q    So at this time, other than Mr. Wideman, who was a business advisor, the Attorney Michael Marder, was there anyone else that you consulted with about taking this company out of receivership?

A    I told you, two lawyers in New York and Attorney Terry.

Q    Okay.  Other than those, anyone else?

A    Not that I recollect right now.

Q    Did you have any accountants review anything at that time?

A    No.  I had no documents.

Q    Did you have anyone review the SEC financial

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

statements for Freedom Environmental?

A   No.

MR. HORNSBY:  Mark this as Exhibit 4.

(EXHIBIT 4 MARKED FOR IDENTIFICATION)

COURT REPORTER:  Okay.

THE WITNESS:  Okay.

BY MR. HORNSBY:

Q   Okay.  If you look at the e-mail at the bottom of the page, it appears to be from you to leadman1163. Do you know who that is?

A   Yes.  That's Borish.

Q   Okay.  And then it has a copy to rberth@pendango (phonetic).  Do you know who that is?

A   That's Reggie.

Q   And then Marc Barhonovich.  It looks like maybe you copied yourself on this, correct?

A   Yes.

Q   Okay.  November 19, 2012, was that during the time of the receivership?

A   I believe this might have been before the --

Q   Well, if you look here at the first -- the second sentence in, it says, "I need -- Michael, I need to get this question answered tomorrow from Marder."  Is Marder -- Michael Marder, the attorney?

A   Yes.  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   He's trying to work on a settlement to get the receiver out.  So would that refresh your recollection that that was during the time that the receiver is in place?

A   Where does it say that he was trying to --

Q   The second sentence.

A   Two board members left.

Q   Not the second paragraph.  Second sentence on the first paragraph.

A   We need the Delaware attorney -- I think this may have -- I -- I'm not exactly sure.  It's either right before or during the receivership.  I'm confused because I thought Mar -- I thought Borish was not involved with the SEC.  I mean, they cut him out of the company early.  And it looks like Borish asked me -- because he was dealing with the Delaware attorney, I think maybe this is prior to the SEC putting it into receivership.

Q   Well, when did you engage Michael Marder?  Was that before or after the receivership was initiated?

A   It had to be after the receivership.

Q   Okay.  Because in here again, it's -- I'm just looking at the second sentence of the e-mail.  He's trying to work on a settlement to get the receiver out.  So at this point in time, you were helping Michael

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

Marder obtain information so that he could advise you on how to get the receiver out of Freedom Environmental; is that correct?

A    He is trying to work on the settlement to get the receiver.  Yeah, must have been when it was just put into receivership, yes.  So then I take back my answer that Marder had to be after because we'd have to look at the -- when I first contacted Marder regarding this case with Reggie.

Q    Okay.  At this point in time, was Marder representing you individually, or was he representing you along with Marc and Reggie?

A    I don't know the answer because I'd have to see when I first went with Reggie and Marc to -- to -- when I went -- I'm sorry, when I went with Reggie to Michael Marder and we first had a discussion about the -- getting out of receivership.

Q    Do you believe that Michael Marder ever represented Marc and Reggie's interests at any point in time during his representation?

A    Yes.

Q    He did?

A    Yeah.

Q    And what period of time do you believe that he represented Marc and Reggie's interest as well as yours?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    The start of when we agreed to engage him 'til right when Reggie was supposed to sign the engagement agreement and then right at the time of closing, and Michael had to put a paragraph in saying, "Hey, these guys were told to get another attorney to talk to.  I represent Scott Levine."  Because they wouldn't sign the thing at that point.

Q    What point was that when -- when you were signing the closing documents to bring the company out of receivership?

A    It was right at the end, yes.

Q    Okay.

A    And even after that, Marc and Reggie were referring to Marder as our lawyer.

Q    But -- so I understand you correctly, Michael Marder didn't have Marc or Reggie sign a representation agreement until the time of the closing coming out of the receivership and the asset transfer at that point in time?

A    No.  That's not exactly correct.  The engagement letter was signed by me very early on, and there was a space for Reggie to sign it.  And apparently, they kept asking Reggie, and they realized near the end that he didn't sign it, he wouldn't sign it when he was asked to sign it, and that's when they had

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

to put that in.

Q    Do you know who Gus Benitez is?

A    Yes.

Q    Okay.  Who is Gus?

A    Reggie's long-time lawyer.

Q    Okay.  Did Gus Benitez have any involvement in bringing the creditor group together and working on the documents come out of the receivership?

A    I have no idea.

Q    Okay.  Did you deal with Gus Benitez at all during that period of time?

A    He attended a bankruptcy hearing.  I -- he -- he attended -- he attended that bankruptcy thing. That's the only thing I'm thinking of right now.

Q    Did you remember what the -- what bankruptcy thing you're referring to?

A    Yeah.  That Ciarlone tried to bankrupt -- file the bankruptcy against Freedom Environmental.

Q    Was that before or during the receivership?

A    I can't place a date on it.  It happened very early on in the -- the receivership -- ship.  The SEC may have already stepped in and -- and then that happened.

MR. HORNSBY:  Are you okay?  Do you want to keep going or you want to take a quick break?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

THE WITNESS:  Maybe take a quick break.

MR. HORNSBY:  All right.  Let's go off the record, take a break.

COURT REPORTER:  Off record.

(OFF THE RECORD)

COURT REPORTER:  On record.

BY MR. HORNSBY:

Q    All right.  Dr. Levine, I know we -- you mentioned earlier about a resolution you signed when you were on the board of directors relating to employment agreements with Marc and Reggie.  I'm going to show you a copy of the document.  I think it might be what you're talking about.

MR. BYRD:  This is 5?

MR. HORNSBY:  This is 5.

(EXHIBIT 5 MARKED FOR IDENTIFICATION)

MR. BYRD:  Okay.

BY MR. HORNSBY:

Q    Okay.  Is this the resolution you were referring to earlier about the employment agreements?

A    Yes.  It looks -- it looks -- it looks the same except it's washed out.

Q    Okay.

A    Yes.

Q    Is the -- down at the bottom, there's some

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        Toll Free 855-MYDEPOS

signatures on here. There is one space for Dr. Scott Levine, board member. Is that your signature?

A    Yes.

Q    And you do recall signing this, correct?

A    Yes.

Q    See here where it says, "Resolved, the board has decided by a unanimous vote to hire two consultants starting September 1, 2012 to run the daily operations and workings of Freedom Environmental Services, Inc.

and its two subsidiaries, Brownie's Wastewater Solutions and Grease Recovery Solutions, LLC. The two consultants, Marc Barhonovich, Capital Advisory Group LLC, and Reginald Berthiaume, TAS Financial Partners LLC, will be considered independent contractors and will each be paid 180,000 annually." Do you know -- did you -- at the time, did you know what Capital Advisory Group and TAS Financial were?

A    No.

Q    Did anyone explain to you who those entities were or who owned them?

A    Not that I'm aware of. It's sort of self-explanatory. It says Marc and then that. I mean, it sort of looks like that.

Q    Did -- at the time, did you have an understanding that Marc Barhonovich's company was

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Capital Advisory Groups?  Was that your -- is that what you believed when you signed this?

A    I'll tell you what I do know about this, okay? I was called by Borish who said on a very urgent frantic basis, we need to get this signed in order -- he was telling me that to stop the other group from taking over Freedom.  He says we need to sign this today.  And so -- I mean, now I look back at it, I was probably put on the board just to be his lackey to sign shit, and I didn't even know what it was.

Q    Now, up until that point, Borish was your main contact at Freedom Environmental, correct?

A    Yes.

Q    And Borish was your patient, correct?

A    Yes.

Q    And Borish was the person who you had, without consulting others, invested your three loans that you invested in Freedom Environmental, correct?

A    Yes.

Q    Okay.  Did you push back against this in any way or question him?

A    Yes.

Q    What did you -- what did you ask him?

A    I just said to him, what are we signing here? This doesn't sound like anything we need to be signing

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

right now.  How does this have to do -- he says, look -- he exp -- he gave me some sort of answer that satisfied me that I needed to do this, or I was going to -- that Freedom was going to disappear, and they were going to take it over.

Q    In the last sentence, it says, "The consultants agreed to initially receive the monthly compensation on a similar level.  The past and current officers of the company will agree to accrue any salary not received until the company has sufficient cash flows to cover the entire compensation."  Do you see that part?

A    Yes.

Q    Okay.  So the entire agreement here at the time you did sign this, correct?

A    Yes.  But I did not -- I did push back as I told you, and I didn't have any idea what the financial status of the company was or understanding why they needed this.  It was just -- I was told, you are going to lose your investment, or -- or I was just told the other group was going to take over Freedom --

Q    Okay.

A    -- basically.

Q    But even despite pushing back, you still signed this, correct?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

180687 Levine Scott  09-08-2021   Page 64

A    Yes.

MR. HORNSBY:  Exhibit 6.

(EXHIBIT 6 MARKED FOR IDENTIFICATION)

A    I -- I -- I just thought of something that I think is related to that.  I think at the time he said, don't worry about what this says -- when I was pushing back about why we were hiring these two people.  I think he said, don't worry about that, we're just doing this to negate the other group from taking over.  Something like that.  That was the explanation I was given.

Q    All right.  I'm handing you a copy of an employment consulting agreement.  It's dated September 1, 2012.  Do you see that?

A    Uh-huh.  Yes.

Q    And if you look back at the previous exhibit, Exhibit 5, at the bottom, it has a date on there.  Do you see below the signatures?

A    Yes.

Q    August 30, 2012?

A    Yes.

Q    Does that seem to be about the time you recall signing this?

A    I'm not going to argue.  I don't know exactly when it was, but it was before the receivership.  Yes. And it was shortly before the resolution.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

180687 Leville Scott  09-08-2021                      Page 65

Q    Okay.  Around the time that you signed that consulting agreement, were you provided a copy of the employment consulting agreements?  Excuse me, not the -- when you signed the resolution, were you ever provided copies of the employment agreements that Marc and Reggie ultimately signed?

A    I do not remember this at all.  I remember only signing a quick e-mail thing like this.

Q    And by this you're referring to --

A    The resolution.  The re -- resolution.

Q    -- Exhibit 5, the resolution?

A    Yeah.

Q    Okay.

A    Do you want me to read this whole thing?

Q    Do you -- I mean, have you -- have you subsequently, have you seen this employment agreement between, this one is Marc Barhonovich and his company and Freedom Environmental Services?

A    Yes.

Q    Okay.  Have you had a chance to review it, and do you have anything that you take issue with in this compensation agreement with Freedom Environmental?

MR. BYRD:  Object to form.  Go ahead.

A    I take issue with the whole thing because I never saw it and I never agreed to anything.  It's a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

one, two, three, four, five, six, seven, eight, nine- page document, and this was not provided to me to my knowledge at all, only the resolution.

Q    Okay.  If we look at the bottom of the first page, you see where it says, "Compensation"?

A    Yes.

Q    And in that paragraph, it says, "Executive -- company shall pay the executive $180,000 per annum, the base salary."  Do you see that?

A    Yes.

Q    And is that the same amount that you had agreed to in your resolution dated August 30th, the $180,000?

A    Well, as I explained, Borish told me that this was not really something that was happening.

Q    Did you or did you not sign a resolution --

A    Yes.

Q    -- that said you would pay -- the company would pay $180,000 annually?

A    Yes.

Q    In the resolution, if you look back at Exhibit 5, the following sentence says, "The consultants will also be reimbursed for travel expenses and be provided with health insurance."  Do you see that?

A    Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   Okay.  And you agreed to health insurance and reimbursement for travel expenses as well, correct?

A   That was -- yes.  That was going to occur. Yes.

Q   Okay.  If you look down at the second page, benefits, do you see that?

A   Yes.

Q   It says, "The executive shall be eligible to participate in group insurance plans of the company and other existing or new prerequisites or benefits offered to executive management of the company."  Had you agreed --

A   Oh, I didn't see what you're saying, it's under C?

Q   Under C, benefits.

A   Yeah.

Q   Do you agree that that states that they'll be entitled to group health insurance under the company?

A   If you're asking me if this document says that --

Q   Yeah.

A   -- I agree that this document says that.  If you're asking me if I agreed to it, I didn't even know what Freedom was doing financially.  How would I know of it, no.  Yes.  This document does state that.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        Toll Free 855-MYDEPOS

Q    Okay.

A    I don't agree.

Q    Okay.  Following the receivership, at some point in time, do you recall ever authorizing BSP Holdings to enter into an employment agreement with Reggie and Marc and their entities?

A    No.

Q    Were you ever asked -- were you ever told that BSP Holdings was going to be managed by Marc and Reggie?

A    You're forgetting me.

Q    And you.

A    Yes.

Q    And that -- just so I'm clear, that also included -- Marc and Reggie were also managers, correct?

A    Are you saying before BSP?

Q    BSP itself.

A    Oh, yes.

Q    And BSP who was your -- who was the person that was your understanding that would run the day-to-day operations of BSP Holdings and Brownie's Septic & Plumbing?

A    Marc.

Q    Marc Barhonovich?

A    Yes.

Q    And what was your understanding of how he was

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

going to get compensated for his work managing the company?

A    There was going to be an employment agreement that was drawn up -- that was agreed upon by all the managers.

Q    And what was your understanding of what Reggie Berthiaume was going to do for BSP Holdings in their daily operations?

A    He was going to be 180 -- he was going to receive that salary of 180, which I disputed, but he was going to be a full-time employee.

Q    Okay.  So it's your position that Reggie was going to be a full-time employee with $180,000 salary, correct?

A    Yes.

Q    And Marc Barhonovich, was he going to be an employee?

A    Yes.

Q    And what was his salary?

A    It was to be determined by the managers.

Q    What was your understanding of what Marc Barhonovich's position was within the company, Brownie's Septic & Plumbing and BSP Holdings, at that time coming out of the receivership?

A    I don't understand your question.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

Q    So what were the job duties that you understood Marc Barhonovich would be carrying out for BSP?

A    He would be running the day-to-day operation.

Q    And what was your understanding of what Reggie Berthiaume would be doing for the company?

A    Running day-to-day operation.

Q    Is there any reason why Marc Barhonovich would not be entitled to the same employment agreement as Reggie Berthiaume if they were -- if they were doing substantially the same work?

A    Well, Marc wasn't a creditor, and Reggie was. And I think you probably know that I disputed the salary.  And if you read my last deposition, which I'm sure you did, you know that I was told I could go fuck myself if I didn't have Marc running the company and agree to the salary of Reggie.

Q    When did you agree to Reggie's salary?

A    When it was signed on the date of the -- the 6-24-2013.

Q    Coming out of the receivership, did you have any idea of what the debts that were owed that would need to be assumed by BSP in order to bring the company out of receivership?

A    Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    And what were those?

A    I couldn't tell you all the different names on it, but I will tell you my recollection.  It's about 1.5 million in debt that was going to be assumed.

Q    And did that include the Reunion note for -- or at least the balance remaining on a Reunion note from Reunion Bank to Freedom Environmental?

A    I don't know when Schilling took the note over.  So I don't know if it was originally on the assumed debt and then it was later removed, is sort of my recollection.  So I think that answers your question.

Q    Well, I know you said there was 1.5 million in debt that your understanding was needed to be assumed from the receivership in order to bring this out of receivership, correct?

A    Yes.  That would probably include the Schi -- Schilling's note.

Q    Okay.  Did you know whether Schilling had any loans to the company or any other equity in the company, Freedom Environmental, before the receivership?

A    I was told by Reggie and believed that Schilling had about half a million dollars, but never verified, never saw anything.

Q    Do you have any reason to believe that that was not accurate that he had not invested half a million

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

dollars?

A    Well, I don't believe anything Reggie's told me.  No.

Q    Do you have any basis for asserting that Henry Schilling did not invest $500,000 in Freedom Environmental?

A    My answer to you is I've never seen his investment.  Like you showed me a register that was supposedly mine, I haven't seen Reggie's or Schilling's.

Q    Okay.  At some point in time, I believe it was 2013 that you've testified to in the past, you did receive QuickBooks financials or actually the QuickBooks file for Brownie's Septic & Plumbing, which included the time period during the receivership and before the receivership, correct?

A    The file I received said Brownie's Wastewater Solution, which was the receivership company in 2013. Which was the receivership company, not Brownie's Septic & Plumbing.

Q    Is it your position that you were unaware of the fact that Hank Schilling assumed the Reunion note at the time that you signed the BSP operating agreement?

A    I -- no.  I was -- I was aware that he had signed it.  No.  I'm sorry that he took over the Reunion note.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   And were you aware that that Reunion note was in the amount of $773,000 and change?

A   Sounds roughly to my recollection.

Q   Okay.  Were you aware that it had a balloon maturity date of June 11, 2015?

A   Yes.

Q   Was that discussed with you prior to you signing the operating agreement by any of the members?

A   I'm not sure -- I was told that Schilling was taking over -- taking over the Reunion loan so that we could add more debt to our assumed liabilities to be the better stalking horse in this.  Remember there was another team trying to take off the receivership.  So I was aware that he took it over, I was aware that it had a balloon payment, but I don't -- and I think I saw a closing documents.  It might have been right afterwards that contained all the information.  I don't know that they sent me a copy of all that before, but I did get it after.

Q   Without Hank Schilling assuming that Reunion note, do you think he would've been able to -- and the creditor group that formed BSP would've been able to have taken this company out of receivership?

A   Impossible to answer.

Q   Do you think that gave you an advantage over

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

the other group that was buying for the company?

A    It certainly added more debt.  Yes.

MR. HORNSBY:  This will be 7.  And we'll mark it as Exhibit 7.

(EXHIBIT 7 MARKED FOR IDENTIFICATION)

BY MR. HORNSBY:

Q    Okay.  Have you had a chance to --

A    Give me one more second because I didn't even realize who it was being sent to.  Okay.

Q    Okay.  If you'll go back to the second page, just to start, there was an e-mail that appears to be from Michael Marder to Reggie, Marc, copying you and Ellen Gilmore.  Do you see that?

A    Yeah.

Q    Okay.  Who is Ellen Gilmore to you?

A    Yeah.  She was the one that was actually doing the writing of the operating agreement.

Q    Okay.  Did she work with Michael Marder's firm?

A    Yes.

Q    This says, "Attached please find a draft operating agreement for your review."  So it at least appears from here that a draft operating agreement for BSP, I'm assuming, was sent around, is that what you recall?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    Yes.

Q    Okay.  And then we go forward and it looks like Reggie is responding here on May 15th?

A    Yes.

Q    And copying everybody, including you, correct?

A    Correct.

Q    And in this it looks like he's discussing the ownership interest in BSP, correct?

A    I'm -- I'm just confused why it says Freedom Environmental services e-mail.  This is in 2013, I didn't have any account with Freedom Environmental.

Q    Did you ever have an e-mail account with Freedom?

A    Never.

Q    When you were a board member or anything?

A    I did nothing as a board member except sign that resolution and perhaps sign something else I shouldn't have.

Q    Okay.  It looks like there's also a separate e-mail here, although it just has your name on it.  And if you look -- I should -- if look back at the previous e-mail, it looks like it shows that there's scottlevinehelp@physiciansdirect.com.  That was your e-mail you were using at the time?

A    Yeah.  Yes.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q    Okay.  Says, "The 24 percent for ways does not go into effect until all debt is paid back.  This is the agreement that myself, Hank, and Scott agreed upon."  Do you know what he's referring to?

A    Yes.  But I did not remember this e-mail and basically, we were taking our debt to equity, okay.  And Reggie came and said, look, Schilling is willing to step his down to 50 percent, you'll have 25 percent and Reggie will have 25 percent.  And he said, basically, if -- when Marc paid off all the debt, I think Schilling was going to reduce his to 25 percent and Marc would get 25 percent.

Q    And when you were referring to pay back all the debt, is that all the debt owed to Hank Schilling?

A    No.  That's all the capital accounts had to be brought to zero.

Q    For the entire company?

A    Correct.  And all debts had to be paid -- all the debts had to be paid off and all the capital accounts had to be paid off.  All the assumed debts.

Q    Got it.

A    Yeah.

Q    You can see here, a little further down, it says, "Hank has stepped up taking the largest risk."  Do you see that?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

188687 Levine Scott   09-08-2021   Page 97

A    Yes.

Q    Okay.  Would you agree -- or at the time, did you agree with that?

A    Define risk.  And I mean, the answer is, he had the most money in the deal.  But if he has a ton more money than I do and I put in relatively more for mine what I owned, who's got more risk?

Q    Did you put in anything additional into the company coming out of the receivership?

A    Yes.

Q    What did you put in?

A    I put in the 17,000 closing cost and I also put in -- I gave back $350,000 worth of Grease Recovery Equipment liens I had, I forget what we call them in US something around that name.  You know they're with the state.

Q    UCC?

A    UCC.  UCC.

Q    So if I understand you, one of the notes -- if I understand you correctly, one of the notes that you had with Freedom Environmental was secured by some Grease Recovery Services equipment; is that correct?

A    As one of the terms, yes.

Q    Okay.  And because -- is it because if Grease Recovery defaulted on that note, you believe you had an

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

interest to recover that equipment under the UCC agreement?

A    I'm saying that I probably could have, but I elected to -- they were gathering up all the UCC documents, Marder's firm and, you know, trying to make it into one company.

Q    I think you testified earlier that you believed it was the $75,000 loan that you had paid that was secured by the Grease Recovery equipment; is that correct?

A    But it could have been the 125.  I -- I don't remember without looking at it.

Q    But it was one of those two?

A    Yes.

Q    Do you know whether you were entitled to recover the amount -- the remaining balance owed to you under the note from the Grease Recovery Equipment or if you were able to take back the full $350,000 worth of equipment to satisfy your note?

A    I think that I was able to take -- I was able to get my money back.  And I think a term of the note was to get that if wasn't paid on a certain date. That's what my recollection is right now.

Q    Who -- did you have an attorney prepare the notes for you that you entered into with Freedom?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

188687 Levine Scott  09-08-2021  Page 89

A   I know I definitely had for the third note, 125,000, I definitely had a lawyer do it.

Q   You don't remember if you did or did not for the other two?

A   Correct.

Q   So was it Michael Marder's office that drafted the BSP operating agreement?

A   Yes.  With Marc and Reggie and myself.

Q   Okay.  Let's look back at this e-mail on Exhibit 7.  The second paragraph says, "Also we need verbiage in there that will protect myself and Marc, showing that any personal guarantees that we have to sign to grow the company has to be paid back first as well."  What did that mean to you?

A   Well, I don't remember seeing this in particular back then, but this is right at the time where there was a lot of e-mails going back and forth, it was hard to keep up with.  This is right before the month before we came out.  There was a bunch of changes of everything.  Anyhow, what that means to me is that Reggie is asking Ellen to make sure that Marc is not going to get his 25 percent before that gets paid back in addition to the assumed debt and the capital accounts.

Q   Okay.  What about this -- the sentence that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

talks about protection for Marc and Reggie, showing that any personal guarantees they have to sign would be paid back first.  So personal guarantees, what does that -- what is your understanding of a personal guarantee?

A   That means that they're going to personally guarantee with their own assets a loan they would take out.

Q   And your understanding would be -- this would be they personally guarantee a loan that would be taken out for the benefit of the company, but that they would have personal exposure to their own assets, correct?

A   That's what I understand that's saying, but they're saying they want to be -- make sure that's paid back before Marc -- before Marc gets -- gets his 25 percent.

Q   Okay.  And then the next sentence says, "The company is going to be needing trucks, et cetera, and we'll be -- we will be signing for these items personally."  Do you see that?

A   Yes.

Q   So at that point in time, did you understand that the company was going to need some additional investment to get it off the ground?

A   I didn't see anything.  This is what -- if you're asking me was Reggie stating this?  The answer is

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

yes. Did I see anything? Nothing.

Q    Well, you received this e-mail; did you not?

A    Yes.

Q    Okay. And he's saying the company is going to need trucks. And that they -- that we and it appears we he's meaning Marc and Reggie, will be signing for these items personally?

A    Yes.

Q    What does that mean to you?

A    It means that he's stating that they're going to need trucks, and that he's going to sign with his own na -- name personally, with his own assets. But if you ask me do I -- do I know anything about that the company needs trucks? No. I don't. Do I believe what Marc and Reggie said to me then? I probably did because I was trusting them, mostly of them. But I don't believe anything they say now.

Q    Did you object at this time to the fact that the company was going to need to buy additional trucks?

A    I didn't know whether they needed them or they didn't need them.

Q    Okay. Did you or did you not object to the fact that Reggie and Marc were planning on buying additional trucks?

A    No. I did not object.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

188687 Levine Scott  09-08-2021                          Page 82

Q   Okay.  Did you object to them signing personally to -- in order to obtain loans for the company to invest in capital like trucks?

A   I didn't object to this e-mail.  Unless there's an e-mail -- I -- I take that back.  I don't remember this e-mail.  I don't know if I said anything, but I don't have any recollection about it either way.

Q   Did Marc or Reggie ever ask you to sign any personal guarantees for any debts that the company took on?

A   Are you saying after it came out of receivership?

Q   Yes.

A   I think that they were always trying to hit me up for money.  They would never show me any financials.  And they never gave me any document that was a -- that needed to be signed, that had my name on it and a personal guarantee.  But I think as part of hitting me up for money all the time, you know, they probably asked that I would personally guarantee something.  But they never sent a document.  Never did a capital call.

Q   Did they ever -- did they ever explain to you that a bank -- that banks require that members who held 25 percent or more interest would be required to sign personal guarantees in order for the company to take a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

loan from a bank?

A    Not that I recollect.

Q    I know you say they didn't provide you with financials, but isn't it correct that they did provide you at least in 2013 with the QuickBooks financial records?

A    You -- you know, that was just the generals. You're correct.  You're -- I made a general statement. I could got -- I could not get the financials I was requesting when I was requesting them.  And most importantly, they were supposed to have been giving them to me -- balance sheet, cash flow, profit and loss statement two weeks after the end of each month and they never did that.  Without me being able to look at bank statements and other things, credit card things, they were just asking me for money, but they weren't showing me where the money was going.

Q    When BSP and your group finally closed on the receivership to transfer the assets out of the receivership into BSP, where did that -- was there a final signing event that you guys all attended?

A    The answer is not really.

Q    Take me through how -- take me through what happened.

A    Basically, everything was sort of -- the last

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

month was a lot of stuff going back and forth and a flurry of stuff going on.  And basically, we got a date that we were going to go to federal court.  And that was where the judge had a rule whether it could be removed from the asset protection.  The asset purchase would go through and the -- when we emerge from bankruptcy -- I'm sorry, from receivership.  And basically, later that day, I believe we were -- I think it was later that day we were at the BSP office and stuff, but I -- I know that I didn't sign the operating agreement that day.  It was like -- maybe it wasn't fully ready or -- I'm not sure it got signed by me like a day or two later.  Maybe that didn't happen and they got it later in the day or something like that, but I'm not sure.

Q    Okay.  So that would have been at BSP's offices?

A    Correct.  And like the -- the closing costs were all handled by e-mail.

Q    What do you mean by that?

A    Just like Ellen said, hey, we're going to need a check for your portion, almost 17 grand, you know.

Q    Did Marc and Reggie also pay 17 grand toward the closing costs?

A    My understanding is that Marc didn't pay a cent and that Reggie may have used Schilling's funds

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900           www.MILESTONEREPORTING.com           Toll Free 855-MYDEPOS

altogether to pay -- pay the closing costs.

Q   Did you receive documents at the closing or around that time related to the closing of the purchase and sale of assets out of receivership?

A   I received the closing documents and I don't know, but it was afterwards, I believe.

Q   Don't worry, I'm not going to make you read this whole thing.  We'd be here all day.  This will be Exhibit 8.  And if you look at the bottom, there's Bates numbering that says Levine 2021 and then it has a number.  Do you see that?

(EXHIBIT 8 MARKED FOR IDENTIFICATION)

A   Yes.

Q   If you can -- well, first, I guess we'll start on page 1.  This is an asset purchase and sale agreement.  It looks like between BSP Holdings and Brownie's Wastewater Solutions, Grease Recovery Solutions, and Freedom Environmental, dated April 15, 2013.

A   Uh-huh.

Q   Do you remember receiving as part of your documents from, you know, following the asset purchase out of the receivership this asset purchase and sale agreement?

A   I have seen this before.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Q   Okay.  Did you receive it around that time?

A   I can't tell you when I did receive it.  I don't recollect.  And I don't know if I had seen -- I believe I may have seen like more than one version of it.  There may have been a draft is what I'm saying.

Q   Okay.  If you go back to the Bates number is LEVINE20219900099.

A   You can just say 99, I'm familiar.

Q   Got it.  Be surprised, we get these Bates numbering, it's always hard.  Right.  And this is an exhibit here and it provides, if you see here, liabilities and potential claims.  Do you see that?

A   Yes.

Q   As of March 22, 2013?

A   Yes.

Q   If you look down at the bottom, there's an entry that says accrued interest.  Do you see that? That's toward the bottom.

A   Yes.  I do see now.  Uh-huh.

Q   Okay.  And then below that, it has a few entries that say, n/p.

A   Yeah.

Q   Do you know what that means --

A   Yes.

Q   -- n/p?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    Yes.  Yes.

Q    What's that?

A    Of course, notes payable.

Q    Okay.  And you see the notes payable listed there.  And it includes -- your name is on here, it appears for $75,000.  Do you see that?

A    Yes.

Q    Is that -- was it your understanding that that was your $75,000 note payable that you had with Freedom?

A    Yes.

Q    And if you look over to the right, it talks about -- there's a box and on the right side of that box, if you look up at the top, there's a column says convert to equity.

A    Yes.  Uh-huh.

Q    Okay.  And it shows -- it looks like in line with yours that $75,000 is showing converted to equity?

A    Yes.

Q    Right.  Is it your understanding that your $75,000 loan was converted to $75,000 worth of equity with BSP?

A    Yes.  And I'm going to say that this is not what I believe to be the final document.  This was a draft.  They apparently didn't include my $125,000 one on here.  And I know that there was something going on

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

with this early draft where Capital Advisory Group said that they wanted $30,000, and they were paid for it ahead of time. And I believe it might have been taken off on a final draft. And also the Mammoth I didn't know at the time, but that was actually Marc's debt.

Q   The Mammoth was Marc's debt?

A   Yeah. Not the company's.

Q   Okay. So you believe that this version of the asset purchase and sale agreement is not the final version?

A   Correct.

Q   Okay. If you look at the Smart Trust Berthiaume made, do you see that note payable?

A   Yes.

Q   For 220?

A   Yes.

Q   And again, it shows conversion of the 220 to equity?

A   Yes.

Q   Do you dispute that that note payable was converted to equity in BSP?

A   The answer is I don't know. I -- if you're asking me, was this a legitimate debt, or you're just asking me -- I -- I can't even really answer the question --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

180687 Leville Scott  09-08-2021  Page 89

Q    Well, do you have --

A    -- because --

Q    Do you have any basis for challenging whether or not that debt is -- was legitimate with Freedom?

A    I've never seen any evidence that Reggie had loaned money to the company.

Q    Did you ever ask for documents evidencing that?

A    No.  Because I trusted what was going on, and it was sort of over my head at the time.  Marc was the one that was running the schedule, Marc and Reggie, and they didn't provide me any backup documents or anything like that.  It was sort of like I thought the lawyer knew what they were doing, and I thought, you know, because they did reject some of the stuff that Reggie or Marc tried to get covered for themselves.  But this is not the final one.  I -- I know that --

Q    Now --

A    -- because Alison -- Alison had something on one too.

Q    Now, wasn't it your understanding that this asset transfer had to be approved by the receiver and by the Court?

A    Yes.

Q    Okay.  So the receiver was also represented by

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

counsel, correct?

A   Yes.

Q   And the receiver had been operating the company and was familiar with the records and account statements and the like, correct?

A   The receiver?

Q   Yes.

A   I don't know whether they knew what they were doing or not.  Yes.

Q   Did the Court ultimately approve the transfer of assets from the receivership to BSP?

A   Yes.

Q   Okay.  Let's look at Bates number 104.

A   Okay.

Q   And if you see under here, again, it's -- at the top, it says, "Liabilities and potential claims." There's a schedule on the left listing multiple liabilities due, including some notes payable.  Do you see those?

A   Yes.

Q   All right.  And again, on here is a note payable.  "Reunion Bank consolidated," do you see that?

A   Yes.

Q   And that's for $176,500, and it --

A   No.  It's 7,000 -- 700,000.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   Thank you.  767,500.  Okay.  At that point in time, was it your understanding that Hank Schilling had assumed that liability?

A   I didn't go through the detail of each of these notes payable.  Again, I left it to Marc, Reggie, and Ellen to be dealing with this.

Q   Okay.  What about your note payable here for 125,000.  Do you see that?

A   Right.

Q   Is that -- I know you mentioned before you didn't see your 125?

A   Yeah.  I don't know why it was put under damage claim, but the other thing that makes me think this is not -- March 22 is not the final one, is I'm almost positive there was ones afterwards, and that -- see where it says, "Due to resort marketing"?  Oh, they said they were not going to assume it.  Yeah.  Because they -- I knew they weren't going to assume, that was from Borish.

Q   Okay.  So it sounds like at least you're pretty familiar with what the final agreement looked like; is that correct?  If you're able to determine or recall that the 30 -- or the $53.80 resort marketing fee was not assumed?

A   Yeah.  I knew that.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

Q   Okay.  And again, that 125,000 note payable to you was converted to equity, correct?

A   Yes.  I'm surprised that it's not under the same column as notes payable though.

Q   So other than the $125,000 note payable and the $75,000 note payable which were both converted to equity totaling $200,000, was there anything else that you recall in the final version that was converted to equity for you?

A   Yeah.  There was a -- this is again with Reggie providing all these numbers.  There were warrants that I was given credit for, and I was given credit for the closing costs, and Reggie was given warrants and closing costs, and so my other statement to you is, I had also the UCC statements of 350, but they don't show up on any of this.

Q   Well, if the UCC statements were securing your note payable, would you agree that it would be a -- kind of a double-dip if you were getting credit for the UCC plus your 75 or $100,000 note that was being secured by that UCC agreement?

A   Not necessarily because I don't remember the exact terms, but if the term said if it wasn't paid by a certain date -- I don't know what the terms were.  It might have been separate.

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   All right.  Do you still have that note?

A   Not that I'm aware of, but I -- I may.  I don't know.  This was all given to Reggie, and I mean, it should be in Marder's stuff.

Q   When you say it was all given, your notes were given?

A   Absolutely.  To Reggie.

Q   And were the notes -- would you assume that Freedom Environmental had copies of your notes as well?

A   I would assume, but I don't know.  You're asking me to guess basically.

Q   But you did sign notes with Freedom Environmental for each of your invest -- your loans, correct?

A   Yes.

MR. HORNSBY:  Mark this as Exhibit 9.

(EXHIBIT 9 MARKED FOR IDENTIFICATION)

COURT REPORTER:  Okay.  I need to notify my office.  I have another job today but I can stay.

MR. HORNSBY:  Yeah, yeah.  Let's -- we can take a break for --

COURT REPORTER:  Take a break?

MR. HORNSBY:  Yes.  Take a break.

COURT REPORTER:  Okay.

MR. HORNSBY:  Go off the record for a second.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

COURT REPORTER:  Okay.

(OFF THE RECORD)

COURT REPORTER:  On record.

BY MR. HORNSBY:

Q    Okay.  I know I had handed you right before we stopped a new exhibit, but I'd like to go back real quick --

A    Sure.

Q    -- to Exhibit 8, which is the asset purchase and sale agreement that you had, the last one.  Take a look at that, and on Bates number 90, turn to that. You see on this page it looks like this was executed and signed on April 15, 2013, and I know you had some questions of whether you thought this was the final version or not.  Does this, the signatures here and the date of the execution, you know, rec -- you know, allow you to recall whether or not this was the signed executed --

A    It --

Q    -- agreement?

A    It actually doesn't, and I'm not trying to be difficult, but I just tell you that the liability and potential claims are dated March 22nd, which is a month before, and I know there was several back and forth with the -- that particular statement going back and forth

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

where mainly Marc and Ellen were saying and, like, you know, which ones are to be taken and which ones aren't, and so I don't know.  This could be the final one, but I'm just wondering if there was potentially one after March 22nd for the -- for that particular statement.  This asset purchase and sale agreement does look like it probably was at the correct time.

Q    Okay.  Were you -- when you said you knew there were these -- the -- I guess it's the exhibit that we had looked at earlier in the back with the liabilities and potential claims, that you had seen that going back and forth, who was -- who did you see that going back and forth between?

A    Marc and Ellen.

Q    Ellen at Marder's office?

A    Yes.

Q    Okay.  And were you copied on those e-mails back and forth?

A    Some of them, but not -- I didn't get all of them.  I mean, Marc was sending stuff to her without my knowledge, too.  And frankly, I didn't have an understanding of what a lot of these were because I didn't know the history of how they got on there.

Q    Did you consult with any accountants to review this -- the potential liabilities and claims section

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

coming out of the receivership?

A    No.

Q    Did you meet with any business advisors like Ed Wideman to review this at all?

A    No.

Q    Did you consult with anyone other than Attorney Marder in relation to this asset purchase agreement?

A    I didn't remember talking about those liabilities.  I sat in on a meeting, I think, where they talked about the things, but I didn't have a separate consultation with him.

Q    Okay.  Were you aware that the receiver had a professional fee that was due to him in the amount of $250,000 to be paid over time from the -- from BSP?

A    I thought it was 200,000.

Q    So is it your recollection that it was a $200,000 fee to the receiver?

A    As we sit here today, yes.

Q    Okay.  Do you know if that was converted into a note that was payable by BSP over time or if that was paid in a (sneezes) lump sum upon --

MR. BYRD:  Bless you.

Q    -- the asset transfer?

THE WITNESS:  Bless you.  Okay.  So give me the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

question again.

Q   Do you know if the $200,000 that you recall being owed to the receiver for his services, do you know if that was converted into a note payable by BSP over time or if that was paid in a lump sum at closing?

A   It definitely was not paid as a lump sum in closing, and I know that there was a special agreement that Marc signed that it was going to be paid, and then he didn't pay it on time and eventually cut the bill down, and, you know, he agreed originally to do it, but then he, like everyone else, did not pay them what they were supposed to get.  Like, he didn't pay Marder.

Q   So do you --

MR. BYRD:  Like he didn't pay who?

THE WITNESS:  He did not pay Marder.

MR. BYRD:  Marder.  Thank you.

THE WITNESS:  Even though he agreed to his fees.

BY MR. HORNSBY:

Q   Did Michael Marder's bill for his services related to coming out of the receivership -- was that bill ever paid to your knowledge?

A   It was not, and Reggie -- I remember there was an e-mail where Reggie saw the $40,000 that Marder was charging and wrote back, "This is very reasonable."  And

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

no, they never paid him a penny.

Q   How -- did Michael Marder ever complain to you about BSP's failure to pay any of his bills?

A   Yes.

Q   Okay.  And do you know with certainty that those bills were never paid?

A   I know to a certain point going out two years or three years after BSP came into an existence that it was never paid.

Q   Did Michael Marder ever came to -- come to you asking for you to pay those bills since you had signed their retainer agreement?

A   No.

Q   Did Michael Marder, to your knowledge, ever notify you or BSP that he was going to waive that bill?

A   No.

Q   Do you know if he ever took any action to collect on that bill?

A   I don't know that.

Q   Did you ever pay Michael Marder any portion of any bill related to the -- this asset purchase agreement and BSP assuming the assets out of the receivership?

A   Yes.  I paid almost $17,000 to Marder's office for the closing costs or whatever.  Whether that went -- I don't know what that went to.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    So are you -- you're not sure -- if I'm clear -- are you not sure one way or the other whether the closing costs included some attorney's fees?

A    It didn't include his $40,000 bill, if that's what you're asking me.

Q    Okay.  Did it include other attorney's fee billings that were separate from the $40,000 bill?

A    To your answer, I don't know.  I was only told my closing costs are this amount.

Q    All right.  Let's take a look at the next exhibit I handed you, which we'll mark as Exhibit 9. Have you had a chance to take a look at this?

A    Yes.

Q    Okay.  Is this your signature -- if you look on page 2, is that your signature above Scott Levine?

A    Yes.  It is.

Q    And do you recall signing this action by written consent of the members and managers of BSP Holding?

A    Yes.

Q    What was your understanding of what the purpose of this was at the time?

A    Okay.  There -- at the time of closing, it allowed for one manager to make decisions and sign documents that needed to be signed, was my

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

understanding.  It didn't go forward in time, you know, with BSP where one manager could sign for anything.  It was just for this asset purchase to clear up all the documents and anything that needed to be done for that.

Q   Okay.  Thank you.  Do you remember whether you signed the BSP operating agreement on the same day as the asset purchase agreements and the other closing documents related to the receivership transfer?

A   I'm not sure about the -- I -- I don't fully remember, but I will say this, that based on the fact that my signature isn't on the same day as other people's, it appears that I wasn't at the signing party, and they were given to me afterwards.

Q   Did at some point you go to BSP's office and sign some documents, I think you mentioned earlier?  At some point, you went to BSP's office around the time of the transfer?

A   I did, but I don't remember signing documents, anything like that.

MR. HORNSBY:  And we -- what we'll mark as 10 -- Exhibit 10.

(EXHIBIT 10 MARKED FOR IDENTIFICATION)

BY MR. HORNSBY:

Q   Have you had a chance to take a look at this?

A   Not right now --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Q    Well, just --

A    -- but I've --

Q    -- go ahead and --

A    I've seen this over the years, yes.

Q    Okay.  It appears to be an operating agreement for BSP Holdings, LLC.  And if you look back on Bates number page 4255.

A    Uh-huh.  Yes.

Q    It's dated 6-24-13 and it appears to have -- is that your signature above Scott Levine?

A    Yes.

Q    Okay.  Now, these signatures all appear on the same page, correct?

A    They do.

Q    With the other members?

A    Correct.

Q    Did you sign -- do you recall ever signing the operating agreement in the same room with the other members?

A    No.  I don't.  And as a matter of fact, I remember there was a copy where this Exhibit A was missing -- was maybe missing my signature or something -- the -- the -- I'm sorry, the address was missing. Like I -- I saw a version of this where -- I -- I remember that someone's address was not on here.  So I

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

don't actually remember signing this on 6-24 or getting a copy of it at that time.  I thought my recollection is that they had a -- have me sign a day or two later because I was working and I couldn't make it or something that was sort of my understanding.  This -- there was a -- there was a copy of this operating agreement that was -- didn't have all the signatures on it.  And I remember I had to contact Marder a few years back and asked him for one that had it all on there. This one may be a document that was created sometimes after the initial signature that could be used because it had everyone's signature on it.

Q    Do you know that?

A    I mean, that's what's my recollection is.

Q    So let's look at the last page you've said, Exhibit A.  Is that your handwriting in -- for your address, the --

A    Yes.

Q    Okay.  Because it looks like the writing on each of the -- of each of the addresses is somewhat different; would you agree?

A    Oh, 100 percent.

Q    Okay.  So I know you mentioned earlier that one of the issues you had with Reggie and Marc were that you felt they had violated this operating agreement; is

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

that correct?

A    Yes.

Q    In what way do you feel that they violated their obligations under this operating agreement?

A    Oh, we could spend all day going over it.  If you want to, we can do that -- I will do that.

Q    Let's start with --

A    Okay.

Q    -- what is the main reason you think they violated it?

A    I -- I will tell you that the -- a lot of it is specced out in the cases that we filed, okay?  But I'm happy to go through each one with you, okay?  Let's just start on the back page since we're there, okay?  Do you see where it says Crown Trust 1?

Q    Yes.

A    That is Reggie's post office box at a little mailbox place that's probably less than a quarter of a mile from his house.  It's not Schilling's PO Box, it's Reggie's.  And Reggie doesn't live close to Schilling. Okay.  So I will tell you that I know from statute I believe at 605 and 608, along with what's written in this document which we'll find that all members are entitled to the address information of each of the members.  And I was trying to talk to Schilling before

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

the asset purchase, and I was trying to talk to him

afterwards, and they would not let me have access to

him.

Q   Okay.  What other things --

A   Oh, let's -- let's --

Q   -- do you feel were violated?

A   On this page?  Or just -- let's go through the

whole thing?

Q   Let's go through the whole thing.

A   Let's go through the whole thing.  Okay. Okay.

Let's start with 1.3 name, okay?

Q   Okay.

A   Marc and Reggie -- Marc took out in 2012, BSP

Holdings, LLC.  I don't know why it was taken out.  It

was about the time of the receivership.  I was never

made aware of it.  And I was not aware that they were

using this to -- as the main banking account 'til about

maybe October of 2013.

Q   Now, what do you mean by what were they using

what as the main banking account?

A   Brownie's Septic & Plumbing, LLC.  Okay.  I'm

going to skip through some of this because -- I mean, we

can come back if we need more detail, but let's go to

2.1, page 239, and that's three digits of Bates.  Do you

see where it says members, their respective addresses,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

okay?  Should be on Exhibit A.  How am I going to contact Schilling through a PO Box that Reggie is running?

Q    Okay.  When did you find out -- first find out that the PO Box listed for Schilling was a PO Box that you believe was owned by or -- Reggie?

A    I don't know when it was.

Q    Was it 2013?

A    I don't remember what year.  You're asking me like a very minutiae detail that -- and ask me to pinpoint it.  You're asking me to guess, I won't do it.

Q    Well, this is a deal that you've identified as an issue with the PO Box.  Did -- was -- I mean, do you recall, was it closer to 2012 or 2013 when this was signed?  Or was it closer to --

A    This was signed in 2013 and I think pretty soon afterwards, I knew that this was not right.  Yeah.

Q    Okay.  How did you -- how did you figure out that that was an incorrect PO Box?

A    Because I went to it.

Q    Did you visited the PO --

A    Yes.

Q    -- Box?

A    Yes.

Q    Was it at a post office or was this at a --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

one of those mail ship --

A    Mai --

Q    -- package stores?

A    Mail ship place.

Q    Did you inquire with the owner of the mail ship place who owned the PO Box?

A    I think I did.

Q    And did they tell you who owned it?

A    Yes.

Q    Okay.  Once you had that information, did you notify any of the managers or members that you had an issue with the address listed in this operating agreement?

A    To my knowledge, I did and I was continually, repeatedly asking for Schilling's stuff.  And I think at some point I said, that -- that's your -- your PO Box, Reggie.  What's Schilling's address and phone number?

Q    Did you ever take any other steps to try to research where Schilling's actual physical address was?

A    Of course, I tried to look on the Internet and I could not find it.

Q    Did you ever eventually locate his physical address?

A    Eventually, I found out about it, and it might be very late in this case.  After -- after I believe

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

after the first suit was filed in 2014.

Q   And when you're talking about the first suit, are you talking about the suit that you brought against BSP and its members for access to the records?

A   12-31-14.

Q   Is that a "yes"?

A   Yes.  My -- if that's the date of what you're saying to me, yes.

Q   Okay.

A   Yeah.  Yeah.  I believe that was the records case, yes.

Q   And did you have a process server serve Hank Schilling at his home address?

A   I believe so.  The lawyer who filed that hired probably someone.  Okay.  It says the principal office of the company shall be located, blah, blah blah, United Way.  They moved the company without my knowledge and without telling me to 40 -- 40 -- 4949 North OBT.

Q   Do you remember when that was moved?

A   I know that they purchased it about 12 of '15, and based on the lease date, I don't know for a fact when it moved but I remember finding out something that caused me to go drive over to 4949 and it was not completed yet.  And that's when they filed the false police report accusing me of battery.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q     Now, was the police report accusing you of battery, was that related to an incident that occurred at the --

A     117 --

Q     -- United Way Orlando address or the Orange Blossom Trail address?

A     4949 North OBT.

Q     How many times did you visit the 4949 North OBT address?

A     What period of time?

Q     When do -- when do you -- when did you realize that they had moved there?

A     I don't remember the trigger right now, but something triggered me to go look at 4949.  I don't know if I saw a tax return or what happened.  Something happened that triggered me to go look at 4949.  It was not -- and let me make very clear -- it was not that anyone told me.  Like, Marc or Reggie told me, hey, we moved the company.  They kept it a secret the whole time.

Q     So once you located that address, how many times did you visit the 4949 North OBT address?

A     Well, they filmed me and filed a false police report in which the police stated that they believed this was a false report, okay?  And --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q My question is --
A I'm getting to it.
Q -- how many times did you visit before that?
A I'm getting to it, that's number one. That's number one, okay? I believe the second time was in January of 2017 when we gave notice that -- ahead of time that we were going to do an inspection. And I was filmed by Alison Hope, and I had a forensic accountant. I had a security person with me, and brought my copy machine. And we were told that Marc would not permit us to come in. And the sheriff was called, and a false police report was filed, along with a trespass.
Q Do you know if the 4949 North OBT address location, if the business moved there after the foreclosure judgment was entered against BSP?
A The foreclosure against BSP was really 6-6-16, so it would've been after that.
Q At the time that you're talking about the company having moved to 4949 North OBT, were you represented by counsel in litigation against the company?
A Yes.
Q Who were you represented by?
A I believe, Pringle.
Q Okay. What other issues do you have with

Reggie, Marc, or Hank Schilling and their management of the company that --

A      Oh --

Q      -- you believe was in violation of the operating agreement?

A      -- okay.  To save everyone a lot of time, you don't need to keep asking me that.  I'll keep going through it, okay?  Okay.  2.5, admission of additional members.

Q      Okay.  Do you believe that an additional member was added?

A      Oh, I think Reggie is a -- I'm sorry.  I think Marc is a member of something related now.

Q      So well, do you believe Marc was ever added as a member to BSP Holdings?

A      No.  Okay.  Number 2.9, "In the event the managers of the company determine the funds are required for operation in excess of those set forth in section 2.2, the company shall be authorized to secure loans upon prevailing market terms from unrelated third parties.  And in the event that the company is unable to secure those, then one or more members can."  Okay.  To my knowledge, at this point, Marc did not go obtain loans from banks or normal funding sources.  He just kept going to Schilling.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   Are you saying you were not -- were you or were you not aware that they were going to Schilling to obtain additional loans?

A   Not aware at all.

Q   Were --

A   I didn't know about the second and the third loan.

Q   Were you ever asked, or were you ever informed by Marc or Reggie or anyone else at BSP that the company needed to secure additional loans and financing?

A   As I stated before, they were always hitting up -- hitting me up for money, okay?  And what I asked for was information.  I'm not just blindly throwing money.  They weren't putting in their own money.  Marc told me he wasn't putting in his money, and Reggie told me he wasn't putting in his own money.  And they were always hitting me up for money.

Q   Were you aware that Marc had put in a $400,000 loan to the company?

A   No.  I'm not -- I don't even think I'm aware of that now.  When was that?

Q   What's the -- are there any other loans other than the Schilling --

A   Yes.

Q   -- loans that you believe --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    Yes.

Q    -- violated this?

A    Yes.  They took out at least 11 different loans before they closed the company, without my knowledge, without my consent.  And the loans were for purposes that didn't make a lot of sense to me, like opening a trading account, risky business.  And so there were at least 11 loans, plus the loans from Schilling. And when we get into it further, we'll see that Schilling can -- required unanimous consent.

Q    Okay.  Let's go back to the loans.  You said some of the loans were obtained to open a trading account.  How do you know the loans were obtained to open a trading account?

A    Because I looked at them, and I looked at the timing of them.  At the time they're telling me they don't have money and that we need you to put money in, they secured a Benedini (phonetic) loan, and they secured a Collins loan.  And if you look at the timing of it, you will see that that money was put into a -- an interactive brokerage account, okay?  And $350,000 -- and there are several things with the loans that are, let's say, fraudulent in the loans.  And I'd be happy to go over those if you have those for me to look at.

Q    All right.  Well, let's start with -- you said

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

around the time they were asking you -- if I got this right, around the time they were asking you for some money is when they entered these loans with Collins and Benedini, correct?

A    I can't answer it that way.

Q    Okay.

A    I told you they were always hitting me up for money.

Q    Did they ever tell you why they needed the money?

A    To keep the business going.  It's barely afloat.  But they wouldn't show me proof, and when I had seen a credit card statement in October of 2013 that showed personal charges, when I asked for bank statements, they won't give them to me.  When I'm asking for all this information, why would I invest in something that no one's sharing informa -- financial information with me?  These loans also --

Q    What time period are we talking about when they were hitting you up for money?

A    From day -- almost day one.  Let's say day two, okay, that the company came out of receivership, all the way through my -- I would say October of 2014 when there was supposed to be a meeting with Schilling, and they refused to provide Schilling at the meeting and

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

provi -- refused to provide me an agenda.  I believe that was October 2014.

Q   All right.  Let's go back to -- let's go back to the period you say they're hitting you up for money, from day one through 20 -- October 2014.  During that time period, did you ever tell them, see if you can get it from Hank Schilling?

A   No.

Q   Did you ever -- did they ever ask you to sign any guarantees on any commercial loans from any banks?

A   Reggie sent me an e-mail at one point that says something like, Marc and I have signed personal guarantees, and you're not doing it.  We need you to sign it -- we need you to sign it.  But they never sent it to me.  And that's not the way to raise money in a business.  They weren't putting money in.  They needed to do a capital call if that's what they needed.  But the proof of the matter is, they couldn't show me what their expenses were.  They wouldn't show me their revenue.  So how am I -- I will tell you, at the time they're telling me they need money, they're also telling assumed people on the liability list that they agreed to pay, we're not going to pay you.  We can't afford to pay you.  We're barely afloat.  They agreed, prior to the asset purchase, to pay for that.  One of them is

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Shelley's Septic Tank, okay?  They said they were going to pay for that, and then as soon as they got the company right next couple of weeks, said, no, we're not paying you.  There was also a company that had like tech in its name that was on the assumed list.  And the guy wrote very early on, like, maybe in June of 2013, hey, you know, when can we expect our money?  And Marc said, no, we're not paying you.  We have to just pay our -- people we're doing business with.  Company can't withstand to pay.

Q   Did you know how much the company was requiring for -- well, I -- strike that.  Do you know, in the 2013 time frame, whether the company -- 2013, '14 time frame, whether the company was operating at a loss?

A   If you're asking me if I -- the answer is, I don't know.  But if you're asking me if I saw the tax -- the -- the tax statement, I believe it was like a $450,000 loss.  It was meaningless to me because they were taking so many benefits and -- and -- and consulting and salary fees and stuff.  I mean, just because a company loses money doesn't mean that it's not profitable.  It's how you're -- how you're stripping the company.

Q   Do you believe that Marc and Reggie were taking anything in excess of the $180,000 salary and the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

additional benefits that were provided for in their

employment agreements?

A    I can't answer --

MR. BYRD:  Hang on.  Hang on.  Object to form.
Go ahead.

A    Yeah.  I can't answer that the way you premised it, because you premised it that I agreed to the benefits --

Q    I didn't say you --

A    -- or their salaries.

Q    I didn't say you agreed to it.  My question would be: Based on your understanding of what those agreements provided for?

A    I was not provided the employment agreement. And in fact, at the 6-8-2016 inspection at BSP offices, I was present when the forensic accountant asked Marc and Reggie if there were employment agreements, and they both said no.  I was aware that they were taking benefits they weren't supposed to be getting because they wouldn't show me the rest of this credit card that showed that they were mixing personal and -- personal and business expenses on the credit card.

Q    Let's go to 2013, '14 time --

A    In --

Q    -- frame.  At some point, did you have -- did

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

you have an accountant by the name of Smalley who assisted you in obtaining records from BSP?

A   Yes -- yes.  That was in -- about October of 2013.

MR. HORNSBY:  I'll show you another exhibit.  Are we on 11?

COURT REPORTER:  Yes.

MR. HORNSBY:  Mark this as --

THE WITNESS:  I'm I going to get finished telling you about all the things?

MR. HORNSBY:  We're going to go right back to it.

THE WITNESS:  Okay.

MR. HORNSBY:  This is Exhibit 11.

(EXHIBIT 11 MARKED FOR IDENTIFICATION)

THE WITNESS:  Okay.  Go ahead.

BY MR. HORNSBY:

Q   Okay.  If you look at the last --

A   Oh, wait.  I didn't finish the last part.  I'm sorry.  Give me one more minute.

Q   Sure.

A   Okay.  Sure.

Q   Okay.  If we start on the last page, looks like an e-mail from you to Marc and Reggie from October 20, 2013, which was around the time frame I believe you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

were saying you had an accountant who was helping you get documents, correct?

A    Correct.

Q    Okay.  So Craig Smalley, was he your accountant?

A    Yes.  At that time.

Q    And this e-mail here says that last Monday, Alison briefly talked to Craig Smalley, told him she would get back with him with what he needs.  She never provided it, nor did she get back with him.  Was it your understanding, though, that she had talked to your accountant, correct?

A    Yes.

Q    Okay.  And then --

A    No.  That's -- that she didn't talk to my guy.  She didn't get back with him.  He reached out and didn't get back to her.

Q    Well, you say here last Monday, Alison briefly talked to Craig Smalley.

A    Oh, okay.  All right.  You're right.

Q    And told him she would get back with him at what he needs --

A    Okay.

Q    -- and your issue was that she didn't get back with him, correct?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

Levine-Scott   09-08-2021

A    Correct.

Q    Okay.  Then if we skip ahead to the next page, it looks like here the following day on October 21st, there's a response from Alison, and you're included in that e-mail, correct?

A    Correct.

Q    And she explains that she was busy and didn't get around to it for all intents and purposes, correct?

A    Correct.

Q    Okay.  You respond to that e-mail, which is the e-mail on the front page -- look at that -- that same day.

A    No.  That's Smalley responding.

Q    Oh, I'm sorry.  You're right.

A    Is this my copy, by the way?

Q    Yeah.  This is yours -- well, actually, no, that one's not.  I'm sorry.

A    Whose is it?

Q    Well, that's the court reporter's.

A    I just drew on it.  Can I switch it with my lawyer?

Q    What did you --

MR. BYRD:  I've written on mine.  That's okay. Just for the record be it known you made a star in red.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

THE WITNESS:  Yes.

MR. BYRD:  On the second page --

THE WITNESS:  Uh-huh.

MR. BYRD:  -- in the middle.

THE WITNESS:  Yeah.

MR. BYRD:  Okay.  That's your handiwork. Don't do it again.

THE WITNESS:  Okay.  I didn't know.  I thought this was my copy because it was sitting here.

BY MR. HORNSBY:

Q    Was there something that you noticed in the e-mail that made you put a star next to it?

A    Yes.  That she's doing work at night for another bookkeeping -- another business.

Q    Okay.  And what is -- what's significant about that to you?

A    It's Reggie's business.

Q    What business is that?

A    I don't know which business of Reggie's because Reggie has several businesses.

Q    Okay.  How do you know that she was doing work for Reggie's business at night?

A    Because it was in Monica's deposition.

Q    And who is Monica?

A    Monica is someone who has worked for BSP and

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Brownie's for a long time, even before it came out of receivership.

Q   Now, flip to the first page.  We've got Smalley responding to Alison.

A   Yes.

Q   Basically complaining that in the time she sent the e-mail, she could have sent the records, correct?

A   Quick -- the e-mail -- the QuickBook e-mail file which we continually asked for, yes.

Q   Okay.  Well, was this -- wasn't this the first time the QuickBook file was asked for, October 2013?

A   Probably, yes.  I'm not 100 percent certain, but probably, yes.

Q   Okay.  Why was it at this time in particular that you were looking to have access to the QuickBook file?

A   Okay.  What I remember very clearly is that we wanted basically all records and books of account from BSP Holdings.  And Craig suggested we start off at our first meeting, just ask for some financial statements, a balance sheet, a cash flow statement, and a profit and loss statement.  And --

Q   Were those given to you at the first request?

A   I -- I believe they were sent to -- I don't

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

think he handed them to us at the meeting.  I think they were sent later to his office.  And that's when he discovered that certain things on those financial statements didn't line up.  Okay.  And so that's when we went back, and we asked for all records and books of account, including the QuickBooks file in October.  Our second meeting we had it in October.  And we were not given the QuickBooks file at that meeting.  I'm trying to remember.  There was a meeting where I think Craig had to assist Alison with a flash drive and being able to download.  Yes.

Q    Okay.  Did Craig ultimately get a copy during this time period, October, November 2013, of the QuickBooks files from BSP?

A    Yes.  But they were Brownie's Wastewater Solutions Company, Inc.

Q    Okay.  And did it appear that they had just continued on using the same books and QuickBooks files for Brownie's Septic & Plumbing and not change those over to BSP?

A    Correct.

Q    Did they ever provide you with a reasoning for why they did that?

A    Well, they admitted that it was wrong, and when I came back for another visit, they told me that

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Alison was off for a week to correct it. And I'm just learning now from the most recent QuickBooks we got that they never -- they're lying to me, they never did change it.

Q    Did they ever explain to you that the difficulty in changing it over was that they had accounts receivable back from the old company that were still due to the new company, and there might be issues with making sure they capture all past due bills, payments, and accounts receivable?

A    They never explained that to me and, in fact, said that they were going to change it over. But it wasn't just that that they were doing out of the wrong account. They were reporting the 941 in UCT information to both state and federal government's under the wrong account, which I made them aware of.

Q    Now, at some point, do you believe they started using accounts in the name of Brownie's Septic & Plumbing?

A    Yes -- wait -- wait, I take that back. When you mean accounts, what accounts?

Q    Well, you're referring to these QuickBooks accounts that were -- the accounts in QuickBooks were -- I'm guessing the -- if I understand you correctly, the name of the QuickBooks file were accounts for Brownie's

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Wastewater Solutions when you reviewed them in October, November 2013; is that correct?

A     Yes.

Q     Okay.  So at some point, have you obtained a copy after this of quick -- did you -- was there a second time in which you obtained a copy of the QuickBooks files?  Let me ask that.

A     Yes.  And it was literally in about May of 2016, after asking from 2013 all the way to May of 2016. They gave it to me right before they closed the company without telling me.

Q     Now, do you know if the QuickBooks files in May 2016 were kept under a different name than the QuickBooks from October 2013?

A     I believe they were.  Simply for the fact, I think I saw a financial statement at some point that said Brownie's Septic & Plumbing on it.

Q     What's your understanding of Brownie's Septic & Plumbing and its relationship with BSP?

A     Brownie's Septic & Plumbing, LLC is a wholly-owned subsidiary of BSP Holdings, LLC.

Q     So do you --

A     That I was not made aware of.

Q     Okay.  Do you take issue with -- given that, as you said, Brownie's Septic & Plumbing is a wholly-

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

owned subsidiary of BSP, do you take issue with the QuickBooks account being in the name of Brownie's Septic & Plumbing, LLC?

A   I don't know at this time.  I haven't really thought about it before.  It's probably -- I mean, it's fine to run something under another account.  I mean, I -- I'm not fully aware of whether I would say yes or no, but it seems like it might be okay.

Q   Do you know whether the bank statements that -- or the bank accounts that Brownie's Septic & Plumbing -- I should say -- strike that.  Do you know whether the BSP Holdings whether they were using bank accounts in the name of BSP Holdings or in the name of Brownie's Septic & Plumbing?

A   They did both.  They didn't open Brownie's -- they didn't open BSP Holdings at least for about a month after the company came into existence and were using Brownie's without telling me.

Q   Okay.  Were you provided in October 2013 or November 2013, in that time frame, with a copy of the QuickBooks files as of that date and time?

A   What was the date?

Q   October, November 2013, time frame.  Did you receive a copy of the QuickBooks files?

A   In Brownie's Wastewater Solutions, Inc.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    Okay.  Do you believe there were separate QuickBooks records kept for BSP Holdings?

A    I don't know.

Q    Okay.  Do you have any reason to believe that there were -- anything that you have found, discovered?

A    I was told that they gave Alison a week off to correct everything, but they never corrected it.  I don't know what to believe from them.

MR. HORNSBY:  Okay.  Another exhibit and mark this as 12.

(EXHIBIT 12 MARKED FOR IDENTIFICATION)

A    Okay.

BY MR. HORNSBY:

Q    Okay.  We start at the back from Smalley to you, October 24, same -- 2013, roughly same time period.  It looks like your accountant's asking you for these QuickBooks records; is that right?

A    This is a little puzzling to me because he says I'm in receipt of a cumulative general ledger from Brownie's.

Q    Yeah.  Do you know what that means?

A    I know what a cumulative ledger is.  I would assume that that had to be QuickBooks.

Q    Do you believe it was paper copies?  Do you remember receiving printouts?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     **Toll Free 855-MYDEPOS**

A    Well, he -- he gave me a pdf, I think of, like, the general ledger.  I think he probably wanted to look at other things in there or -- I'm just guessing. I think he maybe needed confirmation of certain things and financial statements, and he -- yeah, he says, I just have three different net income figures.  He needed -- that's what I was saying a long time ago about they gave us a daughter file, and the daughter file was not the complete access to QuickBooks.

Q    What is the daughter -- what do you understand a daughter file to be?

A    That's very easy.  A -- just like a mother and a daughter.  A mother is the whole thing.  The daughter is a little section of it, okay.  So we -- this fits with my story that I've been telling forever that Smalley told me that we had a daughter file.  We don't have the whole thing, and that he needed the whole thing in order to try and explain why they have three different net income figures.  That doesn't make sense to have different net income.

Q    All right.  Did you and Smalley ever go to Brownie's and meet with Marc and Reggie to discuss the accountings and the QuickBook files?

A    I can't answer the way you asked, but I think we went to them to discuss the financial statements we

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free **855-MYDEPOS**

were given that didn't match up.  I don't believe that we -- when we finally got the QuickBooks file, I don't remember going back and discussing problems with the QuickBooks file.  Maybe we may have.  We may have.  I just remember that he told me there was problems with -- that's where he alerted me that BSP Holdings Bank wasn't holding any money, and the money was all in Brownie's Septic & Plumbing.  And we were not aware that BSP Holdings was a fully owned subsidiary.  So he was basically telling me that none of that was my money.

Q    Okay.  So if I understand you, Mr. Smalley was concerned that the money in the accounts for Brownie's Septic & Plumbing, that you weren't entitled to any ownership of that because you were unaware and he was unaware at the time that Brownie's Septic & Plumbing was a wholly-owned subsidiary of BSP?

A    Yes.

Q    Okay.  At some point, did you -- when did you first learn that Brownie's Septic & Plumbing was a wholly-owned subsidiary of BSP?

A    To be honest with you, I don't know when that was.

Q    Did you contact Marc and Reggie and ask them what was going on with the separate bank accounts in Brownie's Septic & Plumbing?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    I believe I -- I believe I did, and I believe I also -- when I was requesting them, I made them aware that, hey, you gave me bank statements that say Brownie's Wastewater Solutions.  I need BSP and Brownie's Septic & Plumbing.  I believe that was the case.

Q    What did they explain to you at that point about the accounts?

A    I don't think they ever said anything about that there was a wholly-owned subsidiary.  I think I learned that almost positively from legal -- legal from my lawyer.

MR. HORNSBY:  Exhibit 13.  I just wrote on the wrong one.  Look, Tucker, let's switch.

(EXHIBIT 13 MARKED FOR IDENTIFICATION)

MR. BYRD:  There you are, give you a clean copy.

MR. HORNSBY:  Thanks.

BY MR. HORNSBY:

Q    This e-mail appears to be from Craig Smalley to Alison Hope with a copy to Reggie and Marc dated November --

A    Can I just finish reading for a second?  Okay. Go ahead.

Q    -- dated November 14, 2013.  Now, I don't

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

believe you're on this e-mail. Do you recall receiving this?

A I don't remember seeing this. I mean, my name should be on here if I received it.

Q Okay. But this is during the time that Craig Smalley was working as your -- as your accountant, correct?

A Correct.

Q Okay. And in here he states, "Thank you so much for your help today. We were able to crack the code to the administrator password and we now have full access to the file." Is that -- was that correct as of that time, that you had full access to the QuickBook files?

A The answer is, I don't know. I remember we were trying to get the password and I just don't remember if we had access to the full -- full file or not at that time.

Q I mean, do you have any reason to believe that Craig Smalley would have said he had full access to the file if he really didn't?

A No.

Q Okay.

A I think I need to make an explanation about what you were saying -- to your comment about the full

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

access to the file.  There has been a long-running thing saying that I had cloud access to Brownie's.  The only thing I had in 2013 was a flash drive for that specific date and time.  It didn't go forward.  And I didn't get updated 'til 2016 when I received another flash drive that was good 'til that date before they surreptitiously closed the company.  So I just want to make it clear when you say I had access to the file, I only had access to the file to that specific date in October.

Q    Understood.  Did you -- at the time, did you review personally the QuickBook files that you received in November of 2013?

A    I glanced over them.  I didn't do a forensic accounting or anything of them.

Q    Did you look at profit and loss reports, income statements, things like that?

A    I was not able to print them because I didn't have a working copy of QuickBooks to run it.  I told you I had a PDF file.

MR. HORNSBY:  Okay.  All right.  We'll mark it as 14.

(EXHIBIT 14 MARKED FOR IDENTIFICATION)

COURT REPORTER:  Uh-huh.

BY MR. HORNSBY:

Q    This is a profit and loss report and this is

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

through -- it does say Brownie's Septic & Plumbing, LLC through December 2013.  Do you see that?

A    Yes.

Q    Okay.  If you look on the second page, do you see where at the top third entry down it says consulting fees?

A    Yes.

Q    Do you recall seeing consulting fees included in the profit and loss reports from Brownie's Septic or Brownie's Wastewater Solutions in the QuickBooks file that you received in November 2013?

A    I did not do that evaluation of it to look for consulting fees because it was my understanding that they were following the operating agreement and they were both to be salaried employees.  I was baffled by the fact that consulting fee showed up on here, which I think I testified to before.

Q    Did you raise any issue with either of them at this time back in November, December 2013 about consulting fees being included on the QuickBooks reports?

A    The answer is, I don't remember, but they weren't giving me any information about anything other than to provide us the limited number of financial documents we received.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   But you did have the full QuickBooks file at your disposal to review, correct?

A   That is not true.  I did not have the QuickBooks -- full QuickBooks file.  I had the PDF of the cumulative ledger.

Q   But your accountant had the full QuickBooks file, correct?

A   For that October date, yes.  I didn't verify it, but that's what he told me.

        MR. HORNSBY:  All right.  This is 15.

        (EXHIBIT 15 MARKED FOR IDENTIFICATION)

Q   Handing you another printout from QuickBooks for a balance sheet, Brownie's Septic & Plumbing as of December 31, 2013.  Do you see that?

A   Yes.

Q   Okay.  And if you'll turn to page 2, do you see where there's a -- in about in the middle of the page there, it says long-term liabilities?

A   Yes.

Q   Okay.  And there are a number of notes payable listed on there, do you see those?

A   Yes.

Q   Okay.  Were any of these notes payable -- did you have any issue with any of these notes payable at the time you had the QuickBooks files in November 2013?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   **www.MILESTONEREPORTING.com**   **Toll Free 855-MYDEPOS**

A   I can't answer that question the way it's asked because I'm not sure -- I told you I wasn't able to print financial statements and I was counting on Craig to tell me what was wrong with the accounts.  And I -- I don't remember.  If you're asking if I have an issue with it I don't remember whether I had even seen -- seen this.  It's possible it's on some limited stuff they gave us and I just -- I wasn't doing a forensic accounting of it.

Q   Okay.  Well, let's look at page 2 again on the long-term liabilities.  You look under the Reunion Bank Consolidated, there's a N/P CNH Capital excavator. Below that is a Wells Fargo note for 105,000 and change. Below that is a CNH truck loader for 43,000, and then a note payable, Hank Schilling loan, for 721.  Did you have access in QuickBooks to view the notes payable that were available in that November 2013 time frame listed on the balance sheet for Brownie's Septic & Plumbing?

A   Did -- repeat the question.  Did I have --

Q   Did you have access to view the notes payable that were on the books of Brownie's Septic & Plumbing as of November 2013?

A   The answer to your question is, no.  I personally didn't have it.  I don't know if Craig Smalley had it, but I could not view the notes payable,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

Isaac Levine Scott  05-08-2021                                    135

the actual note because it's not in QuickBooks.

Q    Okay.  But you had the financial statements that showed they were representing that they had notes payable, the company did, correct?

A    You're asking me to remember in 2013 whether I saw this on a balance sheet?  I don't remember.

Q    Okay.  Did you raise any issue about objecting to any notes payable for Brownie's Septic & Plumbing or BSP in November 2013, December 2013 time frame?

A    I don't remember if either I or Craig, when we went back, asked them about that.  I don't remember right now, today.

Q    All right.  Let's look at below the Hank Schilling loan there is a note payable, TAS Financial. Do you see that?

A    Yes.

Q    What's your understanding of what TAS Financial is?

A    Tropical Auto Sales, Reggie's company.

Q    Okay.  Were you aware --

A    Did I get told -- told this by Reggie?  No.  I figured it out from reviewing documents.

Q    Okay.  Were you aware that TAS Financial had a note payable to it in the amount of $300,000 that Reggie had contributed to the company?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    No.  I don't remember, and I wasn't made aware of it.  And if you're asking me, did I do a, like forensic effort to discover what fraud they did?  No.  I didn't.  I had Smalley who I hired who made me aware of certain things that were wrong, but no.  I was just too consumed with trying to get information.  I didn't have the ability to do a forensic accounting and determine where they're frauding me.

Q    What was Smalley engaged to do for you?

A    To help me figure out what's going on with the company --

Q    Okay.  When you --

A    -- and gain records.

Q    -- and you obtained -- you had these records with the QuickBooks files showing the notes.  Did you ever question Reggie or Marc about the notes payable from Brownie's Septic & Plumbing?

MR. BYRD:  Objection to form.  Go ahead.

A    I don't remember whether I did or didn't, but I don't remember whether we saw previous balance sheets that showed that they weren't on there.  I didn't -- I mean, otherwise, I could think maybe some of this is assumed debt.  I didn't go back and look at the liabilities schedule.

Q    Okay.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A     Answer is I don't remember right now, today.

MR. HORNSBY:  We'll mark this as 16.

(EXHIBIT 16 MARKED FOR IDENTIFICATION)

A     Okay.

Q     Okay.  So this looks like it's a little backwards than usual.  The earlier e-mail appears to be at the top and the later e-mail appears to be at the bottom.  If we look at the top e-mail, it looks like it's from you to Reggie and Marc, November 24, 2013, correct?

A     Right.

Q     Okay.  And it appears you're asking for copies of the bank statements for 2013 and that you're under pressure to complete your accounting before the year-end.  And this is tax planning, correct?

A     Yes.

Q     Okay.  So what was it that you didn't have from the QuickBooks files that you would need bank statements in order to complete your accounting?  And when you say your accounting, are you talking about your personal accounting, your personal tax accounting?

A     Yes.

Q     Okay.  What was it that you needed BSP and/or Brownie's Septic & Plumbing bank statements to complete your personal tax accounting for the year?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    To -- okay.  So understand that I got the QuickBooks files sometime in October, early November, okay?  And I wanted to see an update of that and I wanted to see bank statements to try and see if we can figure out why there's different net incomes and whether -- what's going on with the company.

Q    But did you tell Marc and Reggie that that was your issue in this e-mail or did you tell them that you're -- you needed these records for accounting and tax planning?

A    Well, I needed to know whether I had a loss or a -- or a gain for the year or what was going on.

Q    Well, which one was it?  Was it for tax planning to know if he had a loss or gain or was it to find out if there was something nefarious going on?

A    It was probably both.

Q    Did you -- anywhere in this communication, did you notice -- notify Marc and Reggie that you had concerns about any expenditures or things that you noticed in the QuickBooks files that you already had obtained?

A    At this date, in November 24th, I think we had had the second meeting with Craig where we talked to Marc and Reggie, made them aware of -- that the earlier financial statements didn't make a lot of sense.  They

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

couldn't answer them for us. And basically -- what was the question again?

Q That's okay. Did -- was Craig Smalley engaged to prepare the tax filings for Brownie's Septic & Plumbing?

A No.

Q Or for BSP?

A No. He may have asked me for the bank statements, or I may have just wanted them as I told you before to -- he may have needed them to try and make sense of the previous documents we got or to figure out where I stand with the company, part of my evaluation.

Q Would you agree that for the purposes of your tax reporting liability, that it would be a K-1 that would come from Brownie Septic & Plumbing to you, that would report any gains or losses that you had for your investment in Brownie Septic Employment?

A Okay. I'm happy to answer that, but a little different way, okay?

Q Well, let's just --

A Well, I can't answer it the way you phrased it because -- it -- it -- it's -- it could be interpreted in two different ways.

Q Let me ask you this: Does -- did Craig Smalley at the time, November 24, 2013, did he have any ability

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900   www.MILESTONEREPORTING.com   Toll Free 855-MYDEPOS

to prepare the tax returns and K-1s for Brownie Septic Employment or BSP?

A   We didn't have the K-1 for 2013, wouldn't come out until 2014.  And as you know, Marc always files among the last possible date.  So the 2013 K-1 would have been given to me approximately September 15, 2014.  So bank statements would allow me to figure out what -- whether the company is profitable or not, and not waiting nine months for a K-1.

Q   Well, in November 24, 2013, you say your year-end planning, so you would be planning for year-end Dece -- for year-end 2013, correct?

A   Correct.

Q   And the BSP tax return year would have ended when?

A   They didn't tell me when they were going to end it.  But normally it's 12-31.

Q   Do you know if they operate on a fiscal year or a different year?

A   Well, they did operate -- they did operate on -- on a 12-31 fiscal year, but they changed it at some point after they changed the company.  After they pushed me out, they changed it to a June 30th day.

Q   Do you remember when the first time you received a K-1 from BSP was?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900       www.MILESTONEREPORTING.com       Toll Free 855-MYDEPOS

A    I don't remember, but I'm guessing it was probably around 9-15-2014.

Q    So again, what would a fraction of their year records, bank statements, provide to you that would in any way assist you in getting to an estimated number of what your tax liability was if the year-end for their BSP Holdings didn't end for another eight plus months?

A    So that -- you said it went in for the year-end ended two months later -- a month later.  You said it went in for nine months.

Q    For the year 2013 BSP tax returns, did you receive a K-1 that showed a fiscal year-end for Brownie Septic & Plumbing before they switched to a different year-end for the business?

A    The question is so -- so all over the place.  What -- what is it you're exactly trying to ask me?  Because --

Q    Let me ask you this --

A    I want to -- want to answer you.

Q    Here's my question.  I don't understand what bank statements through, let's say November 2013 would provide you that would in any way assist you in your personal tax accounting -- account.

A    I can help you --

Q    How?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A      -- with that.  If I look at the bank statement and I see that there's a lot of income coming in, okay, and I see that not too much is being sent out, I can assume there's profitability, okay?  If I see I'm being told by Marc and Reggie how the company's barely afloat.  Let me look at the bank statements, they're important records.  Let me see all of the bank statements because they're operating under several different bank accounts, and let me determine if I'm going to have a gain or loss for the year.

Q      Were Reggie and Marc informing you at that time that there was going to be a large loss for that year?

A      There was an e-mail that he sent that said you can assume a large loss, but I'm not sure if it was for 2013, it might have been for 2014.  And like I said, you're asking me to rely on someone who I learned was not giving me correct information.  And it wasn't just me, it was the other assumed liability people and other things.

Q      Did you ever get copies of the bank statements during that time period, November 2013?

A      You're asking me to remember from eight years ago when I exactly got the bank statements?  The answer is I don't remember.  It was in my interrogatories that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

were in exhaustive detail given to you.  If you need the information to be accurate, you should look in that.

Q    Did you or did you not receive bank statements from Brownie Septic & Plumbing in sometime in 2013 and or '14, do you recall?

A    My recollection is I did receive some bank statements in 2013.  I'm not sure if they were for the correct companies or if they were for Brownie's Wastewater Solutions, I don't remember.  Okay.  But I will say that the 2014, I'm not sure if I got -- I think the bank statements mainly came from discovery.  I don't remember.  I remember that there was a profit and loss and a balance sheet from 2014 -- December 31, 2014, that was given to me about March of 2015 from my lawyer.

Q    Were you allowed access to review the bank statements on-site at BSP's offices with your accountant?

A    Absolutely not.

        MR. HORNSBY:  You get the Exhibit -- mark it as 17.

        (EXHIBIT 17 MARKED FOR IDENTIFICATION)

        COURT REPORTER:  Uh-huh.

A    Okay.

        BY MR. HORNSBY:

Q    Okay.  If you look at the first e-mail on the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

top of the page, page 1.

A    Yes.

Q    It looks like it's Reggie to you, November 27, 2013, the same time period about the bank statements, correct?

A    Yes.  And it's also including Alison and Marc.

Q    Yes.  And he says, "Yes, I will provide the bank statements this week.  Please be advised under no circumstances is Craig Smalley to have copies of our bank statements.  You and Craig can meet and review only.  Did you meet and review the statements at Brownie's offices?

A    Absolutely did not meet and review them at Brownie's offices.

Q    Why not?

A    Because there's a lot of things that are communicated in the e-mail by Reggie and Marc saying they're going to do something and they don't do it.

Q    Did you go there?  Did you set a time to go and review the documents, bank statements?

A    Did I go there and review them?  No.  I didn't.  But I think they may have provided.  I'm not even sure because -- you -- I'm getting confused about the few financial documents we got with whether they provided bank statements in 2013.  They may have

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

provided some bank statements in 2013.  But I remember almost all the bank statements we got were from discovery.

Q    Was there anything preventing you in November 27th time frame 2013 from you and Craig Smalley going to meet and review the bank statements at Brownie's offices?

A    Yes.  They told me that they would not allow Craig Smalley to come there.  He couldn't look at the bank statements like it's laid out here.  And they -- I -- I mean, they say a lot of things but they don't do them.  They did not -- they did not allow him back.

Q    Would you --

A    I think that's in more than one e-mail.

Q    Would do you agree that in the second line of this e-mail, it says you and Craig can meet and review only?

A    Yes.  I see that.  I don't know what that means, though.  You -- I interpreted that to be -- it doesn't say to be reviewed at BSP.  He's telling me he won't let him see the statements at first and then he's saying -- you get it?  I didn't interpret it, it was strictly copies.  He told us in a previous e-mail, he won't allow him to have any financial records.  And he's saying that there's Craig's inability to understand

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

accounting.  Craig doesn't have an inability to understand accounting.  He just had an inability to match up things that didn't match up of Brownie's and BSP.

Q   All right.  I'm going to hand you another -- here.

A   I just want to say -- it says, please be advised, under no circumstances, capitalized, is Craig to have copies of our bank statements.  I interpreted that to mean he didn't want to look at them.

MR. HORNSBY:  All right.  I'm handing you what we're marking as Exhibit 18.

(EXHIBIT 18 MARKED FOR IDENTIFICATION)

A   I would like to go back to the last thing, if I could, and give you some more information.

BY MR. HORNSBY:

Q   Well, let's -- at this point in time, let's move onto this next document here.

A   Okay.

Q   All right.  If you look at the second e-mail down from the top, on page 1, December 2, 2013.  Looks like from Reggie to you.  Do you see that?

A   Yes.

Q   And it appears to be, again, talking about the bank statements.

MILESTONE │ REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

A    It's not Reggie to me.  It's me to Reggie.

Q    Sorry, you to Reggie.  Yes.  No.  I'm referring -- I'm sorry.  I'm referring to on page 1 this e-mail here.

A    Okay.  Okay.

Q    Second one --

A    Okay.

Q    -- down from the top.

A    Okay.

Q    December 2, 2013 at 10:43 a.m.?

A    Yes.

Q    From Reggie to you.  It says, Scott, of course, you will get copies of both accounts.  They will be from June when we took over.  If you want the prior receiver statements, you will have to contact Bob Morrison.  I will see if I can scan and send to you.  Is he referring to the bank statements that you had asked for in the e-mails preceding that, correct?

A    I believe so.  But it's not specced out.

Q    Well, let's look back at the e-mail before that at the bottom of the page, from you to Reggie.  Reggie, will I be getting the -- all the bank statements from the different accounts?  Do you -- so you were discussing the bank statements, and when you say different accounts, are you referring to all the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

accounts for BSP and Brownie's Septic?

A     Yes.

Q     Did you end up getting copies of those accounts at this time period in December 2013?

A     The answer is I can't remember right now whether I -- because I am getting confused about the financial statements I received, but I will tell you that the business about them telling me they hired the accountant, Rick English, they totally sent me on a wild goose chase for four or five months.

Q     Well, I'm not asking about Rick English.

A     They paid 900 for a retainer for him.  And then they never sent him a document, but they kept telling me they were using them.  That's where I was supposed to get my documents from.

Q     Well, let me ask you a question.  So it seemed like the important thing here in all your e-mails that we've just reviewed was that you wanted copies of the bank statements, correct?

A     That's not a true statement.  I wanted all the books of account and records.

Q     Well, you had the -- you had the QuickBooks files; did you not?

A     Did I have credit card statements?  Did I have a list of employees and how much they were being paid?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Did I have cash receipts that were handling cash? I mean, I could go on and tell you ten different things that I didn't get.

Q Where were you requesting that information in November and December of 2013?

A At the meeting that I had with -- with Marc and Reggie, and I -- I think it was either October, November, December. There is a meeting where I did ask for books of account and records. The first meeting we went, I told you Marc -- Smalley said, let's be very subtle and just ask for the financial statements today. But when we went back, we asked for them, and I asked for them when I went back in December.

Q Well, now, it appears Reggie is providing you copies of all the bank statements that should show all the transactions in and out of their bank accounts, correct?

MR. BYRD: Object to form.

A I don't know that he provided them. I said I don't remember.

Q Well, let's look at -- let's look at the --

A Okay.

Q -- e-mail about --

A What he says and what he does is not -- is not to be taken literally.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free **855-MYDEPOS**

Q   Well, let's look at the e-mail right above at the very top of the page Monday, December 2nd.

A   Yeah.

Q   It says, "FYI" -- this is from Reggie to Marc with a copy to Alison.  Oh, never mind.  I apologize.

A   Yeah.  He's --

Q   Strike that.

A   -- finishing at 10:45 in the morning, correct.

MR. HORNSBY:  Okay.  So another exhibit, we'll mark this as 19.

(EXHIBIT 19 MARKED FOR IDENTIFICATION)

A   Yes.

BY MR. HORNSBY:

Q   Okay.  So I think you just mentioned you had requested some additional records?

A   Oh, I'm sorry, I didn't read the bottom part.

Q   At the bottom, okay.  Read the bottom e-mail, if you will.

A   Okay.

Q   Okay.  So just to recap, at this point in time, you had received as of November 2013, the QuickBook files, correct?

A   Yes.  That appears to be correct.

Q   And it looked like in the previous e-mail that was December 2, 2013, at least there was discussion that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

the copies of the bank statements for both accounts would be available to you, correct?

A    That's what it says in the e-mail.  Whether it occurred or not, we don't know.

Q    Okay.  And now this is December 8th when you send an e-mail that appears to be looking for some additional records; does it not?

A    Yes.  Yes.

Q    Okay.  What were you looking for at this point in time?

A    A number of things.  I was looking for credit card information, the employee list, cash receipts.  I had a whole list of items that I was looking for, and it's --

Q    And who came up with the list of items you were looking for?

A    I don't remember.  I think -- I -- I don't remember if someone else gave me that information or if I did it myself.

Q    I mean, were you reviewing the QuickBooks files that had been provided you at that time?

A    I don't believe so in December.

Q    Were you reviewing -- do you remember reviewing bank statements that may or may not have been provided to you?

**MILESTONE | REPORTING  COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A    I don't remember whether I received the bank statements at that time.

Q    All right.  Let's look up at the top e-mail. That's the response from Marc Barhonovich on December 10th.  Do you see that?

A    Yes.

Q    He says he's going to be out, his son's having surgery, that Alison and Reggie will be here.  He's saying, "It seems like you're taking a sincere interest in the business" and he could use your help.  He goes on to mention that Christmas and New Year's end midweek, so they have to generate enough revenue to cover payroll during the time that essentially employees are off.  Do you recall this e-mail during this time?

A    I do remember reading this e-mail.

Q    Okay.  He says they're going to be short on funds, and he asked about needing 100 -- $100,000 cash infusion by Christmas.  Did you remember talking to him at all about his need for a cash infusion for BSP around that time?

A    I don't think I answered this.  This was a ridiculous request for not providing me financial statements and telling me that he wants -- this is just part of what he was doing with hitting me up for money all the time.  Always hitting up -- always hitting me up

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

for money, but wouldn't give me what I needed.  And I do remember going in December to have that meeting where I looked at Reggie's credit card statement, and it had mixed personal and business.  But I remember that.  I don't know if it occurred on this date because I remember Marc being in the office and I asked him, can I see your credit card statements.  He was busy watching SNBC and trading stocks and he says, I'm not giving them to you.

Q   So in this December 2013 time frame you recall going to Brownie's offices and reviewing credit card statements; is that right?

A   That is incorrect.  I said I saw one credit card statement, a partial credit card statement from Reggie, and once I started asking questions, why are there flights to Seattle?  Why are there all these truck expenses and stuff?  He pulled it away from me.

Q   You see here it says, "P.S., Reggie and Alison need to know what time you expect to arrive tomorrow." Did you end up arriving, if you recall, to review the statements and information?  You asked about employee list contact info, and job functions?

A   I am -- this is what I said to you a minute ago.  If Marc is stating he wasn't going to be there, then it didn't happen on that day because Marc was in

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

the office when I asked him for credit card statements. So whether -- I don't know if there was other e-mails that said, hey, you know, we can't do it tomorrow or whatever or -- or I wanted Marc to be present, and I rescheduled. I don't know. If you want to show me e-mails I can put it together.

Q    Were you ever provided access to the complete employee list, contact information, and job functions that you requested?

A    Absolutely not. And when they were received in discovery, they were the most haphazard. They were -- half the people weren't even on the list anymore that worked for the company. They didn't have all the items on it. They didn't have their addresses, phone numbers. It was just a list and maybe it said what their basic job function was, but I'm not even sure that was on there, and I clearly remember that. And they didn't provide it that day to me, it was provided as part of discovery.

Q    What was the importance of needing that information to you?

A    I'd like to know how much employees that were on the payroll. I'd like to know whether they're employing their family like Reggie employed Tiffany, his daughter. I'd like to know how much they're paying.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Want to know what the different job functions are. See what's going on with the company.

Q   Didn't your accountant receive payroll tax information and payroll reports from Brownie's Septic & Plumbing around that November, December time frame?

A   No. He received just the quarter. Just the quarter statements in 2013 of Brownie's Wastewater Solutions, which I had to notify them that they were telling the government that the company was operating out of a wrong account. They were using the wrong FEIN number to report to -- they were telling the government, we're reporting as Brownie's Wastewater Solutions when they were really supposed to be BSP or Brownie's Septic & Plumbing.

Q   Okay. At some point, were you added to a daily e-mail list about daily revenue coming into the company?

A   Yes.

Q   Okay. And what was your understanding of what those reports were supposed to include?

A   Those were a daily snapshot of all the revenue coming into the company, and it was, like, credit cards, it was ACH, it was cash, it was checks, all the different things that would be payment for services rendered. And I only received it after I filed a

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

request with Houston Short -- my Houston Short two letters where they completely ignored my request for records.  They cut me off of the daily revenue within a month or two of that.

Q   I got a stack here.  You can flip through it if you want.  But I'm not going to ask you about each of these.  I just want you to take an overall look.  These were printed out from records and documents you had produced to us.

A   Yes.  Yes.

Q   Have you seen -- I mean, are these the revenue e-mails, the daily revenue e-mails you're discussing?

A   The answer is I believe so, but I -- without looking at each one and comparing it to what I originally sent, I believe it is.  I believe you're not making up something.  Right.

Q   Okay.  I looked through there and as near as I could tell, I saw January 13, 2014 through October 7, 2014 for revenue e-mails.  Does that seem to be about the time frame that you recall receiving -- being copied on daily revenue e-mails?

A   Yes.  But there -- I don't know if included in here, and they probably are, they would miss one every so often, and I had to say to him, hey, didn't get this one, didn't get that one, then they would send them to

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

me. So it's probably here. And then what date do you have it goes 'til?

Q October 7, 2014.

A Okay. Here Bates 7384 shows where I was asking for information. I would agree with you. That -- that looks like I got them to October 7th, and then they wouldn't give them to me. And they wouldn't tell me where they were.

Q Were you being provided with quarterly financial statements from BSP and Brownie's Septic?

A Absolutely not. From what -- actually the answer is absolutely not, but do you want to qualify it in a time period?

Q For the year 2013?

A Was I getting quarterly financial statements?

Q Yes.

A I don't remember if they gave them to me at the end of the year, which didn't have the balance sheet for each month. Okay. So you're talking quarterly. I was -- let's be very specific here, the operating agreement required them to send them monthly, okay.

Q The question is: Did you receive quarterly statements?

A The answer is I did not receive quarterly statements.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

Q    Did you receive quarterly financial statements in the year 2014?  For any --

A    No.

Q    For any quarters?

A    No.  What I received in 2014, I already told you was in 2015 I received a profit and loss statement for January through December.  And I believe I received a balance sheet for -- as of date January 31, 2014.  I don't believe there was cash flow with it.  But understand, instead of getting it monthly, I received it 14, 15 months after -- after I showed up as a cumulative, which I complained about before because it doesn't allow you to have the detail of what's going on.

Q    Okay.  So you say you did receive a profit and loss report from January through December.  Were you referring to 20 -- you said in 2015, was that a report for the year 2014 --

A    Yes.

Q    -- or for the year 2015?

A    For the year 2014.

Q    Okay.  And you received that at some point in 2015?

A    Correct.

     COURT REPORTER:  Is this Exhibit 20?

     MR. HORNSBY:  Yes.  Yes.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

(EXHIBIT 20 MARKED FOR IDENTIFICATION)

BY MR. HORNSBY:

Q    Did you receive a balance sheet statement for that same time period in 2015?

A    You didn't hear what I just said to you.  It was asked and answered.

Q    No.  I --

A    I told you as of date January 31, 2014, I believe there was a statement given to me for the balance sheet.  But I don't remember receiving balance sheets for January, February, March, April, May, June, July, August, September, October, and November of 2014.

Q    Understood.  But you do remember receiving a year-end balance sheet and profit and loss statement for the year 2014, and you received that at some point in 2015?

A    In about March or April, I believe.

Q    Okay.

MR. HORNSBY:  This is 21.  Giving you the wrong one.  I'm sorry.  Gave you the '15 instead of the '14.  I'll take that.  Swap --

(EXHIBIT 21 MARKED FOR IDENTIFICATION)

THE WITNESS:  Later on.

MR. HORNSBY:  Just -- you can just hang on to it.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Issuer Levine-Scott 09-08-2021    Page 160

THE WITNESS:  All right.  Thank you.  Thanks. This'll be 21?

MR. HORNSBY:  This will be 21.  All right. Okay.

BY MR. HORNSBY:

Q    I've handed you a balance sheet as of December 31, 2014 for Brownie's Septic & Plumbing LLC.  Do you see that?

A    Yes.

Q    Okay.  And is this what you would have received from BSP in, you said, March time frame 2015?

A    I said March or April.

Q    Okay.  But was this what you --

A    2015.

Q    Is this the balance sheet?

A    Yeah.  This is -- this is what it looks like, yes.

Q    Okay.  Let's look at the second page here. See long-term liabilities?

A    Yes.

Q    And again, it lists a set of notes payable to BSP?

A    Yes.

Q    All right.  And at the bottom, total long-term liabilities total 2,308,000 and change, do you see that?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

A    Yes.

Q    And total liabilities overall are at 2,725,000 and change, agreed?

A    Agreed.

Q    Okay.  This information was available to you as of the March, April time frame in 2015, correct?

A    Correct.

Q    At any point in time during March, April time frame or thereafter in 2015, did you ever question Marc or Reggie about the notes payable that had been incurred by BSP that were reflected on this balance sheet?

A    The answer is no.  And I'm going to explain why.  I tried to get information from them by hiring Houston Short.  He sent a demand letter for me to inspect all books of account and records in July of 2014.  He sent another one in August of 2015.  I -- there was a meeting in October of 2015.  First of all, the default took -- we're talking 2014.  Okay.  In 2014 on 12-31, I filed my record and inspection, and I believe that my lawyer was, you know, directing all communication to him at that point.  I knew I was not getting the records by that time, getting stuff from Reggie and Marc, and it was actually futile at that time.  Futile.

Q    Did you have your attorney send Marc or Reggie

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        Toll Free 855-MYDEPOS

any notice that the notes listed in the balance sheet were in any way not approved by you in accordance with what you believe the operating agreement required?

A   We didn't do a forensic accounting, so the -- accounting and compare things.  The answer I believe is no.  But I'm not sure what Joe did.

Q   Who is Joe?

A   Joe Frein, who filed the suit.

Q   Okay.  And that was your attorney for the record's case, correct?

A   Initial attorney.

MR. HORNSBY:  This is 22.  Thank you.

(EXHIBIT 22 MARKED FOR IDENTIFICATION)

Q   All right.  I've handed you a profit and loss report January through December 2014 for Brownie's Septic & Plumbing.  Do you see that?

A   Yes.  I do.

Q   Okay.  And would this have been the profit and loss report that you received in the March/April time frame, 2015 for the 2014 year?

A   The answer is yes.  I don't know if it's the exact same one, but it -- I mean, it doesn't have the proper date it was printed, but I -- I don't know if it's the exact same one or the same thing goes for the other document you just showed me.  These have a print

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

date of 10-05-20 and we're talking about what I saw in 2015.  And I will tell you that we have seen different profit and loss statements for a given period of time.

Q    Okay.  Do you have any reason to believe, other than -- have any evidence or proof that you believe that these profit and loss reports and the balance sheet statement that I showed you before were not what you received the 20 -- in 2015?

A    I have no way without looking at them and comparing them because they have different print dates, and I told you we have already received different financial statements for the same period of time.

Q    Do you still have the profit and loss and balance sheet statements that you received in March, April 2015 for the year-end 2014?

A    I think I probably do, or my lawyer has them, yes.

Q    Could you look at page 2?

A    Yes.

Q    Under professional fees, do you see that?  The third one down is consulting fees?

A    Yes.

Q    272,747?

A    Uh-huh.

Q    Okay.  You agree that consulting fees were

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   www.**MILESTONEREPORTING**.com   **Toll Free 855-MYDEPOS**

listed and included in the profit and loss report that you reviewed in March or April of 2015?

A    I don't have the exact one that was printed, so I can't say for certain, but I -- I may have.

Q    Do you remember seeing -- do you remember looking at the profit and loss report to see if consulting fees had been paid by Brownie's Septic & Plumbing for 2014?

A    Ask the question again.

Q    Do you remember looking to see if consulting fees were included on the profit and loss report when you looked at it in 2015?

A    I don't remember what I looked at in two -- on the particular report in 2014.  All is I know is that I wasn't getting any information even through a formal lawyer request.  They weren't answering my questions, they weren't doing it all along.

Q    You had this information with the profit and loss report for the balance sheet.  If there were any issues on these, would you have raised them with Marc and Reggie at that point in time?

MR. BYRD:  Object to form.  Go ahead.

A    Not necessarily, because I'm in the middle of a lawsuit trying to get records.  I don't -- I wasn't shown what they were doing all along, and I was trying

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

to get records, trying to put the story together, and they were lying to me about what was going on. They wouldn't produce stuff they said they would produce, and they didn't produce it, a lot of it. And what they gave me was partial a lot of times.

Q   Now, you've already said that the consulting fees was something that you had never agreed to, correct?

A   Correct.

Q   So if you saw consulting fees on this profit and loss report in the 2015 time frame, were you still a member of BSP at that time?

A   Yes. I want to stop you for a second. They were obligated to tell me this information. I wasn't obligated to be a forensic accountant to go find this stuff out. They were obligated by the operating agreement to be paid a salary. When and if I saw this, I did not know what it was about, but it's not my job to chase after them to find what they did wrong. They were obligated under the operating agreement to provide that stuff to me, and they wouldn't do it even when they were formally demanded by a lawyer twice.

Q   What did they not give you?

A   Oh, my God.

Q   What information did you not have that would

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

have otherwise allowed you to question them about what they were doing?

A    I didn't have the ability to look at bank statements in general.  I didn't have the ability to look at cash receipts to see what's happening with the cash.  I didn't have the ability to do most things.  I didn't even have ability to look at the QuickBooks file because I only had one moment in time in 2013.  So how am I supposed to be figuring out the finances when I can't even look at the QuickBooks, which they claim is all the records of the company, which is BS.  It's not. It --

Q    What --

A    -- doesn't include bank statements on it, doesn't include the cash receipts, doesn't include the credit card statements.  All these things that they were doing, okay.  The barter account, the barter account went from 60,000 to 30,000 on here.  Where did that money go to?  You know, I asked for all this stuff, and you know what they provided me?  Partial stuff.  Partial -- yeah.  The payroll they provided as part of discovery is missing every other page in I believe 2015.  How are you supposed to figure out what's between -- the difference between 2014 and 2015 when you're missing half the pages?  The information that you guys sent to

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

us about Grease Recovery used to tell how many pounds and what -- how much they were being paid for. Mysteriously, we don't have both of those things on there. Did they -- how are they re -- they did not keep good records. They intentionally kept sloppy records so they could hide what they were doing and their self-dealing.

Q    What is it today that you feel you don't have as we sit here? Is there any Brownie's Septic & Plumbing financial record, bank statement, whatever else that you don't have?

A    Well, I'm not sure I have all the bank statements, okay. I know I don't have all the cash receipts. I don't have all the credit card statements. I don't have payroll except for that discovery that was, like, 2013 to 2015, which was partial, okay. Every demand made, you -- you guys know what's going on. There were six protective orders to try and prevent it. I have to compel to go get an inspection done. You know that there was a sanction for that.

Q    Did you obtain an inspection of the documents and copy records from Brownie's Septic & Plumbing?

A    Well, we thought we were going to get BSP Holdings, LLC. And the good question is, I don't know the answer to that question because they surreptitiously

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

closed the company the day before.

Q    How many records did you copy when you were there to review records of Brownie's Septic & Plumbing in BSP's offices?

A    A lot.  Over 200,000.  But you know what? They sat because BSP wouldn't allow -- Marc and Reggie would not allow them to be released and copied, okay. And so we had to wait 'til -- for me to get them in October. The inspection was in June.  I got those records in October, and you know what?  There was stuff that was changed in there.  There was actual documents that were added that were dated after the inspection, put in the files, and there was a lot of garbage files and there was -- anyone looking at that would look at that and said, no one is running this company.  This looked like a to -- let me fi --

Q    What documents --

A    -- let me finish, please.  Let me finish, please.  We asked for all legal stuff, you know, we got a partial bill of goods from Gus Benitez.  We got an engagement letter from Zelinski.  That's all we got.  We didn't get all these documents.  We got dribs and drabs, dribs and drabs.  All that does is make a lot of work for someone.  It wasn't an honest attempt, and it was so bad, the conditions and everything were so bad that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

Blackwell made a very good comment about the whole thing, that this is below human decency.  And it was.

Q    What records do you contend were added to the boxes of records that you inspected and then later had copied?

A    Well, the one that I can definitely tell you is the interactive brokerage account.  And I will tell you that the employment agreements had to be added because we were told that there were no employment agreements.  We have asked you for the original Word files of those employment agreements and you have not provided those.

Q    You're referring to the Brownie's -- or the BSP employment agreements with Marc and Reggie, correct?  Are those are the employment agreements you're talking about?

A    The employment agreements that claim that Marc is a consultant and Reggie is a consultant and they're signed, one signed in June and one signed in September of 2013, when there were none in 2016.

Q    How do you know there were none in -- how do you know they weren't signed in 2013?

A    Because Marc and Reggie are -- told us at the -- told us at the inspection that there were none.  Not only that, the agreement is that Marc is a consultant,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

and Marc was paid for the first year as a salaried employee.  If that was a true thing, why would it be a consultant agreement?

Q   But you were aware that Marc and Reggie were going to be receiving payment for work they were performing for BSP coming out of that BSP operating agreement, correct?

A   Not to what they took.

MR. HORNSBY:  I'll show you -- mark this as 23.

(EXHIBIT 23 MARKED FOR IDENTIFICATION)

BY MR. HORNSBY:

Q   Is this the document you're referring to when you talk about the employment agreement with -- this one is Marc Barhonovich and BSP?

A   Yes.

Q   And if you go to the back, it looks like it was signed September 24, '13, correct?

A   Correct.  Do you see where it says on here, that B on the first page, the executive to act as a consultant?

Q   Yes.  What's the significance of that to you?

A   It was paid as a salary employee, not as a 1099.

Q   What does that matter for your purposes?  What

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    www.**MILESTONEREPORTING**.com    Toll Free 855-MYDEPOS

-- why do you think that matters whether he was paid as a consultant or --

A    Because first of all --

Q    -- paid as a salary -- excuse me, paid as a salaried employee.  Why does that matter to you?

A    It matters a lot.  It matters because first of all, he's defrauding the IRS because he's not paying FICA taxes, okay.  And he's putting the company at risk of liability and penalties for claiming he's a 1099 employee when he's not.  He doesn't meet the criteria for 1099 employees, okay.  The other question is, why would a 1099 employee be taking all these benefits, you know?  And, you know, why would they be -- I didn't agree to this.  They signed their own thing, and they kept it a secret, and they did it after the inspection.

Q    How do you know they did it after the inspection?

A    I just told you that a few minutes ago.

Q    Well, what is it that makes you think they did this after the inspection?

A    How does someone sign an agreement --

      MR. BYRD:  Just answer the question.

      THE WITNESS:  Okay.  Yeah.  I'm sorry.

A    Consultant, he wasn't a consultant, he was a salaried employee.  None of these benefits were agreed

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

to.

Q    The question is: How do you know they signed it after the inspection?  That's the question.

A    Okay.  Because he received payment as a salary from June 2013 to June 2014, and this lists him as a consultant.  He did switch to a consultant in 2014 in June, but I'm going by what Marc and Reggie told us under sort of like oath, told Nesmith and I, that there were no agreements, and I didn't ever see this.  They didn't show it to me.  This was obtained in discovery. Actually, it was obtained in the RICO documents, the copy of the documents.  It had to be stuffed in there after the inspection.  And to be honest with you, if you look at the benefits they're taking, they're not listed the same ones in here.

Q    What benefits are you referring to them taking?  Benefits that you -- where do you see benefits that they have taken?

A    Okay.

Q    Not in this agreement, but outside of that that you were able to compare to this agreement?

A    I think from those copied documents.  I saw checks and stuff.

Q    What were the checks for?

A    Health insurance.  I saw from QuickBooks that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

we received that Reggie received a phone, you know,

like, more than $1,000.  It was a couple thousand maybe

in phone expenses.  The Raptor trucks were in the loan

that were in the documents and bank statements.  Okay.

If you can help me save time here, where does it talk

about that they would get trucks?

Q    Let's look at page 2.  Number 6, reimbursement

of expenses.

A    Okay.

Q    "Company shall reimburse executive for all

reasonable and necessary expenses incurred in carrying

out his duties under this agreement.  Upon presentation

by the executive to the company of appropriate

documentation indicating the amount and purpose of such

expense, including, but not limited to, $1,000 expended

on behalf of the company for expenses in the ordinary

course of business.  All gas and mileage expenses will

be reimbursed each month with proper documentation and

mileage reimbursement will be at the highest rate

allowable by the IRS.  Company will issue executive a

fuel card for gas related work and reimbursement of $150

monthly towards cell phone cost."

A    Okay.  First of all, I believe that Marc was

using a cell phone from the business, so he wouldn't

need to be -- receive the 150.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    How do you know that?

A    Because I didn't see him get the same thing as Reggie in the QuickBooks.

Q    Okay.

A    But --

Q    So --

A    But wait let me -- let me go.  It says here that they'll receive gas and mileage.  No -- no -- yeah, gas and mileage.  Where does it say trucks are -- I'm sorry, where does it say the Raptor trucks that they're going to be provided a $60,000 truck to be used at the company expense?  And I will tell you, I never, ever saw any information that showed that they documented gas or mileage.  And there was even some of Berthiaume where he was submitting gas on his credit card despite using the PEX card that they have for gas.  I didn't approve any of that.

Q    Do you dis -- do you dispute the $180,000 executive pay per annum?

A    Yes.  Because it was to be based on how the company was doing with cash flow and having money for running the business and paying off the capital accounts.  This company was not run for the members to make money.  This company was being run for Marc and Reggie's benefit.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    Were there any other documents other than these employment agreements that you believe were added after the fact to the documents you examined at Brownie's?

A    I think there was a lot of garbage paper put in there that I ended up copying that I don't believe my legal team would have put in there.  I think that was just to muddy the waters.  There was a lot of -- did you ask what's missing or what's --

Q    What was added -- what was added -- what do you believe was added --

A    Okay.

Q    -- that you didn't see when you initially reviewed -- well, let me ask you this to start.  Did you review the boxes and all the documents in each of the boxes that you ended up copying before you had them copied?

A    That would have been -- of course not.  It's impossible.  It's ridiculous.

Q    Okay.  So how would you be able to know what was in the boxes when you went to the inspection and know that if something had been added after the fact?

A    I can answer that.  Number one, Marc and Reggie told Ted Nesmith, when they were being interviewed that there were -- I was there, that there

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

were no employment agreements, okay.  And then they mysteriously show up, and they don't even match with the benefits they're getting.  That's number one.  Number two, the interactive brokerage account, if you look at them, look at the date they were printed and put in there.  It was after the inspection.  They had to be added after the inspection.  How would you print something with a later date and then say it happened three -- four months earlier?

Q   Okay.  Let's talk about the interactive brokerage.

A   Wait, there was more things you asked me.

Q   Okay.

A   Yeah.

Q   Let's talk about that, and we'll get to the other ones.  The interactive brokerage statements.  What were the statements of that you saw?

A   We asked for all the interactive brokerage statements.  Instead, we had a summary report.  A summary report that I believe was dated October 2016, which is four months after the inspection.

Q   But would it be reasonable that interactive brokerage statements would be something that would have to be printed off if requested, that they don't keep hard copy files mail statements?

**MILESTONE | REPORTING COMPANY**
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     www.**MILESTONEREPORTING**.com     Toll Free 855-MYDEPOS

A    That wouldn't be reasonable if it wasn't an inspection.  The operating agreement obligates the company to keep book of -- to keep all their books and accounting records on site.  It says that.  So when we asked for them, they must have not had them to give us and they printed a summary.  But that's not what we asked for because that's what you guys keep doing.  Is you keep giving me something different than what we asked for because you hide the detail.  Marc lost money. Marc lost money for the company.

Q    What detail is it that you contend hasn't been given to you related to the interactive brokerage accounts?

A    All the monthly statements including I didn't see the monthly statements for a car -- an account that he set up.  The same day he set up the interactive brokerage account for BSP Holdings, he set up an account for -- in his name to collect the profits from trading -- commission trading.

Q    So --

A    He took 500 of the company's money and used it and put it in that to create an account for commission trading at interactive brokers.

Q    Was this account an account for BSP?  Was it a BSP account?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

A    I just told you it was BSP money paid for him personally to have an interactive brokerage commission account.

Q    How much -- was this paid to fund the account?

A    I believe, yes.  But I don't know what Marc was doing.

Q    What time frame --

A    I believe it was to fund the account, but I don't know what's in Marc's head, what he's doing.

Q    Okay.

A    What time frame?

Q    Yeah.  What time frame was that; do you remember?

A    Roughly 2014.  I'm going to say 2014, roughly about July or August, September, something like that.

Q    Any other -- you were getting to other documents you believe were added after the fact?

A    There was a lot of garbage paper in those documents.  You want to pick -- these were lawyers that were going through and tabbing things and putting them in there.  There was lo -- a lot of garbage in there. There's over 200,000 documents.  All it did is run up my expenses and hide the detail which they're so good at doing.

Q    How many boxes did you identify to be copied

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

during the inspection?

A    The answer to that is at this time, I don't remember.  The lawyers had these boxes.  BSP refused to allow us to copy them off-site saying they were critical for business.  They've got such a mess.  They didn't even know what they had.

Q    Weren't they allowed to -- didn't they end up allowing the files and the boxes to be released to RICO to be copied?

A    Three at a time.

Q    20 at a time at some point or no?

A    No.  I'm aware that they cried to the judge that they needed them to run the business and that they did three at a time because it extended the time I could get my records.  The records were kept in a shed, a lot of the records, beforehand.  Yet they were essential to the day-to-day operation of the business, according to Marc and Reggie.

Q    Were there any other documents that you remember that you think were significant that were added in your belief to the boxes?

A    Those are the ones that come to mind at this moment.  I don't know if I saw more documents.  If I refresh myself, there might be more.

Q    How often from the 2013 time frame until you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

filed your records lawsuit, how frequently would you meet with Marc or Reggie at the office?

A    The answer is, I don't know.  But I will say out of the 50 times I went there, the majority -- the great majority of times, Marc and Reggie were not there. And -- and it isn't that many.  It isn't that many.

Q    Okay.  So would you ever -- would you call ahead and let Marc or Reggie or somebody else know you were coming?

A    Sometimes I did, but a lot of times I did not.

Q    What was your -- when you wouldn't call ahead, what was your purpose for stopping by?

A    I'm a manager.  Why can't I stop by and look at the records?  I don't know I have to have a formal -- formal calling.  I'm a manager, I'm supposed to be managing.  I'm also a member.

Q    Are you -- would you consider yourself a day-to-day manager of BSP that operates the daily business?

A    The answer is no, but there are certain things that happened on a day-to-day basis that I should've been informed and my consent should've been obtained.

MR. BYRD:  You want to take a break?

MR. HORNSBY:  We've been at it for a while. Comfort break.

MR. BYRD:  Yeah.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

COURT REPORTER:  Off record.

(OFF THE RECORD)

COURT REPORTER:  On record.

MR. HORNSBY:  I'll hand you another document.
What are we up to, 24?

COURT REPORTER:  24.

MR. HORNSBY:  Mark this as Exhibit 24.

(EXHIBIT 24 MARKED FOR IDENTIFICATION)

BY MR. HORNSBY:

Q    Have you ever seen this document before?

A    Yes.

Q    Okay.  And it says it's the operating
agreement of Brownie's Septic & Plumbing LLC, correct?

A    That's what it says.

Q    Okay.  When did you first see this document?

A    I'm happy to tell you.  In the inspection,
there was an expert that downloaded stuff on the
computer.  This was in Marc's file.  I had never seen it
before 6-7-2016, and I didn't see it for months
afterwards, actually.

Q    Okay.  So when you're referring to the
inspection, what inspection are you referring to?

A    6-7-2016 or might be 6-8.  I'm sorry.  It's
probably 6-8.

Q    Okay.  And you said there was an expert that

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

downloaded computer files; is that correct?

A    Correct.

Q    What files did this expert download; do you know?

A    Company server file.

Q    So he took a copy of the company server file; is that correct?  Like a copy of the entire server?

A    No.  That's not correct.

Q    Okay.

A    It didn't include e-mails, it didn't include -- I know it didn't include e-mails on it, and I know that there was a -- Marc and Reggie were using computers that weren't using the -- the company server.

Q    Okay.  So were Marc --

A    But those weren't taken.

Q    Were Marc and Reggie's computers copied?

A    Absolutely not.

Q    Okay.  So the only thing -- is it correct the only thing that was copied by your expert was the company server file for all files excluding e-mails?

A    I can't say it was for all files excluding e-mails, it was what it is.  I mean, you have a -- you have a copy of it.  I -- I haven't sat down to identify what that ball of wax is, but I did look at the folders on it.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    Okay.  Who was your expert that you had download that?

A    Conners (phonetic).

Q    Do you remember his first name?

A    I should know it, but I'm forgetting right now.

Q    Is it Richard?

A    Yes.  I think so, yeah.  Sounds right.

Q    And so it's your understanding that this document was included -- there was an electronic version of it that was downloaded from the server file of BSP?

A    Correct.

Q    Okay.

A    And was never provided to me prior to that point.  And I believe that we have asked you for an original Word file on this, but you haven't provided it.

Q    Is there anything about this agreement that you take issue with?

A    I will tell you I do not know what's in it.  I never saw it.  I take issue with the whole fact that it was even created.  I did not participate in it.  I did not -- I did not -- my consent -- or I never saw it.  I mean, at that point, I -- it's never -- the answer is I take issue with the whole thing because we had an operating agreement for BSP Holdings, LLC.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**      **www.MILESTONEREPORTING.com**      **Toll Free 855-MYDEPOS**

Q    Okay.  Are you relying on this agreement to provide you any -- do you believe that this agreement provides you any particular rights or entitlements separate from what's included in the BSP operating agreement?

A    It's impossible to answer because I don't even know what's in it, and it was done without my consent.

Q    If you look -- if you look at the signature on the last page.

A    Yes.

Q    For Marc Barhonovich it says, "Managing member of BSP Holdings."  Was Marc Barhonovich a managing member in June of 2014 of BSP Holdings?

A    I'm confused when you ask me of June 2014.  The answer is I believe yes.  But why did you say June of 2014?

Q    I'm sorry, June of 2013, when this was signed?

A    Yes.  He was.

Q    Was he a member of BSP Holdings or just a manager?

A    Oh, I'm sorry.  I -- I take that back.  I apologize.  He was not a managing member of BSP Holdings.

Q    It was your understanding at that time he was just a --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    Manager.

Q    -- manager of BSP Holdings, correct?

A    That is correct.  And I would hope that you would provide the original Word file for us for that.

Q    Are you relying on this operating agreement in any way to support your claims against the members of BSP?

A    I have not even discussed the contents of that with my lawyers.  That'll be something we will do in the future.

MR. HORNSBY:  Mark this as 25.

(EXHIBIT 25 MARKED FOR IDENTIFICATION)

Q    Okay.  This appears to be e-mails from June 9 and 10, 2014 between you and Reggie and Marc Barhonovich, correct?

A    And Alison Hope.

Q    And Alison.  And who is Alison?

A    She is the bookkeeper or "financial manager" of BSP.

Q    Okay.  It looks like now, again, you've asked for access to some records and for weekly meetings, correct?

A    Correct.

Q    And in response --

A    QuickBooks and bank statements, we -- weekly

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY
CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602
407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

meetings, yes.

Q    Okay.  In response, it looks like Reggie says, "I don't have a problem for you to get access to QuickBooks or bank statements."  Were you provided QuickBooks or bank statements in that time frame of June 2014 or thereabouts?

A    Didn't get QuickBooks and didn't get bank statements.  This was part of the statement I made earlier to you that they promised stuff in the e-mails, but they would never deliver.  And you will see that this is a continuation of a chain of e-mails that occur between maybe the 8th and the 12th, and you will see that -- you're just picking a snapshot, but I will tell you this is the one I referenced earlier where he says he's going to need a personal guarantee for me.  Never showed me what funds he brought in.  Never told me what they were for, what he did, how much he brought in.  I'm just supposed that blanketly sign my name and put money into this company without getting information.

Q    Did you ever have a meeting with Marc or Reggie around this time period to discuss any of the access to the records or to discuss the need for a personal guarantee?

A    Did I have a physical meeting with them?

Q    Yes.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    No.  I did not.  They did not -- we did not schedule a meeting for that.  And in fact, if you were to play it out another day or two, you will see that Marc tells me that he's not going to get these -- all these records, that he says that they're not part of the operating agreement, which he's wrong about.  And he -- the true nature of what was going on came out in that, I believe it's June 11th or 12th e-mail.

Q    Let's take a look at this.  This might be what you're talking about.

MR. HORNSBY:  We'll mark this as Exhibit 26.

(EXHIBIT 26 MARKED FOR IDENTIFICATION)

COURT REPORTER:  Okay.

THE WITNESS:  Okay.

BY MR. HORNSBY:

Q    Okay.  If you look at the bottom, it looks like it was the e-mail that we just reviewed that was Exhibit 25 from June 10, 2014 from Reggie?

A    Yeah.  That's correct.

Q    Okay.  And then this would've been your response, correct, up at the top?

A    That was one of this responses in this chain, yes.

Q    Okay.  I want to draw your attention down to the second to last paragraph here.  You say, "In regard

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

to having me sign a personal guarantee, you have not included me in business decisions, and you have borrowed funds without my input or consent that is required by our operating contract.  Enough said."  What funds were borrowed without your input or consent that you knew about at that point in time?

A    You're asking me now to recollect what I was thinking then.  I don't know the exact answer, but I'll tell you that it may have been from the -- the partial statements that I got that showed that there was new loans on the books.  I asked Chase to provide me how to be able to look at the bank statements and checks without being able to alter anything, because that was Marc's thing, and this is what they told me, and I sent it to them, but they wouldn't let me look at them.

Q    Okay.

A    That's --

Q    26.

THE WITNESS:  Oh, she's got them somewhere else?

COURT REPORTER:  Yeah.

MR. HORNSBY:  Yeah.

THE WITNESS:  I don't know where she was putting them, okay.  I thought she had --

MR. HORNSBY:  Sorry.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

THE WITNESS:  Sorry.

MR. HORNSBY:  Mark this as 27.

(EXHIBIT 27 MARKED FOR IDENTIFICATION)

THE WITNESS:  This is sort of cut off on the second page.

MR. HORNSBY:  Okay.  Best copy I could find.

THE WITNESS:  Okay.

BY MR. HORNSBY:

Q   Okay.  So the first e-mail at the top, June 11, 2014 from Marc to you, copying Reggie, is this -- excuse me, is this Marc's response now to that same e-mail from you that we had just looked at Reggie's response, Exhibit 26?

A   I don't know 100 percent for sure there wasn't an e-mail in between, but he clearly was responding to stuff that I asked for during that period of time.

Q   Okay.  If you look in the middle of the second paragraph down, it talks about Brownie's never having the ability to provide monthly financial statements that would be close to being accurate because they don't use a monthly cash flow statement.  Had you heard that before from Marc or Reggie?

A   I think I may have heard from him that cash flow -- he couldn't produce a cash flow statement, which was ridiculous to me, but he never said anything about

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

the monthly financial statements. It was -- this is just a pure outline because I use QuickBooks in my practice. There's no reason why he can't produce a cash flow statement which would allow us to see how much cash is coming in and out of the company and his financing and interest and operation, income that he's getting, and how he's laying the company with debt.

Q   Okay.

A   He didn't want people to see it.

Q   During this time frame, June 11, 2014, were you -- weren't you're receiving the daily revenue e-mails?

A   Yes. To my knowledge.

Q   And that would have shown cash flow coming into the company, correct?

A   But it doesn't show the other things on a cash flow statement, which is the -- the -- that showed the operational, but it didn't show the financing and interest. That -- that is a very poor excuse for a cash flow statement.

Q   Is there any issue with them providing you quarterly financial statements --

A   Yeah.

Q   -- two weeks at the close of quarter? What's the issue with that?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    The issue is that I'm entitled to see them monthly.  That's how it was written up in the operating agreement.  And every time you magnify the picture by giving it more time, you take away detail.  Him giving me a yearly thing doesn't let me see what was going on in a given month or when something occurred, okay.  How would I know when he took in these notes payable, if I'm looking at the end of a year statement?  And if I saw the monthly statements, I'd be able to know.  So this whole thing is just how it was for me the whole time. He wasn't going to give me the thing.  He re -- first of all, he says he -- he's not obligated to follow the operating agreement, which he took us to court over, and we had to spend a bunch of money to be told that he has to follow the operating agreement.  And in here, he makes up that I'm not to provide you QuickBooks or bank statements or canceled checks.  Well, what are books of records and account?  Books of account and records. That's exactly what they are, and I was entitled to them under both the operating agreement in 605 and 608.  He says he won't allow me at meetings.  That's the truth. They never told me when there was meetings or if they even had them.  He didn't write stuff down, he didn't keep records.  That is required.  That's one of the things we need to still talk about.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   How many times did you meet with Marc and Reggie at Brownie's between June of 2013 and the date you filed your records case, would you say?

A   How many times did I -- I -- I actually see them and meet with them?

Q   Yes.

A   There was meetings in the first month of June and July where I showed up and kept saying I want to be involved, okay.  But they didn't give me information. There was the meetings in approximately the fall of 2013, a couple meetings, and there was an attempted meeting in 2014 in October when I asked for an agenda. I asked for what happened with the Houston Short letters, where's the information, and I asked for Schilling to be there.  They told me Schilling wasn't going to come. They're going to meet separately with him.  They did not respond about the Houston Short letters.  And what was the third thing I said to you? Houston Short, and oh, they wouldn't give me the agenda. And I showed up -- and I showed up with Wideman, and they refused to allow him to come in to the meeting.  So I left because I'm not going to listen to them bullying me about money.

Q   What meeting are you referring to that you showed up with Wideman?

A   October 2014.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**   www.**MILESTONEREPORTING**.com   **Toll Free 855-MYDEPOS**

Q    So did you end up -- you did not attend that meeting once they wouldn't allow Wideman in?

A    No.  Because it was a bullying -- I saw what they were trying to do.  They were trying to pressure me as a bully to give them money when they wouldn't give me information.  I mean, after you get a letter like this, would you want to give money to anything?  They were required -- understand they were required to have my consent to do these things.  They did everything on their own, and then they want me to sign my name and just give them money.  That doesn't make sense to me.

Q    Did they ever ask you -- did they ever tell you that they needed to raise money to keep the company going?

A    There was messages all the time about -- if you're talking about keeping the money afloat.

Q    The company afloat?

A    Yeah.  Let's talk about that.

Q    So how did you think they were going to keep the company afloat if it wasn't for taking on additional loans and payments?

A    Okay.  I did not trust the information I was receiving because I was not receiving financial documents, okay.  And at the same time they're sending me e-mails that they're trying to keep the company

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

afloat.  They bought his and her Raptor trucks for 60,000 apiece.  At the same time they were asking me for money, they're funding a $350,000 interactive brokerage account.  Doesn't make sense to me.

Q     How -- do you know how long the money was in the interactive brokers account before it was utilized for business purposes; do you know?

A     I don't think it was ever used for business purposes.  It was used for trading, and they lost money.

Q     Do you know what happened to that money?

A     No.  I don't know because they didn't provide the records.

Q     Well, you have QuickBooks statements, financial statements at this point.  Do you know where that money went?

A     I have no idea.  I haven't done a forensic review.  Also, I would take exception that pretty much everything in here is a lie, and he says that Marder doesn't know what he's doing, and he's my lawyer, and yet Marc was using him as his lawyer and changing things in the operating agreement.

Q     Well, were you not copied on the --

A     Not all the stuff.

Q     -- drafting of the operating agreement?

A     Not all of the things that Marc was sending,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

including that employment agreement that said that I agreed to everything in the fall.

Q   So is it your position that the operating agreement that you signed as a member of BSP Holdings, LLC, that you didn't agree to the terms in that operating agreement?

A   I never said that.

Q   Okay.

A   I -- I said --

Q   So do you agree to the final form that you signed?

A   Yes.

Q   Let's take a look at this.

MR. HORNSBY:  Is this 28 or 20 -- or 30?

COURT REPORTER:  27.

MR. HORNSBY:  And so 28.  Okay.

(EXHIBIT 28 MARKED FOR IDENTIFICATION)

MR. BYRD:  The June 11th e-mail was 27, right?

MR. HORNSBY:  Yes.

BY MR. HORNSBY:

Q   Okay.  This is a June 12, 2014 e-mail that appears to be from Marc to you, copying Reggie, Marc, and Alison, and referencing that, "I've sent these financials to you before.  I figured I would resend since you don't seem to have them.  They are the income

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

statements and balance sheets for the full year 2013 and the first quarter of '14."  Do you recall receiving that?

A    I recall receiving this e-mail.  He did not send them to me before, and he didn't produce the e-mail that he sent them to me before, and he never provided the quarterly financials, which I never agreed to quarterly financials, during 2014.  The 2014 financial statements, I will say again, I believe were just a profit and loss and a December 31st balance sheet that were provided March or April in 2015.  So this is another example -- I'm glad you showed this e-mail. This is another example where they're, like, playing along, we're going to give it to you, we're going to give it to you, and then they don't give it to me.

Q    But they did give you at this time, the full year 2013 and the first quarter of 2014, correct?

A    I would have to look, but it -- it looks like that -- it probably is the case.  But look at the date of when I'm receiving 2013, six months afterwards.

MR. HORNSBY:  Exhibit 29.

(EXHIBIT 29 MARKED FOR IDENTIFICATION)

COURT REPORTER:  29.

BY MR. HORNSBY:

Q    I know you made reference earlier to a letter

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

from attorney at Houston Short to BSP requesting records, correct?

A    Correct.

Q    Is this what you're referring to?

A    Yes.

Q    Okay.  July 15th of '14.  So this is now about a month after the e-mail we just were talking about that sent you the 2013 and first quarter of 2014 statements, correct?

A    That is believed to be correct.  And also probably a month or just slightly over a month from when I was told I wasn't going to get any more records from Marc in the June 11th e-mail.

Q    Okay.  But at this point in time, you had been given the financial records through the first quarter of 2014?

A    False.  I was given a bank statement for December 13th -- I'm sorry, December 31, 2013, and a profit and loss statement for the year.  But I was not given the cash flow statements.  I wasn't given bank statements.  I wasn't given credit card.  I wasn't given any of that.

Q    I want to go through real quick the list of documents that are requested here.  And it looks like they start with the little letters at the bottom.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    Okay.

Q    A is, "A current list of full names, last known business residence or mailing addresses for each of the members and managers."  You had been given that information; had you not?

A    I don't think that I was given -- Schilling -- I know we filed something, you know, before that got served on him, but I'm not sure that I got it.  And I -- I think this was part of the lawyer trying to just make sure that we have the current list.  The word is current in here, the key word.

Q    Okay.  "A copy of the operating agreement and all amendments thereto."  You already had the BSP operating agreement, correct?

A    Correct.  But didn't know if there were any amendments to it and did not know about the Brownie's Septic & Plumbing operating agreement.

Q    "Copy of the articles of organization, articles of merger, articles of conversion and other documents and amendments thereto concerning the limited liability company which were filed with the department together with executed copies of any powers of attorney pursuant to the articles of organization or such other documents where executed."  So did you have copies of the articles of organization?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

180087 Levine Scott 05-08-2021    Page 199

A    Of -- of which entity?

Q    BSP Holdings?

A    I believe I did.

Q    "Copies of the limited liability companies, federal, state, and local income tax returns and reports for the most recent three years."  Did you have those?

A    Absolutely did not.  In 2014 in July, I hadn't even received the 2013 1065.

Q    Okay.  Did you have 2011 and 2012?

A    No.

Q    Now, did BSP Holdings file tax returns in 2011 and 2012?

A    Not that I'm aware of.  They weren't in existence.

Q    Okay.  So the only tax return that would've been available if it had existed at the time, would have been the 2013 year for BSP, correct?

A    Correct.

Q    Copies of -- letter E, "Copies of financial statements of the limited liability company for three years most recent -- for the three most recent years." Did you have copies of the financial statements for 2013 from BSP?

A    No.  I didn't have -- I don't think I had monthly financials -- I know I didn't have monthly

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

financial statements.

Q    You had the annual financial statements and profit and loss reports, balance sheets for BSP for 2014 by this time -- or excuse me, 2013 by this time, correct?

A    The annual one, and I'm not sure if there was a cash flow with that.

Q    And at this point, you had the QuickBooks files for 2013 through November of 2013, correct?

A    Through maybe October of 2013.  So obviously missing a year's worth of data for the QuickBooks and missing the monthly financial statements.

Q    Okay.  F, "A record stating the amount of cash and a description of statement of the agreed value of the property or other benefits contributed and agreed to be contributed by each member.  The times at which the occurrence of events upon which additional contributions were made, to be made by each member, are to be made." Did you have records that provided the contributions made by each of the members?

A    The answer is I don't know because this was asking for, like, what occurred in time.  They weren't providing documents.  I don't know -- I didn't know about the notes payable, like, for instance or something like that.  They didn't give me the documents ever.  I

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

got them from discovery about Schilling's loans and, you know, these other loans, these 11 other loans. So we were basic that -- the lawyer wrote this. I didn't write this, but it's basically to update information just like they were asking for current addresses and everything, so we know how to contact people.

MR. HORNSBY: We'll mark this as 30.

(EXHIBIT 30 MARKED FOR IDENTIFICATION)

COURT REPORTER: Uh-huh.

BY MR. HORNSBY:

Q Okay. The top e-mail from Marc to you, September 17, 2014. This seems to indicate that taxes were filed and that he was trying to get you a copy of the taxes. Did you receive a copy of the taxes around this time frame for BSP?

A I believe I did, but what's more important about the date is that this is, like, two days after it would've been filed on the last possible date. And I will say that part of their hiding of records was to give me the tax return at the last possible date so that I could not see what was going on, okay. This is filed -- it would've been due September 15th, okay. So now, I'm having to reach out to them because he's required by the operating agreement to give it to me in a timely fashion. Why is he waiting to the last minute to do --

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

he's got so much juggling to do to hide numbers that it takes him, you know, from April to September to do it? I don't --

Q   Would you agree that he can't give you something until it's complete?  So he couldn't give you a tax return or a K-1 until the filing is complete.

A   He was responsible for it being complete.

Q   Okay.

A   Okay.  And he -- he apparently just discovered that they lost 458,000.  He didn't know it before, I guess.

Q   Well, didn't we talk earlier, and you had mentioned that he indicated at the end of 2013 to expect a large loss for your tax returns?

A   That was in one of his e-mails, but large isn't quantified.

Q   Okay.

A   Company doing $6 million and loses 458,000.

Q   So you don't consider this a large loss?

A   I do consider it a large loss, but I consider any loss -- when you have a $6 million company running, if it's run efficiently and honestly, should be making money, not losing money.  6 million in revenue and not making a profit?

Q   Well, do you know --

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

A     And paying big salaries and -- and not even able to pay the salaries, so they put them in a deferred account.

Q     Do you know what kind of revenue the company was generating when it came out of the receivership?

A     Roughly the equivalent of $6 million.

Q     Okay.  Was it cash flow positive at the time it was in receivership?

A     I did not get any of that information.

Q     Did you know whether or not it had enough revenue to pay the obligations that it had to assume as a result of the receivership?

A     I didn't have any of the operating financial information.  It was never given to me at that time to make that determination.  But obviously, for Schilling, Reggie and myself to spend money to get this out of receivership, it must be something that's worthwhile. If it was such a dead cow, why don't -- why would we be all -- why are they so anxious to hide from me the information if it's doing so poorly?  Why don't they show me it's doing poorly and then ask for my help?  And here's the exact time frame that I'm telling you.  He says, I -- he's crying to me, and you are probably concerned how we will even be able to pay the accountants their $10,000 bill.  Okay.  That's the same

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

time he was putting $350,000 into his investment account.

Q    Okay.  Well, it says, "You need to talk to Reggie about this because it's time for us to sit down and address some very serious issues."  Do you see that in his e-mail?

A    Yes.  And do you see where it says September 17th?

Q    Yes.

A    And if you look at the e-mails approximately October 8th, 10th, something like that.  That is the meeting.  That's the meeting that I brought Wideman to, asked for the agenda, asked, hey, let me see what you're doing with the Houston Short so I can see where the company is at.  I'm not taking their word for what's going on with this company and investing money in it, and then refusing to let Schilling either talk to me or meet with me.  They're meeting separately with him.  And to tell you even more, they testified that they had several meetings with Schilling almost monthly, and I wasn't invited to them.  So they've been running this company --

Q    Did you ever try to --

A    -- without me since the beginning.

Q    Did you ever try to contact Schilling?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A     Yes.

Q     And did he ever respond to you?

A     I didn't have his e-mail, I didn't have his address.  I didn't have his phone number.  And that is not something I should have to chase down.  That was required in 605 and 608 statutes and in the operating agreement to be something that was given to me.  Plus I asked for it.  Why wouldn't you want all the partners to talk?

Q     Did you -- once you found Schilling's address, did you ever contact him?

A     This was during the lawsuit.

Q     Did you contact him?

A     Yes.  I did.

Q     How did you contact him?

A     I contacted him through my lawyer in approximately May of 2016.  And you know when he did? He took my confidential letter and gave it to -- to Berthiaume, who then gave it to Reggie and then Pelegrino (phonetic) and all of them spent company money discussing my -- my letter.

Q     Did he respond to you?

A     Yes.

Q     What did he tell you?

A     Tells me that if I have an issue with Marc and

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.MILESTONEREPORTING.com          **Toll Free 855-MYDEPOS**

Reggie, it's between me. He thinks they're doing a wonderful job, a great job, and that he hopes if I'm doing an audit that BSP isn't paying for it. And that he's very happy with how Marc and Reggie were running the company and investing money. Didn't seemed to be concerned about the company doing poorly. He didn't seem to be concerned at that, you know, a year later about the $450,000 loss.

Q   Were you expecting --

A   And he also told me that -- I mean, he didn't care that I didn't get the records. I actually asked him in that letter would he please see what's going on with the company, would he join me to look what's going on in the company, he insisted that they were doing everything right. And he gave my personal confidential e-mail to him to Reggie, who gave it to Pelegrino and Marc, which seems to me like that's is something that should be going on. And I don't know if that's legally --

Q   Well, let's talk about that.

MR. HORNSBY:  We'll mark this as 31.

(EXHIBIT 31 MARKED FOR IDENTIFICATION)

Q   Is this the letter to Hank Schilling you're referring to?

A   Yes. And it says, "Privileged and

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

confidential" in the beginning, yes.  Uh-huh.

Q    Okay.  And what was this -- "privileged and confidential" in regard to what?  So it says, "Privileged and confidential settlement communication." With regard to what, in your mind?

A    To the information that follows below.

Q    Was this related to a particular litigation or lawsuit?

A    Well, at the time this is -- this is undated. At the time, the only case that was filed was the records and accounting case.

Q    Okay.  So were you looking to -- and was your records claim -- who did you sue in your records case?

A    I'd have to look at the header, but I believe BSP Holdings, maybe Brownie's Septic & Plumbing, I'm not sure.

Q    And did you also sue the other members of BSP?

A    Oh, oh, there was -- I believe so.  But I'd have to look at -- if you want my accurate answer, it's been a long time, I'd have to look at the header.

Q    So if you're writing to Hank Schilling, were you writing to him as a member of BSP Holdings?

A    Yes.

Q    And who was it that you understood had the records that you were requesting in your records

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

lawsuit?

A    I don't really know who had them.  I assume that they were at the -- I shouldn't even say I assume, they were required to be at the operating offices of BSP.

Q    And they were BSP Holding records you were looking for, right?

A    That's correct.  And probably Brownie's Septic & Plumbing at that time.

Q    So if you're discussing confidential settlement communication related to the records suit, I think it would be reasonable that Mr. Schilling would believe this related to production of the records you're requesting in your suit with BSP, and that he would share this with the other members and the counsel for BSP?

A    Actually, let me have a chance to read this, and then let me see because I'm not -- I'm not sure.  Okay.  Okay.  I'm done.

Q    Okay.  If you look at the first paragraph --

A    Yes.

Q    -- it says, the second sentence, "I just wanted to reach out to you as it's my hope we can settle any issues between us."  What issues were you referring to?  Do you remember now?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    Possibly the fact that he had a judgment against BS -- that's a -- of BSP.

Q    Okay.  And a little further down, do you see where it says, "There is a reason why Marc and Reggie defra -- defaulted on your loans."  Do you see that? It's the second to last sentence in the first paragraph.

A    Yes.

Q    Okay.  So it seems at this point, when you wrote this letter, that the loans, Schilling's loans to BSP, had been defaulted on.  Is that your recollection?

A    Yes.

Q    Okay.  So now, did you have authority on behalf of BSP to engage in settlement communications with Hank Schilling related to the default of the loans?

A    Didn't -- consider -- repeat the question again.

Q    Did you have authority to engage in settlement communications with Hank Schilling who had sued BSP Holdings for the defaulted loans?

A    I believe that I had the right to reach out to him.  Yes.

Q    Did you believe you had the right to discuss a settlement with Hank Schilling?

A    Well, I think the settlement refers to preventing him from trying to col -- to collect on his

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        Toll Free **855-MYDEPOS**

Isador Levine Scott 09-08-2021 Page 210

lien, and I believe that it was my duty and right to try and see if I could help resolve it.

Q    And so this was your attempt to see if you could resolve the issues that Hank Schilling had with the lack of payment on his loans, correct?

A    This was more than that.  This was telling him that things aren't right at the company.  Help me -- help me try and make this company run in an honest and economic fashion.

Q    Okay.  Let's look at the second paragraph, second sentence in, "I could not find your contact information online, and Reggie has consistently refused to provide it.  I wanted to say hello and introduce myself, and I also wanted to make you aware that Reggie and Marc were attempting to take a salary of 180,000." That $180,000 salary, and here you list it as a salary, was that not approved in the operating agreement that you signed initially with BSP?

A    This sentence is partially referring to the fact that I wanted to meet you back before the company was formed in 6-2013 and alert you, hey, I'm hearing that the company is not doing that good, they're trying to take a 180,000 salary.  So I think this refers back to, they were attempting to take the salary when we -- before it came out of receivership.  I wanted to meet

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**            **www.MILESTONEREPORTING.com**            **Toll Free 855-MYDEPOS**

with Schilling beforehand to discuss this fact with him. His answer to me was, he's happy with their salary.

Q    Okay.  You say, "I pleaded with them to take a small salary and bonus themselves based on performance. Reggie and Marc refused.  Reggie refused to give me your contact information at the time and has consistently refused to provide it."  Did you plead with them to take a smaller salary?

A    Yes.

Q    So they discussed with you that they were planning on taking the 180,000 salary, correct?

A    Can't answer the question the way it's asked. Let's go back to the conversation where Marder was -- he left the room, and I was told that -- by Reggie that Hank, who wasn't there, wanted Marc to run the company, and that he was going to take 180,000.  My understanding is that Marc was going to -- his salary was going to have to be determined by us as managers.

Q    Have you --

A    And --

Q    -- ever heard anything from Mar -- from Hank Schilling to you, that he ever objected to the $180,000 salary for Marc or Reggie?

A    His response to me, to this letter, was that he did not object to their salaries.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   Let's look at the second page, second paragraph.

A   Yeah.

Q   States in here, "I discovered they were running financial accounts out of the receivership's books, paying for employees through the receivership federal identification number, paying for personal items through the business, providing financial statements that did not match up, financial statements with unusual charges, such as 275,000 in "consulting fees" and a variety of other problematic activities."  Did Hank Schilling say he had any issue with those things that you identified?

A   His letter to -- back to me was, he was okay with the way everything was going with the company and losing money.  He didn't say okay with the company losing money, but that's basically what it said.

Q   Okay.  Did you think that Marc and Reggie were working for BSP for free without any payment from 2013 through the time of this letter?

A   No.  I think Marc and Reggie were working for themselves under the guise of working for BSP.

Q   But did you expect that Marc and Reggie would do the work they did at BSP for free?

A   Of course not.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

Q    Okay.  Do you remember when you sent this letter to Hank Schilling?

A    I believe it was about -- the best way for us to figure out when that was sent, was to look at his response, and I believe it was in May.  Unfortunately, I didn't date the letter.  I believe it was in May of 2016.

Q    May of 2016, you believe?

A    Yes.  I believe it was May of 2016.  Yeah. It's obvious, we can just look at when his response was because he would have responded in close proximity.

MR. BYRD:  I think I have the dated response from him.  We can look at it and find it.  Hold on.

Q    Do you recall when you filed your complaint against BSP for the records?

A    December 31, 2014.  This is after doing everything not to avoid a lawsuit, including the letters by Houston Short, including the -- trying to get information, e-mails, everything.  And let's not forget that shortly after the case was filed, Joe Frein sent a letter to Benitez saying, hey, let's resolve this without a lawsuit and, you know, let's talk about how we can get him the records he needs and stuff, and no response from Gus Benitez.

MR. BYRD:  I think you meant to avoid a

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

lawsuit.

THE WITNESS:  Yeah.  To avoid a lawsuit.  Okay.

MR. BYRD:  It's a double negative there.

BY MR. HORNSBY:

Q    When that law -- but was that letter sent after the lawsuit was filed?

A    Yes.  I shouldn't say to avoid a lawsuit, to put that lawsuit gone.

Q    At some point in time, were you ever notified that Mr. Schilling's loan that he had assumed from Reunion Bank was coming up on its balloon payment?

A    Was I ever informed?

Q    Yes.

A    I was notified by Reggie that he received a e-mail from Craig Temple that -- that the -- I believe it was June 11th it was due and that the company quote "didn't have the funds that paid for it."  Joe Frein sent a letter right after that, asking information of -- to Gus Benitez to clarify many things in there and try and avoid a problem, but that went unanswered, too.

Q    How do you know that, that went unanswered?

A    Because Frein told me he never received a response to it.  There's a letter, it's approximately in June -- the end of June, maybe the 25th or something.

Q    Okay.  Let's look at the exhibit I handed you

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

here.  This is number 32.

(EXHIBIT 32 MARKED FOR IDENTIFICATION)

A    Okay.  This is what I was referring to.

Q    Okay.  So was this when you were notified of the fact that the Reunion note had become due and payable?

A    Yes.  And let me just tell you that is exactly what I'm talking about.  They didn't let me see any of the loans, okay?  They didn't let me look at how they were being paid off, and they didn't pay this one because they were buying equipment and trucks for themselves.

Q    You were aware, were you not, that this loan existed, correct?

A    Absolutely.

Q    And you were aware that it came due in a balloon payment on June 11, 2015, correct?

A    Yes.  I was.

Q    And you were aware that the company and the previous calendar year had suffered -- or was it 2013, at least, a large loss, correct?

MR. BYRD:  Object to form.  Go ahead.

A    I don't agree with that statement because again, I don't believe the loss that showed up on the taxes was due to the failure of the business.  I believe

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

it was due to Marc and Reggie taking too many salary and benefits. They never, as required by the operating agreement, never cut their salaries or consulting fees, which they weren't entitled to. They never cut them commensurate with the cash flow of the business or they didn't even pay one cent on a capital account. This company was being run for Reggie and Marc's personal benefit.

Q   Do you know whether Reggie and Marc loaned the company additional money to pay its overhead?

A   I don't know that answer right now, but I do know that they -- instead of adjusting their salary, set up a deferred salary account and took the money later on that -- claiming it was owed to them. But instead of cutting their salary, they just put it in a deferred account to get paid later and just kept sucking all the benefits out of the company.

Q   So you agree that they did at least defer their salary for a period of time initially, and did not take their full salary that they felt was owed to them?

A   That's what I saw on QuickBooks. The whole point about that was they weren't entitled to do that.

Q   I believe this last exhibit I gave you, Exhibit 32, it looks like there was an attachment to it. Do you recall receiving a copy of the letter from

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          **Toll Free 855-MYDEPOS**

Attorney Temple on behalf of Hank Schilling --

A    Yes.

Q    -- regarding the loan?

A    Yes.  That's what I referred to.

Q    Okay.

A    To.

Q    Show you this and see if this is what you received.

MR. HORNSBY:  We'll mark this as 33.

(EXHIBIT 33 MARKED FOR IDENTIFICATION)

A    Okay.  I'm confused about something.

Q    Okay.

A    Maybe I misanswered you on your question because I misunderstood it.  But I thought we were talking about my letter to Schilling, and the response came from Craig Temple.

Q    Oh, okay.  Well, let's look at this.  If you look back at Exhibit 32, the e-mail we just reviewed --

A    Yes.

Q    -- from Marc --

A    Yes.

Q    -- informing you that the loan is come due?

A    Yes.

Q    Okay.  That appears to have an attachment that says "templelawfirm_hank.pdf"?

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

A    Okay.

Q    Do you see that on the last exhibit?

A    Yes.  Uh-huh.

Q    Okay.  And then we have a letter here that I've handed you from June 12, 2015 from the Temple law firm to Marc Barhonovich, BSP Holdings, LLC.  Do you see that?

A    Yes.

Q    Do you remember receiving a copy of this letter and the enclosures?

A    Yeah.  Hang on one second.  I think I had seen this at one point or another.  I'm not reading all this micro print right now, but I do remember that Barhonovich's signature was on the note, and he quotes himself as 100 percent responsible for the company, yes.

Q    Where does he quote himself as 100 percent responsible for the company?

A    The e-mail, June 11th, that you handed me a few minutes ago.

Q    Okay.  And again, you were aware that the BSP had entered into this note with Hank Schilling?

A    Yes.  But I did not know what the company's income or expenditures were being spent on in any detail, and I did not know that they were going to default on it.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    I'm going to hand you 34.

(EXHIBIT 34 MARKED FOR IDENTIFICATION)

A    Good.  Thank you.

Q    I think you mentioned that there was another letter from Attorney -- is it Frein?

A    Frein.

Q    Frein.  And it -- was Joseph Frein representing you at this time in June 26 of 2015?

A    I believe he was.

Q    And was he representing you in the records case against BSP?

A    Yes.

Q    And it looks here that he's writing to Gus Benitez regarding Scott Levine/BSP Holdings, LLC.  Who was Gus Benitez is representing at this time?

A    He was representing BSP.

Q    And how did you know he was representing BSP at that point?

A    Because that's who we were told to send a letter to.

Q    Who were you told by?  Do you remember who told you Gus Benitez was representing BSP?

A    Might have been through the lawyer accessing the registered agent or something.  I'm not really sure. At this moment in time, I don't really know who told me

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

he was.

Q    Was it your understanding that he was representing BSP holdings in the lawsuit brought by Hank Schilling for the loan?

A    No.  Craig Temple supposedly was.

Q    Okay.  I think we're a little confused here. So Craig Temple, I believe, was representing Hank Schilling in his lawsuit against BSP Holdings?

A    That's what I just said.

Q    Okay.  And then is it your belief that Gus Benitez was representing and defending BSP holdings against the lawsuit brought by Hank Schilling?

A    I thought you were asking am I -- whether it was my lawsuit that he was representing BSP.  He -- the answer is I believe he was representing BSP because he's the one who showed up as a BSP representative at the August 13, 2015 members and managers meeting.

Q    Okay.  Was he -- at this time June of 2015, was he representing BSP in your records case?

A    I believe he was.  The point of this letter is very important because it's just like when I sent the Houston Short letters, they went ignored.

Q    Okay.  So you did not -- or you don't believe your attorney received a response to this letter; is that correct?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    I know he didn't get a response.

Q    Were you ever notified of a members and managers meeting scheduled for August 13, 2015 to go over what the company will do about the balloon payment?

A    Yes.

MR. HORNSBY:  Mark that Exhibit 35.

(EXHIBIT 35 MARKED FOR IDENTIFICATION)

A    Mine is cut off at the bottom.

Q    Yeah.  That's if you flip it over, I think that's the attachment.

A    Oh, okay.

Q    It is a little hard to read --

A    It is a little hard.

Q    -- but it appears to be a letter.

A    Come on, you can get a better copy than that. I can't -- it's like hieroglyphics.  But I -- I basically --

Q    Well, let's look at the body of the e-mail.

A    Okay.

Q    It's substantially the same as the letter.

A    Okay.

Q    It outlines that the members and managers are going to have a meeting scheduled for August 13th, and then it lists topics that are going to be discussed.  Do you see that?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        www.**MILESTONEREPORTING**.com        **Toll Free 855-MYDEPOS**

A    Yes.

Q    Okay.  So were you aware that that meeting was going to take place?

A    Yes.

Q    And did you attend that meeting?

A    I had -- the answer is no.  I didn't attend it.  I had a prearranged trip with my kids, and I was out of town and I sent Joe Frein to represent me.

Q    Okay.  So you sent your counsel to represent you at that meeting, correct?

A    That's correct.

Q    And to represent your interests in BSP Holdings, correct?

A    That's correct.

Q    And did you attempt to reschedule this meeting or see if there was another day that it could take place that you could attend?

A    Why should I do -- why should I do that?  I have someone that is a legal person who wouldn't be run over and bullied going to the meeting.  I mean, it turns out it was in my benefit.

Q    Okay.

A    It was very much in my benefit to look at it later because I wouldn't have known how to react to in the fact that Craig Temple was on the line and shouldn't

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

have been on the line. He had to get off the call, and the fact that they were trying to bully into a vote to just -- they couldn't be more eager to turn the assets over to Schilling. So I'm glad that it turned out that I had a prearranged vacation with my children.

Q   Did you make any effort to attend the call by phone or attend the meeting by phone?

A   No. I did not.

Q   Did you have any concern that not attending in person or by phone for something that at this point could wipe out your ownership interest in the company, wasn't a good idea?

MR. BYRD:  Object to form. Go ahead.

A   Absolutely not. My lawyer said he would take care of it when they told him I had a prearranged vacation with my kids.

Q   Do you recall receiving a certified letter by mail about the meeting as well?

A   I will tell you that I did receive a certified matter -- piece of mail and when I opened it up, my -- it was at my office, I believe. I showed it to my staff. There was nothing inside. And I gave that to Joe Frein, and I explained to him that there was nothing inside.

Q   Do you know if Joe Frein received a certified

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

letter, did he tell you, about the meeting for August 13th?

A     I didn't discuss with him whether he -- I mean, he discussed he was going.  Somehow we knew whether it was through an e-mail, maybe through this e-mail talking about when it was scheduled, that was just forwarded to him, but I do remember it was the strangest thing.  I opened that letter that was certified and there was nothing inside it.  And I believe that was the only notification I received in the entire time of BSP.

Q     So when you got back from your vacation after the -- after that meeting, what did you do in response to the foreclosure that was moving forward?

MR. BYRD:  Object to form.

A     I talked to Joe, and I waited for the transcript of the meeting.  I believe it was my idea to have a transcript, which I'm happy I did, and Joe wrote a letter.  Joe definitely asked -- I'm pretty sure he wrote a letter to Gus Benitez asking him for certain documents and I know that within the meeting I believe he asked -- my knowledge is that Henry Schilling filed something the night before and Gus was in -- had it, but it wasn't given to us and stuff was not being sent to us, but was -- Gus had it.  And I thought that was very strange.  And Gus did not follow up with stuff that he

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

said in the meeting he would follow up with, and I believe that Joe Frein sent a letter asking for information.

Q    Did you receive a copy of the foreclosure complaint that Schilling filed against BSP?

A    I do not believe so, no.

Q    Did your attorney, Mr. Frein, receive a copy of that?

A    To my knowledge, no.

Q    Did you know that Hank Schilling had filed a foreclosure complaint against BSP?

A    I didn't know it at the time it happened at all.  So that's why I'm saying I didn't receive it.  At some point later I learned of the complaint, and it might have been more towards possibly the beginning of 2016 or sometime thereafter, I think.

Q    You had a copy of the transcript of the meeting that Mr. Frein attended on your behalf, correct?

A    That's correct.

Q    And during that meeting, do you recall it being discussed that Hank Schilling had filed a lawsuit the day before that meeting to enforce his note?

A    Yes.  I believe -- there was something that was filed in the day before.  I know --

MR. BYRD:  The question is did you -- on the

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

transcript was it mentioned.

Q    In the transcript that you had recorded from the meeting, was it mentioned in that that Hank Schilling had filed a lawsuit, foreclosing his note against BSP?

A    I do -- if you have the document, I could tell you, but I don't recollect.  I remember there was something that was filed the night -- that was literally filed the night before that meeting on the 12th of August, and I didn't get that transcript until, you know, much later obviously, it wasn't transcribed right away.

Q    Did Mr. Frein ever provide you with copies of any of the filings that were occurring in the Hank Schilling foreclosure lawsuit against BSP?

A    No.

Q    Did you look up online any of the filings that were occurring in the foreclosure lawsuit against BSP Holdings?

A    No.  I didn't know what was going on.

Q    Did you hire any other attorneys to represent your interests relating to that foreclosure action against BSP Holdings?

A    Yes.  I hired -- well, I hired Salzman -- Gary Salzman.

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    And do you remember what time you or when it was that you hired Gary Salzman?

A    Sometime in 2015.  Maybe like the fall of 2015 sounds about right.  And I don't know that it was for -- it wasn't for the foreclosure action.  I think it was at that time for the records and inspection that I was hiring him for because I don't think we knew that there was a foreclosure really 'til later, I think.  I didn't know what they were doing, basically.  They kept everything for me.  I didn't know they closed the company.  I didn't know they moved.  At that point, I didn't even know they closed the company.

Q    Well, let's talk about the time period during the foreclosure action.  Were you ever provided a copy of the order granting Plaintiff's motion for judgment on the pleadings that granted Hank Schilling a judgment against BSP on his promissory notes that were in default?

A    I don't think that I got that except through the lawyer.  I didn't get it from BSP.

Q    What lawyer did you get that through?

A    Oh, I'm not even sure.  I think maybe Salzman would've given it to me.

Q    Okay.

A    But I -- I'm not -- I'm not sure -- there was

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

no notification sent to me.  The notification requires certified, and I don't remember anything being sent to me about it -- sent to me personally about it.

Q   Did you attempt in any way to see if you could obtain financing or other forms of additional capital that could be paid in to pay off the note to Hank Schilling, so that BSP can continue operating?

MR. BYRD:  Object to form.  Go ahead.

THE WITNESS:  I had Frein write a letter that was written asking him for information about how much was owed and that, and we were not getting information. It was never answered.  And at the business meeting, Joe Frein asked information about had Marc done this or done that such as considered bankruptcy, and he looked at other things of financing.  And Marc didn't have an answer for most of it or he hadn't -- basically hadn't done anything.  And their claim was Schilling wasn't going to do anything because of me, that I was part of the group.

BY MR. HORNSBY:

Q   At any point in time, did you consider moving to intervene and involve yourself in the foreclosure action against BSP Holdings?

A   I think that letter that we looked at from May

 MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

of 2016, was that.

Q   Okay.  Did you take any other steps to try to stop the foreclosure?

A   Yes.  I hired -- I had Joe Frein write two letters.

Q   Okay.  We've seen one letter.  Was there a different letter that you're referring to?

A   Oh, I'm -- I'm not sure if I'm getting confused with the 2014, where I was trying to stop the 2014 lawsuit from going forward.  But he asked -- I think he asked by e-mail or something information from Gus and there was no response.

Q   By the time you were notified initially in June of 2015 about the Hank Schilling note being foreclosed -- or I should say the Hank Schilling note coming due, and the company not having funds to pay for it.  At that point in time, did you have issues with Marc and Reggie's management of BSP and violations of the operating agreement?

MR. BYRD:  Object to form.  Go ahead.

A   Yes.

Q   And did that include some of the issues we've spoken about earlier, the payment of their employment agreements that were paid out as consulting fees, for example?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A     That was one issue.

Q     What did it also -- did you also have issues with the notes that you had identified on some of the QuickBooks printout summaries of the balance sheet statements that you believe you were not consulted on?

A     Yes.

Q     Were there issues with what you believed were inappropriate expenses that Hank and Marc -- or excuse me, Marc and Reggie had taken as personal payments from the company?

A     Yes.

MR. HORNSBY:  We're up to 36.  This is 36.

(EXHIBIT 36 MARKED FOR IDENTIFICATION)

A     Okay.

Q     Okay.  At this point in time, January 12, 2016, were you being represented by Gary Salzman?

A     Yes.

Q     And this is an e-mail from Mr. Salzman to Craig Temple, and I don't believe you were copied on this were you?

A     No -- I don't know.  I was going to say I don't remember seeing this, but it fits what I told you a minute ago, that I don't think I knew about it until about January of 2016 because that's the date of this letter because we recently learned.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q    When did you transcribe the meeting from October of 15 that was attended by Mr. Frein?

A    I don't remember that.

Q    Did you talk to Mr. Frein?  I don't want to know what you talked about, but did you talk to Mr. Frein about the meeting when you returned from your trip?

A    I believe I did, but he told me that, you know.

MR. BYRD:  Hang on, hang on.  Objection.

THE WITNESS:  Okay.  Okay.  Okay.  Yeah.  Yeah. All right.

A    I believe I did, yes.

BY MR. HORNSBY:

Q    Did you intervene in the foreclosure lawsuit by Schilling against BSP?

A    Define intervene.

Q    Did you file anything in that case as a member of BSP objecting to the foreclosure that was being pursued by Hank Schilling?

A    No.  I reached out to Hank Schilling, no.

Q    Okay.  After you received the response from him that we discussed earlier, did you take any steps to file anything in the foreclosure action objecting to the foreclosure that he was seeking?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    The answer is -- I'm sorry, ask the question one more time.

Q    After you received your response from Henry Schilling that we discussed earlier to your letter, did you file anything in the BSP -- or in the foreclosure action brought by Schilling against BSP Holdings objecting to his relief that he was seeking?

A    No.  That's when I filed the lawsuit later in 2000 -- I believe 2016, but let me go back and just say that --

Q    Hold on.  Did you or did you not file anything in the foreclosure lawsuit objecting to the foreclosure?

A    Later.

Q    No.  I'm not asking about later or any other cases.  Did you file anything in the foreclosure lawsuit brought by Henry Schilling against BSP Holdings objecting to the foreclosure?

A    The answer is no, but at the time that I was communicating with Hank -- Hank Schilling, he had already filed the writ for execution, and he was telling me like I could do something about it.

Q    After the meeting you had -- well, that you had your attorney attend in October, from that point forward until the writ of execution, did you file anything in the foreclosure lawsuit objecting to the

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

foreclosure?

A    I'm not aware of a meeting in October.

Q    The meeting in October 2015 that you sent your attorney, Frein, to?

MR. BYRD:  August.

Q    August, sorry.  August 2015?

A    Okay.  And now are we going to ask the question again with the month, okay?

Q    We'll ask it.  The August 2015 meeting that you had Attorney Frein attend on behalf of you, correct?

A    Yes.  Yes.

Q    From that point until the entry of the writ of execution you referenced, did you file anything in the foreclosure action objecting to the foreclosure?

A    'Til what date?  'Til the foreclosure happened?

Q    'Til the writ of execution?

A    No.  I didn't even know about it.

Q    So it's your position you didn't know about the foreclosure case until after the writ of execution was filed?

A    No.  My point is I'm trying to lay this in a very easy to understand fashion.  I was not aware of the Schilling lawsuit until about January of 2016, and I didn't know what had happened after that point.  When I

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900    www.MILESTONEREPORTING.com    Toll Free 855-MYDEPOS

communicated with Schilling in May of 2016, I was unaware that there was a writ of execution filed.

Q   Was Mr. Salzman aware a writ of execution was filed?

MR. BYRD:  Don't disclose communications with Salzman.

THE WITNESS:  What date are we talking about? When I wrote my letter --

BY MR. HORNSBY:

Q   Let me ask you this.  Did Mr. Salzman ever provide you a copy of the writ of execution?

MR. BYRD:  That's probably that's going to be a privileged communication.  Let me -- communications with Salzman in writing or orally, I think would be privileged.

MR. HORNSBY:  The fact that he provided it is --

MR. BYRD:  I think that would be --

MR. HORNSBY:  He either provided it or he didn't.

MR. BYRD:  No.  But the fact that what you provide would be to communicate for purposes -- I think that you'd sort of have to get into communications.

BY MR. HORNSBY:

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

Q   Do you recall when you first were made aware of the writ of execution that was entered in the foreclosure case?

A   I know I didn't know about it in May of 2016. And I don't think I even knew about it in June, July when we -- in June when we had the -- the inspection, on June 8th.  I think that was learned at some point later on.  I did not know that the company was closed or that the assets were transferred.  There was no notification. And there was no notification of the consent to judgment that occurred.  And there was no consent of hiring Vega to plead to the admissions admitting to everything.  I wasn't consented.  Nothing was followed in the operating agreement.  And no notifications were sent.  We've asked for you guys to send those to us, and we've never received them.

Q   What was -- did you have an alternative that you believed could have saved the company from the foreclosure action?

MR. BYRD:  Object to form.

A   I didn't know what was going on with the company because they didn't provide the information to me, and it was not my belief that the company is earning $6 million and can't pay its debts as they come due. And the fact that this was all done in secrecy, no

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

notification sent or anything shows that this was all done for a purpose nefarious, and not to help the company.

Q   After Gary Salzman became aware of the Schilling foreclosure, do you know if he ever filed to intervene on your behalf in that case and object to the foreclosure for the writ of execution?

A   I don't think he did.  Understand that I don't even believe that there was not money to pay Schilling.

MR. BYRD:  I don't think it was a question.

MR. HORNSBY:  We'll move to strike that.

MR. BYRD:  How much more do you think you have?  I -- I've got a call at 5:30 and I can --

MR. HORNSBY:  What time is it?

MR. BYRD:  -- have Thomas finish it.

MR. HORNSBY:  What time is it?

MR. BYRD:  It's 5:15 so I don't want to stop.

MR. HORNSBY:  I know I've got a -- probably about 15 minutes maybe.

MR. BYRD:  Okay.  Well, why don't we go for a bit.  If need be, Thomas can come in and we can take a two-minute comfort break?

MR. HORNSBY:  Yeah.

THE WITNESS:  Okay.

COURT REPORTER:  Off the record.

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

(OFF THE RECORD)

COURT REPORTER:  On record.

BY MR. HORNSBY:

Q    All right.  Dr. Levine, I've put number --
Exhibit 35 back in front of you here.  It's the e-mail
notice to you about the August 13, 2015 meeting?

A    Yes.

Q    I just wanted to go through the list of things
that are going to be covered at the meeting.  Do you see
that numbers one through four in the e-mail?

A    Yes.

Q    Okay.  Number one is discuss and decide what
to do about the monies owed to Henry A. Schilling and
Phyllis Schilling, his wife.  Do you know whether or not
that was discussed at the meeting?

A    Yes.  The meeting was discussed that -- that
Henry was requesting his money.

Q    Okay.  Was it -- do you know whether BSP was
in a position to be able to pay off the note to Hank
Schilling and his wife and still remain viable?

A    Did I know?  The answer is no because they
didn't provide me financial information that would've
made me properly evaluate that.  But my feeling was that
this was something that they definitely could've worked
out with a bank or some -- I don't believe that they --

MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

I believe that they could have paid off Schilling, yes.

Q   Did you try to obtain -- as a member of BSP, did you ever try to contact any banks to see if you could obtain any financing to pay off his note?

A   The answer is no.  But I didn't even have -- if you looked at Frein's note, he asked how much are we delinquent that we can't pay, and there's no answer. This is a futile attempt to gain information from the company, and no, I didn't -- it wasn't -- I didn't have the information, and I didn't believe it was true, and I don't know what they were doing.

Q   Okay.  So at the time of the foreclosure, once you were made aware of it, that the foreclosure action was filed, why did you not file anything with the court objecting to the foreclosure if you felt you didn't have the information to make a decision on it?

MR. ALLISON:  I'm going to object only to the extent any part of your answer is an attorney/client communication.  If you can answer separate from that, go ahead.

A   Are you asking why I didn't file anything when I learned?

BY MR. HORNSBY:

Q   About the foreclosure objecting to it because you have expressed that you didn't have the

 MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900      www.MILESTONEREPORTING.com      Toll Free 855-MYDEPOS

information --

A    I wasn't noticed -- I wasn't told about these different things, right?  I know there was a conversation with the lawyer which I'm not going to go into.  And I don't remember at the -- at the -- what was the reason at the time that I did not do that.

Q    Did you understand, and going back to this letter, that there was discussion of the company possibly being dissolved as a result of this note that was due?

A    The letter speaks for itself what it says. I'm going to tell you I was hearing things from Marc all along.  Company is barely afloat, he's buying trucks. Company is barely afloat, putting $350,000 in.  Do I believe that the company should be dissolved at this point?  No.  Do I believe it can't pay its debts?  No.

Q    That is --

A    They -- they didn't even properly look at what was owed to Schilling.  I mean, how can you determine that you don't have enough money if you don't even know what you owe Schilling?

Q    Now, you said, and I just want to make sure I understood it, that at this time you believe the company did -- is it true you believe the company did not have enough funds to pay off the Schilling notes?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    That's not what I said.

Q    Okay.

A    I'm saying they did have enough funds.

Q    Oh, you believe they did have enough?

A    Yes.

Q    And how did you know that if you did not have all the records that you said you had requested at this time period?

A    Because the company was doing more than 6 million in revenue.

Q    What about -- what was the net profit; do you know?

A    In 2015 or 2014?

Q    2015.

A    I didn't have that information in -- in July of 2015.

Q    You did not have?

A    No.  I wouldn't have received the tax form 'til 2016.  I didn't get it until September, roughly 2017.  I'm not even sure I got it then.

Q    So if you didn't have this information and you felt that the company could pay down the Schilling note, why did you not do more to either assist the company in obtaining the financing to pay the Schilling note or to object to the foreclosure action?

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

A    Because I was never given financial information to determine if this was correct.  And all the financial information I was given before was complaining that they were barely afloat, yet they were -- their actions were not commensurate with what they're sending the e-mails about.  And --

Q    The meeting on August 13th that you did not attend, but you had your counsel attend on your behalf, did he raise any of the issues that you've just addressed with me about your concerns with the company?

A    Yes.  He did.  He specifically asked, Marc, what was the, you know, financial information for the company at present?  Marc couldn't tell him.  Asked him, well, how did it do last quarter?  Can't tell him. Finally, he had to reduce his comment to, is the company on an upswing or is it on a down swing?  And Marc said it's on an upswing.  So Marc was even deceptive at this meeting when important matters were being discussed. And he couldn't even -- he's the one who is 100 percent responsible for running the company, according to himself.  And he claims he didn't know that the balloon payment was coming due which --

Q    Wait.  When did he claim that he did not know the balloon payment was coming due?

A    2013, August 13 -- I'm sorry, August 13, 2015,

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

members and manager meeting.

Q    Do you have a transcript of that meeting?

A    Yes.  You do, too.

Q    August 2013.

A    No.  No.

Q    You mean August 2015?

A    No.  I said August 13, 2015.

Q    Okay.

A    He wasn't acting in a fiduciary ca -- thing for the company.  He was saying, this has gotten so screwed up.  I don't want them coming after me.  He wasn't doing it --

Q    So you --

A    They -- they let Temple on the call to begin with he shouldn't have been on.  It was lucky Frein was there to tell him to get off the call.

Q    So after that call or the meeting, August 13, 2015, after you realized everything you've just told me, why did you not file something in the foreclosure action to try to stop the foreclosure?

MR. ALLISON:  I'm going interpose my same objection not to disclose any communications with counsel.  If you have a separate answer -- I'm also going to object to the form because it's -- I'm objecting to the form, but only if you can answer

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

without attorney/client communications.

A    Haven't you asked me this question before?

BY MR. HORNSBY:

Q    Well, if you knew everything wasn't right with the company and this foreclosure was moving forward, why did you not intervene and file something to try to stop the foreclosure?

A    I didn't know that the foreclosure was moving forward.  I told you when I basically learned about the lawsuit, stuff was not given to us and properly noticed.  This was all a sham, how it was happening, and why should I jump in and try and do something when I don't even have the financial information to show the Court?

MR. HORNSBY:  Okay.  I don't have anything further.  Thank you.

THE WITNESS:  Okay.  Thank you.

MR. ALLISON:  No cross examination.  The witness will read.

COURT REPORTER:  Will read?  Okay.  And send it to your office?

MR. ALLISON:  Yes.  Please.

COURT REPORTER:  Are you going to order, too, Mr. Hornsby?

MR. HORNSBY:  I'll let you know.

COURT REPORTER:  Okay.  Sounds good.  If he

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

does order, are you going to need a copy?

MR. BYRD:  If it's ordered, we'll take a copy.

COURT REPORTER:  Perfect.  Thank you.  We'll go off the record.

(DEPOSITION CONCLUDED AT 5:48 P.M.)



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**     **www.MILESTONEREPORTING.com**     **Toll Free 855-MYDEPOS**

188887 Levine scott 09-08-2021 Page 245

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF ORANGE


    I, the undersigned, certify that the witness in the
foregoing transcript personally appeared before me and
was duly sworn.


Identification:  Produced Identification







_____

Zulma Argueta

Court Reporter, Notary Public

State of Florida

Commission Expires: 05/05/2025

Commission Number:  HH125273

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900     www.MILESTONEREPORTING.com     Toll Free 855-MYDEPOS

C E R T I F I C A T E

STATE OF FLORIDA)

COUNTY OF ORANGE)


     I, Zulma Argueta, Court Reporter and Notary Public

for the State of Florida at Large, do hereby certify

that I was authorized to and did report the foregoing

proceeding, and that said transcript is a true record of

the said proceeding.


     I FURTHER CERTIFY that I am not of counsel for,

related to, or employed by any of the parties or

attorneys involved herein, nor am I financially

interested in said action.


Submitted on: September 24, 2021.




                    _____

                    Zulma Argueta

                    Court Reporter, Notary Public



MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

ERRATA

PAGE       LINE                           CHANGE      REASON

I have read the entire transcript of my deposition taken in the captioned matter or the same has been read to me.I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the Errata Sheet and authorize you to attach the changes to the original transcript.

_____    _____

Date                           NAME

 MILESTONE | REPORTING  COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

**MILESTONE I REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

**September 24, 2021**

**Tucker Byrd, Esquire**
Byrd Campbell, P.A.
180 N. Park Avenue
Suite 2A
Winter Park, FL 32789-7401

RE:     Deposition of **Scott Levine** taken on **9/8/2021**
        Marc Barhonovich & Diana Berthiaume vs Scott Levine

Dear Mr. **Byrd**,

### IMPORTANT NOTICE FOR DEPOSITION TRANSCRIPT READ AND SIGN

It is suggested that the review of this transcript be completed within 30 days of your receipt of this letter,

as considered reasonable under Federal Rules*.

___     **Attorney - Copy of Transcript Enclosed:**  Signature of the Deponent is required.  Please have the deponent make any corrections/changes necessary on the Errata Sheet ONLY, sign name on the form where indicated.  Please return ONLY the original signed Errata Sheet to our offices within 30 days from the date of this memorandum.  If you have any questions, please call our offices.

_X_     **Attorney - No Copy Ordered:**  Since you did not request a copy of the transcript, it will be necessary for the Deponent to call our offices to arrange for an appointment to read and sign the transcript of the Deposition within 30 days of this memorandum.

___     **Deponent:**    At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, attached please find a copy of the transcript and Errata Sheet.  Please read the transcript, make any corrections necessary on the Errata Sheet ONLY, sign the bottom of the Errata Sheet, and return it within 30 days from the date of this memorandum.  Please call our offices if you have any questions.

___     **Deponent:**    At the time of your deposition, you did not waive your right to read and sign the transcript of your testimony, therefore, it is necessary for you to come to our offices to read and sign same.  Please call Milestone Reporting Company to arrange for an appointment at your earliest convenience.

___     The attached executed copies of the Errata Sheet(s) are sent to you for your files.  If you have any questions, please call our offices.

Thank you for your attention to this matter.

No. 188687

cc: Lawrence Hornsby, Esquire

Waiver:
I, Scott Levine, hereby waive the reading and signing of my deposition transcript.

_____          _____
Deponent Signature                                                              Date

*Federal Civil Procedure Rule 30 (e) / Florida Civil Procedure Role 1.310 (e)