EXHIBIT D

FILED

2012 SEP 17 AM 8: 59

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

Thomas M. Melton (Utah State Bar No. 4999)
meltont@sec.gov
Daniel Wadley (Utah State Bar No. 10358)
wadleyd@sec.gov
Paul N. Feindt (Utah State Bar No. 8769)
feindtp@sec.gov
Attorneys for Plaintiff
United States Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Telephone: 801-524-5796
Facsimile: 801-524-5262

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| **PLAINTIFF,** | Civil No. 6:12-cv- 1415-ORC-28 PAB |
| **v.** | Judge _____ |
| **FREEDOM ENVIRONMENTAL SERVICES, INC., a Delaware Corporation, MICHAEL BORISH, and MICHAEL CIARLONE,** | |
| **DEFENDANTS.** | |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its

Complaint against Freedom Environmental Services, Inc. ("Freedom"), Michael S.

Borish ("Borish") and Michael J. Ciarlone ("Ciarlone") (collectively, "Defendants")

alleges as follows:

.

# INTRODUCTION

1. This matter involves repeated, ongoing misstatements or omissions made by Freedom and Borish in periodic reports Freedom filed with the Commission. Borish, in his role as an officer and director of Freedom, has been responsible for signing, certifying and filing these false periodic reports.

2. These false periodic reports are part of a fraudulent scheme by Borish to seize and retain control of Freedom.

3. Freedom has also issued at least one false press release and failed to file Forms 8-K (the vehicle by which the investing public is informed of material developments with issuers) regarding material events such as Freedom's recent bankruptcy filing and settling insider litigation.

4. Freedom's filings with the Commission also misrepresent the composition of Freedom's board of directors and the officers of Freedom.

5. Borish and Ciarlone, until recently Freedom's Chief Operating Officer, misappropriated corporate funds to pay their personal expenses and devised a scheme to circumvent Freedom's internal controls.

6. Borish has refused to cede control of Freedom to the duly elected Board of Directors and continues to operate Freedom for his own benefit. Borish currently controls Freedom, its bank accounts, and has made no attempt to publicly correct the material misstatements and omissions in Freedom's public filings.

7. As of the date of filing this Complaint, Freedom continues to make these misrepresentations to the investing public.

## JURISDICTION AND VENUE

8.       This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

9.       Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the Middle District of Florida.

10.       Venue for this action is proper in the Middle District of Florida under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district, because Freedom's principal place of business is Orlando, Florida and because the defendants reside in and transact business in this district.

11.       Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

12.       Defendants' conduct took place in connection with the offer, purchase and/or sale of Freedom securities.

3

## DEFENDANTS

13.  **Freedom Environmental Services, Inc.**, is a Delaware corporation organized on October 6, 1978 as United States Aircraft Corp. The company changed its name to Freedom on June 11, 2008. Freedom's principal place of business is Orlando, Florida. Freedom registered its common stock pursuant to Section 12(g) of the Exchange Act and is quoted on the OTC Link (formerly the "Pink Sheets").

14.  Certain members of Freedom's board of directors filed for voluntary bankruptcy protection on behalf of Freedom on August 13, 2012.

15.  **Michael S. Borish**, 48, was a director and CEO of Freedom. Borish resides in Orlando, Florida. Borish was terminated from Freedom on May 12, 2012. He remains in control of the corporation.

16.  **Michael J. Ciarlone**, 45, was a director and chief operating officer ("COO") of Freedom. Ciarlone resides in Orlando, Florida. Ciarlone was terminated on August 10, 2012.

## RELATED PARTIES

17.  B&P Environmental Services, LLC ("B&P") was a Florida limited liability company controlled by Harvey Blonder, ("Blonder"), Gary Goldstein, ("Goldstein") and Robin Bailey ("Bailey") located in Edgewater, Maryland. Ciarlone was the general manager of B&P until he went to work for Brownies WasteWater Solutions, Inc. ("Brownies").

18.  Brownies is a Florida corporation headquartered in Orlando, Florida.

4

## STATEMENT OF FACTS

## BACKGROUND

19.     B & P provided wastewater management and recycling services, and commercial and residential septic services.  These services included drain field installation, maintenance and repair; grease trap cleaning, maintenance, installation and repair; full service commercial and residential plumbing; sewer drain cleaning, backflow testing, repairs and certifications; lift station cleaning, maintenance, repairs, bio-solids transportation and recycling.

20.     Towards the end of 2008, B&P purchased Brownies, a Florida corporation. B&P was the holding company which owned all of the issued and outstanding shares of Brownies, which was the operating entity.  Ciarlone was the president of Brownies.

21.     Prior to July 2010, Freedom had minimal operations.

22.     During 2009, Borish and Ciarlone began talking about merging Freedom with B&P.  On July 17, 2010, Freedom entered into a purchase agreement with Brownies, B&P, Ciarlone, Blonder, Goldstein, Bailey and Borish.  Under the terms of the agreement, Freedom agreed to purchase all of the member interests of B&P and all of the issued and outstanding shares of Brownies.

23.     The parties structured the transaction as a reverse merger of the operations of B&P/Brownies into Freedom.  The purchase price for the acquisition consisted of the issuance, at the closing, of 48,000,000 shares of Freedom's stock to the parties that comprised the holders of both B&P and Brownies.

24. On July 17, 2010, Freedom filed a Form 8-K/A announcing the reverse merger, including a copy of the purchase agreement as an exhibit to the filing. The Form 8-K stated that Blonder, Bailey, Ciarlone, and Goldstein would represent over fifty percent of the issued and outstanding shares of Freedom, resulting in a change of control of Freedom. On August 20, 2010, Freedom filed Form 10-Q for the quarter ended June 30, 2010. The Form 10-Q also indicated a change in control of Freedom.

25. On September 28, 2010, Freedom held a shareholder meeting for the purpose of officially electing officers and a board of directors. Borish, Ciarlone, Blonder, Bailey, and Goldstein were elected to the board for a three year term. Blonder was elected as the chairman of the board and president, Borish as Freedom's CEO and vice president, Ciarlone as COO and vice president, Bailey as secretary, and Goldstein as treasurer.

26. After the September 28 meeting, Borish failed to release control of the company, and refused to recognize the new members of the board of directors. Borish also failed to adhere to the terms of the purchase agreement, including, providing the other directors with the books and records of Freedom. As a result, on December 28, 2010, B&P, Brownies, Blonder, Goldstein, and Bailey filed an action in Florida state court against Freedom and Borish alleging that Borish made material false statements and refused to comply with the terms of the purchase agreement. That case was captioned B&P Environmental. LLC, Harvey Blonder. Gary Goldstein & Robin Bailey v. Freedom Environmental Services. Inc. and Michael Borish, Case No. 2010-CA-0266477-O, (Fla. 9th Cir. Orange County).

6

27. On December 22, 2010, Borish filed a Form S-8, registering an additional 2,500,000 shares of Freedom common stock.

28. The parties entered into a settlement agreement of the Florida state court action in May 2011. The terms of the settlement included, in part, that Freedom would amend its bylaws pursuant to the terms of the purchase agreement of the parties to authorize five directors; Freedom would provide to Blonder and Goldstein a full and accurate accounting; Borish, Ciarlone, Blonder, and Goldstein agreed to vote all shares that each of them own on the effective date of the agreement for the election of Borish, Ciarlone, Blonder, Goldstein and Ted Doukas ("Doukas") as the five directors of Freedom.

29. On May 18, 2011, Freedom held another shareholder meeting to elect a board of directors and officers. By a unanimous vote, Borish, Ciarlone, Blonder, Goldstein, and Doukas were elected to the board of Freedom for a three year term. Blonder was elected to serve as the chairman of the board and president, Borish as CEO, Ciarlone as COO, Bailey as vice president, Goldstein as secretary, and John Davis as treasurer.

30. Borish failed to provide the other board members with accounting information, or recognize them as officers and directors of the company despite the settlement agreement. Borish operated and managed Freedom as though he was the sole officer and director.

31. Finally, in approximately October 2011, Blonder, Doukas, Goldstein, and Bailey filed a motion with the Florida state court to have the May 2011 settlement agreement enforced. Once again, in February 2012, the parties reached an agreement that

7

the May 2011 settlement was still in force, and the Florida state court action was voluntarily dismissed

32. Borish continued to run Freedom as if he were the sole officer and director, even after agreeing again in February 2012 to the terms of the May 2011 settlement agreement.

33. On May 12, 2012, Blonder as chairman of the board of directors, sent Borish an email stating that a majority of the board had voted to terminate Borish as CEO effective immediately. Borish refused to step down as CEO.

34. In a final attempt to regain control and force a reorganization of the company, Blonder, Doukas and Bailey filed for voluntary Chapter 11 bankruptcy protection on August 13, 2012. That bankruptcy was suspended on September 4, 2012.

## FREEDOM FILES FALSE REPORTS WITH THE COMMISSION

35. Beginning in the fall of 2010, Freedom made material misrepresentations and omissions in Commission filings. Between July 2010 and July 2012, Freedom filed numerous Forms 8-K, 10-Q, and 10-K in which Borish misrepresented his position with Freedom and the composition of Freedom's board of directors.

36. Although signing Commission filings using various titles and positions as detailed below, between July 2010 to the present, Borish only held the positions of member of the board of directors and CEO.

37. On November 22, 2010, Freedom filed Form 10-Q for the quarter ended September 30, 2010. The 10-Q falsely stated that the composition of Freedom's board of directors and management did not change post-acquisition. This directly contradicts the

8

Form 10-Q filed for the prior quarter which indicated the merger caused a change of control of Freedom and is inconsistent with the results from the vote held at the September 28, 2010 shareholder meeting.

38. On June 7, 2011, Freedom filed its Form 10-K for the year ended December 31, 2010. Borish signed the Form 10-K as president, CFO, and chairman. The Form 10-K included Dr. Scott Levine as a member of the board of directors, and reiterated that the composition of Freedom's board of directors and management did not change post-acquisition.

39. This Form 10-K was false. The Form 10-K listed Borish as the sole director of Freedom and also failed to disclose the litigation filed on December 28, 2010 by the other members of the board of directors.

40. On December 1, 2011, Freedom filed Form its 10-Q for the quarter ended September 30, 2011. The Form 10-Q discloses the litigation filed by the board of directors against Freedom and Borish, but fails to disclose the parties entered into a settlement agreement, or re-elected a board of directors. Borish signed the Form 10-Q as CEO, and Ciarlone's name as principal financial officer was affixed at the CFO.

41. The December 1, 2011 Form 10-Q was false in that Ciarlone was not Freedom's principal financial officer and Ciarlone did not authorize Borish to sign his name to the Form 10-Q certification.

42. Borish signed his name to the Section 302 certifications for the Form 10-Q.

9

43. These certifications were false. Ciarlone did not read or review the Form 10-Q prior to the filing, and did not authorize his signature for use on the Section 302 certification.

44. On May 15, 2012, Freedom filed Form 10-K for the year ended December 31, 2011. The Form 10-K listed Borish as the chairman, president, CEO, CFO and sole director of Freedom. Borish was listed as being the CEO and Chairman since June 2008.

45. Borish signed the Form 10-K as CEO, president, secretary, and director.

46. Borish signed his name to the Section 302 certifications for the Form 10-K.

47. These certifications were false. Ciarlone did not read or review the Form 10-Q prior to the filing, and did not authorize his signature for use on the Section 302 certification. Borish was not Freedom's chairman of the board or president. Ciarlone was not Freedom's CFO.

48. Freedom filed a Schedule 14C Information Statement with the Commission on July 26, 2012 indicating the board of directors of Freedom consisted of Reginald M. Berthiaume, Ciarlone, Levine, and Borish. The 14C also falsely stated that Ciarlone graduated with a bachelor's degree in Business and Marketing from Widener University, and listed Ciarlone as Freedom's CFO. Ciarlone never graduated from Widener University and was never Freedom's CFO.

49. Freedom has failed to disclose material information in its Commission filings. Freedom never disclosed the May 2011 settlement agreement entered into in the Florida state court litigation.

10

50.     Freedom has not disclosed that it was the subject of a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the Middle District of Florida. (In re Freedom Environmental Services, Inc., Case No. 12-10958-6J1).

51.     Borish was the CEO of Freedom and thus responsible for the financial reporting and accuracy of Freedom's public filings. Borish's misrepresentations in the filings were material because the filings did not reflect the actual officers and directors of the company.

52.     During the relevant time period Freedom registered 2,500,000 shares of common stock on Form S-8. Borish signed the Form S-8 as Freedom's CEO and CFO.

## FREEDOM ISSUES A FALSE PRESS RELEASE

53.     On March 14, 2011, Freedom issued a press release announcing it had acquired David M. Hickman Septic Service Company ("Hickman"). Ciarlone is quoted in the press release as to the advantages the acquisition will have on future business for Freedom.

54.     The March 14, 2011 press release is false. Freedom and Hickman had only entered into a letter of intent, subject to Freedom concluding its due diligence and securing funding for the acquisition. Freedom deposited $175,000 towards the purchase, but was never able to consummate the deal as it did not have the necessary funds. The transaction failed to close.

55.     Borish and Ciarlone knew, or should have known, that the press release was false.

11

## BORISH AND CIARLONE MISAPPROPRIATE FREEDOM FUNDS

56.     Beginning in at least July 2011, Ciarlone and Borish diverted funds from Freedom for their personal use.  Ciarlone told two Freedom customers who purchased used cooking oil from Freedom to wire payments to Ciarlone's personal account at Suntrust Bank instead of to Freedom's corporate account.

57.     Ciarlone and Borish agreed to split the deposits between themselves.  The scheme involved at least $125,000 and continued until at least May 2012.

58.     Borish and Ciarlone devised a scheme by which they misappropriated corporate assets for their own benefit.  By requiring customers to submit payment to Ciarlone's personal account and then splitting the ill-gotten gains with Borish, they orchestrated a fraudulent scheme in which they knowingly took advantage of their position as CEO and COO, colluding with each other, and demonstrated a lack of management integrity that enabled them to misappropriate corporate assets.

59.     This misappropriation resulted in material misrepresentations in Freedom's Commission filings.  While the dollar amount of funds misappropriated from Freedom compared to Freedom's overall earnings is not quantitatively large, the qualitative nature of these transactions renders them material, since they go to the heart of management integrity.

**FIRST CAUSE OF ACTION**
**EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD**
**Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]**
**(Freedom and Borish)**

60.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

61.     Defendants Freedom and Borish, and each of them, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

62.     By reason of the foregoing, Defendants Freedom and Borish, and each of them, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate, Section 17(a)(1) of the Securities Act.

**SECOND CAUSE OF ACTION**
**FRAUD IN THE OFFER AND SALE OF SECURITIES**
**Violations of Section 17(a)(2) and (3) of the Securities Act**
**[15 U.S.C. § 77q(a)(2) and (3)]**
**(Freedom and Borish)**

63.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

64.     Defendants Freedom and Borish, and each of them, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to

13

make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

65. By reason of the foregoing, Defendants Freedom and Borish, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act.

### THIRD CAUSE OF ACTION
### FRAUD IN CONNECTION WITH THE
### PURCHASE AND SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
### Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]
### (Freedom and Borish)

66. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

67. Defendants Freedom and Borish, and each of them, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

68. By reason of the foregoing, Defendants Freedom and Borish, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

14

## FOURTH CAUSE OF ACTION
## FRAUD IN CONNECTION WITH THE
## PURCHASE AND SALE OF SECURITIES
### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
### Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)]
### (Ciarlone)

69. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

70. Ciarlone violated Section 10(b) and Rules 10b-5(a) and (c) by devising a scheme by which he misappropriated corporate assets for his own benefit.

71. The dollar amounts, albeit small, are qualitatively material since they go to the heart of management integrity.

72. Defendant Ciarlone, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; or (2) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

73. By reason of the foregoing, Defendant Ciarlone, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) thereunder.

## FIFTH CAUSE OF ACTION
## FALSE FILINGS WITH THE COMMISSION
### Violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and
### Rules 12b-20, 13a-1, 13a-11 and 13a-13 [17 C.F.R. 240.12b-20, 13a-1, 13a-11, 13a-13]
### (Freedom)

74.    The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

75.    Section 13(a) and Rules 12b-20, 13a-1, 13a-11 and 13a-13 promulgated thereunder require companies filing periodic reports with the Commission to file truthful reports that do not omit information and would otherwise make the information in the filings not misleading.

76.    Rule 12b-20 of the Exchange Act requires issuer's reports to include any additional information "necessary to make the required statements, in the light of the circumstances under which they are made, not misleading."

77.    Freedom violated Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, 13a-13 and 12b-20 by filing incomplete and inaccurate reports with the Commission that materially misrepresented Freedom's management composition, and failed to disclose the settlement of material litigation, the theft by the CEO and CFO and Freedom's bankruptcy filing. These misrepresentations and omissions occurred from July 2010 through the present in either their annual reports on Form 10-K, quarterly reports on Form 10-Q, or periodic reports on Form 8-K.

78.    The only positions held by Borish during the relevant time period were CEO and member of the board of directors. Ciarlone's position was COO and board member. However, the Commission filings falsely listed Borish as holding positions

such as president, secretary, CFO, chairman of the board, and sole director, and Ciarlone as being CFO and principal financial officer.

79. By reason of the foregoing, Freedom, directly or indirectly, violated, and unless restrained and enjoined, will continue to violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11 and 13a-13] promulgated thereunder.

### SIXTH CAUSE OF ACTION
### AIDING AND ABETTING MAKING FALSE FILINGS WITH THE COMMISSION
#### Aiding and Abetting Violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11 and 13a-13 [17 C.F.R. 240.12b-20, 13a-1, 13a-11, 13a-13]
#### (Borish)

80. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

81. Aiding and abetting liability arises when there is: (1) a violation of the securities laws by some other party; (2) a general awareness by the aider and abettor that his role is part of an overall activity that was improper; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. Either willfulness or a reckless indifference to a known obligation or set of facts will satisfy the scienter requirement to be held liable as an aider and abettor.

82. Borish knowingly and substantially assisted Freedom's violations by directly and indirectly filing or causing to be filed with the Commission annual reports on Form 10-K, quarterly reports on Form 10-Q, and periodic reports on Form 8-K that were inaccurate and misleading. Borish signed false Forms 10-K, Forms 10-Q, and Forms 8-K

on behalf of Freedom that materially misrepresented Freedom's management composition, failed to disclose the settlement of material litigation, failed to disclose theft by the CEO and CFO, and failed to disclose Freedom's bankruptcy filing.

83.     By reason of the foregoing, Borish, directly or indirectly, and unless restrained and enjoined, will continue to aid and abet Freedom's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11 and 13a-13 promulgated thereunder.

## SEVENTH CAUSE OF ACTION
## FALSE BOOKS AND RECORDS
### Violations of Sections 13(b)(2)(A) and (B) of the Exchange Act
### [15 U.S.C. § 78m(b)(2)(A) and (B)]
### (Freedom)

84.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

85.     Section 13(b)(2)(A) of the Exchange Act requires companies to keep accurate books, records and accounts which reflect the transactions entered into by a company and the disposition of its assets.

86.     Section 13(b)(2)(B) requires companies to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements and to maintain accountability for such assets.

87.     Freedom failed to make and keep books, records and accounts that provided reasonable assurances that transactions it had entered into with its distributors

18

and resellers had been accounted for and not falsified. Freedom did not devise or maintain a system of internal accounting controls that assured that sales were being properly recorded on its financial statements.

88.     By reason of the foregoing, Freedom, directly and indirectly violated, and unless restrained and enjoined, will continue to violate Sections 13(b)(2)(A) and (B) of the Exchange Act.

## EIGHTH CAUSE OF ACTION
### VIOLATIONS OF FALSE BOOKS AND RECORDS AND AIDING AND ABETTING SUCH VIOLATIONS
**Aiding and Abetting Violations of Sections 13(b)(2)(A) and (B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A) and (B)] and Violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 thereunder [17 C.F.R. 240.13b2-1] (Borish)**

89.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

90.     Borish aided and abetted Freedom's violations of Section 13(b)(2)(A) and (B) and directly violated Rule 13b2-1 by causing Freedom's books and records to be inaccurate. Borish deliberately kept Freedom revenue off the Freedom books and records by directing payments to Ciarlone's personal bank account in order to hide his theft.

91.     Section 13(b)(5) of the Exchange Act provides "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record or account described in paragraph (2)."

92.     Borish, as CEO, circumvented Freedom's accounting and internal controls by instructing certain customers to make payments to Ciarlone's personal

19

account. Borish knew these payments were not recorded on the books and records of Freedom. Thus, Borish directly violated Section 13(b)(5).

93. By reason of the foregoing, Borish, directly and indirectly, aided and abetted Freedom's violations, and unless restrained and enjoined, will continue to aid and abet Freedom's violations of Section 13(b)(2)(A) and (B) of the Exchange Act and directly violated, and unless restrained and enjoined, will continue to violate Section 13(b)(5) of the Exchange Act and Rule 13b2-1 promulgated thereunder.

## NINTH CAUSE OF ACTION
### VIOLATIONS OF FALSE BOOKS AND RECORDS AND AIDING AND ABETTING SUCH VIOLATIONS
**Aiding and Abetting Violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A] and Violating Section 13(b)(5) of the Exchange Act [15 U.S.C § 78m(b)(5)] and Rule 13b2-1 thereunder [17 C.F.R. 240.13b2-1]**
**(Ciarlone)**

94. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

95. Ciarlone aided and abetted Freedom's violations of Section 13(b)(2)(A) and directly violated Rule 13b2-1 by causing Freedom's books and records to be inaccurate. Ciarlone deliberately kept Freedom revenue off the Freedom books and records by directing payments to Ciarlone's personal bank account in order to hide his theft.

96. Section 13(b)(5) of the Exchange Act provides "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record or account described in paragraph (2)."

20

97.     Ciarlone, as COO,  circumvented Freedom's accounting and internal controls by instructing certain customers to make payments to Ciarlone's personal account.  Ciarlone knew these payments were not recorded on the books and records of Freedom.  Thus, Ciarlone directly violated Section 13(b)(5).

98.     By reason of the foregoing, Ciarlone, directly and indirectly, aided and abetted Freedom's violations, and unless restrained and enjoined, will continue to aid and abet Freedom's violations of Section 13(b)(2)(A) of the Exchange Act and, directly and indirectly violated , and unless restrained and enjoined, will continue to violate Section 13(b)(5) of the Exchange Act and Rule 13b2-1 promulgated thereunder.

## TENTH CAUSE OF ACTION
## FALSE CERTIFICATIONS OF ANNUAL AND QUARTERLY REPRORTS
### Violations of Rule 13a-14 [17 C.F.R. 240.13a-14]
### (Borish)

99.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

100.     Rule 13a-14 of the Exchange Act requires that an officer or director certify that he reviewed certain reports filed by an issuer and that, based on his or her knowledge, the reports did not contain untrue statements of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading with respect to the period covered by the report.

101.     Borish was responsible for supervising Freedom's accounting and finance operations, signing and certifying Freedom's public filings, preparing Freedom's

21

financial statements and reviewing such reports and statements to determine the accuracy and completeness of Freedom's financial disclosures.

102.  Borish's representations in Freedom's public filings were false and misleading.  Because Borish knew of the material misstatements or omissions contained in the quarterly and annual reports, he violated Rule 13a-14 by certifying those reports.

103.  The filings also included two false Section 302 certifications as Ciarlone never authorized his signature on the certification.  Borish signed and certified all of Freedom's filings from July 2010 to the present.  Borish was aware of his misappropriation of corporate assets and the attempt to conceal the activity.

104.  By reason of the foregoing, Borish, directly or indirectly violated , and unless restrained and enjoined, will continue to violate Rule 13a-14 promulgated under the Exchange Act.

### ELEVENTH CAUSE OF ACTION
### FALSE INFORMATION STATEMENT
### Violations of Section 14(c) of the Exchange Act [15 U.S.C. § 78n(c)] and
### Rule 14c-6 thereunder [17 C.F.R. 14c-6]
### (Freedom)

105.  The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

106.  Section 14(c) of the Exchange Act and Rule 14c-6 thereunder prohibit misleading statements in information statements filed with the Commission.

107.  Freedom filed a Schedule 14(c) Information Statement on July 25, 2012. The Schedule 14(c) misrepresented the board of directors of Freedom.  The 14(c) also misrepresented Ciarlone's education. indicating he graduated from Widener University.

22

Ciarlone never graduated from college. Finally, Freedom listed Borish as CEO, even though the board terminated him on May 12, 2012.

108. By reason of the foregoing, Freedom, directly and indirectly, violated, and unless restrained and enjoined will continue to violate Section 14(c) of the Exchange Act and Rule 14c-6 promulgated thereunder.

## TWELFTH CAUSE OF ACTION
### AIDING AND ABETTING FILING OF A FALSE INFORMATION STATEMENT
Aiding and Abetting Violations of Section 14(c) of the Exchange Act
[15 U.S.C. § 78n(c)] and Rule 14c-6 thereunder [17 C.F.R. 14c-6]
(Borish)

109. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 59, above.

110. Borish aided and abetted the filing of false Schedule 14(c) Information, signing the filing as CEO of Freedom. Borish knew the filing contained the misrepresentations detailed above.

111. By reason of the foregoing, Borish, directly and indirectly, aided and abetted Freedom's violations, and unless restrained and enjoined will continue to aid and abet Freedom's violations of Section 14(c) of the Exchange Act and Rule 14c-6 promulgated thereunder.

23

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I.

### Declaratory Relief

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

### II.

### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin Defendants Freedom and Borish and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin Defendant Ciarlone and his

officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a), (c)].

## IV.

### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders temporarily restraining and preliminarily and permanently enjoining defendant Freedom, and its officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in the transactions, acts, practices and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 13(a), 13(b)(2)(A), 13(b)(2)(B) and 14(c) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), 78m(b)(2)(B), 78n(c)] and Rules 12b-20, 13a-1, 13a-11, 13a-13 and 14c-6 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, 240.14c-6].

## V.

### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders temporarily restraining and preliminarily and permanently enjoining defendant Borish, and his officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in the transactions, acts, practices and courses of business described herein, and from engaging in conduct of similar purport and object in aiding and abetting Freedom's violation of Section 13(a), 13(b)(2)(A), 13(b)(2)(B) and 14(c) of the Exchange Act [15 U.S.C. §§78m(a), 78m(b)(2)(A), 78m(b)(2)(B), 78n(c)] and Rules 12b-20, 13a-1, 13a-11, 13a-13 and 14c-6 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, 240.14c-6] thereunder and from violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rules 13a-14 and 13b2-1 thereunder [17 C.F.R. §§ 240.13a-14, 240.13b2-1].

## VI.

### Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders temporarily restraining and preliminarily and permanently enjoining defendant Ciarlone, and his officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who

26

receive actual notice of the order by personal service or otherwise, and each of them, from engaging in the transactions, acts, practices and courses of business described herein, and from engaging in conduct of similar purport and object in aiding and abetting Freedom's violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] and from violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule and 13b2-1 thereunder [17 C.F.R. § 240.13b2-1].

## VII.

## Officer and Director and Penny Stock Bar

Issue an order barring the defendants Borish and Ciarlone from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l, as amended] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]. Issue an order barring defendant Borish from participating in an offering of penny stock pursuant to Section 20(g) of the Securities Act.

## VIII.

## Disgorgement

Issue an order directing defendants Borish and Ciarlone to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest thereon.

Case 1:21-cv-15385-BLTS Document 49 Filed 09/16/24 Page 29 of 29 PageID 28

# IX.

## Civil Monetary Penalties

Issue an order directing defendants Borish and Ciarlone to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

# X.

## Records Preservation

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently restrain and enjoin Defendants, and each of them, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of Defendants.

# XI.

## Asset Freeze, Appointment of a Receiver and Expedited Discovery

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a temporary freeze of assets under the control of

Borish until further order of the Court, the appointment of a receiver for Freedom, and the acceleration of discovery, including the forthwith production of documents.

## XII.

## Further Relief

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated this 17th day of September, 2012.

Respectfully submitted,

Thomas M. Melton
Utah State Bar No. 4999
Senior Trial Counsel
U.S. Securities & Exchange Commission
15 West South Temple, Suite 1800
Salt Lake City, Utah 84101
Tel.: 801-524-5796
Fax: 801-524-5262
meltont@sec.gov