UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MERLY JEWIK, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>TRANSMEDICS GROUP, INC., et al., )<br><br>Defendants. ) | No. 1:25-cv-10385-LTS<br><br>CLASS ACTION |
| PATRICK COLLINS, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>TRANSMEDICS GROUP, INC., et al., )<br><br>Defendants. ) | No. 1:25-cv-10778-LTS<br><br>CLASS ACTION |

THE CACCAVALES AND DR. LEVINE'S OPPOSITION TO COMPETING LEAD
PLAINTIFF MOTIONS

4927-0570-3484.v1

## I.   PRELIMINARY STATEMENT

On April 15, 2025, four competing motions were filed by putative class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (1) Andrew Mac Donald; (2) Antonio Echeverría Gutiérrez; (3) Peace Officers' Annuity and Benefit Fund of Georgia ("Georgia Peace Officers") and Oguzhan Altun; and (4) Joseph Caccavale, Mary Lou Caccavale, and Dr. Scott D. Levine.  See ECF 14, 17, 20, 23. [1]

Based on information provided by the movants, the Caccavales and Dr. Levine are the "most adequate plaintiff" within the meaning of the PSLRA.  See 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Indeed, the Caccavales and Dr. Levine possess the largest financial interest in the relief sought by the class:

| Movant | Loss Suffered |
|---|---|
| The Caccavales and Dr. Levine | $654,167 |
| Georgia Peace Officers and Altun | $578,637 |
| Antonio Echeverría Gutiérrez | $114,305 |
| Andrew Mac Donald | $45,369 |

See ECF 16-2, 19-4, 22-2, 25-3 (movants' loss charts).

Moreover, the Caccavales and Dr. Levine – investors with nearly a century of investing experience between them with familiarity working with legal counsel and a commitment to jointly prosecuting this case to obtain the best possible result for the class – satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  By contrast, none of the competing movants can be appointed as lead plaintiff because they did not suffer the largest loss, nor can they rebut the

---

[1]    On April 22, 2025, Andrew Mac Donald withdrew his motion.  See ECF 26.  On April 29, 2025, Antonio Echeverría Gutiérrez filed a notice of non-opposition to the competing motions. See ECF 27.  Unless otherwise noted, all emphasis is added and citations are omitted.

4927-0570-3484.v1

presumption in the Caccavales and Dr. Levine's favor.  Accordingly, the Caccavales and Dr. Levine respectfully request that their motion be granted.

## II.    ARGUMENT

In determining the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  "This presumption may be rebutted with **proof** by a member of the purported class that the person identified as the most adequate plaintiff either will not fairly and adequately represent the class or is subject to unique defenses." *Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*, 52 F. Supp. 3d 337, 340 (D. Mass. 2014) (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)).

As demonstrated herein, the Caccavales and Dr. Levine are the presumptively "most adequate plaintiff" because they are the movant that has the largest financial interest and also satisfy the requirements of Rule 23.

### A.    The Caccavales and Dr. Levine Are Entitled to the "Most Adequate Plaintiff" Presumption

To determine the largest financial interest, "[a]pproximate loss is generally considered 'the most important factor.'" *Bowers v. Tesaro Inc.*, 2018 WL 2089358, at *1 (D. Mass. May 4, 2018); *see also City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*, 2022 WL 1505907, at *1 (D. Mass. May 12, 2022) ("Most courts appoint whichever potential lead plaintiff

- 2 -

has suffered the largest total loss.").[2]  Here, the Caccavales and Dr. Levine's loss of $654,176 is more over $75,000 larger than the movant claiming the next largest loss:

| Movant | Loss Suffered |
|---|---|
| The Caccavales and Dr. Levine | $654,167 |
| Georgia Peace Officers and Mr. Altun | $578,637 |
| Antonio Echeverría Gutiérrez | $114,305 |
| Andrew Mac Donald | $45,369 |

As such, the Caccavales and Dr. Levine have the largest financial interest.

Pursuant to the PSLRA's sequential process, having identified the Caccavales and Dr. Levine as the movant with the largest financial interest, the Court proceeds by assessing whether they "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  "In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. . . .  Those findings need only be 'preliminary.'"  *Loc. No. 8*, 52 F. Supp. 3d at 341.  The Caccavales and

---

[2]     *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) ("[A]ny financial difference [in loss] is meaningful in determining a lead plaintiff."); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) ("'Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures.'"); *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *6 (D. Ariz. Mar. 11, 2009) (movant who lost "only a few hundred dollars" more than the competing class member nonetheless was the presumptive lead plaintiff because he "has a greater financial stake in the controversy, however minute that greater stake may be in relation to the overall damage claim"); *Clair v. DeLuca*, 232 F.R.D. 219, 225 (W.D. Pa. 2005) (recognizing that this factor is "'exclusive; there may be only one person with the largest financial stake in the litigation'"); *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) ("Although the Massachusetts Group concludes that the 'de minimus' difference of $26,000 should not be conclusive on the financial interest determination, the Ninth Circuit has given no indication that courts are free to ignore the statutory presumption given to the plaintiff with the 'largest financial interest in the relief sought by the class.'").

4927-0570-3484.v1

Dr. Levine satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as lead plaintiff. *See* ECF 24 at 4-6.

The Caccavales and Dr. Levine meet Rule 23's typicality requirement because their claims "arise from the same course of events and involve the same legal theory as to the claims of the rest of the class," namely, they: (1) purchased or acquired TransMedics securities during the Class Period; (2) in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. *Loc. No. 8*, 52 F. Supp. 3d at 341; ECF 24 at 4-6. Likewise, the Caccavales and Dr. Levine meet Rule 23's adequacy requirement because their interests are clearly aligned with the interests of the other members of the class. *Id.* Indeed, the Caccavales and Dr. Levine's significant financial interest provides the requisite incentive to prosecute this case and ensure the best possible result for the class. Further, the Caccavales and Dr. Levine have nearly 85 years of investing experience between them as well as experience working with legal counsel. ECF 25-4 at ¶¶2-4. In addition, the Caccavales and Dr. Levine are a cohesive group of plaintiffs who have evidenced their adequacy detailing their *bona fides* as well as their commitment to jointly prosecuting this case to ensure that the class's claims are efficiently and zealously prosecuted. *Id.* at ¶¶6-9. Before filing their motion, they conferred and discussed their plan for collaboration and commitment to overseeing counsel for comprehensive and vigorous class representation. Finally, the Caccavales and Dr. Levine have further evidenced their adequacy by selecting lead counsel that has substantial experience in successfully prosecuting securities class actions. *See* ECF 24 at 6-7. Indeed, Robbins Geller's 2024 recoveries for investors

4927-0570-3484.v1

exceeded $2.5 billion – triple the amount recovered by the next largest firm. [3] Thus, the Caccavales and Dr. Levine have made a preliminary showing of typicality and adequacy and have triggered the PSLRA's "most adequate plaintiff" presumption.

To rebut the strong presumption in favor of appointing the Caccavales and Dr. Levine as lead plaintiff, the PSLRA requires "proof" that the Caccavales and Dr. Levine "will not fairly and adequately protect the interests of the class; or . . . [are] subject to unique defenses that render such plaintiff[s] incapable of adequately representing the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Here, the competing movants cannot do so. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nce the presumption is triggered, the question ***is not*** whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job.") (emphasis in original).  Accordingly, the Court should grant the Caccavales and Dr. Levine's lead plaintiff motion and deny the competing motions.

**B.      The Competing Movants Cannot Trigger the PSLRA "Most Adequate Plaintiff" Presumption**

In addition to claiming smaller losses than the Caccavales and Dr. Levine, Georgia Peace Officers and Altun have not made a preliminary showing of Rule 23's requirements and cannot trigger the "most adequate plaintiff" presumption.  To the contrary, the competing motion raises significant questions about their ability to oversee counsel and lead this case on behalf of the class. For example, the motion offers no evidence about how or why Mr. Altun (an individual investor located in Switzerland) came to be paired with a pension fund located in Griffin, Georgia.  *See In*

---

[3]    *See* ISS SCAS *"Top Plaintiff Law Firms of 2024," available at* https://www.issgovernance.com/library/top-50-plaintiff-law-firms-2024/.  A copy is also attached hereto as Exhibit 1 for the Court's convenience.

4927-0570-3484.v1

*re Origin Materials, Inc.*, 2023 WL 8698363, at \*2-\*3 (E.D. Cal. Dec. 15, 2023) ("There is nothing in the record explaining how FNY Partners Fund, an investment fund based in New York, and Di Murro, an individual investor based in Ontario, Canada, became acquainted or what their relationship is. They do not even share the same counsel, instead proposing that two law firms serve as lead counsel."). Other than his financial interest, how does Altun (an operator of a photography school) bolster the adequacy of Georgia Peace Officers? Even more importantly, there is no explanation of why these movants are represented by three different law firms (two lead counsel and one "additional counsel"), or what role each firm would have in the litigation. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 817 (N.D. Ohio 1999) (disqualifying lead plaintiff movant "with three firms (separately retained by separate plaintiffs) to act as lead counsel"); *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270, 278-79 (E.D. Pa. 2020) (finding movant group inadequate, *inter alia*, given "that so many law firms midwifed the Inovio Group gives the impression that lawyers created the Group or at least partly assembled its members"). Not even attempting to justify or support why this grouping required a duplicative lead counsel structure, this odd grouping ignores entirely the role that The Schall Law Firm (listed as "Additional Counsel for Oguzhan Altun") played in the creation of the group and/or what role that firm will play in litigation.[4] Altun provides no evidence of whether he selected Scott+Scott as counsel or his "additional counsel," The Schall Law Firm, selected Scott+Scott for Altun. Nor does the combined Swiss resident and Georgia pension fund provide the Court any explanation of why the Scott+Scott

---

[4]     *See Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 454 (D. Mass. 2018) ("In this case, Maxon did not select [lead counsel]. Instead, Maxon testified that less than one week after the close of the proposed class period . . . Maxon committed to working only with [Altun's "Additional Counsel"]. ["Additional Counsel"] later selected [lead counsel] . . . . Maxon stated that [Mr. Altun's "Additional Counsel"] 'handed [Maxon] off' to [lead counsel] without his knowledge or approval.'").

- 6 -

firm filed the *Collins* action listing only itself and The Schall Law Firm as "Counsel for Plaintiff Patrick Collins," then filed the Georgia Peace Officers and Altun lead plaintiff motion with the addition of the Saxena White firm if the grouping was not made solely to increase Georgia Peace Officers' financial interest. *See Collins v. TransMedics Group*, No. 1:25-cv-10778-LTS, ECF 1 at 47 (D. Mass Apr. 2, 2025). Nor do they explain why Georgia Peace Officers and Altun executed Certifications with differing formats (indicating they were created by different law firms) on the very day the motion was due. *See* ECF 22-1 (Georgia Peace Officers and Altun's Certifications).

The facts substantiate that the joint motion of Georgia Peace Officers and Altun was cobbled together at the last moment by counsel in an attempt to manufacture a larger financial interest. This lack of clarity takes on an altogether different hue when reviewed in the context of recent PSLRA class actions in which district court inquiries have revealed shareholder plaintiffs being moved between and amongst different law firms, with individual investor clients never even being aware until after-the-fact that they had filed a motion seeking the appointment of these firms as lead counsel.[5] In sum, Georgia Peace Officers and Altun have failed to make a preliminary showing of their adequacy.

---

[5]     *See, e.g.*, *Garbowski*, 302 F. Supp. 3d at 448-56 (finding that "[n]o one at [law firm] ever spoke to [movant]," "or communicated with him directly [] until" one year after motion was filed, when "the court expressed its intent to question [movant]" and detailing process by which lead plaintiff candidate submitted certification on referring law firm's website, which certification was then retrieved by a lawyer with a different law firm altogether, and then provided the certification to firm seeking status as lead counsel); *DeSmet v. Intercept Pharms. Grp., Inc.*, No. 1:17-cv-07371-LAK, ECF 51 (S.D.N.Y. June 1, 2018) (finding that the "litigation of these [lead plaintiff] motions has revealed behavior by some of the counsel that is unseemly if not worse and that clearly suggests to the undersigned that the counsel involved should not serve as lead counsel"); *Gronich v. Omega Healthcare Investors, Inc.*, No. 1:17-cv-08983, ECF 28 at 2; 29; 29-2 (S.D.N.Y. Jan. 30, 2018) (revealing that a movant who filed two lead plaintiff motions, one individually with one law firm and a second motion as part of a group with two other law firms, "never selected [the two other law firms] as his lawyers," and "did not know [that the two law firms] were filing a lead plaintiff motion on his behalf, let alone as part of any group," and also exposing that the name of a referring law firm was redacted from the movant's certification); *see also In re Netflix, Inc., Sec. Litig.*, 2012

- 7 -

## III.  CONCLUSION

None of the competing movants possess the largest financial interest.  Nor can any competing movant prove that the Caccavales and Dr. Levine are either inadequate or subject to unique defenses. Consequently, none of the competing movants can trigger the PSLRA's most adequate plaintiff presumption.  As such, the Caccavales and Dr. Levine request that the Court appoint them as Lead Plaintiff and approve their selection of lead counsel.

DATED:  April 29, 2025

Respectfully submitted,

BERMAN TABACCO

*/s/ Patrick T. Egan*
PATRICK T. EGAN, BBO #637477
One Liberty Square
Boston, MA  02109
Telephone:  (617) 542-8300
pegan@bermantabacco.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

---

WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (noting that "all signs point to the Fish Group having been recruited by one law firm, . . . and then transferred for reasons unknown to their present counsel").

- 8 -

CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filings (NEF) and paper copies of the documents will be sent to those indicated as non-registered participants.


DATED:  April 29, 2025                          /s/ Patrick T. Egan
                                                PATRICK T. EGAN (BBO #637477)
                                                One Liberty Square
                                                Boston, MA  02109
                                                Telephone:  (617) 542-8300
                                                pegan@bermantabacco.com

- 9 -

4927-0570-3484.v1