UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MERLY JEWIK, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:25-cv-10385-LTS |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | Leave to File Granted on May 9, 2025 |
| TRANSMEDICS GROUP, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |
| PATRICK COLLINS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 1:25-cv-10778-LTS |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| TRANSMEDICS GROUP, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

THE CACCAVALES AND DR. LEVINE'S REPLY IN FURTHER SUPPORT OF
LEAD PLAINTIFF MOTION

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT...........................................................................................................2

        A.      The Caccavales and Dr. Levine Are the Presumptive Lead Plaintiff ......................2

        B.      Georgia Peace Officers' Status as an Institutional Investor Does Not
                Trump the Financial Interest Inquiry .......................................................................5

        C.      Dr. Levine's Testimony in a Prior Litigation Has No Bearing on His
                Adequacy in This Case ................................................................................6

        D.      The Competing Movants Fail to Rebut the Presumption in Favor of the
                Caccavales and Dr. Levine ................................................................................9

III.    CONCLUSION......................................................................................................11

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
512 F. Supp. 3d 196 (D. Mass. 2020) ........................................................................10

*Atkinson v. Morgan Asset Mgmt., Inc.*,
2008 WL 11319683 (W.D. Tenn. Sept. 23, 2008)......................................................9, 10

*Chupa v. Armstrong Flooring, Inc.*,
2020 WL 1032420 (C.D. Cal. Mar. 2, 2020)...............................................................8, 9

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*,
2022 WL 1505907 (D. Mass. May 12, 2022)...............................................................2

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
2021 WL 396343 (S.D.N.Y. Feb. 4, 2021)..................................................................3

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*,
2019 WL 2611013 (E.D. Tenn. June 26, 2019)...........................................................5

*Garbowski v. Tokai Pharms., Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018) .........................................................................10

*Hall v. Medicis Pharm. Corp.*,
2009 WL 648626 (D. Ariz. Mar. 11, 2009) .................................................................6

*Hessefort v. Super Micro Comput., Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ......................................................................5

*Horowitz v. Sunedison, Inc.*,
2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) .............................................................3

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005).................................................................5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .....................................................................................5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................9

*In re Credit Suisse-AOL Sec. Litig.*,
253 F.R.D. 17 (D. Mass. 2008)...................................................................................4

**Page**

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................................8

*In re Proxima Corp. Sec. Litig.*,
  1994 WL 374306 (S.D. Cal. May 3, 1994) ...................................................................8

*In re Surebeam Corp. Sec. Litig.*,
  2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) .................................................................8

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999) .........................................................................5

*Ishak v. WM Tech., Inc.*,
  2025 WL 791270 (C.D. Cal. Mar. 11, 2025) ...............................................................3

*Jastram v. Nextera Energy, Inc.*,
  2023 WL 11885983 (S.D. Fla. Oct. 26, 2023) .............................................................4

*Kornick v. Talley*,
  86 F.R.D. 715 (N.D. Ga. 1980) ...................................................................................8

*Labelle v. Future FinTech Grp., Inc.*,
  2024 WL 4275226 (D.N.J. Sept. 24, 2024) ..............................................................6, 8

*Leavitt v. Alnylam Pharms., Inc.*,
  378 F. Supp. 3d 60 (D. Mass. 2019) ............................................................................2

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
  2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ...............................................................4

*McGee v. Constant Contact, Inc.*,
  No. 1:15-cv-13114-MLW (D. Mass. May 27, 2020) ..................................................10

*Owens v. FirstEnergy Corp.*,
  2020 WL 6873421 (S.D. Ohio Nov. 23, 2020) ............................................................3

*Pio v. Gen. Motors Co.*,
  2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ............................................................2

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) ............................................................3, 4

*Raby v. Evolv Techs. Holdings, Inc.*,
  2024 WL 4252685 (D. Mass. Sept. 20, 2024) ..............................................................2

**Page**

*Sayce v. Forescout Techs., Inc.*,
  2020 WL 6802469 (N.D. Cal. Nov. 19, 2020) ........................................................................8

*Scuderi v. Mammoth Energy Servs., Inc.*,
  2019 WL 4397340 (W.D. Okla. Sept. 13, 2019) ....................................................................9

*SEC v. Freedom Env't Servs., Inc.*,
  No. 6:12-cv-01415-DAB (M.D. Fla. Sept. 17, 2012) .............................................................7

*Shim v. DZS, Inc.*,
  2025 WL 634811 (E.D. Tex. Feb. 26, 2025) ..........................................................................6

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
  2019 WL 494129 (M.D. Tenn. Jan. 9, 2019)...........................................................................4

*The Zemel Fam. Tr. v. Philips Int'l Realty Corp.*,
  205 F.R.D. 434 (S.D.N.Y. 2002) ............................................................................................8

*Westchester Putnam Cntys. Heavy & Highway
  Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*,
  2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016).......................................................................4

## I.    INTRODUCTION

In opposition to the Caccavales and Dr. Levine's motion, the competing movant contends for the first time in its opposition brief that the movants' financial interest should be determined by factors other than loss – an about-face from the contention in their motion that "economic interest" is equivalent to "the losses they have suffered."  ECF 21 at 2.  Such vacillating advocacy on what constitutes financial interest after a movant learns a competing movants' financial interest is a ploy regularly rejected by the vast majority of district courts around the country.  Indeed, Georgia Peace Officers and Altun fail to cite a single example from this District (or from any district court within this Circuit) in the three decades since the enactment of the PSLRA where a court has found that a lead plaintiff movant claiming the largest loss did not possess the largest financial interest because of differences in the non-loss factors that favored another movant.  This Court should decline the Georgia Peace Officers and Altun's invitation to be the first.

Georgia Peace Officers and Altun's pronouncement that Dr. Levine's testimony in a past business litigation "establishes that he breached his fiduciary duties" and thus presents "an acute risk that he will not fairly and adequately represent the Class" fares no better.  *See* ECF 28 at 17.  Even a cursory review of the SEC complaint cited by Georgia Peace Officers and Altun reveals that Dr. Levine was ***not*** named as a defendant (or a related party) in the action and there were ***no*** allegations of wrongdoing involving Dr. Levine.  Their focus on Dr. Levine's out-of-context answers to deposition questions in a separate litigation is similarly misplaced.  *See infra* §II.C.  Georgia Peace Officers and Altun's challenge to Dr. Levine's adequacy thus lacks any basis in fact or law and should be rejected.

Georgia Peace Officers and Altun's evolving arguments, inconsistent positions, and factually and legally insufficient attacks on Dr. Levine's adequacy underscore their inability to displace the presumption in favor of the movants with the largest financial stake.  As such, the Caccavales and

Dr. Levine remain entitled to the most adequate plaintiff presumption, and the Court should grant their motion.

## II.    ARGUMENT

### A.    The Caccavales and Dr. Levine Are the Presumptive Lead Plaintiff

Georgia Peace Officers and Altun do not dispute that the Caccavales and Dr. Levine have the largest loss of any movant during the Class Period, whether calculated under LIFO or FIFO. Nor did they originally dispute that a lead plaintiff's "economic interest" is tantamount to "the losses they have suffered" ECF 21 at 2. Tellingly, Georgia Peace Officers and Altun likewise maintained that they "sustained a loss of approximately $578,637 on a LIFO basis on their transactions in TransMedics securities" and "[a]ccordingly, . . . have the largest financial interest." ECF 21 at 8-9. For good reason: "[m]ost courts understandably and appropriately appoint the potential lead plaintiff that has suffered the largest total loss." *Raby v. Evolv Techs. Holdings, Inc.*, 2024 WL 4252685, at *1 (D. Mass. Sept. 20, 2024); *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*, 2022 WL 1505907, at *1 (D. Mass. May 12, 2022) ("Most courts appoint whichever potential lead plaintiff has suffered the largest total loss."); *Leavitt v. Alnylam Pharms., Inc.*, 378 F. Supp. 3d 60, 64 (D. Mass. 2019) (same).[1]

It is thus surprising that Georgia Peace Officers and Altun abandoned their initial advocacy on the financial interest inquiry after realizing that the Caccavales and Dr. Levine suffered a larger loss, urging the Court to focus instead on the so-called *Lax* factors and consider Georgia Peace Officers exclusively for appointment without Altun. *Compare* ECF 21 *with* ECF 28. Unfortunately, it has become increasingly common for movants with smaller losses to jettison the conventional loss metric used in their lead plaintiff motion in favor of "devis[ing] [their] own methodology" in an opposition

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted.

brief that "tak[es] into consideration particular nuances of the parties' transactions in th[e] case." *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *7 (E.D. Mich. Oct. 24, 2014). For this reason, "courts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition [brief] after a new movant comes in alleging a greater loss." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021). This mid-game maneuvering is precisely what Georgia Peace Officers and Altun attempt to do here.

In attempting to elevate the non-loss *Lax* factors over losses, Georgia Peace Officers and Altun fail to cite a single example from any district court within this Circuit in the three decades of jurisprudence since the enactment of the PSLRA where a court has found that a lead plaintiff movant claiming the largest loss did not possess the largest financial interest because of differences in non-loss *Lax* Factors. Nor do Georgia Peace Officers and Altun explain why any factor other than loss is relevant to the Court's assessment of financial interest in ***this*** case.[2]

Georgia Peace Officers and Altun's out-of-district authorities demonstrate that even if the non-loss factors ***may*** be relevant in certain circumstances, they are not relevant here. For example, Georgia Peace Officers and Altun fail to inform the Court that in the primary case they rely on, *Ishak v. WM Tech., Inc.*, 2025 WL 791270, at *4 (C.D. Cal. Mar. 11, 2025), Judge Wright actually appointed the movant with a larger loss under the FIFO methodology despite that movant having a slightly smaller loss under the LIFO methodology. And in *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007), the court looked to the first three factors after noting that the movant claiming a 2% larger loss actually had a much smaller recoverable loss because "the lion's

---

[2]  *See also Owens v. FirstEnergy Corp.*, 2020 WL 6873421, at *10 (S.D. Ohio Nov. 23, 2020) (finding the non-loss *Lax* factors "less useful because the LIFO method incorporates them into its calculation methodology"); *Horowitz v. Sunedison, Inc.*, 2016 WL 1161600, at *4 n.5 (E.D. Mo. Mar. 24, 2016) ("Although the Zecher Family Group argues that it has the largest financial interest when measured under the other *Lax* factors, it does not dispute that MERS has the greatest approximate loss, which is the primary *Lax* factor in determining which potential lead plaintiff has the largest financial interest . . . .").

share of the [movant's] claimed losses may be uncollectible or at least subject to unique defenses in that [the movant] may have sold most of its shares before SafeNet announced corrective measures." *Id.* at *2. Importantly, here, Georgia Peace Officers and Altun agree that the loss calculations (whether under FIFO, LIFO, or the "recoverable loss" methods) **all** favor the Caccavales and Dr. Levine. *See St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *4-*5 (M.D. Tenn. Jan. 9, 2019) ("The Court thus finds no reason to depart from its prior practice of looking to the fourth *Olsten-Lax* factor [(loss)] as the most important.").

| Movant | LIFO Loss | FIFO Loss |
|---|---|---|
| The Caccavales and Dr. Levine | $608,292 | $654,167 |
| Georgia Peace Officers and Altun | $578,637 | $578,637 |
| Loss Differential | $29,655 (+5%) | $75,530 (+13%) |

Indeed, the primary reason that has caused courts to consider the non-loss *Lax* factors is precisely that circumstance when one movant claims a larger loss under one accepted methodology (LIFO) and another movant claims a larger loss under a different accepted loss methodology (FIFO). *See generally In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 24 (D. Mass. 2008) ("Both the FIFO and LIFO methods have been employed to calculate losses stemming from securities fraud (though LIFO seems to be emerging as the preferred method)."). [3] Because none of the circumstances in those

---

[3]    Another circumstance where courts have found the non-loss *Lax* factors persuasive are cases with a **single** corrective disclosure where one movant significantly prevails on the first three *Lax* factors, including "net shares purchased." *See Westchester Putnam Cntys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc*., 2016 WL 11648466, at *2 (S.D.N.Y. Nov. 29, 2016) (first three factors "**overwhelmingly** favor" the movant with $20,887 less in claimed losses); *Jastram v. Nextera Energy, Inc*., 2023 WL 11885983, at *3-*4 (S.D. Fla. Oct. 26, 2023) (rejecting movant claiming a $7000 larger loss who "owned no common stock as of the corrective disclosure date, and instead owned only a specific type of preferred stock" whereas competing movant had a "decisive lead with respect to the three remaining factors"). In distinguishing *Westchester Putnam*, another court appropriately recognized that assessing the amount of net shares purchased during the class period is "particularly unpersuasive," where like here, there are multiple corrective disclosures alleged in the complaint

cases exist here, "[i]t is not self-evident . . . what weight these factors should be given in relation to the amount of loss, or even why [the Court] should consider them at all." *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) ("the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

This Court should decline to be the first in this Circuit to adopt factors other than loss as the appropriate measure of financial interest when the movant urging that position abandoned its initial advocacy and offered no support for the use of those factors in this case.

### B.   Georgia Peace Officers' Status as an Institutional Investor Does Not Trump the Financial Interest Inquiry

Georgia Peace Officers' argument that its status as the lone institutional investor is enough to supersede the larger losses of the Caccavales and Dr. Levine is contradicted by "a straightforward application of the [PSLRA] statutory scheme . . . [which] provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. . . . If financial sophistication had been Congress's principal concern, it would not have made the plaintiff who *lost* the most money the presumptive lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 732, 737 n.20 (9th Cir. 2002) (emphasis in original).[4]

The Court should reject Georgia Peace Officers and Altun's argument that the 5-figure loss differential between the movants is so minimal that the Court should look to Georgia Peace Officers' institutional investor status as some sort of extra-statutory "tiebreaker." Doing so would be contrary

---

and the fraud premium varies over time. *Li Hong Cheng v. Canada Goose Holdings In*c., 2019 WL 6617981, at *5 (S.D.N.Y. Dec. 5, 2019).

[4]   *See also In re Telxon Corp. Sec. Litig.,* 67 F. Supp. 2d 803, 821-22 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff *solely by virtue of its status as an institutional investor* . . . . If that were the case, Congress would have simply provided that *institutional investors* are presumptively the most adequate plaintiffs, regardless of the size of financial loss . . . .") (emphasis added and in original); *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 2019 WL 2611013, at *5 (E.D. Tenn. June 26, 2019) (same).

to the statute, which says "largest" not "largest by x%." *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) ("Neither has the Court found persuasive authority, nor have the parties provided any to the Court, suggesting that the Court should not determine that a plaintiff has largest financial share when its lead is small.").[5]

There is no dispute that the Caccavales and Dr. Levine suffered the greatest loss – under both LIFO and FIFO. Georgia Peace Officers' status as an institution is irrelevant to that determination.

### C.      Dr. Levine's Testimony in a Prior Litigation Has No Bearing on His Adequacy in This Case

Finally, Georgia Peace Officers and Altun contend that Dr. Levine's testimony in a prior litigation "establishes that he breached his fiduciary duties," thus presenting "an acute risk that he will not fairly and adequately represent the Class here." ECF 28 at 17. Georgia Peace Officers and Altun's failure to accurately represent the previous proceedings involving Dr. Levine to this Court represents either an unwillingness to investigate (at best) or a deliberate choice to misrepresent the facts in an effort to bolster their baseless adequacy challenge. In any event, their position has no basis in fact or law and should be rejected.

To successfully rebut the presumption in favor of the Caccavales and Dr. Levine on adequacy grounds, Georgia Peace Officers and Altun must "point to any criminal investigation, criminal conviction, or public sanction" that "rise[s] to the level of severely undermining [Dr. Levine's] ability to serve as lead plaintiff." *Labelle v. Future FinTech Grp., Inc.*, 2024 WL 4275226, at *6 (D.N.J. Sept. 24, 2024) (collecting cases). Georgia Peace Officers and Altun have pointed to no such evidence.

---

[5]      *Shim v. DZS, Inc.*, 2025 WL 634811, at *3 (E.D. Tex. Feb. 26, 2025) ("***The PSLRA does not contain an exception for when the difference in losses is small, and the Court is without power to create such an exception***."); *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *6 (D. Ariz. Mar. 11, 2009) (movant had "a greater financial stake . . . however minute that greater stake may be").

Instead, they rely on an SEC complaint that in no way implicated Dr. Levine and out-of-context answers to deposition questions in a separate civil litigation.

Even a cursory review of the SEC complaint cited by Georgia Peace Officers and Altun reveals that Dr. Levine was not named as a defendant (or a related party) in the action and there were no allegations of wrongdoing involving Dr. Levine.  In fact, Dr. Levine could not have been implicated in the SEC complaint because he was not appointed to Freedom Environmental Services Inc.'s board of directors until *after* nearly all of the alleged false statements were issued.  Further, the SEC proceedings alleged two of Freedom Environmental's executives and directors, Michael Borish and Michael Carlione, "devised a scheme by which they misappropriated corporate assets for their own benefit."  *See SEC v. Freedom Env't Servs., Inc.*, No. 6:12-cv-01415-DAB, ECF 1 at ¶58 (M.D. Fla. Sept. 17, 2012).  Borish, a patient of Dr. Levine, solicited Dr. Levine's investment in the company in the form of $225,000 in interest-bearing loans.  Thus, Borish and Carlione's misappropriation reduced the likelihood that Dr. Levine would have his loans repaid, making Dr. Levine a *victim* of the wrongdoing.[6]

The facts of Dr. Levine's previous litigation establish that: (1) Dr. Levine loaned $225,000 to Freedom Environmental, relying on Borish's positive portrayal of the business; (2) Dr. Levine was appointed as a board member of Freedom Environmental shortly before it went into receivership, without receiving substantial information or compensation for this role; (3) Dr. Levine was involved in efforts to emerge from receivership, including discussions with lawyers and forming a creditor group; (4) Dr. Levine contributed $17,000 towards closing costs and converted his loans to equity in BSP Holdings, LLC – the entity that acquired Freedom Environmental's assets; (5) Dr. Levine raised

---

[6]    The SEC litigation ended with a consent judgment.  Neither Borish nor Carlione "admit[ted] or den[ied] the allegations of the Complaint." *Freedom Env't Servs.*, No. 6:12-cv-01415-DAB, ECF 120-121 (M.D. Fla. Nov. 5, 2014).

concerns about BSP's financial practices, including the use of funds for potential personal expenses and the lack of proper financial documentation, leading to the initiation of a books and records request; (6) BSP then initiated an action for waste against Dr. Levine with that action ending with a joint stipulation for dismissal with prejudice; and (7) Dr. Levine was never implicated or accused of wrongdoing in the SEC action. *See* ECF 29-3.[7] These facts are a far cry from the situations identified in Georgia Peace Officers and Altun's cases in which lead plaintiff movants were arrested or found guilty of very serious violations. ECF 28 at 17-18.[8]

Courts considering whether to reject a lead plaintiff movant on adequacy grounds require a showing of "proof that [the lead plaintiff movant] was or is currently the subject of any active criminal investigation, has any criminal convictions, or has been publicly sanctioned for violating laws." *Labelle*, 2024 WL 4275226, at *5. An investment that led to litigation is clearly not the requisite "proof" to defeat an investor's lead plaintiff candidacy. Georgia Peace Officers and Altun do not come close to alleging the required proof to rebut the presumption in favor of the Caccavales and Dr. Levine.

---

[7]    Georgia Peace Officers and Altun's representation that Dr. Levine "'admitted to' breaching his fiduciary duties," (ECF 28 at 18), is patently false and not supported by the deposition testimony attached to their opposition, rendering their authority inapposite. *Kornick v. Talley*, 86 F.R.D. 715, 721 (N.D. Ga. 1980) (pre-PSLRA case finding proposed class representative inadequate where trustees of plaintiff trust ***admitted*** they "loaned money to themselves from the trust assets which they failed to repay or repaid without interest"); *In re Proxima Corp. Sec. Litig.*, 1994 WL 374306, at *17 (S.D. Cal. May 3, 1994) (pre-PSLRA case finding proposed class representative inadequate where he ***stipulated to judgment*** in a separate case, admitting that he participated in "'an intentional conspiracy . . . to interfere with [company's] financing and to convert the . . . project from [company]'"); *Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469, at *8 n.10 (N.D. Cal. Nov. 19, 2020) (finding movant inadequate where ***another court previously found*** it breached its fiduciary duty).

[8]    *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (disqualifying movant who "had his National Association of Securities Dealers ('NASD') membership terminated" and who "is subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments"); *The Zemel Fam. Tr. v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 436 (S.D.N.Y. 2002) (denying motion for class certification where proposed class representative "initiated hundreds of mini-tender offers at below market prices" through at least one entity the SEC concluded violated §14(e) of the Exchange Act); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (disqualifying lead plaintiff movant when the record showed that the entity was currently "under investigation for criminal fraud violations of the laws in Belgium" and various other wrongdoing).

That said, even extremely serious criminal convictions (which are not implicated here) do not necessarily render a movant subject to "unique defenses." Indeed, in *Chupa v. Armstrong Flooring, Inc.*, 2020 WL 1032420, at *3 (C.D. Cal. Mar. 2, 2020), a gentleman who pled guilty, was convicted, and sentenced to 97 months in federal prison for robbing a bank with a bomb was deemed to be a suitable PSLRA lead plaintiff. *Id.* at *2; *see also Scuderi v. Mammoth Energy Servs., Inc.*, 2019 WL 4397340, at *4 (W.D. Okla. Sept. 13, 2019) (felony conviction for distribution of controlled substance and misdemeanor charge for tampering with public records insufficient to rebut presumption that lead plaintiff was adequate).

Given the law on this issue, it is meritless to suggest that Dr. Levine's involvement and experience in contentious civil litigation is anything other than an *asset* to the class.[9] As such, Georgia Peace Officers and Altun's attempt to suggest otherwise lacks merit.

### D.    The Competing Movants Fail to Rebut the Presumption in Favor of the Caccavales and Dr. Levine

"[O]nce the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (emphasis in original). Georgia Peace Officers and Altun's speculation and innuendo falls far short of the proof required to rebut the presumption in favor of the Caccavales and Dr. Levine.[10] The Caccavales and Dr. Levine have evidenced their adequacy by participating in a joint conference call with counsel before their motion

---

[9]    To suggest otherwise is as meritless as arguing that Altun is inadequate because he runs a nude photography business. *See* https://www.altunphotography.com/-/galleries/home-page/boudoir (explicit content).

[10]    Georgia Peace Officers and Altun's suggestion that the Caccavales do not "present sufficient evidence of their own ability to effectively control this litigation or monitor counsel," (ECF 28 at 20), is ironic considering the dearth of information that Swiss resident Altun provided about himself. *See* ECF 22-3 (no mention of ever working with lawyers in the United States or abroad).

was filed and have continued to communicate after the motions and oppositions were filed. Further, they selected counsel that was sole lead counsel for 6 of the 10 largest securities class action settlements in 2024. *See* ECF 30-1 (Robbins Geller recovered $2.5 billion for investors in PSLRA actions in 2024, more than 10 times what Georgia Peace Officers and Altun's three firms recovered). Robbins Geller also has an established track record of successfully prosecuting PSLRA actions in this District. *Compare McGee v. Constant Contact, Inc.*, No. 1:15-cv-13114-MLW, ECF 120 (Transcript) at 21, 31, 61 (D. Mass. May 27, 2020) (Wolf, J.) ("[T]he class has been represented by excellent honorable counsel . . . . [T]he fund was represented by experienced, energetic, able counsel . . . . Counsel for the class have been excellent, and I would say honorable. . . . I find that the work that's been done primarily by Robbins Geller has been excellent and honorable and efficient. . . . [T]his has been a challenging case, and they've done an excellent job.") *with Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 454 (D. Mass. 2018) (Wolf, J.) (denying lead plaintiff motion where Altun's "Additional Counsel" "'handed [lead plaintiff movant] off' to [proposed lead counsel] without his knowledge or approval").

And, after two rounds of briefing, Georgia Peace Officers and Altun have yet to explain why they require three separate law firms to litigate this case (compared to the Caccavales and Dr. Levine who propose a single lead counsel firm). Judges throughout the country are skeptical that a multiple counsel "arrangement is likely to result in lawyer-led litigation in contravention of the purpose of the PSLRA." *Atkinson v. Morgan Asset Mgmt., Inc.*, 2008 WL 11319683, at *12-*13 (W.D. Tenn. Sept. 23, 2008).[11] The obvious inefficiencies created by multiple layers of law firms are not warranted here

---

[11]    *See also Ark. Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 262 (D. Mass. 2020) (reducing attorney fee award where the same attorney time was billed by multiple firms).

and can be avoided at the outset by appointing the Caccavales and Dr. Levine along with their one selected lead counsel firm to lead the case.

## III.   CONCLUSION

The Caccavales and Dr. Levine have the largest financial interest and have evidenced their typicality and adequacy.  Competing movants fall well short of providing the proof required to rebut the presumption in favor of the Caccavales and Dr. Levine.  As such, the remaining competing motion should be denied.  The Caccavales and Dr. Levine's motion should be granted.

DATED: May 9, 2025                                   BERMAN TABACCO

                                                     /s/ Patrick T. Egan
                                                     PATRICK T. EGAN, BBO #637477
                                                     One Liberty Square
                                                     Boston, MA  02109
                                                     Telephone:  (617) 542-8300
                                                     pegan@bermantabacco.com

                                                     Local Counsel

                                                     ROBBINS GELLER RUDMAN
                                                       & DOWD LLP
                                                     DANIELLE S. MYERS
                                                     MICHAEL ALBERT
                                                     JUAN CARLOS SANCHEZ
                                                     KENNETH P. DOLITSKY
                                                     655 West Broadway, Suite 1900
                                                     San Diego, CA  92101
                                                     Telephone:  (619) 231-1058
                                                     dmyers@rgrdlaw.com
                                                     malbert@rgrdlaw.com
                                                     jsanchez@rgrdlaw.com
                                                     kdolitsky@rgrdlaw.com

                                                     Proposed Lead Counsel for Proposed Lead
                                                     Plaintiff

- 11 -

- 12 -

CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filings (NEF) and paper copies of the documents will be sent to those indicated as non-registered participants.


DATED:  May 9, 2025                          */s/ Patrick T. Egan*                   
                                             Patrick T. Egan