**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MERLY JEWIK, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>            v.<br><br>TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON,<br><br>      Defendants. | Case No. 1:25-cv-10385-LTS<br><br>Hon. Leo T. Sorokin<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Leave to File Granted on May 9, 2025** |
| PATRICK COLLINS, on Behalf Himself and All Others Similarly Situated,<br><br>      Plaintiff,<br>            v.<br><br>TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON,<br><br>      Defendants. | Case No. 1:25-cv-10778-LTS<br><br>Hon. Leo T. Sorokin<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |

**THE TRANSMEDICS INVESTORS' REPLY MEMORANDUM OF LAW IN RESPONSE TO THE CACCAVALES AND DR. LEVINE'S OPPOSITION TO <u>COMPETING LEAD PLAINTIFF MOTIONS</u>**

## I.    **PRELIMINARY STATEMENT**

As expected, the Levine-Caccavales Group rests its motion for appointment as lead plaintiff solely on the aggregated claimed "loss" of its members.  ECF No. 30 at 2-4.[1]  This argument fails because it misreads the PSLRA.  As authority in this District holds, courts ruling on a PSLRA lead plaintiff motion examine movants' "financial interest" under the holistic *Lax-Olsten* factors and do not appoint a lead plaintiff based solely on a comparison of approximate losses.  The TransMedics Investors prevail under this test because they lead on three *Lax-Olsten* factors, net and total shares purchased and net expenditures, and are tied on the fourth factor, loss.

Moreover, courts frequently reject efforts by a group to aggregate when doing so would prevent a pension fund with the individual largest financial interest from serving as a lead plaintiff.  Yet that is exactly what the Levine-Caccavales Group seeks to do.  After stripping out Levine's FIFO-inflated loss calculations, it is clear that Georgia Peace Officers—the institutional member of the TransMedics Investors—has the largest financial interest because it leads individually on all four of the *Lax-Olsten* factors.  Aggregation is inappropriate under these facts.

The Levine-Caccavales Group's aggregation argument also elides Levine's extensive past as a faithless fiduciary of a public company that was prosecuted by the SEC.  The Levine-Caccavales Group has failed to carry its burden to justify aggregation in light of Levine's conduct, which the group failed to disclose to the Court, and its motion fails for this additional reason.

Finally, the Levine-Caccavales Group's attacks on the TransMedics Investors are all easily answered.  Courts in this District have recognized that it is appropriate and beneficial to appoint an institution and an individual as lead plaintiff because it provides the class with diverse

---

[1] Terms are defined as in the TransMedics Investors' opening and opposition briefs, ECF Nos. 21, 28.  Internal quotations and citations are omitted.  All emphasis is added unless otherwise noted.

representation.  *Ark. Tchr. Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 625 (D. Mass. 2016) ("[m]any courts have recognized the benefits of having both private and institutional lead plaintiffs in securities class actions.").  As the record shows, the TransMedics Investors' composition is favorably viewed in this District, and there is no evidence to the contrary.

## II.    ARGUMENT

### A.    The TransMedics Investors Have the Greatest Financial Interest

*First*, even if the Levine-Caccavales Group were allowed to aggregate, the TransMedics Investors would still have the largest "financial interest" and are therefore the presumptive lead plaintiff.  The Levine-Caccavales Group argues that it should be lead based on its aggregated "loss."  ECF No. 30 at 2-4.  But its argument fails to grapple with the PSLRA, which directs courts to examine "largest financial interest," not "loss," when determining the presumptive lead plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 (E.D. Pa. 2018) (noting that the PSLRA "references damages—'the relief sought,'" not loss).  Courts in this District apply the well-established *Lax-Olsten* factors to assess "financial interest," including total and net shares purchased, net funds expended, and approximate losses.  *Leech v. Brooks Automation, Inc.*, No. 06-cv-11068, 2006 WL 3690736, at *2 (D. Mass. Dec. 13, 2006).[2]

Although they seem to concede that all four *Lax-Olsten* factors apply, *see* ECF No. 30 at 4, n.2 (citing cases discussing the *Lax-Olsten* factors), the Levine-Caccavales Group argues that approximate loss is alone dispositive.  ECF No. 30 at 3-4.  Not so.  The most adequate plaintiff

---

[2] Recognizing that courts routinely apply all four *Lax-Olsten* factors in examining the financial interests of lead plaintiff movants, the TransMedics Investors included a chart with their motion summarizing their totals under each factor, ECF No. 22-2 at 2, and cited to this chart when asserting that the TransMedics Investors have the "largest financial interest in the relief sought by the class."  ECF No. 21 at 11.  Because the Levine-Caccavales Group's loss chart provides little clarity on the relevant factors, and their loss was inflated under FIFO, ECF No. 25-3, the TransMedics Investors provided a chart summarizing the Levine-Caccavales Group's four-factor exposure, including their loss under LIFO, as Exhibit B to their opposition.  ECF No. 29-2 at 3.

has the largest financial interest in the relief sought by the class, not loss.[3]   Here, given the

movants' aggregate losses are "roughly equal," the Court should "treat those losses as equivalent

and look to the other three *Lax* factors."   *Ishak v. WM Tech., Inc.*, No. 24-cv-8959, 2025 WL

791270, at *4 (C.D. Cal. Mar. 11, 2025).   The TransMedics Investors have the largest financial

interest overall (ECF No. 28 at 14-20), with more total and net shares purchased, more net

expenditures, and roughly equal losses.  *See Westchester Putnam Cntys. Heavy & Hwy. Laborers

Local 60 Benefit Funds v. Brixmor Prop. Grp.*, No. 16-cv-2400, 2016 WL 11648466, at *2

(S.D.N.Y. Nov. 29, 2016) (finding that where loss difference was minimal, *Lax-Olsten* factors

"provide a more objective assessment of a movant's financial interest than the losses suffered").

| MOVANT | TOTAL SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED | APPROXIMATE LOSS |
|---|---|---|---|---|
| **TransMedics Investors** | **27,887** | **6,014** | **$988,531** | **$578,637 LIFO** |
| Georgia Peace Officers | 14,737 | 5,614 | $759,843 | $374,395 |
| Mr. Altun | 13,150 | 400 | $228,687 | $204,242 |
| **Levine-Caccavales Group** | **12,200** | **5,200** | **$964,202** | **$608,292 LIFO ($654,167 FIFO)** |
| Levine | 9,700 | 4,700 | $671,202 | $348,507 LIFO ($395,564 FIFO) |
| Joseph Caccavale | 1,000 | 0 | $106,440 | $106,440 |
| Joseph and Mary Lou Caccavale Joint | 1,000 | 0 | $100,260 | $100,260 |
| Mary Lou Caccavale | 500 | 500 | $86,300 | $53,085 |

---

[3] The Levine-Caccavales Group's own authorities, ECF No. 30 at 3-4 & n.2, support weighing all four *Lax-Olsten* factors.  *See Bowers v. Tesaro Inc.*, No. 18-cv-10086, 2018 WL 2089358, at *1 (D. Mass. May 4, 2018) (appointing movant who "purchased the most net shares, and expended the most net funds of any of the competing [movants]" in addition to having the largest loss); *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. Cerence Inc.*, No. 22-cv-10321, 2022 WL 1505907, at *2 (D. Mass. May 12, 2022) (finding movant "has the largest financial interest at stake in this litigation, whether that stake is measured by the number of shares purchased in the class period, net shares purchased, net expenditures, or claimed losses."); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 271 (S.D.N.Y. 2015) (including a chart of all four *Lax-Olsten* factors).

***Second,*** the Levine-Caccavales Group should not be allowed to aggregate their financial interests to displace an institutional investor with the largest individual financial interest.  The Levine-Caccavales Group's reliance on the disfavored FIFO methodology overstates Levine's loss by over $47,000.  ECF No. 28 at 8, 14-18, ECF No. 29-1; *see also Luongo v. Desktop Metal, Inc.*, No. 21-cv-12099, 2022 WL 2532498, at *4 (D. Mass. July 7, 2022) (explaining that LIFO is preferred because "FIFO has the potential to exaggerate losses").[4]  As a result, when calculated under the prevailing LIFO methodology, Georgia Peace Officers—the only institutional investor before the Court—has the largest individual loss by over $25,000 and has the highest individual total on each of the *Lax-Olsten* factors.  ECF No. 28 at 8-9, 10-11.  This is significant because while courts have allowed groups to serve as lead plaintiff, they are skeptical of efforts by a group of individuals, such as the Levine-Caccavales Group, to aggregate their losses to prevent a pension fund with the single-largest financial interest from serving as a lead plaintiff.

For example, in *Hwang v. Smith & Wesson Holding Corp.*, when considering a movant group claiming the largest aggregate financial interest and a pension fund movant that "suffered by far the largest alleged individual loss," the court rejected the effort by the group to aggregate and appointed the pension fund, holding that it "possesses the sophistication, resources and long-standing relationship with counsel to insure that it will intelligently manage this litigation on behalf of the class."  No. 07-cv-30238, 2008 WL 11637862, at *1 (D. Mass. Apr. 15, 2008); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) ("[U]nrelated investors should not

---

[4] Despite knowing that LIFO is the preferred methodology in this District and across the nation for calculating loss under the PSLRA's lead plaintiff process, the Levine-Caccavales Group did not disclose that it used the disfavored FIFO methodology to inflate its claimed losses.  Accordingly, the Court should not allow the Levine-Caccavales Group on reply to belatedly defend its use of FIFO.  *See, e.g.*, *WNAC, LLC v. Verizon Corp. Servs. Grp., Inc.*, No. 21-cv-10750, 2024 WL 778794, at *7 (D. Mass. Feb. 26, 2024) ("The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum.").

be considered as lead plaintiff when that group would displace the institutional investor preferred by the PSLRA.").  The Court should follow an approach similar to the court in *Smith & Wesson* and reject the effort by the Levine-Caccavales Group to aggregate.

*Third*, the Court should reject the aggregation of the Levine-Caccavales Group's financial interests for the additional reason that they fail to carry their burden to demonstrate that their group is cohesive, including that all of its members satisfy Rule 23.  *See*, *e.g.*, *Nakamura v. BRF S.A.*, No. 18-cv-2213, 2018 WL 3217412, at *3 ("A proposed plaintiff group has the burden of showing that aggregation is appropriate").  Despite the Levine-Caccavales Group's naked promises to oversee the TransMedics action, ECF No. 25-4 at 3, Levine's troubling history of failing in a previous fiduciary role—which the Levine-Caccavales Group did not disclose—casts serious doubt on his capacity to "fairly and adequately protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(III)(ii).  By his own admission, when Levine served in a fiduciary role as a director of a public company, he acted as a self-described "lackey to sign shit," sometimes signed things he "shouldn't have[,]" and persisted in that role despite being given "no information" to make informed decisions.  ECF No. 28 at 22-23, ECF 29-3 at 63:8-10, 76:16-18, 32:6-7, 31:3-7, 41:21-22.  Levine's history is the only evidence before the Court on his adequacy,[5] and the Court should not allow the Levine-Caccavales Group to aggregate when they are inadequate under Rule 23.

## B.  The TransMedics Investors Are Adequate Under Rule 23

The Levine-Caccavales Group attempts to undermine the TransMedics Investors' adequacy by asking the Court to ignore the record in favor of suppositions, unevidenced claims,

---

[5] Despite seeking appointment as Lead Plaintiff, *i.e.*, as a fiduciary for absent Class members, the Levine-Caccavales Group chose not to disclose Levine's admitted failures when he previously served as a fiduciary.  The Court should not allow the Levine-Caccavales Group on reply to belatedly explain away Levine's conduct or argue that it does not render him inadequate. *See, e.g.*, *Small Justice LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 323 n.11 (1st Cir. 2017) ("arguments developed for the first time in a reply brief are waived"); *Verizon*, 2024 WL 778794, at *7.

and irrelevant case citations bearing no resemblance to the facts at issue here.  The Court should reject this invitation for several reasons.

*First*, the Levine-Caccavales Group asks "how or why" the TransMedics Investors came together, ECF No. 30 at 6-7, a question that is readily answered by the TransMedics Investors' submissions to the Court.  As the TransMedics Investors' Joint Declaration explains, "Georgia Peace Officers and Mr. Altun each independently determined that they could maximize the Class's recovery by seeking appointment as Lead Plaintiff" based on factors including their "complementary trading in TransMedics securities," "ability to share and combine resources and their perspectives," and "shared goals and interests in protecting and maximizing investor assets." ECF No. 22-3 at 5.  Further, the TransMedics Investors' decision to jointly seek appointment "was informed, in part, by Mr. Altun's perspective as a sophisticated individual investor and Georgia Peace Officers' role as a fiduciary to its members."  *Id.*[6]  The Levine-Caccavales Group asks how Mr. Altun, an individual investor, might "bolster the adequacy" of the TransMedics Investors, ECF No. 30 at 7, but courts routinely appoint individual and institutional investors as lead plaintiff because their diverse perspectives reflect the diversity of the class.  *See Steamfitters Local 449 Pension & Ret. Sec. Funds v. Sleep No. Corp.*, No. 21-cv-2669, 2022 WL 1607306, at *6 (D. Minn. May 20, 2022) (appointing an institutional investor and individual investor as lead plaintiff because the grouping offered "different perspectives" and "materially add[ed] to the overall quality of lead representation" of the class); *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-cv-01039, 2018

---

[6] The Levine-Caccavales Group's reliance on *In re Origin Materials, Inc.*, ECF No. 30 at 6-7, is unavailing.  There, in addition to finding one of the movant group's members inadequate, the court rejected the group for failing to present information on "how their relationship and the relationship between [its] two firms will actually operate, particularly in the event of potential disagreements." 2023 WL 8698363, at *2-3 & n.2 (E.D. Cal. Dec. 15, 2023).  By contrast, the TransMedics Investors' Joint Declaration describes their approach to joint decision-making and disagreement resolution, ECF No. 22-3 at 7, and how proposed Lead Counsel will work together.  *Id.* at 8-9.

6

WL 3141814, at *5 (N.D. Ill. June 26, 2018) (appointing two institutional investors and five individuals as lead plaintiff and recognizing that "[t]he combination of institutional and individual investors with a significant financial interest in this case serves to protect the interests of the class."); *Insulet*, 177 F. Supp. 3d at 625 ("[m]any courts have recognized the benefits of having both private and institutional lead plaintiffs in securities class actions."); *Carr v. Analogic Corp.*, No. 18-cv-11301, 2018 WL 4932858, at *4 (D. Mass. Oct. 10, 2018) (same).

***Second***, the Levine-Caccavales Group demands an "explanation of why these movants are represented by three different law firms" and "what role each firm would have in the litigation." ECF No. 30 at 7. Again, the answers are already in the record. The TransMedics Investors' initial brief and Joint Declaration explain that after Scott+Scott investigated and filed the *Collins* Action, "alleging additional significant disclosures of TransMedics' fraud," both Mr. Altun, who is also represented by The Schall Law Firm,[7] and Georgia Peace Officers independently reviewed the allegations with their respective counsel. ECF No. 21 at 14, ECF No. 22-3 at 5. The decision to jointly seek lead plaintiff appointment thus stemmed in part from Scott+Scott's complaint, as well as the movants' awareness of Saxena White's and Scott+Scott's extensive and successful history serving as co-lead counsel in securities class actions. ECF No. 22-3 at 7-9. The Levine-Caccavales

---

[7] The Levine-Caccavales Group objects to The Schall Law Firm serving as Additional Counsel for Mr. Altun, ECF No. 30 at 7, but "the PSLRA does not prohibit lead plaintiffs from retaining counsel besides those explicitly approved by the court so long as that counsel does not act as lead." *Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 367 n.4 (N.D. Cal. 2024); *see also Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 523 (N.D. Ohio 2013) ("by retaining additional and independent counsel, the plaintiffs have provided additional support to [the] finding that they will represent the class adequately"). Indeed, counsel for the Levine-Caccavales Group has served in numerous securities cases alongside The Schall Law Firm as additional counsel. *See, e.g., Butala v. Owlet, Inc.*, No. 21-cv-9016 (C.D. Cal. Mar. 22, 2024), ECF No. 114 at 29 (brief listing both the Levine-Caccavales Group's counsel and Schall as additional counsel); *In re Aurora Cannabis Inc. Sec. Litig.*, No. 19-cv-20588 (D.N.J. Sept. 7, 2021), ECF No. 49 at 100 (complaint listing both the Levine-Caccavales Group's counsel and Schall as additional counsel); *In re Uniti Grp. Inc. Sec. Litig.*, No. 19-cv-756 (E.D. Ark. May 11, 2020), ECF No. 62 at 124-25 (same).

Group leaves to the Court the task of deciphering how these facts relate in any way to their cited authorities.  *See*, *e.g.*, ECF No. 30 at 7.  For example, in *In re Telxon Corp. Securities Litigation*, the court rejected an *eleven-firm* leadership structure that included a proposed executive committee of seven firms.  67 F. Supp. 2d 803, 817 (N.D. Ohio 1999).  Similarly, the court in *McDermid v. Inovio Pharmaceuticals, Inc.* faced a thicket of issues with a lead plaintiff group, none of which are present here, including one member who "filed dueling motions to be named lead plaintiff" with multiple firms, and concern that attorneys had "manipulated" a group's composition to avoid impermissibly having too many members.  467 F. Supp. 3d 270, 278-79 (E.D. Pa. 2020).

*Third*, the Levine-Caccavales Group speculates—without any supporting evidence—that somehow there might be some unspecified misconduct with "plaintiffs being moved between and amongst different law firms."  ECF No. 30 at 8.  This is unfounded and makes no sense.  In paragraph one of their Joint Declaration, the TransMedics Investors explain that "Mr. Altun is also represented by The Schall Law Firm in this action."  ECF No. 22-3, ¶ 1.  The Joint Declaration further explains that, after they convened a conference call with Saxena White and Scott+Scott to discuss their joint commitment to prosecuting the action, Georgia Peace Officers and Mr. Altun agreed to jointly seek lead plaintiff appointment and to jointly oversee their proposed Lead Counsel, Saxena White and Scott+Scott.  *Id.*, ¶¶ 10-11.  Contrary to the baseless insinuations of the Levine-Caccavales Group, ECF No. 30 at 8, both Georgia Peace Officers and Mr. Altun know that they "filed a motion seeking the appointment of these firms as lead counsel."[8]

---

[8] The citation to *Garbowski v. Tokai Pharmaceuticals, Inc.*, 302 F. Supp. 3d 441, 454 (D. Mass. 2018) is nothing more than a blatant attempt to besmirch The Schall Law Firm with events that occurred eight years ago, when Mr. Schall was as an associate at another firm, and which did not result in any finding of wrongdoing by Mr. Schall.  Indeed, the *Tokai* lead plaintiff fight was thoroughly covered by the journalist Alison Frankel of Reuters who concluded, "I've now read all of the case records on Maxon, Pomerantz and Schall, including the crucial transcript of the Oct. 10

8

The Levine-Caccavales Group's remaining authorities, strung together in a mass footnote, fail to illuminate the Court on the law as applied to the facts before it.  ECF No. 30 at 8-9 n.5.  For example, in *In DeSmet v. Intercept Pharmaceuticals Group, Inc.*, the court's concern was whether post-motion work-sharing agreements had been made among withdrawing movants and the lone movant remaining, a claim that has not, and cannot, be made here.  No. 17-cv-7371, ECF Nos. 25, 51 (S.D.N.Y. June 1, 2018).  In *In re Netflix, Inc., Securities Litigation*, No. 12-cv-0225, 2012 WL 1496171, at *4 (N.D. Cal. Apr. 27, 2012), the rejected movant group failed to make any "showing of former ties or current cohesion," or even respond when challenged on its adequacy by an opposing movant.  That is not the case here, where each member of the TransMedics Investors met and spoke with each other, Saxena White, and Scott+Scott before seeking joint appointment.  ECF No. 22-3, ¶¶ 10-11.  Finally, in *Gronich v. Omega Healthcare Investors, Inc.*, a plaintiff "perplexingly" filed two separate leadership motions and seemingly had no awareness that motions had been filed on his behalf.  No. 17-cv-8983, 2018 WL 1626078, at *1 (S.D.N.Y. Mar. 30, 2018), ECF No. 28.  The Levine-Caccavales Group's citations to inapposite cases underscore their inability to "prove" the TransMedics Investors are inadequate.  As such, the TransMedics Investors' presumptive status as most adequate plaintiff remains undisturbed.

III.    **CONCLUSION**

For the reasons set forth above, as well as in the TransMedics Investors opening and opposition briefs, the TransMedics Investors respectfully submit that their motion should be granted, and the competing motion of the Levine-Caccavales Group should be denied.

Dated: May 9, 2025                                    Respectfully submitted,

                                                                  **SAXENA WHITE P.A.**

---

hearing, and I've come to believe that the firms and their client were not dishonest or unethical." https://www.reuters.com/article/world/how-to-scare-away-a-lead-plaintiff-idUSKBN1D32BC/

By: */s/ Joseph E. White, III*
Joseph E. White, III (BBO# 648498)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
jwhite@saxenawhite.com

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice*
forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
mduenas@saxenawhite.com

**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
Amanda F. Lawrence (BBO# 568737)
156 S. Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 531-2645
Fax: (860) 537-4432
alawrence@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
Thomas L. Laughlin, IV (*pro hac vice*
forthcoming)
Jonathan Zimmerman (*pro hac vice*
forthcoming)
Nicholas S. Bruno (*pro hac vice*
forthcoming)
230 Park Avenue, 24th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com
nbruno@scott-scott.com

*Counsel for the TransMedics Investors, and
Proposed Lead Counsel for the Class*

10

**THE SCHALL LAW FIRM**
Brian J. Schall (*pro hac vice* forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel.: (310) 301-3335
Fax: (310) 388-0192
brian@schallfirm.com

*Additional Counsel for Oghuzan Altun*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 9, 2025.

*/s/ Joseph E. White, III*
Joseph E. White, III