UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MERLY JEWIK,<br>individually and on behalf of all others<br>similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>TRANSMEDICS GROUP, INC., et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil No. 25-10385-LTS<br>)<br>)<br>)<br>)<br>)<br>) |
| PATRICK COLLINS,<br>individually and on behalf of all others<br>similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>TRANSMEDICS GROUP, INC., et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil No. 25-10778-LTS<br>)<br>)<br>)<br>)<br>) |

ORDER ON MOTIONS FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF,
APPROVAL OF LEAD COUNSEL (DOC. NOS. 14, 17, 20, 23)

May 22, 2025

SOROKIN, J.

Before the Court is a federal securities class action on behalf of all persons and entities purchasing or otherwise acquiring publicly traded TransMedics securities between February 28, 2023, and January 10, 2025, inclusive ("Class Period"). Doc. No. 1 ¶ 1. TransMedics is a commercial-stage medical technology company focusing on organ transplant therapies and associated services. Id. ¶ 7. Plaintiffs allege that TransMedics made statements, in its 2022 and

2023 Annual Reports and elsewhere, about its business practices and revenue generation that were materially false and misleading.  Id. ¶¶ 4, 15-56.  Purportedly as a result of the alleged wrongful acts and omissions, the market value of TransMedics shares suffered significant losses. Id. ¶ 74.

Subsequently, two different plaintiff groups filed suit in this Court.  See Jewik v. TransMedics Group, Inc., 25-cv-10385; Collins v. TransMedics Group, Inc., 25-cv-10778.  In the earlier-filed suit, four different groups timely moved for consolidation of the two actions and to be appointed lead plaintiff with their choice of counsel as lead counsel.  Doc. Nos. 14, 17, 20, 23.  After all the Motions were filed, one party withdrew, Doc. Nos. 14, 26, and another stated that he did not oppose the other two groups, Doc. No. 27.  This left two groups opposing one another: one comprising Joseph Caccavale, Mary Lou Caccavale, Dr. Scott D. Levine, Doc. Nos. 23-25, 35, and the other including the Peace Officers' Annuity and Benefit Fund of Georgia ("Peace Officers") and Oguzhan Altun, Doc. Nos. 20-22, 36.

While the dueling parties may dispute its application, the law regarding appointment of lead plaintiff is straightforward.  Under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The statute creates a presumption that the "person or group of persons" is the most adequate plaintiff where it (1) "has either filed the complaint or made a motion in response to a notice under [the statute]," (2) "in the determination of the court, has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of [Fed. R. Civ. P. 23]."  Id. § 78u-4(a)(3)(B)(iii)(I). Once established, that presumption "may be rebutted only upon proof by" another class member

2

that the originally chosen plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  Id. § 78u-4(a)(3)(B)(iii)(II).

To decide which plaintiff has the largest financial interest in the relief sought by the class, "courts in this district and others have considered the following factors in making that determination:" (1) "the number of shares purchased during the class period"; (2) "the number of net shares purchased during the class period"; (3) "the total net funds expended during the class period"; and (4) "the approximate losses suffered during the class period."  Leavitt v. Alnylam Pharms., Inc., 378 F. Supp. 3d 60, 64 (D. Mass. 2019).  "Courts consider the approximate losses allegedly suffered to be the most important factor in determining the largest financial interest." Id.

It is undisputed that the Caccavales and Levine together suffered the largest financial loss using either the last-in, first-out ("LIFO") loss calculation method or the first-in, first-out ("FIFO") method.[1]  Doc. No. 36 at 4; Doc. No. 35 at 9.  The Peace Officers and Altun argue, however, that the other factors pertaining to financial interest weigh in their favor, as indicated in the following table:

---

[1] Several courts, including other sessions of this Court, have recognized the LIFO loss calculation method to be superior to FIFO.  See, e.g., In re Organogenesis Sec. Litig., 241 F.R.D. 397, 402 (D. Mass. 2007) ("[T]his court concludes as a matter of law that LIFO is the preferred approach for assessing class period damage."); Luongo v. Desktop Metal, Inc., Civil Action No. 1:21-cv-12099, 2022 U.S. Dist. LEXIS 119570, at *11-12 (D. Mass. July 7, 2022) ("[T]he court finds that LIFO is the proper methodology for calculating losses in the relevant period."); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100-101 (S.D.N.Y. 2005) (finding LIFO to be better method); Hill v. Tribune Co., No. 05 C 2602, No. 05 C 2640, No. 05 C 2684, No. 05 C 2927, No. 05 C 3374, No. 05 C 3377, No. 05 C 3390, No. 05 C 3928, 2005 WL 3299144, at *2 (N.D. Ill. Oct. 13, 2005) ("The current majority view . . . is that securities fraud losses should be calculated using LIFO.").  This preference for the LIFO method may exist because it more accurately captures actual loss.  For these reasons, the Court primarily considers the losses using that method.

| Movant | Total Shares Purchased | Net Shared Purchased | Net Funds Expended | Financial Loss |
|---|---|---|---|---|
| Georgia Peace Officers' Annuity and Benefit Fund and Altun | 27,887 | 6,014 | $988,531 | $578,637 |
| Georgia Peace Officers | 14,737 | 5,614 | $759,843 | $374,395 |
| Altun | 13,150 | 400 | $228,687 | $204,242 |
| Caccavales and Levine | 12,200 | 5,200 | $964,202 | $608,292 |
| Levine | 9,700 | 4,700 | $671,202 | $348,507 |
| Joseph Caccavale | 1,000 | 0 | $106,440 | $106,440 |
| Mary Lou Caccavale | 500 | 500 | $86,300 | $53,085 |
| Caccavales Joint | 1,000 | 0 | $100,260 | $100,260 |

Doc. No. 36 at 4.  Several factors guide the Court's decision here.

First, the loss difference between the two groups ($608,292 versus $578,637), while not de minimis, is small.  Where "the difference between the total financial loss of lead plaintiff movants is not substantial, the amount of financial loss should not be outcome determinative, and the other three . . . factors take on greater weight."  Silverberg v. Dryships Inc., No. 17-CV-4547, 2018 U.S. Dist. LEXIS 225563, at *14 (E.D.N.Y. Aug. 21, 2018) (cleaned up).  While the Caccavales and Levine suffered the greatest loss as a group, the difference of approximately $30,000 between the two losses (using the LIFO method) guide the Court to consider the other factors more heavily.  They weigh in favor of the Peace Officers and Altun.  Further, in light of the small difference in loss amounts between the two groups, the Court also examines the loss of the members of each group.  Here, the Georgia Peace Officers had the largest loss of any individual person or entity, $374,394 compared to Levine's $348,507 (with everyone else claiming a far lower loss).  Moreover, every other factor in the multi-factor test weigh in favor of the Peace Officers whether viewing each party individually or the two groups collectively.  That one group is comprised of an entity that established the largest financial interest by all measures guides the Court toward appointing that group.

Second, the statute permits a "group of persons" to collectively serve as a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). But "[c]ourts have differed on whether the statute permits a group of unrelated persons to serve as lead plaintiff." In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 43 (D. Mass. 2001). Here, although there is nothing "wrong" with the composition of either group, neither group alleges it is composed of parties with a pre-litigation relationship (other than the Caccavales who are married). In particular, the Caccavales and Levine state they "conferred and discussed their plan for collaboration and commitment to overseeing counsel for comprehensive and vigorous class representation." Doc. No. 30 at 5. Similarly, explaining "how or why" they "came together," the Peace Officers and Altun state that each "independently determined that they could maximize the Class's recovery by seeking appointment." Doc. No. 36 at 7. This consideration does not move the needle.

Third, the statute provides for a presumption in favor of the investor with the "largest financial stake in the recovery sought by the class." 15 U.S.C. § 78u—4(a)(3)(B)(i). This provision generally results in a presumption in favor of large institutional investors, a result that Congress both considered and intended. See S. Rep. No. 104-98, at 11 (1995), as reprinted in 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief is the 'most adequate plaintiff.'"). The underlying concern was that "the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint," as well as its desire "to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff." H.R. Conf. Rep. No. 104-369,

5

at 33-34 (1995), as reprinted in 1995 U.S.C.C.A.N. 730, 731.  This is predicated upon the conclusion that "institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  Id. at 34.  That the context and structure of the PSLRA evince an intent that a group consist of more than a mere assemblage of unrelated persons but an institutional plaintiff with expertise in the securities market also weigh in favor of the Peace Officers and Altun.  In light of all of these factors, the Court appoints the Peace Officers and Altun as lead plaintiffs.[2]

The PSLRA vests authority in the lead plaintiff to select counsel that represents the class, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The lead plaintiff's choice of counsel should not be disturbed unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  "While the [c]ourt should not be a rubberstamp, it should give the lead plaintiff['s] choice some weight."  In re Lernout, 138 F. Supp. 2d at 46-47.

Here, Levine and the Caccavales challenge counsel chosen by the Peace Officers and Altun because: (1) they offer no explanation why three separate law firms are necessary to litigate the case; (2) the latter "ignores entirely the role that The Schall Law Firm (listed as 'Additional Counsel for Oguzhan Altun') played in the creation of the group and/or what role that firm will play in litigation"; and (3) "Altun provides no evidence of whether he selected Scott+Scott as counsel or his 'additional counsel,' The Schall Law Firm, selected Scott+Scott for

---

[2] The Peace Officers and Altun also challenge Levine's adequacy as possible lead plaintiff. Levine previously served as a fiduciary on a company that later filed for bankruptcy and faced a lawsuit from the SEC alleging misstatements and misappropriation of funds by its executives. Doc. No. 29 at 22.  Nothing in the record before the Court establishes any wrongdoing by Levine.  Nonetheless, nothing in the record suggests exemplary performance by his fiduciary service.  Because the Court concludes that the Peace Officers and Altun are "most capable of adequately representing the interests of class members," the Court does not consider these facts about Dr. Levine.

Altun"; and (4) they do not explain why Scott+Scott "filed the Collins action listing only itself and The Schall Law Firm as 'Counsel for Plaintiff Patrick Collins,' then filed the Georgia Peace Officers and Altun lead plaintiff motion with the addition of the Saxena White firm."  Doc. No. 30 at 7-8.

First, the Court does not see, and the Caccavales and Levine do not cite any legal authority, why being represented by multiple law firms poses a problem.  In fact, counsel for the Caccavales and Levine cite several cases where they served together in numerous securities cases alongside The Schall Law Firm as additional counsel.  See Doc. No. 36 n.7.  Second, nor is the appointment of additional counsel for an individual named plaintiff a valid challenge.  Third, that one firm could have represented two different possible lead plaintiffs in what was then two separate actions does not inform the Court that counsel would not protect the interests of the class.  Fourth, given that this set of counsel have worked together several times in securities litigation cases, the Court, without evidence demonstrating otherwise, does not see fit to challenge the "creation of the group and/or what role that firm will play in litigation."  Doc. No. 30 at 7.  The Court thus appoints the set of counsel chosen by the Peace Officers and Altun.

Accordingly, the Court (1) ALLOWS the Motion for Consolidation and Appointment as Lead Plaintiff and Approval of Lead Counsel filed by the Peace Officers group (Doc. No. 20); (2) DENIES the similar Motion filed by the Levine group (Doc. No. 23) except insofar as it requests consolidation; (3) DENIES the similar Motion (except as to consolidation) filed by Antonio Gutierrez as his loss is plainly lower than either of the two competing groups or their lead members (Doc. No. 17).  The Court notes that Defendants support consolidation and take no position on the other matters resolved in this Order.  Lead counsel for the Plaintiffs and counsel

for the Defendants shall submit a proposed briefing schedule within fourteen days.  Doc. No. 11

at 2.  Due to the consolidation, all further filings shall occur in Civil Action No. 25-10385.


SO ORDERED.


 /s/ Leo T. Sorokin
United States District Judge