# EXHIBIT 2

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2023**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934 FOR THE TRANSITION PERIOD FROM TO**

**Commission File Number: 001-38891**

# TransMedics Group, Inc.
**(Exact name of Registrant as specified in its Charter)**

| | |
|---|---|
| **Massachusetts** | **83-2181531** |
| **(State or other jurisdiction of incorporation or organization)** | **(I.R.S. Employer Identification No.)** |
| **200 Minuteman Road** | |
| **Andover, Massachusetts** | **01810** |
| **(Address of principal executive offices)** | **(Zip Code)** |

**Registrant's telephone number, including area code: (978) 552-0900**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| **Common Stock, No Par Value** | **TMDX** | **The Nasdaq Global Market** |

**Securities registered pursuant to Section 12(g) of the Act: None**

Indicate by check mark if the Registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES ☒ NO ☐

Indicate by check mark if the Registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. YES ☐ NO ☒

Indicate by check mark whether the Registrant: (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES ☒ NO ☐

Indicate by check mark whether the Registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the Registrant was required to submit such files). YES ☒ NO ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Accelerated filer | ☐ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☐ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☒

If securities are registered pursuant to Section 12(b) of the Act, indicate by check mark whether the financial statements of the registrant included in the filing reflect the correction of an error to previously issued financial statements. ☐

Indicate by check mark whether any of those error corrections are restatements that required a recovery analysis of incentive-based compensation received by any of the registrant's executive officers during the relevant recovery period pursuant to §240.10D-1(b). ☐

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). YES ☐ NO ☒

The aggregate market value of the registrant's common stock held by non-affiliates of the registrant as of the last business day of the registrant's most recently completed second fiscal quarter, June 30, 2023, based on the last reported sale price of the registrant's common stock of $83.98 per share was $2,641 million. As of January 31, 2024, the registrant had 32,715,316 shares of common stock, no par value per share, outstanding.

DOCUMENTS INCORPORATED BY REFERENCE

Portions of the registrant's Definitive Proxy Statement for its 2024 Annual Meeting of Stockholders scheduled to be held on May 23, 2024, which Definitive Proxy will be filed with the Securities and Exchange Commission not later than 120 days after the registrant's fiscal year end of December 31, 2023, are incorporated by reference into Part II and Part III of this Form 10-K.

**Table of Contents**

| | | Page |
|---|---|---|
| **PART I** | | |
| Item 1. | Business | 3 |
| Item 1A. | Risk Factors | 27 |
| Item 1B. | Unresolved Staff Comments | 64 |
| Item 1C. | Cybersecurity | 64 |
| Item 2. | Properties | 64 |
| Item 3. | Legal Proceedings | 64 |
| Item 4. | Mine Safety Disclosures | 64 |
| | | |
| **PART II** | | |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 65 |
| Item 6. | Reserved | 66 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 67 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 81 |
| Item 8. | Financial Statements and Supplementary Data | 82 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 114 |
| Item 9A. | Controls and Procedures | 114 |
| Item 9B. | Other Information | 115 |
| Item 9C. | Disclosures Regarding Foreign Jurisdictions that Prevent Inspections | 115 |
| | | |
| **PART III** | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 116 |
| Item 11. | Executive Compensation | 116 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 116 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 116 |
| Item 14. | Principal Accounting Fees and Services | 116 |
| | | |
| **PART IV** | | |
| Item 15. | Exhibits, Financial Statement Schedules | 117 |
| Item 16 | Form 10-K Summary | 120 |
| SIGNATURES | | 121 |

i

- provide adequate training to potential users of our products;

- receive adequate coverage and reimbursement for procedures performed with our products; and

- develop an effective commercialization effort.

If we are not successful in expanding our indications and developing the next generation of our products, our ability to increase our revenue may be impaired, which could materially and adversely affect our business, financial condition, operating results, cash flows and prospects.

***We may not fully realize the anticipated benefits of our completed or future acquisitions, joint ventures, and strategic investments, such transactions may expose us to additional risks.***

On August 2, 2023, we acquired certain assets related to lung and heart perfusion technology from Bridge to Life Ltd. and its subsidiary Tevosol, Inc., or together Bridge to Life. In addition, on August 16, 2023, we acquired Summit, an aviation business. We have separately acquired 13 fixed-wing aircraft, and intend to acquire additional fixed-wing aircraft, that will be operated as part of our NOP. Utilization of these acquired assets and integration of Summit, may be complex, costly and time consuming and we may face unanticipated issues, expenses and liabilities. We may not successfully or profitably utilize newly acquired assets or integrate, operate, maintain and manage any newly acquired operations or employees. Further development of the assets we acquired from Bridge to Life, or the Bridge to Life Assets, will require extensive clinical development, management of nonclinical, clinical and manufacturing activities. In addition, we may decide that only certain of the acquired technology is useful for the next generation of the OCS, or that integration of the acquired technology is not feasible or is too costly. We also may face challenges integrating Summit into our organization. We have never provided aviation transportation services prior to the acquisition and will depend on the management team of Summit for the successful operation and integration into our NOP services offering. Even if we are able to utilize the Bridge to Life Assets and integrate Summit or any other acquired assets or businesses successfully, we may not realize the expected benefits of the transactions. These are the Company's first acquisitions, and we may need to invest in additional business processes and systems to support the Summit integration or to utilize the Bridge to Life Assets. Such additional costs may offset the financial benefits that may be realized from the acquisitions. We also may suffer the loss of key employees and strategic partners of Summit and it may be difficult to implement our corporate culture. There also may be increased risk due to integrating financial reporting and internal control systems of Summit. We may review additional acquisition, joint ventures and strategic investment opportunities to expand our current product offerings, increase the size and geographic scope of our operations or otherwise offer growth and operating efficiency opportunities. There can be no assurance that we will be able to identify suitable candidates or consummate future transactions on favorable terms. If required, the financing for future transactions could result in an increase in our indebtedness, dilute the interests of our shareholders or both. The purchase price for some acquisitions or joint ventures interests may include additional amounts to be paid in cash in the future, a portion of which may be contingent on the achievement of certain future operating results of the acquired business. If the performance of any such acquired business or joint venture exceeds such operating results, then we may incur additional charges and be required to pay additional amounts. Our failure to successfully utilize any acquired assets, complete the integration of any acquired business, including retention of key employees, customers and strategic partners, achieve the long-term plan for such assets or businesses, as well as any other adverse consequences associated with our acquisition and investment activities, could have an adverse effect on our business. Any acquisition may also disrupt our ongoing business, divert resources, increase our expenses, and distract our management from our ongoing operations.

***We depend on a limited number of customers for a significant portion of our revenue and the loss of, or a significant shortfall in demand from, these customers could have a material adverse effect on our financial condition and operating results.***

We generate a significant amount of our revenue from a limited number of customers. However, our customers may not continue to utilize our products or services at current levels, pricing, or at all, and our revenue could fluctuate significantly due to changes in economic conditions, the use of other methods for organ preservation, such as cold storage, or the loss of, reduction of business with, or less favorable terms with any of our largest customers. Our future success will depend upon the timing and volume of business from our largest customers and the financial and operational success of these customers. If we were to lose a key customer or have a key customer significantly reduce their volume of business with us, our revenue may be materially reduced, which would materially and adversely affect our business, financial condition, operating results, cash flows and prospects.

34

**SIGNATURES**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended, the Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

TransMedics Group, Inc.

Date: February 27, 2024

By:         /s/ Stephen Gordon
            **Stephen Gordon**
            **Chief Financial Officer and Treasurer**

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, this Report has been signed below by the following persons on behalf of the Registrant in the capacities and on the dates indicated.

| Name | Title | Date |
|---|---|---|
| /s/ Waleed H. Hassanein, M.D. <br> **Waleed H. Hassanein** | President, Chief Executive Officer, Director | February 27, 2024 |
| /s/ Stephen Gordon <br> **Stephen Gordon** | Chief Financial Officer and Treasurer | February 27, 2024 |
| /s/ James R. Tobin <br> **James R. Tobin** | Chairman of the Board of Directors | February 27, 2024 |
| /s/ Edward M. Basile <br> **Edward M. Basile** | Director | February 27, 2024 |
| /s/ Thomas J. Gunderson <br> **Thomas J. Gunderson** | Director | February 27, 2024 |
| /s/ Edwin M. Kania, Jr. <br> **Edwin M. Kania, Jr.** | Director | February 27, 2024 |
| /s/ David Weill, M.D. <br> **David Weill, M.D.** | Director | February 27, 2024 |
| /s/ Merilee Raines <br> **Merilee Raines** | Director | February 27, 2024 |
| /s/ Stephanie Lovell <br> **Stephanie Lovell** | Director | February 27, 2024 |

121