**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MERLY JEWIK, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON,<br><br>    Defendants. | Case No.: 1:25-cv-10385-LTS<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Leave to file granted on December 8, 2025 (Dkt. No. 60) |
| PATRICK COLLINS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANSMEDICS GROUP, INC., WALEED HASSANEIN, and STEPHEN GORDON,<br><br>    Defendants. | Case No.: 1:25-cv-10778-LTS |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

ARGUMENT................................................................................................................................1

    I.      Plaintiffs Fail to Plead Reliable Sources............................................................1

          A.      Plaintiffs' Corroboration-by-Volume Theory Fails ....................................1

          B.      The Scorpion Report Is Not Reliable.........................................................3

          C.      The AlphaSense Interviews Are Not Reliable ...........................................5

          D.      The Gosar Letter Is Not Reliable................................................................6

    II.     Plaintiffs Fail to Plead a False or Misleading Statement ........................................7

          A.      Plaintiffs Allege No Particularized Facts Showing That Statements Regarding NOP Development, Efficiencies, and Pricing Were False or Misleading.........................................................................................7

          B.      Plaintiffs Allege No Particularized Facts to Show That Defendants "Pressured" Customers to Use All of Their Products and Services.............9

          C.      Plaintiffs Do Not Allege with Particularity That Customers Did Not Receive Reimbursement for TransMedics Costs...............................11

          D.      Plaintiffs Do Not Plausibly Allege That TransMedics' Stated Reasons for the Q3 2024 Revenue Decline Were False or Misleading..................................................................................................12

          E.      Many of the Challenged Statements Are Puffery .....................................13

    III.    The Complaint Does Not Support a Strong Inference of Scienter........................13

          A.      The Anonymous Sources Do Not Support a Strong Inference of Scienter ...................................................................................................13

          B.      Plaintiffs' Other Theories Fail to Plead Scienter .....................................15

          C.      The Complaint's Insider Trading Allegations Do Not Support Scienter ...................................................................................................16

    IV.    Plaintiffs Fail to Plead Loss Causation .................................................................18

CONCLUSION............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002)................................................................8

*Auto. Indus. Pension Tr. Fund v. Textron Inc.*, 682 F.3d 34 (1st Cir. 2012)................................14

*Bartesch v. Cook*, 941 F. Supp. 2d 501 (D. Del. 2013) ................................................................2

*Bennett v. H&R Block Fin. Advisors, Inc.*, 2005 WL 8178042 (N.D. Cal. June 1, 2005) ................................................................................................................6

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2023 WL 11996105 (N.D. Cal. Mar. 10, 2023)................................................................................................3, 20

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100 (D. Conn. 2021)............................20

*Brennan v. Zafgen*, 853 F.3d 606 (1st Cir. 2017) ................................................................16

*Celano v. Fulcrum Therapeutics, Inc.*, 2025 WL 928783 (D. Mass. Mar. 27, 2025)..............13, 16

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ................................................................................................7

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672 (3d Cir. 2011) ................................................................................................2

*Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61 (D. Mass. 2014) ................................16

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021) ................................................................................................15

*Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259 (D. Mass. 2013)............................................8, 19

*Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1 (D. Mass. 2004)................................................15

*DeFeo v. IonQ, Inc.*, 134 F.4th 153 (4th Cir. 2025) ................................................................20

*Emps. Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297 (2d Cir. 2015)........................3, 5, 18

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015) ................................................................................................18

*Fitzer v. Sec. Dynamics Techs., Inc.*, 119 F. Supp. 2d 12 (D. Mass. 2000)................................13

*Friedberg v. Discreet Logic Inc.*, 959 F. Supp. 42 (D. Mass. 1997) ................................17

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008) ..........................................19

*Garber v. Legg Mason, Inc.*, 347 F. App'x 665 (2d Cir. 2009) ....................................................19

*Harrington v. Tetraphase Pharms. Inc.*, 2017 WL 1946305 (D. Mass. May 9,
     2017) ...........................................................................................................................18

*Hensley v. Imprivata, Inc.*, 260 F. Supp. 3d 101 (D. Mass. 2017) ....................................................4

*Hill v. State Street Corp.*, 2011 WL 3420439 (D. Mass. Aug. 3, 2011) ...........................................2

*In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319 (D. Mass. 2002) ...........................................15

*In re AnaptysBio, Inc.*, 2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ...........................................17

*In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744 (1st Cir. 2016) ...............................................18

*In re Cabletron Sys., Inc.*, 311 F.3d 11 (1st Cir. 2002) .................................................................2, 6, 8

*In re China Mobile Games & Ent. Grp., Ltd. Sec. Litig.*, 2016 WL 922711
     (S.D.N.Y. Mar. 7, 2016) ...............................................................................................5

*In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996 (N.D. Cal. 2008) ......................................5

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219
     (C.D. Cal. 2013) ...........................................................................................................6

*In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120 (S.D.N.Y. 2023) ....................................3, 14

*In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189 (N.D. Ga. 2019) ............................................5

*In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..............................19

*In re iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124 (D. Mass. 2021) ................................12, 14, 15

*In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949 (D. Or. Nov. 24,
     2021) .............................................................................................................................6

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103
     (S.D.N.Y. Jan. 27, 2014) ...............................................................................................5

*In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) ................................17

*In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828 (9th Cir. 2022) ..............................................20

*In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090 (N.D. Cal. 2013) ........................9

*In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368 (S.D.N.Y. 2015) ................................................13

*In re QuantumScape Sec. Class Action*, 580 F. Supp. 3d 714 (N.D. Cal. Jan. 14, 2022) ..................................................................................................................3, 4, 20

*In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549 (S.D.N.Y. 2011) ......................................16

*In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007) ....................................16

*In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266 (S.D.N.Y. 2014) ............................14

*In re Sina Corp. Sec. Litig.*, 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006)..................................18

*In re Stillwater Cap. Partners Inc. Litig.*, 858 F. Supp. 2d 277 (S.D.N.Y. 2012).........................20

*In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165 (D.N.M. 2010)...........................17

*In re Wayfair, Inc. Sec. Litig.*, 471 F. Supp. 3d 332 (D. Mass. 2020) ...........................................17

*Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009) .......................................15, 16

*Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593 (E.D. Va. 2015) ......................3

*Leacock v. IonQ, Inc.*, 2023 WL 6308045 (D. Md. Sept. 28, 2023)..............................................20

*Leung v. bluebird bio, Inc.*, 599 F. Supp. 3d 49 (D. Mass. 2022)............................................15, 19

*Leventhal v. Chegg, Inc.*, 721 F. Supp. 3d 1003 (N.D. Cal. 2024) ...................................................8

*Levy v. Gutierrez*, 2017 WL 2191592 (D.N.H. May 4, 2017).................................................10, 11

*Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ......................5

*Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016) ..............................................................19

*Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774 (S.D.N.Y. 2020).................................................3

*Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014).................................................................19

*Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206 (D. Mass. 2018)............................................1

*Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194 (1st Cir. 2020) .................................................17

*Meyer v. Organogenesis Holdings Inc.*, 727 F. Supp. 3d 368 (E.D.N.Y. 2024) ...........................18

*Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75 (1st Cir. 2008) ...............................18

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008) .......................................................2

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, 2013 WL 1188050 (D. Conn. Mar. 23, 2013)..........................................................................................................11

iv

*Ng v. Berkeley Lights, Inc.*, 2024 WL 695699 (N.D. Cal. Feb. 20, 2024)......................................4

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ................................................................2

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226 (9th Cir. 2004) ......................................................................................................................9, 17

*Ontario Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131 (D. Conn. 2019) .............................................................................................20

*Peters v. Twist Bioscience Corp.*, 2025 WL 2532671 (N.D. Cal. Sept. 3, 2025) .......................3, 20

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) ......................................................17

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313 (5th Cir. 2014)..............................19

*Simon v. Abiomed, Inc.*, 37 F. Supp. 3d 499 (D. Mass. 2014) ........................................................18

*Smallen v. W. Union Co.*, 950 F.3d 1297 (10th Cir. 2020)..............................................................16

*Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930 (C.D. Cal. 2012)....................................................3

*Vallejo v. Amgen, Inc.*, 903 F.3d 733 (8th Cir. 2018)........................................................................5

*Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785 (N.D. Cal. 2019)..................................................5

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93 (D. Mass. 2014) ..............................................................................................................14

*Wasson v. LogMeIn, Inc.*, 496 F. Supp. 3d 612 (D. Mass. 2020) ...........................................11, 15

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) .......................................14

## DOCKETED CASES

*Peters v. Twist Bioscience Corp.*, No. 5:22-cv-08168 (N.D. Cal. Oct. 11, 2023) ...........................3

*Stuart v. Ginkgo Bioworks Holdings, Inc.*, No. 4:21-cv-08943 (N.D. Cal. July 18, 2022) ..................................................................................................................3

Defendants submit this Reply in further support of their Motion to Dismiss the Complaint and accompanying Memorandum of Law (Doc. Nos. 55, 56).[1]

## INTRODUCTION

Plaintiffs cannot transform a sensationalized short-seller report and unreliable third-party sources into plausible allegations of securities fraud.  The Opposition ("Opp.") does nothing to change that.  Rather than addressing the case law and arguments, Plaintiffs largely ignore them and instead offer non-sequitur responses and cases arising in markedly different contexts.  Their approach only underscores the weakness of their position: doubling down on the same baseless theories in the Complaint while sidestepping the actual legal standards and Defendants' arguments.  First, Plaintiffs rely on sources that are fundamentally unreliable.  Second, they fail to plead particularized facts establishing that any challenged statement was false or misleading.  Third, their scattershot scienter allegations rely on speculation and do not raise the required strong inference.  Finally, they cannot credibly show that any alleged fraud caused a decline in TransMedics' stock price.  The Court should dismiss the Complaint with prejudice.[2]

## ARGUMENT

### I.    Plaintiffs Fail to Plead Reliable Sources

#### A.    Plaintiffs' Corroboration-by-Volume Theory Fails

Plaintiffs' attempt to defend the reliability of their sources reduces to the claim that the Scorpion Report, AlphaSense interviews, Gosar Letter, and CWs "corroborate" each other because they have "similar" accounts.  *See* Opp. at 12–15, 20, 22–23.  But corroboration cannot cure unreliability.  Courts routinely hold that reliability is a threshold requirement and reject or steeply

---

[1]    All defined terms have the same meanings assigned in Defendants' Memorandum of Law in Support of Their Motion to Dismiss.  Doc. No. 56 ("Mot.").

[2]    Plaintiffs fail to respond to Defendants' argument that there is no scheme liability and thus concede there is none.  S*ee* Mot. at 32–33; *Mahoney v. Found. Med., Inc.*, 342 F. Supp. 3d 206, 217 (D. Mass. 2018) (Sorokin, J.) (failure to respond in opposition to defendants' argument waived claim).

discount allegations from unreliable sources, even if sources echo each other. *Bartesch v. Cook*, 941 F. Supp. 2d 501, 508 (D. Del. 2013) (refusing to weigh multiple sources together to establish reliability). Where an individual source is unreliable, combining it with other sources does not add weight. *Id.*; *see also City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 675 (3d Cir. 2011) (when combining unreliable sources, "zero plus zero equals zero").

To evaluate falsity, the Court must assess, in addition to the number of sources and the extent of their corroboration, "the level of detail provided by the confidential sources," "the coherence and plausibility of the allegations," "the reliability of the sources, and similar indicia." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29–30 (1st Cir. 2002). While sources may be anonymous, a complaint must describe the sources "with sufficient particularity … that a person in the position occupied by the source would possess the information alleged." *Id.* at 29 (quoting *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1240 (11th Cir. 2008) (complaint should "fully describe[] the foundation or basis of the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame"). Plaintiffs' cases do not hold otherwise. In *Hill v. State Street Corp.*, the court credited multiple sources, including a state attorney general's 18-month investigation and complaint, a *qui tam* action, lead plaintiff's investigation, and six CWs, because for each source, the plaintiffs alleged "enough detail" to believe the source's allegations. 2011 WL 3420439, at *13 (D. Mass. Aug. 3, 2011) (citation omitted). In particular, the court noted that the allegations from six CWs, who were company employees, were "more than just water cooler hearsay," "offer[ing] important reenforcement [*sic*] for inferences reasonably drawn from other allegations." *Id.* Here, by contrast, none of Plaintiffs' sources satisfies the PSLRA on its own, and Plaintiffs cannot aggregate them to reach a different result. In Plaintiffs' other case, the court

2

credited CWs who were company employees "in management positions" who reported issues to executives, thus the complaint pleaded with "sufficient particularity to support the probability that the witnesses possessed the information alleged." *See Emps.' Ret. Sys. of Gov't of V.I. v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015).

### B.    The Scorpion Report Is Not Reliable

Plaintiffs ignore a basic reality: courts are generally skeptical of short-seller reports and discredit their allegations. *See, e.g.*, *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023) (short-seller allegations "must be considered with caution" given their "economic interest in driving down the company's stock price"). Plaintiffs cherry-pick cases that they contend support reliance on these reports, Opp. at 11 & n.2, but ignore many cases finding them unreliable, *see, e.g.*, *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801, 803–04 (S.D.N.Y. 2020).[3] Plaintiffs also disregard Defendants' recent cases holding that Scorpion reports failed to support falsity or scienter. *See* Mot. at 10–12 (citing cases). Here, the Scorpion Report is especially egregious: it openly disclosed a motive to drive down TransMedics' stock price and admitted that its account might not accurately or fully describe witness statements. Doc. No. 57-12 at 3.

Plaintiffs' cases are inapposite. Several involved Scorpion Capital reports offered only for loss causation, not falsity. *See Peters v. Twist Bioscience Corp.*, 2025 WL 2532671, at \*16 (N.D. Cal. Sept. 3, 2025); *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2023 WL 11996105, at \*8 (N.D. Cal. Mar. 10, 2023).[4] *In re QuantumScape Sec. Class Action Litig.* accepted a Scorpion report

---

[3]    Further, several of the cases Plaintiffs cite do not even meaningfully address the reliability of short-seller reports. *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 609 (E.D. Va. 2015) (stating only that sources "revealed the widespread scope of Defendants' allegedly fraudulent scheme"); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012) (stating only that citing short-seller report at pleading is "permissible").

[4]    *See also* Amended Class Action Complaint for Violations of the Federal Securities Laws at 71–72, *Peters v. Twist Bioscience Corp.*, No. 5:22-cv-08168, Doc. No. 83 (N.D. Cal. Oct. 11, 2023) (citing Scorpion Capital report in operative complaint to support only loss causation); Second Amended Class Action Complaint for Violations of the Federal Securities Laws at 25–33, *Stuart v. Ginkgo Bioworks Holdings, Inc.*, No. 4:21-cv-08943, Doc. No. 58 (N.D. Cal. July 18, 2022) (same).

only because its witnesses held positions at the company sufficient to indicate their personal knowledge. 580 F. Supp. 3d 714, 732 (N.D. Cal. Jan. 14, 2022) (witnesses' research and development roles plausibly suggested knowledge about company's internal testing).[5] Here, the Scorpion Report's sources are inadequate. It describes anonymous sources vaguely as "executives," "transplant professionals," or "others," with no clear connection to TransMedics, and the remaining allegations fail to identify any relevant timeframe. *See* Mot. at 12; *Hensley v. Imprivata, Inc.*, 260 F. Supp. 3d 101, 122 (D. Mass. 2017) (Sorokin, J.) (CW's allegations "of minimal value" in part because they "concern[ed] a time" outside class period).

Plaintiffs also contend that the Scorpion Report is reliable because it purportedly reflects "over 30" interviews. Opp. at 11–12. This is another attempt to bootstrap volume into reliability; the number of interviews does not establish interviewees' roles or their bases for knowledge. *See Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *9–10 (N.D. Cal. Feb. 20, 2024) (Scorpion Report interviews with twenty-one anonymous sources lacked particularized details to support reliability).

Plaintiffs attempt to rehabilitate the Scorpion Report by claiming they "verified" its allegations because: (1) CW 2 supposedly "reviewed the Scorpion Report and found it to be generally accurate and consistent with his experience," Opp. at 11–12; ¶ 131; and (2) they allege that CW 7 is "the same reimbursement executive described in the Scorpion Report," ¶ 139 n.14; Opp. at 11–12. Neither assertion withstands scrutiny. CW 2's vouching for the Scorpion Report's "general accuracy" is so vague as to be meaningless, particularly where the Scorpion Report is over 300 pages. *See* Opp. at 12; ¶¶ 228, 131. As to CW 7, Plaintiffs did not interview him (AlphaSense did) and only speculate as to his identity because "his accounts in both sources are substantively similar." ¶ 139 n.14. But, notably, CW 7's purported job title of "VP of Market

---

[5]    Moreover, *QuantumScape* did not address whether the Scorpion report's disclosures undercut its reliability. *See* 580 F. Supp. 3d at 732.

Access" does not match the job title of "reimbursement executive" in the Scorpion Report. In any event, CW 7's limited allegations regarding NOP purchasing cannot salvage the Scorpion Report's wholesale unreliability. Finally, Plaintiffs' cases concerning CWs are irrelevant: they either do not address reliability or involve far more rigorous independent verification and corroboration.[6]

Finally, Plaintiffs insist that the Scorpion Report did not disclaim its own accuracy. *See* Opp. at 13. This is wrong. The Scorpion Report stated it could not and would not "provide any representations or warranties with respect to the accuracy" of materials reviewed, that Scorpion may edit witnesses' statements "solely at [its] discretion," and that quotations "do not reflect all information" including "certain positive comments and experiences." Mot. at 11–12. Plaintiffs' reliance on other self-serving soundbites in the Report cannot negate those disclaimers. Nor do their cases help. *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *13 (S.D.N.Y. Sept. 10, 2012) (reports lacking similar disclaimers); *In re China Mobile Games & Ent. Grp., Ltd. Sec. Litig.*, 2016 WL 922711, at *4 n.6 (S.D.N.Y. Mar. 7, 2016) (granting motion to dismiss and addressing disclaimers in financial analysts' report, rather than disclaimers in short-seller report).

**C.    The AlphaSense Interviews Are Not Reliable**

Plaintiffs concede that AlphaSense, *not* Plaintiffs or their agents, interviewed CWs 5–10. Opp. at 14 n.5.[7] The Complaint offers no details about their roles (beyond their titles), their basis for knowledge, or any context from their interviews, including what else the witnesses may have

---

[6]    *See* Opp. at 12–13; *Blanford*, 794 F.3d at 303 (containing no discussion of whether plaintiffs' counsel verified allegations); *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1235–36 (N.D. Ga. 2019) (crediting allegations by witnesses with *direct* knowledge); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *2 (S.D.N.Y. Jan. 27, 2014) (plaintiffs' investigators "independently corroborated" reports by conducting interviews, visiting sites, and taking photos).

[7]    An attorney must "conduct a reasonable inquiry of the factual and legal basis for a claim before filing." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018) (citation and quotation marks omitted). Courts have disregarded allegations where plaintiffs did not conduct such an investigation. *See, e.g.*, *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2008) (plaintiffs did not independently investigate facts alleged in Securities and Exchange Commission complaint or provide additional bases for claims); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 812 (N.D. Cal. 2019) (same with respect to complaint in Federal Trade Commission action).

said.  Plaintiffs try in vain to rehabilitate the AlphaSense interviews because they are corroborated by "five additional confidential witnesses" (CWs 1–4, and 11) and the Scorpion Report, Opp. at 14, but this is the same tired argument that similarity of accounts (with no further specificity) constitutes verification; it does not.  Finally, Plaintiffs assert new grounds (not alleged in the Complaint) for verification, claiming that AlphaSense creates an "audio recording … and transcribes the interviews" and supposedly "verifies the[] accuracy" of the transcription.  *Id.*  But the issue is witness reliability, not accuracy of transcription.  *See Cabletron*, 311 F.3d at 29–30 (court must examine "reliability of the sources"); Mot. at 9–10, 18.  Nor do Plaintiffs address *LexinFintech*, which explained that a short-seller report copying anonymous customer complaints was merely "vague hearsay."  *In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *7–8 (D. Or. Nov. 24, 2021).

### D.       The Gosar Letter Is Not Reliable

Plaintiffs' reliance on Congressman Gosar's letter (which *The Daily Caller* obtained) fares no better.  It does not purport to be the product of any meaningful investigation, cites no sources, and contains only unverified anonymous "concerns."  *See* Mot. at 13–14.  Plaintiffs argue that the Court should credit the Letter even though it did not "amount[] to formal charges."  Opp. at 15. But that misses the point—the Congressman does not claim any direct knowledge, and the Letter does not specify the alleged sources for the Congressman's "concerns."  In short, there is no way to establish the reliability of the Letter's assertions.  Plaintiffs also ignore *Bennett v. H&R Block Fin. Advisors, Inc.*, Mot. at 14, which did not consider allegations from an unadjudicated complaint.  2005 WL 8178042, at *4 (N.D. Cal. June 1, 2005); *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) (cited at Mot. at

14).  An unsourced letter is even less reliable than a complaint.[8]

## II.     Plaintiffs Fail to Plead a False or Misleading Statement

Plaintiffs' falsity allegations rest entirely on the same unreliable sources discussed above. *See supra* § I.  But even assuming reliability, Plaintiffs' claims fail for lack of particularity: they do not identify a single specific instance in which TransMedics coerced a customer or in which a customer failed to receive reimbursement for TransMedics' products or services.  Moreover, many of the challenged statements are, in any event, inactionable puffery.

### A.     Plaintiffs Allege No Particularized Facts Showing That Statements Regarding NOP Development, Efficiencies, and Pricing Were False or Misleading

To begin, Plaintiffs fail to respond to Defendants' argument that they adduced no facts related to TransMedics' purpose in developing NOP.  For that reason alone the Court should dismiss their challenge to TransMedics' FY 2022 Form 10-K, ¶ 158 (NOP was developed for efficiency).[9]  Plaintiffs' challenges to Defendants' statements regarding NOP's efficiencies and "price gouging" fare no better because they allege no comparators.  Opp. at 16–17.  Each of the "efficiencies" Plaintiffs challenge is inherently comparative, stating that NOP was more efficient or more cost-effective in comparison to other organ transport methods.  *See, e.g.*, ¶¶ 168 ("more efficient"), 172 (similar), 174 (similar), 191 ("most cost-effective way of managing organ transplant[s]"), 194 (similar).  In the same vein, claims that TransMedics "price gouge[d]," charged excessively high prices, and engaged in non-cost-effective measures, ¶¶ 184–86, 190–91, 200–02, require an apples-to-apples comparison to what a fair price would be under the circumstances and

---

[8]     Plaintiffs further claim that Defendants' cases are limited to situations where a complaint or investigation was the only source of allegations.  Not so.  *See, e.g.*, *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *5, *23–24, *27 (S.D.N.Y. Sept. 29, 2014) (rejecting allegations based on article, whistleblower letter, two federal investigations).

[9]     Plaintiffs inaccurately claim that TransMedics' statement in its FY 2022 Form 10-K—that TransMedics "developed [NOP] to provide a more efficient process," ¶ 158—is not puffery (*see infra* § II.E).  But even if a statement is not puffery, it is inactionable where, as here, it is not challenged as false or misleading.

particularized allegations as to why NOP was not cost-effective.

Despite their conclusory assertion to the contrary, Opp. at 17, Plaintiffs plead no such comparative details. *First*, Plaintiffs claim the Complaint is "replete with examples of specific instances of overpricing," citing five purported examples. *Id.* (citing ¶¶ 63, 95, 104, 118, 133). But none offers an adequate comparison between TransMedics' charges and those of a comparable organ transplant service provider in similar circumstances.[10] Nor do Plaintiffs' cases help them. Opp. at 17–18. None dealt with inherently comparative statements requiring comparative facts to plausibly plead falsity. In addition, their cases involved substantially more detailed allegations.[11]

*Second*, although Plaintiffs assert that they plausibly plead TransMedics' services were not "more cost effective" than other options, Opp. at 18, that would require considering, for a given organ transplant, the cost, feasibility, and availability of alternative transportation options, including whether that transport was emergent (*e.g.*, involving catastrophic injuries from unexpected events). But Plaintiffs allege no specific data points comparing other services in a given transplant case. *See id.* (citing ¶¶ 95–99, 130, 135, 138, 142). The most specific allegation is CW 2 citing an alleged $77,000 flight, *id.* (citing ¶ 130), but that again is not comparative, *see* Mot. at 16 (citing *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 267 (D. Mass. 2013)).[12]

---

[10]    As to CW 3, not only do Plaintiffs fail to plead that he was in a position to have knowledge of alleged overpricing, *see* Mot. at 18–19, but his aggregate comparison, *see* ¶ 133, does not show that TransMedics' surgical team and flight pricing were disproportionately high in any specific case. Moreover, Plaintiffs completely fail to engage with the cost-efficiencies that TransMedics described going beyond simple pricing. *See* Mot. at 15. If NOP added $20,000 to costs, that does not mean that the $20,000 was not efficient or cost-effective. ¶ 63. Nor does a service's impact on a company's margin, even if accurate, mean that that service is not efficient or cost-effective in a particular transplant case. ¶ 118. Finally, that "broader statements about TransMedics' pricing," Opp. at 17 & n.9, corroborate any examples does not save Plaintiffs' allegations from a lack of particularity. Plaintiffs' remaining allegations do not concern efficiencies. ¶ 95 ("surprise invoices"); ¶ 104 (citing bills without comparator).

[11]    *See Cabletron*, 311 F.3d at 31 ("significant … level of specific detail about the fictitious sales"); *Leventhal v. Chegg, Inc.*, 721 F. Supp. 3d 1003, 1013 (N.D. Cal. 2024) ("[e]xtensive documents and interviews"); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 79–82 (1st Cir. 2002) (specific statements by management in journal article interview).

[12]    Plaintiffs try to distinguish *Coyne*, which found confidential witness allegations regarding sales projections were insufficient without context, Opp. 18 n.10 (citing *Coyne*, 943 F. Supp. 2d at 268), because those witnesses' allegations were "devoid of any specific numbers," *id.* But this retort misses the point. To plead the falsity of inherently comparative alleged misstatements, Plaintiffs must plead *comparative* data, not just TransMedics' data.

8

*Third*, Plaintiffs allege that several hospitals "moved away from" TransMedics due to pricing.  Opp. at 19.  This allegation also lacks particularity.  The purported "[loss of] hospital customers in Texas" or San Diego does not identify a single customer or compare TransMedics' costs with other services' costs.[13]  *Id.* at 19, 24; Mot. at 23.  The remaining allegations are either unreliable hearsay from the Scorpion Report, which the Court should not consider, *supra* § I.B, or general complaints about price, Opp. at 19 (citing ¶¶ 108–09, 121, 125–26, 134, 142, 182).

*Finally*, Plaintiffs contend that Defendants prematurely challenge the admissibility of their purported "expert['s]" analysis that the "costs of hospitals using TransMedics more than doubled" compared to hospitals not using TransMedics.  Opp. at 19.  But Plaintiffs must allege "the factual basis supporting [the expert's] ability to speak about" the costs and plead "*with particularity* what [the expert's] investigation reviewed or revealed … that forms the factual *basis* for the opinions[.]" *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1108 (N.D. Cal. 2013) (first emphasis added).  Plaintiffs do not contest that expert reports must meet the PSLRA's pleading standards.  Mot. at 18 & n.11.  Yet Plaintiffs do not plead facts to establish the reliability of their anonymous expert;[14] his analysis does not purport to be statistically significant; and even if credited, it says nothing about TransMedics' pricing or comparative cost efficiency.  Mot. at 17.

### B.    Plaintiffs Allege No Particularized Facts to Show That Defendants "Pressured" Customers to Use All of Their Products and Services

Plaintiffs' "bundling" theory also collapses on closer scrutiny.  They claim that the CWs could reliably report on TransMedics "requiring or pressuring customers to use NOP" and that the

---

[13]      A hospital might change providers for transplant logistics services for any number of reasons.  As just one example, a hospital might have left TransMedics and reverted to a more dated system.  That Texas hospitals supposedly "sign[ed] up with" OrganOx, a *cold storage system*, says nothing about TransMedics' cost efficiencies for the NOP flight services that Plaintiffs challenge.  ¶ 125; Opp. at 19.

[14]      *Oracle*, by contrast, involved a reliable expert: a former financial analyst who reviewed billing and payment histories of customers and spoke with employees about customer payments.  *See Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1233 (9th Cir. 2004).

CWs "describe the mandatory bundling occurring at TransMedics." Opp. at 20–22. Plaintiffs even purport to offer examples. *Id.* at 21. But these myriad allegations all lack particularity.

*First*, Plaintiffs fail to show that the CWs were positioned to report reliably on the alleged bundling. *See id.* at 21–22 (claiming CWs were reliable because CW 3 gave "dollar amounts" and listed "specific hospitals"; CW 7 "gave dollar amounts" for TransMedics procurement services; CW 6 "knew air logistics"; and CW 10 knew about "major centers" and "market share"). As an initial matter, as to CWs 6 and 10, the argument is tautological, claiming the witnesses were in positions to know because they "knew" about a topic. Moreover, none of the CWs worked at a hospital.[15] Only CW 7 worked for TransMedics, but the vague title of "VP of Market Access," without more, does not imply knowledge of sales practices. The rest offer nothing beyond hearsay. Plaintiffs have no answer to cases rejecting allegations from confidential witnesses whose positions, like those here, do not plausibly suggest knowledge of asserted facts. *See* Mot. at 18.

*Second*, Plaintiffs' "direct examples and claims" of the purported pressuring of customers to use NOP fail for lack of particularity. Opp. at 21. Plaintiffs do not answer Defendants' cases stating that allegations about "force" must at least "identif[y] [the] time, place, [and] manner" to meet Rule 9(b)'s particularity requirement. Mot. at 19–20; *see Levy v. Gutierrez*, 2017 WL 2191592, at *22, *24 (D.N.H. May 4, 2017) (rejecting vague allegations that one company "forced" another to conceal information). CW 2's claim that TransMedics removed his hospital's OCS machine, Opp. at 21, pleads no added context to suggest that TransMedics did so to "forc[e] his hospital to use TransMedics' [NOP] services," ¶ 128. Plaintiffs' remaining allegations of purported "mandatory bundling," Opp. at 21,[16] are also impermissibly devoid of time, place,

---

[15]    Plaintiffs allege CW 3 was an "expert in organ procurement and preservation," CW 6 was a transplant services "director," CW 7 was a former Market Access Vice President at TransMedics, and CW 10 was a Vice President at TransMedics' competitor. ¶¶ 132, 137, 139, 145 n.17.
[16]    Plaintiffs cite a former TransMedics executive claiming, without examples, that customers are not allowed

manner, or other details, *see id.*; *see also Levy*, 2017 WL 2191592, at *24.

*Third*, Plaintiffs are incorrect that the "lack of dates for the CWs" is irrelevant because "less than two years" are "at play" and two (out of eleven) CWs supplied dates. Opp. at 22. Courts routinely find that CW allegations lack specificity where they omit a date, even where the relevant time period is under two years.[17] *See, e.g.*, *Wasson v. LogMeIn, Inc.*, 496 F. Supp. 3d 612, 629 (D. Mass. 2020) (CW allegations insufficient where witnesses "do not state *when*" asserted conduct occurred during one-year class period); *NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, 2013 WL 1188050, at *28 (D. Conn. Mar. 23, 2013) (allegations "amorphous as to time periods" in four-month class period "are not pled with the requisite specificity").

### C.     Plaintiffs Do Not Allege with Particularity That Customers Did Not Receive Reimbursement for TransMedics' Costs

Plaintiffs maintain that the Complaint sufficiently alleges that Dr. Hassanein's statements about reimbursements were false because Plaintiffs set forth "detailed allegations [to] show" that "many transplant centers were not being fully reimbursed[.]" Opp. at 23. But, at best, Plaintiffs advance only one inherently unreliable allegation from an anonymous Vanderbilt surgeon in the Scorpion Report specific to TransMedics reimbursement. *See id.* (citing ¶¶ 105–06). Otherwise, Plaintiffs plead only generalities that fail to identify a specific instance where a hospital was not reimbursed for OCS or NOP. These vague allegations include that Medicaid reimburses fully for "reasonable costs" of organ acquisition, ¶ 42; that "insurance reimbursed the same amount no matter [] the cost," Opp. at 23 (citing ¶ 102); and that, for commercial insurers, "reimbursement

---

to buy certain OCS parts without using NOP, *see* ¶ 86; CW 5 describing a "'closed loop' system," ¶ 136; CW 2 alleging "strongarming" by the "TransMedics Mob," ¶¶ 128–29; the Scorpion Report witness alleging "you have to do it," ¶ 88; and the Gosar Letter describing allegations that TransMedics "h[e]ld its device hostage," ¶ 63.

[17]     Plaintiffs claim that two CWs offered dates, Opp. at 22, but CW 3 was not even sure if his allegations applied to actions "[b]eginning in 2022 or 2023," ¶ 132, and CW 7 alleges only that his claims applied to actions beginning "once TransMedics got FDA approval," ¶ 139, without specifying a date or which TransMedics approval is at issue.

was a fixed amount and the excess charges of TransMedics [which the witness does not identify] were not covered," Opp. at 23 (citing ¶ 141).  Such generalities are insufficient to plead securities fraud.  *See iRobot Corp. Sec. Litig.*, 527 F. Supp. 3d 124, 135 (D. Mass. 2021) (allegations fail where CWs' "statements are generalized assertions and not in conflict with" defendant's disclosures).  Nor do Plaintiffs answer the fact that hospital bills contain more than TransMedics' charges, so any incomplete reimbursement does not necessarily entail facts about *TransMedics'* costs.  *See* Mot. 21–22 (citing ¶¶ 101, 104, 163–64).

### D. Plaintiffs Do Not Plausibly Allege That TransMedics' Stated Reasons for the Q3 2024 Revenue Decline Were False or Misleading

Plaintiffs claim that Dr. Hassanein's statement that seasonality could be one of multiple factors accounting for a slight dip in revenue in Q3 2024 was "false as it had never previously been an issue" and because the decline was instead related to "pricing pressure."  Opp. at 23.[18]  But Plaintiffs offer no plausible support for the allegation that "pricing pressure" caused the revenue decrease.  *See id.* at 23–24.  Plaintiffs cite CW 1 as "confirm[ing] that TransMedics lost hospital customers in Texas," *id.* at 24, but fail to establish how CW 1, an alleged OCS Specialist (whose responsibilities are not pled) in *New York*, had a basis to know what happened in *Texas*, *see* ¶ 124.  And CW 2, an alleged "organ transplant coordinator," generally opines that seasonality does not exist but does not allege any alternative cause for the revenue decline that would plausibly contradict Dr. Hassanein's statement in its full context.  *See* ¶ 127.

Further, Plaintiffs do not plausibly allege that Dr. Hassanein's single mention of seasonality in response to a question was, in context, materially false when he referred to the fact that national transplant volumes dropped due to "normal variability of donor availability" and "*potential* summer seasonality."  Mot. at 22–23; ¶ 75.  In context, the market would not have

---

[18]    Plaintiffs incorrectly refer to Q3 2025 rather than Q3 2024.  *See* Opp. 23–24.

understood Dr. Hassanein to be blaming the quarter's decline on seasonality alone.  While Plaintiffs' sole witness, CW 2, claims there is no seasonality, he does not assert that there was no dip in national volumes or variability of donor availability.  *See* Opp. at 23 (citing ¶ 127).

### E.    Many of the Challenged Statements Are Puffery

Plaintiffs claim that Defendants' general representations about NOP's efficiencies, *e.g.*, ¶¶ 158, 172, 174, 187, 191, 194; and positive characterizations of NOP, *e.g.*, ¶¶ 165, 172, 174, 183, 200, are not puffery because they "presented investors with present facts that were false," Opp. at 25.  But vague characterizations of "efficiency," "world class service," "highest level of clinical care," and "nobody … can match," do not adduce concrete facts on which a reasonable investor would rely and thus are inactionable.  Mot. at 24–25; *see Fitzer v. Sec. Dynamics Techs., Inc.*, 119 F. Supp. 2d 12, 23, 26 (D. Mass. 2000).  Plaintiffs have no answer to Defendants' eight cases, *see* Mot. at 24–25, while Plaintiffs' cases, *see* Opp. at 25, arose in other contexts, *see, e.g.*, *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (repeated statements regarding corporate integrity and ethics specifically made to reassure investors amidst growing concerns about corporate wrongdoing).  In any case, Plaintiffs fail to allege contemporaneous, particularized facts that contradict TransMedics' general optimism.  *See supra* § II.A.

## III.    The Complaint Does Not Support a Strong Inference of Scienter

Plaintiffs' sources are unreliable, *see supra* § I, and cannot support scienter.  None of the individual bases for scienter withstands scrutiny and in "totality" they still fail to infer scienter.  *Celano v. Fulcrum Therapeutics, Inc.*, 2025 WL 928783, at *20 (D. Mass. Mar. 27, 2025).

### A.    The Anonymous Sources Do Not Support a Strong Inference of Scienter

The Opposition focuses on (1) the Scorpion Report witnesses' purported interactions with TransMedics' leadership and (2) the Gosar Letter.  *See* Opp. at 26–27 & n.15.  Neither succeeds.

*First*, Scorpion Report witness descriptions of their interactions with TransMedics'

leadership assert, at best, general complaints about TransMedics' costs. They do not speak to whether TransMedics' products or services were cost-efficient, reimbursed, or bundled with NOP, and do not show the Individual Defendants' knowledge of the alleged fraud.[19] For example, Plaintiffs claim that an organ procurement organization executive "recounted calls" from Dr. Hassanein about "surprise invoices," Opp. at 26 (citing ¶ 95), but these allegations reflect nothing as to the appropriateness of TransMedics' costs.[20] The more compelling inference from these calls is that TransMedics wanted to settle the hospital's months-long debt. Similarly, a vague complaint about "how much of a hit" a hospital "took" using TransMedics' services, allegedly shared in a meeting Dr. Hassanein attended, ¶ 209, with no other details, is insufficiently particularized. *See Auto. Indus. Pension Tr. Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012). Plaintiffs also rely on a hospital executive's "very candid conversations" with TransMedics' "senior officers" about costs. ¶ 116. But "senior officers" includes more than the Individual Defendants, and discussion of costs, devoid of specifics, is too general. *See iRobot*, 527 F. Supp. 3d at 142 (CWs lack "clear basis of knowledge" because they were not "alleged to have even spoken to" any defendant).

*Second*, the Gosar Letter, citing undisclosed sources, does not support scienter. *See* Mot. at 27–28. Plaintiffs have no response to Defendants' argument that *denying* allegations cannot itself demonstrate knowledge. *See DraftKings*, 650 F. Supp. 3d at 179 ("denial of accusations" could not support scienter). *Washtenaw County Employees Retirement System v. Avid Technology, Inc.*, 28 F. Supp. 3d 93 (D. Mass. 2014), is distinguishable. There, a strong inference of scienter arose primarily from the magnitude of the financial restatement and specific reliable confidential witness allegations that a defendant *decided* to account for revenue incorrectly. *See id.* at 111–15.

---

[19]    Plaintiffs' reliance on *In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266 (S.D.N.Y. 2014), is misplaced. There, unlike here, news outlets corroborated several of the report's allegations. *See id.* at 275–76.
[20]    Moreover, the executive recounts a phone conversation that *someone else* had with Dr. Hassanein, *see* ¶ 95, which is "unreliable hearsay," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009).

### B.    Plaintiffs' Other Theories Fail to Plead Scienter

Plaintiffs' other grounds for scienter—a core operations theory, statements in earnings calls, and Mr. Gordon's departure as CFO—do not lend their allegations any further support.

**"Core operations."**    Plaintiffs concede that the significance of OCS and NOP to TransMedics cannot show scienter without a plausible "plus factor."  *See* Opp. at 27; *Leung v. bluebird bio, Inc.*, 599 F. Supp. 3d 49, 66 (D. Mass. 2022).  Plaintiffs' cases offer no support.[21]  In *Construction Industry & Laborers Joint Pension Trust v. Carbonite, Inc.*, the court reasoned that even for a "critical" product, the complaint must allege that the individual defendants were "exposed" to information that rendered their statements false or invited investigation and employees there, unlike here, had reported issues internally.  22 F.4th 1, 9–10 (1st Cir. 2021).

**Earnings calls.**    Plaintiffs argue that Defendants "kept falsely claiming" that the Company's services were "cost effective and fully reimbursed by insurance" in response to analyst questions, and that this shows scienter.  Opp. at 28.  This argument reduces to a variation on impermissible "scienter-by-status": Defendants spoke on a subject, so they must have had scienter. *See, e.g.*, *Wasson*, 496 F. Supp. 3d at 638 ("[a] vague assertion that defendants must have known something by virtue of their position" not enough for scienter).[22]

Plaintiffs' cases are inapt.  *Institutional Investments Group v. Avaya, Inc.* did not find scienter merely because the CFO responded to "specific[] and repe[ated]" analyst questions.  564 F.3d 242, 270 (3d Cir. 2009).  Rather, the court credited specific, reliable allegations from confidential witnesses with direct knowledge contradicting the CFO's answers; a Lehman Brothers

---

[21]    The combination of factors relied on in *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 16–20 (D. Mass. 2004), is absent here.  And *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 329 (D. Mass. 2002), makes no mention of a "core operations" theory at all.  Finally, *iRobot* did *not* find a strong inference of scienter.  2021 WL 950675, at *9.

[22]    Plaintiffs have no response to Defendants' argument that Dr. Hassanein's denying allegations in the Gosar Letter, *see* ¶ 207, does not support scienter, *see* Mot. at 27.

report; and the proximity of defendants' statements to a quarterly disclosure. *See id.* at 270–71. Plaintiffs allege nothing comparable. Nor were Defendants "directly nonresponsive" to analyst questions, implying they were "avoiding the disclosure" of omitted facts. *In re Sanofi-Aventis Sec. Litig.,* 774 F. Supp. 2d 549, 571 n.28 (S.D.N.Y. 2011).

**CFO transition.** Plaintiffs' characterization of Mr. Gordon's transition as a "sudden resignation (without a replacement)," Opp. at 28, is inaccurate: the Company appointed a new CFO the same day and Mr. Gordon stayed on. *See* ¶ 15; Doc. No. 57-3 at 2; Mot. at 32. Plaintiffs fail to plead any "causal connection" between bad news and his resignation, defeating scienter. *Celano*, 2025 WL 928783, at *18 (no scienter without "adequate facts suggesting any causal connection between … resignations and alleged issues"). Mr. Gordon stepped down *six weeks* after the Q3 2024 revenue announcement and ten months after the Gosar Letter, *see* ¶¶ 6, 12, 15, unlike Plaintiffs' cases involving resignations concurrent with corrective disclosures or findings of wrongdoing. *See In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 381 (S.D.N.Y. 2007) (resignations concurrent with alleged corrective disclosure); *Collier v. ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 65 (D. Mass. 2014) (Audit Committee investigation finding wrongdoing "culminated" in officers' resignation and restatement of financials on same day).

### C.    The Complaint's Insider Trading Allegations Do Not Support Scienter

Plaintiffs similarly fail to plead that Dr. Hassanein's and Mr. Gordon's periodic stock sales were "particularly unusual or suspicious." *Brennan v. Zafgen*, 853 F.3d 606, 616 (1st Cir. 2017).

**Amount of sales.** Plaintiffs fixate on stock-sale profits ($34.4 million for Dr. Hassanein and $11 million for Mr. Gordon), but the numbers alone say nothing. *See Smallen v. W. Union Co.*, 950 F.3d 1297, 1310 (10th Cir. 2020) ("amount of profit" alone insufficient for scienter). Plaintiffs cannot dispute that many sales occurred pursuant to Rule 10b5-1 plans, so they focus on certain off-plan trades, which account for only 13% and 21% of Class Period holdings. *See* Mot.

at 29–30.  Plaintiffs do not address the cases rejecting higher percentages of sales.  *See id.* Moreover, Plaintiffs' cases finding smaller percentages probative of scienter are distinct.  In *Friedberg v. Discreet Logic Inc.*, the defendants sold 12% collectively, but they did so with knowledge of the fraud and two defendants sold *33%* and *50%* of their holdings.  *See* 959 F. Supp. 42, 51–52 (D. Mass. 1997); *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 646 (E.D. Va. 2000) (some defendants sold over half of their holdings).  *Oracle* is an outlier. The "truly astronomical figure" of "almost *$900 million*" near the end of the class period merited greater weight than the usual focus on "the percentage of stock sold."  380 F.3d at 1232 (emphasis added).

Plaintiffs note the difference between Dr. Hassanein's sales during the Class Period ($34.4 million) and the "Control Period" (pre-Class Period interval of the same length) ($10.3 million), *see* Opp. at 29 (citing ¶ 153), but it is "perfectly natural for the defendants to sell their stock as share price increased," *In re Wayfair, Inc. Sec. Litig.*, 471 F. Supp. 3d 332, 348 (D. Mass. 2020). And Dr. Hassanein *increased* his net holdings by over *180,000 shares* (*41%*) during the Class Period.[23]  *See* Doc. No. 57-8 at 24–62; *see also, e.g.*, *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 210 n.18 (1st Cir. 2020) (defendant's purchase of shares during class period cuts against scienter).  That the acquisitions involve vested options or a trust is irrelevant. *See In re AnaptysBio, Inc.*, 2021 WL 4267413, at *9 (S.D. Cal. Sept. 20, 2021) (accounting for vested options).[24]

**Timing of sales.**  Plaintiffs argue that Dr. Hassanein sold stock in August 2024, about 40 days before the end of Q3 2024, "close to its all-time high but when TransMedics' results for virtually all of Q3" would have been known, Opp. at 30–31.  This is mere speculation.  They fail

---

[23]    Due to a slight calculation error, Defendants' opening brief stated incorrectly that "[i]ncluding vested options, Dr. Hassanein increased his holdings by 176,992 shares, and Mr. Gordon increased his holdings by 2,510 shares." Mot. at 28–29.  With vested options taken into account, Dr. Hassanein's stock holdings increased by 181,470 shares and Mr. Gordon's holdings decreased by 2,801 shares.  *See* Doc. Nos. 57-8–57-9.

[24]    Plaintiffs' cases are inapposite.  Neither holds that courts may not consider vested options or trust acquisitions.  *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004); *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1195 (D.N.M. 2010).

17

to plead how he would have known over a month before the quarter's end.[25]  *See In re Sina Corp. Sec. Litig.*, 2006 WL 2742048, at \*12 (S.D.N.Y. 2006) (contested sales "occurred more than a month *before*" corrective disclosure and plaintiffs failed to plead defendants' advance notice).

**Trading plans.**  Plaintiffs claim that the Individual Defendants' Rule 10b5-1 plans do not negate scienter because they were adopted during the Class Period, ignoring that during the first part of the Class Period, the Individual Defendants traded pursuant to prior plans then in place. *See* Doc. No. 57-8 at 24, 26–39; Doc. No. 57-9 at 25–27.  This pattern defeats any suggestion that the Individual Defendants created the plans to profit from fraudulent sales.  *See Simon v. Abiomed, Inc.*, 37 F. Supp. 3d 499, 524 (D. Mass. 2014) (no scienter where some sales pursuant to class period trading plans and others pursuant to *prior* plans), *aff'd sub nom. Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228 (1st Cir. 2015).  Plaintiffs' cases are distinguishable.[26]  Unlike in *Blanford*, Plaintiffs do not allege that "the purpose of the plan was to take advantage of an inflated stock price."  794 F.3d 297 at 309.  *See Meyer v. Organogenesis Holdings Inc.*, 727 F. Supp. 3d 368, 395 (E.D.N.Y. 2024) (no scienter where trades were made pursuant to class-period plans because there was no allegation "that the purpose of the plans was to take advantage of an inflated stock price").  Nor did Defendants adopt the plans "within days" of a corrective disclosure.  *In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 755 (1st Cir. 2016).

## IV.    Plaintiffs Fail to Plead Loss Causation

Plaintiffs assert that they plead a series of partial corrective disclosures.  *See* Opp. at 32.

---

[25]    Unlike here, in *Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*, defendants traded "knowing that the price would drop" when a defect became public.  523 F.3d 75, 92 (1st Cir. 2008).

[26]    Contrary to Plaintiffs' incorrect distinction, this Court in *Tetraphase* considered both class period and pre-class period trading plans in its scienter analysis.  *Harrington v. Tetraphase Pharms. Inc.*, 2017 WL 1946305, at \*6 (D. Mass. May 9, 2017) (Sorokin, J.).  Notwithstanding *Boston Scientific*, it did so without examining evidence of the plans' specific terms, including whether they afforded the defendants any discretion.  *Id.*  Other courts have done the same.  *E.g.*, *Abiomed*, 37 F. Supp. 3d at 524.  Plaintiffs' mere speculation that it "could be" that the plans afforded the Individual Defendants discretion, *see* Opp. at 31, is unavailing.

18

But to be corrective, a disclosure—whether one or several—must reveal the truth of an allegedly false statement.  *See, e.g.*, *Leung*, 599 F. Supp. 3d at 70.

**Gosar Letter.**  The Gosar Letter was not a corrective disclosure because it describes unsourced "concerns" rather than revealing facts that disclose wrongdoing.[27]  *See* Mot. at 33; *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (SEC letter seeking voluntary document production insufficient for loss causation).  Plaintiffs' reliance on *Public Employees Retirement System of Mississippi v. Amedisys, Inc.*, is misplaced—there were *three* government investigations in that case, whereas Plaintiffs do not allege that TransMedics faced even one.[28]  *See* 769 F.3d 313, 318–19 (5th Cir. 2014).

**October 28, 2024 Press Release and Earnings Call.**  Plaintiffs plead no connection between the Q3 2024 revenue dip and any challenged statement, simply asserting that the dip "was a materialization of the risk" of TransMedics' costs or of "transplant centers fleeing to competitors."  Opp. at 8, 33.  But by definition, some risk materializes with every revenue decline.  *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 617 (S.D.N.Y. 2008) ("[D]isclosures attributing a share price drop to the failure to meet earnings estimates" insufficient to plead loss causation), *aff'd*, 347 F. App'x 665 (2d Cir. 2009).  Instead, Plaintiffs must plead a specific, previously *concealed* risk that materializes.[29]  Here, Defendants disclosed the risk of customer loss.  *See* Doc. No. 57-1 at 6; Doc. No. 57-2 at 4; Mot. at 16.

**December 2, 2024 Press Release.**  Plaintiffs assert that "[e]xecutive resignations are

---

[27]     The decline in TransMedics' stock price following the Letter's publication is, at most, "market speculation" about "a *potential* future disclosure."  *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).
[28]     *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200 (9th Cir. 2016), is an outlier.  There, the stock dropped precipitously on news of an SEC subpoena but did not react at all to the later disclosure of loan defaults, leading the court to conclude, on these unique facts, that the subpoena was the corrective disclosure.  *See id.* at 1204–05, 1210.
[29]     Plaintiffs' attempt to distinguish *Coyne*, *see* Opp. at 33, ignores its holding.  943 F. Supp. 2d at 275 (no loss causation because plaintiff "fail[ed] to plead a plausible connection between the event causing her loss and the statements she allege[d] were false or misleading").

19

sufficient to allege loss causation when taken in context," Opp. at 34, but plead no such "context." Mr. Gordon's transition from CFO reveals nothing to the market related to the so-called fraud. *See* Mot. at 31–32.  And Plaintiffs' cases involve significantly more management turnover or resignations following public investigations into the alleged fraud.  *See In re Stillwater Cap. Partners Inc. Litig.*, 858 F. Supp. 2d 277, 288 (S.D.N.Y. 2012) (replacement of all but one director); *Ontario Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 173–74 (D. Conn. 2019) (state and federal investigations and state attorney general suit); *Boston Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 140–41 (D. Conn. 2021) (Board investigations).

**Scorpion Report.**  Plaintiffs continue to ignore the Scorpion Report's disclaimers.  *See supra* § I.B; Mot. at 11–12; Doc. No. 57-12 at 3; *Leacock v. IonQ, Inc.*, 2023 WL 6308045, at *21, *38 (D. Md. Sept. 28, 2023) ("implausible that investors perceived the unreliable, anonymous report as revealing truths"), *aff'd sub nom. DeFeo v. IonQ, Inc.*, 134 F.4th 153 (4th Cir. 2025). Even if it "provided new information to the market," it is doubtful that the Scorpion Report revealed any truth.  *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 840 (9th Cir. 2022) (market would have viewed short-seller report with "a healthy grain of salt").  Plaintiffs' cases do not meaningfully address the above-mentioned disclaimers, holding only that there is no outright bar on using short-seller reports as corrective disclosures.  *See supra* § I.B; *Twist*, 2025 WL 2532671, at *16 (not addressing disclaimers); *QuantumScape*, 580 F. Supp. 3d at 728, 742 (same); *see also Bernstein*, 2023 WL 11996105, at *8 (addressing only two of Scorpion's many disclaimers).[30]

### CONCLUSION

The Court should dismiss the Consolidated Class Action Complaint with prejudice.

---

[30]    Given Plaintiffs' failure to state a claim under Count I (Section 10(b) and Rule 10b-5), the Court should reject their allegations regarding "control person liability."  Opp. at 35.

Dated: December 22, 2025                    Respectfully Submitted,

                                            /s/ *Michael G. Bongiorno*
                                            Michael G. Bongiorno (BBO # 558748)
                                            Timothy J. Perla (BBO # 660447)
                                            Sonia Sujanani (BBO # 691145)
                                            Margaux Malasky (BBO # 705494)
                                            **WILMER CUTLER PICKERING**
                                               **HALE AND DORR LLP**
                                            60 State Street
                                            Boston, MA 02109
                                            Tel: (617) 526-6000
                                            Fax: (617) 526-5000
                                            michael.bongiorno@wilmerhale.com
                                            timothy.perla@wilmerhale.com
                                            sonia.sujanani@wilmerhale.com
                                            margaux.malasky@wilmerhale.com

                                            Tamar Kaplan-Marans (*pro hac vice*)
                                            **WILMER CUTLER PICKERING**
                                               **HALE AND DORR LLP**
                                            7 World Trade Center
                                            250 Greenwich Street
                                            New York, NY 10007
                                            Tel: (212) 230-8800
                                            Fax: (212) 230-8888
                                            tamar.kaplan-marans@wilmerhale.com

                                            *Counsel for Defendants TransMedics Group,*
                                            *Inc., Waleed Hassanein, and Stephen Gordon*

21